1 QUINN EMANUEL URQUHART & SULLIVAN, LLP
Claude M. Stern (Bar No. 96737)
2 claudestern@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
3 michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
4 Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
5 Facsimile:     (650) 801-5100

6 Ryan Landes (Bar No. 252642)
ryanlandes@quinnemanuel.com
7 865 South Figueroa Street
Los Angeles, California 90017
8 Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100
9
*Attorneys for Plaintiff WeRide Corp. and*
10 *WeRide Inc.*

11

12                    UNITED STATES DISTRICT COURT

13          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14

15 WERIDE CORP. f/k/a JingChi Corp,;        CASE NO. 5:18-cv-07233-EJD
WERIDE INC. f/k/a JingChi Inc.,
16                                          **REPLY BRIEF OF PLAINTIFFS WERIDE**
                    Plaintiff,              **CORP. AND WERIDE INC. IN SUPPORT**
17                                          **OF MOTION FOR PRELIMINARY**
        vs.                                 **INJUNCTION**
18
JING WANG, an individual, KUN HUANG,        Date:      February 14, 2018
19 an individual, ZHONG ZHI XING            Time:      9:00 A.M.
TECHNOLOGY CO. LTD.. d/b/a                   Ctrm:      5, 4th Floor
20 ALLRIDE.AI, ALLRIDE.AI INC.,
                                            The Hon. Edward J. Davila
21                  Defendant.
                                            Action Filed:     November 29, 2018
22                                          Trial Date:       None Set

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3 PRELIMINARY STATEMENT ................................................................................................1

4 ARGUMENT .........................................................................................................................2

5 I. DEFENDANTS' UNDISPUTED MISAPPROPRIATION WARRANTS A
PRELIMINARY INJUNCTION UNDER EITHER NINTH CIRCUIT
6 STANDARD .............................................................................................................2

7      A. Huang *Never Denies* Stealing WeRide's Code, and Is Now Caught Red-
Handed .........................................................................................................3

8      B. Defendants Present No Evidence Contradicting Dr. Walter's Findings ..................6

9          1. *Defendants do not, and cannot, dispute Dr. Walter's determination
that AllRide has not independently developed its capabilities.* .....................6

10

11          2. *Defendants present no credible evidence of independent
development **at all*** ..................................................................................7

12 II. DEFENDANTS' COLLATERAL ATTACKS DO NOT EXCUSE THEIR
ADMITTED MISAPPROPRIATION ............................................................................8

13      A. WeRide Clearly Identified Its Trade Secrets, and Need Not File Source
14 Code .............................................................................................................9

15      B. Defendants Fail to Show that WeRide's Trade Secrets Are Public .........................11

     C. The Copyright Act Does Not Preclude Trade Secret Claims.................................12

16      D. Jing Wang Controls ZZX and AllRide and Is Liable for Misappropriation ...........13

17 III. WERIDE IS LIKELY TO SUCCEED ON ITS DEFAMATION CLAIMS .....................13

18      A. Jing Wang Made Defamatory Statements to Potential Investors .........................13

19      B. Jing Wang's Defamatory Statements Caused Harm to WeRide .............................16

     C. Jing Wang's Non-Disparagement Agreement Is Enforceable ...............................16

20 IV. HUANG BREACHED HIS CONTRACTS AND FIDUCIARY DUTIES TO
21 WERIDE ...................................................................................................................17

22      A. Liren Xu's Unrebutted Testimony Establishes Huang's Liability ........................17

23      B. Overwhelming Evidence of Huang's Misappropriation Also Demonstrates
Huang's Breach of Contract and Breach of Fiduciary Duty ..................................19

24      C. Huang's Non-Solicitation Agreement Is Fully Enforceable .................................19

25 V. DEFENDANTS HAVE PRESENTED NO EVIDENCE JUSTIFYING A BOND ...........20

26 VI. WERIDE'S SHOWING OF IRREPARABLE HARM REMAINS UNREBUTTED ........21

     A. Huang and Wang Contractually Stipulated to Irreparable Harm ..........................21

27      B. AllRide's Ongoing Disclosure of Weride's Code Threatens to Irreparably
28 Destroy WeRide's Trade Secrets ...............................................................................21

C.      WeRide's Evidence of AllRide's Illicit "head start" Is Unrebutted..........................22

D.      Wang Fails to Address Reputational Harm................................................22

VII.    DEFENDANTS' MISAPPROPRIATION AND SPOLIATION NECESSITATES EXPEDITED DISCOVERY ..........................................................................22

VIII.   DEFENDANTS' EVIDENTIARY OBJECTIONS ARE MERITLESS ............................23

CONCLUSION ..................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*2Die4Kourt v. Hillair Capital Mgmt.,*
 LLC, 2016 WL 4487895 (C.D. Cal. Aug. 23, 2016)........................................................ 21

*ADT, LLC v. Capital Connect, Inc.,*
 145 F. Supp. 3d 671 (N.D. Tex. 2015) ................................................................................ 14

*Advanced Media Networks LLC v. Row 44 Inc.,*
 2014 WL 5760545 (C.D. Cal. Nov. 4, 2014) ........................................................................ 5

*Advanced Modular Sputtering, Inc. v. Superior Court,*
 132 Cal. App. 4th 826 (2005) ............................................................................................... 9

*Ajaxo Inc. v. E\*Trade Grp. Inc.,*
 135 Cal. App. 4th 21 (2005) ............................................................................................ 6, 8

*All. for the Wild Rockies v. Cottrell,*
 632 F.3d 1127 (9th Cir. 2011) .............................................................................................. 3

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.,*
 28 Cal. App. 5th 923 (2018) ............................................................................................... 20

*Armstrong v. Sutter Cty. Superintendent of Sch.,*
 2017 WL 6448000 (E.D. Cal. Dec. 18, 2017) .................................................................... 14

*Autodesk, Inc. v. ZWCAD Software Co.,*
 2015 WL 2265479 (N.D. Cal. May 13, 2015) ............................................................. 10, 23

*Bakst,*
 2011 WL 13214315 ............................................................................................................. 16

*Balboa Island Vill. Inn, Inc. v. Lemen,*
 40 Cal. 4th 1141 (2007) ...................................................................................................... 17

*Barker v. Insight Glob., LLC*
 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) ....................................................................... 20

*Barnett v. Fireman's Fund Ins. Co.,*
 90 Cal. App. 4th 500 (2001) ............................................................................................... 16

*Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp.,*
 676 F. Supp. 2d 857 (N.D. Cal. 2009) .................................................................................. 7

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,*
 873 F. Supp. 2d 1192 (N.D. Cal. 2012) ........................................................................... 4, 6

*Chattery Int'l, Inc. v. JoLida, Inc.,*
 2011 WL1230822 (D. Md. Mar. 28, 2011) ......................................................................... 14

*Coburn v. PN II, Inc.*,
   372 F. App'x 796 (9th Cir. 2010) ............................................................... 25

*Comet Techs. United States of Am. Inc. v. Beuerman*,
   2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ............................................. 21

*Compass Chem. Int'l, LLC v. True N. Prod., LLC*,
   2011 WL 13213874 (N.D. Ga. Mar. 28, 2011) ............................................. 8

*Contento v. Mitchell*,
   28 Cal. App. 3d 356 (1972) ...................................................................... 16

*Cota v. Maxwell-Jolly*,
   688 F. Supp. 2d 980, 992 (N.D. Cal. 2010) ................................................. 7

*Craigslist, Inc. v. Kerbel*,
   2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) ............................................... 18

*Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   2018 WL 1425981 (E.D. Cal. Mar. 22, 2018) ............................................. 18

*DVD Copy Control Assn.*,
   31 Cal. 4th at 880 .................................................................................... 17

*Edwards v. Arthur Andersen LLP*,
   47 Cal. Rptr. 3d 788 (2006) ...................................................................... 16

*Evans v. Evans*,
   162 Cal. App. 4th 1157 (2008) .................................................................. 17

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
   765 F.3d 205 (3d Cir. 2014) ...................................................................... 21

*Fid. Brokerage Servs. LLC v. Rocine*,
   2017 WL 3917216 (N.D. Cal. Sept. 7, 2017) ............................................. 22

*Firoozye v. Earthlink Network*,
   153 F. Supp. 2d 1115 (N.D. Cal. 2001) ..................................................... 13

*Flynt Distributing Co., Inc. v. Harvey*,
   734 F.2d 1389 (9th Cir. 1984) .................................................................. 14

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
   730 F.2d 61 (2d Cir. 1984) ................................................................. 19, 21

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................ 10

*Go Daddy Operating Co., LLC v. Ghaznavi*,
   2018 WL 1091257 (N.D. Cal. Feb. 28, 2018) ...................................... 22, 24

*GTAT Corp. v. Fero*,
   2017 WL 7035655 (D. Mont. May 3, 2017) ............................................. 6, 8

*Harris v. City of Seattle,*
  152 F. App'x 565 (9th Cir. 2005) ............................................................... 13

*Hassell v. Bird,*
  247 Cal. App. 4th 1336 (2016) ................................................................... 17

*Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.,*
  736 F.3d 1239 (9th Cir. 2013) ............................................................. 21, 24

*Heritage Cablevision of California, Inc. v. J.F. Shea Co., Inc.,*
  1990 WL 1241400 (N.D. Cal. June 4, 1990) .............................................. 22

*Huong Que, Inc. v. Luu,*
  150 Cal. App. 4th 400 (2007) ..................................................................... 19

*I-Flow Corp. v. Apex Med. Techs.,*
  2008 WL 2233962 (S.D. Cal. May 23, 2008) .............................................. 9

*Imax Corp. v. Cinema Techs., Inc.,*
  152 F.3d 1161 (9th Cir. 1998) .................................................................... 10

*In re Ingle Co., Inc.,*
  116 F.3d 1485 (9th Cir. 1997) .................................................................... 20

*In re Peck,*
  295 B.R. 353 (B.A.P. 9th Cir. 2003) ........................................................... 16

*Integral Dev. Corp. v. Tolat,*
  675 F. App'x 700 (9th Cir. 2017) ......................................................... 4, 6, 10

*Johnson v. Couturier,*
  572 F.3d 1067 (9th Cir. 2009) .................................................................... 20

*Jumbo Bright Trading Ltd. v. Gap, Inc.,*
  2012 WL 5289784 (C.D. Cal. Oct. 25, 2012) ............................................. 21

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
  941 F.2d 970 (9th Cir. 1991) ...................................................................... 22

*Lilith Games (Shanghai) Co. v. uCool, Inc.,*
  2015 WL 4149066 (N.D. Cal. July 9, 2015) ......................................... 10, 13

*Loral Corp. v. Moyes,*
  174 Cal. App. 3d 268 (1985) ...................................................................... 20

*Lusson v. Apple, Inc.,*
  2016 WL 6091527 (N.D. Cal. Oct. 19, 2016) ............................................. 20

*Maaso v. Signer,*
  203 Cal. App. 4th 362 (2012) ..................................................................... 15

*Maggi v. Sup. Ct.,*
  119 Cal. App. 4th 1218 (2004) ................................................................... 17

*Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.,*
    446 F.2d 353 (5th Cir. 1971) ........................................................................... 14

*Masimo Corp. v. Mindray DS USA, Inc.,*
    2014 WL 12589321 (C.D. Cal. May 28, 2014) ................................................. 23

*Near v. Minn.,*
    283 U.S. 697 (1931) ........................................................................................ 17

*Netlist Inc v. Diablo Techs. Inc,*
    2015 WL 153724 (N.D. Cal. Jan. 12, 2015) .................................................... 22

*Phoenix Techs., Ltd. v. DeviceVM, Inc.,*
    2010 WL 8590525 (N.D. Cal. Mar. 17, 2010) .................................................. 9

*Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.,*
    2017 WL 1198992 (S.D. Cal. Mar. 31, 2017) .................................................. 10

*Rapid Pharm. AG v. Kachroo,*
    180 F. Supp. 3d 96 (D. Mass. 2015) ............................................................... 15

*RCRV Inc. v. J L J Inc.,*
    2013 WL 12133691 (C.D. Cal. Jan. 30, 2013) ................................................ 18

*Richmark Corp. v. Timber Falling Consultants,*
    959 F.2d 1468 (9th Cir. 1992) ........................................................................ 23

*S.O.S., Inc. v. Payday, Inc.,*
    886 F.2d 1081 (9th Cir. 1989) ................................................................... 12, 13

*San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters,*
    125 F.3d 1230 (9th Cir. 1997) ........................................................................ 17

*Smith v. Visa U.S.A., Inc.,*
    2011 WL 2709819 (N.D. Cal. July 12, 2011) .................................................. 18

*Soc. Apps, LLC v. Zynga, Inc.,*
    2012 WL 2203063 (N.D. Cal. June 14, 2012) .............................................. 9, 10

*Solarbridge Techs., Inc. v. Ozkaynak,*
    2012 WL 2150308 (N.D. Cal. June 12, 2012) ................................................. 21

*Sunbelt Rentals, Inc. v. Victor,*
    2014 WL 492364 (N.D. Cal. Feb. 5, 2014) ..................................................... 10

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) ........................................................................ 12

*T-Mobile USA, Inc. v. All Pro Distrib. Inc.,*
    2008 WL 11339967 (C.D. Cal. Apr. 30, 2008) ................................................ 23

*Trak Inc. v. Ski-Trac, Inc.,*
    1980 WL 30262 (N.D. Cal. Apr. 29, 1980) ....................................................... 7

*Unelko Corp. v. Rooney*
    912 F.2d 1049 (9th Cir. 1990) ............................................................................... 15

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ............................................................................................... 14

*Vendavo, Inc. v. Price f(x) AG,*
    2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ..................................................... 10

*Veronica Foods Co. v. Ecklin,*
    2017 WL 2806706 (N.D. Cal. June 29, 2017) ..................................................... 10

*Waymo LLC v. Uber Techs., Inc.,*
    2017 WL 2123560 (N.D. Cal. May 15, 2017) ................................................ 19, 21

*Webspectator Corp. v. Parreira,*
    2018 WL 3829223 (C.D. Cal. July 9, 2018) ....................................................... 16

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
    2014 WL 4312021 (N.D. Cal. Aug. 28, 2014) ..................................................... 21

*Williams v. San Francisco Unified Sch. Dist.,*
    340 F. Supp. 438 (N.D. Cal. 1972) ....................................................................... 7

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................................................... 3

**Statutes**

Cal. Bus. & Prof. Code § 16600 ............................................................................................ 16

**PRELIMINARY STATEMENT**

Plaintiff WeRide has leveled serious charges of theft of trade secret source code and related information; defamation and disparagement; intentional interference; breach of fiduciary duty; and breach of contract against the four Defendants, supported by thorough expert testimony, forensic evidence, and detailed declarations and documentation.  While trying to avoid service of process, and after enlisting the assistance of three large law firms and collectively submitting 113 pages of briefing and declarations (not including exhibits) in their oppositions, Defendants fail to meaningfully respond to any of the key allegations that lie at the heart of this suit and this motion:

- Defendants admit that Huang downloaded large amounts of WeRide confidential information just before his separation from WeRide.

- Defendants admit that Huang wiped two devices before returning them to WeRide and disposed of another device shortly after WeRide sent a cease and desist letter to Wang.

- Defendants never deny that Huang and AllRide are using WeRide's source code or other identified trade secrets to gain an improper head start.

- Defendants do not even try to offer expert testimony to oppose this motion – presumably because they could locate no expert who disagreed with Dr. Walter's conclusions that WeRide identified true trade secrets, and that AllRide could not plausibly have accomplished what it did without having stolen WeRide's trade secrets.

- Defendants never deny that Wang spoke to potential investors, knowing that they had signed term sheets to invest in WeRide, with the intent to dissuade them from investing in WeRide.

- Defendants never deny that they solicited at least one WeRide employee.

- Defendants never deny that they had contractual and legal duties to refrain from disparagement of WeRide and solicitation of its employees.

- Defendants offer no evidence – none – to rebut WeRide's proof of irreparable injury.

- Defendants offer no evidence that they will suffer irreparable injury from this Court's issuance of a preliminary injunction or expedited discovery.  One would have thought

1    that they could easily put forward evidence of such injury of it existed.  Their silence on

2    this issue speaks volumes.

3       Lacking any substantive or evidence-based defenses, Defendants make a variety of meritless,

4    long-shot arguments—such as that the trade secret claim is preempted by the Copyright Act (wrong,

5    under Ninth Circuit precedent and the very case Defendants cite), or that WeRide's trade secrets are not

6    specifically described (never mind that their argument could not find support from any expert).  None of

7    these sideshows, or the numerous others in Defendants' oppositions, offers a real response to WeRide's

8    charges and the evidence WeRide has submitted in support of those charges.  Nor do Defendants show

9    that any harm will come to them if the preliminary injunction is granted, and certainly none that can

10   counterbalance the substantial harm that WeRide has demonstrated.  Defendants have no meaningful

11   defense to the claims asserted against them.

12      For the reasons stated, WeRide respectfully requests that the Court issue the requested

13   preliminary injunction and allow expedited discovery.

14                                      **ARGUMENT**

15   **I.    DEFENDANTS' UNDISPUTED MISAPPROPRIATION WARRANTS A**

16   **PRELIMINARY INJUNCTION UNDER EITHER NINTH CIRCUIT STANDARD**

17      Defendants have opposed WeRide's motion for a preliminary injunction with *five* separate briefs

18   (Dkts. 64, 65, 66, 68, and 70), declarations from two AllRide employees—Kun Huang (Dkt. 70-1) and

19   Hiu Ling Lam (Dkt. 64-1)—and a declaration from Jing Wang (Dkt. 68-1).  But there is one

20   conspicuously absent statement in all of Defendants' papers: *no one* denies under oath that AllRide is

21   using WeRide's computer code, stolen by Kun Huang.  Nor is any of WeRide's other core evidence

22   rebutted or even denied—Defendants did not even submit rebuttal expert testimony.

23      The complete failure of rebuttal evidence means WeRide can satisfy *both* of the Ninth Circuit's

24   tests for a preliminary injunction: *either* "that [WeRide] is likely to succeed on the merits, that

25   [WeRide] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

26   equities tips in [WeRide's] favor, and that an injunction is in the public interest," *or* that WeRide can

27   show "'serious questions going to the merits' and a hardship balance that tips sharply toward

28

1   [WeRide.]"  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).[1]  Examining

2   both tests is particularly important here, because none of the Defendants have identified "hardships"

3   that they will suffer from an injunction; instead, all of the Defendants merely parade standard litigation

4   costs as "balance of hardships" arguments.  *See, e.g.* Dkt. 66 at 11 (arguing *inter alia* that producing

5   source code in discovery is a "hardship"); *see also* Dkt. 68 at 23; Dkt. 70 at 20.

6   More importantly, no Defendant has submitted **evidence** of harm—no declarations state that

7   customers will be lost, employees will quit, or investors will turn elsewhere.  By contrast, WeRide has

8   submitted sworn statements demonstrating that millions of dollars of investment are at risk (Li ¶¶10-11;

9   Walter ¶110), that WeRide's trade secrets are at risk of total destruction as AllRide hires ever more

10  employees to illicitly use WeRide's source code (Zhang ¶29), that WeRide has already had difficulty

11  recruiting employees (Lu ¶45), that WeRide's investors have turned elsewhere (Lu ¶¶36-40), and that

12  WeRide's reputation has been so lambasted that it was already forced to rebrand and abandon its

13  registered trademarks.  *See* Lu ¶¶46-47.  Weighing this evidence against the absence of Defendants'

14  submission, there can be no question that the balance of hardships tips **sharply** in WeRide's favor.

15  Therefore, while Defendants' failure to deny their use of purloined WeRide code means WeRide

16  **succeeds** on the merits (or at least is "likely" to succeed), the Court need not even go that far—the

17  disproportionate hardships demonstrated by WeRide means even "serious questions" about the merits

18  are sufficient to justify a preliminary injunction here—particularly as Defendants cannot be "harmed"

19  by simply being enjoined from using code they were not entitled to use, breaching contracts they agreed

20  not to break, or making defamatory and disparaging statements in order to harm WeRide.

21  **A.      Huang *Never Denies* Stealing WeRide's Code, and Is Now Caught Red-Handed**

22  WeRide's moving papers demonstrated that Huang downloaded uncharacteristically large

23  amounts of data from WeRide's systems just before the end of his employment; that at the very tail end

24  of his employment he attached at least three USB drives to his computer and copied files to them; that

25  _____

26  [1]   Defendant Wang's brief appears to argue that the Supreme Court's decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), abrogated the "serious questions" test. The Ninth Circuit has flatly rejected that argument, as Wang admits.  *See All. for the Wild Rockies*, 632 F.3d at 1131-32

27  ("[W]e hold that the 'serious questions' approach survives *Winter*."). Wang acknowledges this holding, but then relies on a case from the Central District of California.  *See* Dkt. 68 at 8. The Ninth Circuit is

28  binding on this Court, the Central District of California is not; the "serious questions" test applies.

he subsequently wiped his WeRide-issued computers before returning them; and that he subsequently delayed for months or outright refused to return the offending devices when WeRide demanded they be returned. Defendants ignore WeRide's authority that these facts, standing alone, are sufficient to create a strong inference of misappropriation. *E.g. Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1216 (N.D. Cal. 2012) (denying motion for summary judgment where defendants "copied or emailed [plaintiff's] materials shortly before leaving . . . and deleted related files in a manner consistent with an effort to cover their tracks" because those facts gave rise to an inference of misappropriation); *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) (reversing grant of summary judgment based in part on evidence defendant "tried to cover up the evidence that he had transferred the files to his personal device").

Defendants deny ***none of this***. Huang **admits** he "often downloaded large files ***such as source code***." Huang ¶18. His only defense is to claim that his downloads also included non-source code files (*id.*)—but Huang never explains why his pattern of downloading changed in May of 2018, which he **admits** is the same month he began planning to leave WeRide. *See* Huang ¶11 (admitting he planned to leave in May 2018); *see also* Paul Liu ¶¶22-26 (explaining Huang's downloading pattern changed in May 2018). Huang **admits** that before returning his laptops to WeRide he completely wiped one of them (supposedly to remove personal files, though he never explains why a full wipe was necessary rather than targeted deletions) and that he deleted the browser history on another laptop (supposedly to make the computer "run faster," a highly questionable motive given that that only step Huang took to achieve it was one that covered Huang's tracks). Huang ¶¶14, 15. Huang **admits** that he never returned the USB drives or personal laptops that WeRide identified as likely having its confidential information (more on this below). *Id.* ¶¶16, 17. And—most tellingly—Huang is ***completely silent*** on whether he knowingly took WeRide code and other stolen confidential information with him when he left. *See generally* Huang Decl. The most Huang can muster on this point is that he said in a conversation with WeRide's CEO that stealing would be "unethical." *Id.* ¶13. AllRide, too, is ***completely silent*** on whether it is using WeRide's stolen code.

In addition to all of these glaring admissions and non-denials, WeRide has uncovered a "smoking gun" that Huang withheld for weeks, conveniently until after WeRide moved for injunctive

relief.  Six weeks before WeRide filed its motion, it demanded that Huang return the USB devices that he connected to his WeRide laptops in his final days at the company, along with a personal MacBook. *See* Landes Ex. F.  On December 20, 2018, Huang agreed to return just one of the devices (*see* Landes Ex. K); however, Huang then changed his mind, refused to ship the device to WeRide's counsel, and instead demanded that WeRide collect the device from his counsel's offices. LaFond ¶¶2-6 & Ex. A.[2] This change of position introduced more delay, and WeRide was unable to take possession of the USB devices until January 14, 2019—well after filing the instant motion. *Id.*

Huang's motives for withholding the USB device are obvious.  Consistent with the forensic data on Huang's laptop (Gayford ¶14), the forensic data on the returned USB device shows that on August 7, 2018, Huang inserted the USB device into his WeRide corporate laptop and copied 1,192 files to the USB drive. *See* Gayford ¶14; Kunkel ¶8.[3]  Notably, Huang resigned from WeRide a week before copying these files, and ***knew*** he was going to AllRide (*see* Huang ¶13).  WeRide has examined those files and determined that many of them contain WeRide's valuable, proprietary, confidential information and work product.  Li Reply ¶¶20-27.  What's more, forensic analysis of the USB drive indicates that Huang continued to access these files weeks and months after he left WeRide.  Kunkel ¶8.  Indeed, Huang used a computer to access the USB drive as late as December 12, 2018 (*id.*), well after Huang claims to have disposed of his personal MacBook.  This means that Huang has access to additional computers that may well contain WeRide's confidential information, and which computers Huang has diligently refused to disclose. *See generally* Huang Decl. (making no mention of computers

---

[2]   Huang appears to have spoliated the other devices, and until now he ignored WeRide's repeated demands that he return or account for them.  Specifically, Huang now claims for the first time that his personal MacBook was "defective," so he traded it in at an Apple store. *See* Dkt. 70-1 ¶16.  However, the return receipt Huang submits as evidence lists the MacBook as "working," not defective.  Huang Ex. B at 2.  Moreover, Huang's disposal occurred at night, just hours after WeRide emailed a cease-and-desist letter to Huang's co-defendant Jing Wang. *Compare id.* at 2 (listing return time as 7:45 p.m. on October 1, 2018) *with* Landes Ex. C (October 1 letter to Jing Wang).  Huang's claim to have coincidentally disposed of a working laptop just hours after his co-defendant was contacted by WeRide's lawyers is too coincidental to be credible—as is Huang's claim to have no knowledge of the whereabouts of the other two USB devices. *See* Dkt. Huang ¶16.

[3]   WeRide is submitting rebuttal evidence that responds to arguments made by the Defendants in opposition; accordingly, none of the evidence submitted by WeRide is "reply evidence" or "new evidence." *See, e.g. Advanced Media Networks LLC v. Row 44 Inc.*, 2014 WL 5760545, at *1 (C.D. Cal. Nov. 4, 2014) (collecting cases and explaining "Evidence submitted in direct response to evidence raised in the opposition, however, is not 'new.'").

1    still in Huang's possession).  WeRide disclosed its preliminary findings to Defendants **before** their

2    opposition papers were due (*see* Celine Liu Ex. G), but once again Defendants did not deny any of it.

3         These newly-discovered facts, especially when taken together with Defendants' other

4    admissions and non-denials, are more than sufficient to create, at the very least, "serious questions" of

5    misappropriation.  *Brocade*, 873 F. Supp. 2d at 1216; *Integral Dev. Corp.*, 675 F. App'x at 703.

## B.    Defendants Present No Evidence Contradicting Dr. Walter's Findings

### 1.    *Defendants do not, and cannot, dispute Dr. Walter's determination that AllRide has not independently developed its capabilities.*

8         WeRide's expert on autonomous vehicles, Dr. Walter, explained that he analyzed AllRide's

9    marketing video and identified in it five distinct "Advanced Capabilities"[4] that AllRide could not have

10   independently developed in the 10 weeks between when Huang left WeRide and when the video was

11   played on October 22, 2018.  *See generally* Walter Decl.  Under the authorities presented in WeRide's

12   opening papers (which Defendants do not address or distinguish), AllRide's "develop[ment of] the same

13   technology in too short a time for independent development" is sufficient to demonstrate both

14   misappropriation **and** to grant a preliminary injunction.  *See Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal.

15   App. 4th 21, 53 (2005); *GTAT Corp. v. Fero*, 2017 WL 7035655, at *1-3 (D. Mont. May 3, 2017)

16   (granting preliminary injunction).

17        AllRide does not deny creating the video Dr. Walter analyzed (indeed, Huang admits attending

18   the recruiting event where it was played, *see* Dkt. 18-1 ¶6), nor have either of AllRide's fact witnesses

19   denied that AllRide has the Advanced Capabilities evinced in that video.  *See generally* Dkts. 64-1,

20   70-1.  Likewise, none of Defendants' witnesses have contradicted Dr. Walter's assertion that it is

21   impossible to develop these Advanced Capabilities in a period of just 10 weeks—even if equipment,

22   test vehicles, and a pre-assembled team were all available on day one.  *See* Walter ¶¶45-48

23   (assumptions underpinning Dr. Walter's testimony).  Because "[D]efendants have not submitted

24   counter-affidavits to rebut the affidavit[] submitted by [Dr. Walter] . . . for the purposes of this motion

---

4   The Advanced Capabilities are: "(i) AllRide's vehicles can operate without anyone in the driver's seat at all, (ii) AllRide's vehicles are able to steer, accelerate, and brake smoothly, (iii) AllRide's vehicles use an HD Map of the area they operate in, (iv) AllRide's vehicles can detect and stop for pedestrians in crosswalks, and (v) AllRide's vehicles can change lanes to pass slower moving vehicles[.]"  *See* Walter ¶17.

for a preliminary injunction, the Court [must] take[] as true the statements" in Dr. Walter's declaration. *Trak Inc. v. Ski-Trac, Inc.*, 1980 WL 30262, at *3 (N.D. Cal. Apr. 29, 1980); *Williams v. San Francisco Unified Sch. Dist.*, 340 F. Supp. 438, 442 (N.D. Cal. 1972).

2. *Defendants present no credible evidence of independent development __at all__*

Rather than denying use of WeRide's code, Huang and AllRide advance three unsupported arguments regarding independent development. None has any merit.

**First,** although Huang never claims (let alone submits corroborating evidence) that it is possible to independently develop the Advanced Capabilities during the short time in which AllRide has been in existence, Huang vaguely avers that he was able to "develop [] technology at a fast pace" by "join[ing] an existing team of engineers" at AllRide and using open-source code. *See* Huang ¶25. Huang's declaration tellingly omits any and all details that might permit this claim to be analyzed, leaving the Court to guess at the size of the "team," the team's qualifications, the team's budget, and how far along in the development process the team was when Huang joined. *See id.*[5] No matter; as Dr. Walter explained, his testimony that AllRide could not have independently developed the Advanced Capabilities "is based on the conservative assumption[] . . . that Huang had immediate access to a fully equipped research staff," during his first day at AllRide. *See* Walter ¶47. Likewise, Dr. Walter also considered the possibility that Huang and AllRide might use third party datasets or services. *E.g. id.* ¶¶19, 30. Huang's "explanations" are in line with Dr. Walter's assumptions, and thus do not rebut his opinion. *See* Walter Reply ¶¶5-13, 38-39.

**Second,** AllRide implies in its briefing—without any supporting witness declaration—that AllRide's total development period *might* have been 19 weeks because development could have started prior to Huang's arrival at AllRide. *See* Dkt. 66 at 7-8. AllRide may not rely on conjecture about when it *could* have started development; AllRide was required to submit evidence of when it actually *did* start development. *See, e.g. Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 992 at n.6, 8 (N.D. Cal. 2010) (granting preliminary injunction and discrediting argument in brief that was unsupported by

---

[5] Huang's declaration is so vague and conclusory on this point that the Court is permitted to ignore it altogether. *See, e.g. Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp.*, 676 F. Supp. 2d 857, 864 (N.D. Cal. 2009) (discrediting declaration submitted in opposition to preliminary injunction motion because "[t]he allegations . . . are often conclusory, and lack sufficient evidentiary support").

1  declaration).  Even if AllRide's unsupported hypothetical is given credence, Dr. Walter explained that

2  AllRide could not have developed the Advanced Capabilities in 10 weeks, even if the 10 weeks is

3  counted from the time when AllRide already had a fully equipped fleet of 20 test vehicles.  *See* Walter

4  ¶47.  This is important, because amassing the test vehicles could take ***months***.  *See* Walter Reply ¶¶14-

5  32; *see also* Walter ¶48.  Thus, even if AllRide began its efforts on the very same day it incorporated (a

6  possibility for which there is ***no*** factual support), the additional nine weeks does nothing to undermine

7  Dr. Walter's opinions.  Walter Reply Decl. ¶¶14-32.

8      **Third,** AllRide presumes that because WeRide first ***tested*** vehicles six to twelve weeks after it

9  was founded, AllRide's ten-week development timeline for the Advanced Capabilities is realistic.  *See*

10  Dkt. 66 at 7-8.  That is an apples-to-oranges comparison.  WeRide was not capable of anything near the

11  Advanced Capabilities during those preliminary tests.  *See* Li Reply ¶¶16-19. The fact that it took

12  WeRide six to twelve weeks to achieve these early milestones only underscores Dr. Walter's undisputed

13  testimony that the Advanced Capabilities advertised in AllRide's video could not be independently

14  developed during AllRide's brief existence (*see* Walter ¶49).  This too demonstrates misappropriation.

15  *See Ajaxo*, 135 Cal. App. 4th at 53; *GTAT Corp.*, 2017 WL 7035655, at *1-3.[6]

16  ## II.  DEFENDANTS' COLLATERAL ATTACKS DO NOT EXCUSE THEIR ADMITTED

17  MISAPPROPRIATION

18      Rather than rebutting WeRide's core merits arguments (which are supported by ample evidence

19  of misappropriation), Defendants raise issues around the edges, apparently confusing the standards for a

20  preliminary injunction and summary judgment.  That is an error, "[i]n resolving whether the plaintiff

21  would likely succeed on the merits, th[e] court could consider the credibility of witnesses and is not

22  limited to resolving any disputed issues of fact in the light most favorable to [Defendants]." *Compass*

23  *Chem. Int'l, LLC v. True N. Prod., LLC*, 2011 WL 13213874, at *3 (N.D. Ga. Mar. 28, 2011).

24  Accordingly, it is not sufficient for Defendants to raise just "any" issue—they must raise a persuasive

25

---

26  [6]  AllRide also argues that the placement of the radar on AllRide's vehicles is not unusual, and supports
this argument with nothing more than a picture that its counsel found on the internet—there is no
27  witness support at all, much less supporting expert testimony.  *See* Dkt. 66 at 7.  Unsurprisingly, this
argument is simply wrong, as Dr. Walter demonstrates when he compares the images at issue.  *See*
28  Walter Reply ¶¶33-37.

1    one, and they fail to do so.  In any event, Defendants' piecemeal arguments are meritless.

2        **A.**    **WeRide Clearly Identified Its Trade Secrets, and Need Not File Source Code**

3            AllRide and Huang both argue that WeRide has not sufficiently identified its trade secrets

4    because it did not file actual code with the court.  *See* Dkt. 70 at 12 (complaining that "WeRide . . .

5    provides no source code but only the files names where the source code is actually located."); Dkt. 66 at

6    5 (similar)).[7]  Regardless whether WeRide was required to file its source code (it was not), Defendants

7    ignore well-established law that "[w]here, as here, credible experts declare that they are capable of

8    understanding the [trade secret] designation and of distinguishing the alleged trade secrets from

9    information already known to persons in the field, the designation should, as a general rule, be

10   considered adequate[.]"  *Phoenix Techs., Ltd. v. DeviceVM, Inc.*, 2010 WL 8590525, at *4 (N.D. Cal.

11   Mar. 17, 2010) (quoting *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826,

12   836 (2005)); *I-Flow Corp. v. Apex Med. Techs.*, 2008 WL 2233962, at *5 (S.D. Cal. May 23, 2008).

13           That is exactly what Dr. Walter did here.  He averred that (i) he has examined the computer code

14   at issue, (ii) the code does what WeRide claims it does, and (iii) he can understand the difference

15   between WeRide's proprietary code and code that is generally known in the field.  *See* Walter ¶¶68-

16   109.  Defendants were free to submit their own expert declaration, challenge Dr. Walter's credentials,

17   or otherwise dispute his conclusions, but they did not.[8]  *See generally* Dkts. 64, 65, 66, 68, and 70.

18   Dr. Walter's unrebutted declaration establishing that WeRide identified its trade secrets is dispositive.

19

20   [7]  AllRide also claims that WeRide "failed to specify a single misappropriated line number" (Dkt. 66 at
     5), but this is obviously false because WeRide specified ***all*** of the code in several named files, which is

21   permissible under AllRide's own authorities. *E.g. Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at
     *4 (N.D. Cal. June 14, 2012) ("these two later additions identifying specific lines of code **or** file names

22   are sufficiently detailed to identify what it is that SocialApps claims is secret").

23   [8]  AllRide objects to portions of Dr. Walter's declaration as "improper legal opinion," but provides no
     analysis or authority.  *See* Dkt. 66-3 at 13.  As the cases above hold, it is perfectly proper for a court to

24   receive expert opinion regarding a plaintiff's trade secret identification.  *E.g. Advanced Modular
     Sputtering*, 132 Cal. App. 4th at 836 ("Nothing in section 2019.210 precludes the trial court from
     considering relevant evidence, ***including expert witness declarations***, on the adequacy of a designation

25   to describe the alleged trade secrets and distinguish them from prior art.") (emphasis added); *see also
     Phoenix Techs.*, 2010 WL 8590525, at *4; *I-Flow Corp.*, 2008 WL 2233962, at *5.

26   AllRide's other objections to Dr. Walter's declaration are meritless and unrelated to his analysis of
     WeRide's trade secret identification.  *See* Dkt. 66-3 at 12.  First, AllRide objects that Dr. Walter's

27   consideration of materials from AllRide's recruiting events is improper hearsay.  *Id.*  But Huang
     admitted those recruiting events occurred (Dkt. 18-1 ¶6), and statements at those events are party

28   opponent admissions.  *See* FRE 801(d)(2).  Second, AllRide's *Daubert* objection fails to identify how

Even without Dr. Walter's declaration, none of the cases Defendants cite stand for the proposition that a trade secret plaintiff must file actual source code with the Court to identify a trade secret; and decisions from this District are to the contrary. For example, this Court found trade secret source code sufficiently identified based on the following description alone:

> [S]ource code which comprises AutoCAD 2007 and 2008 is a trade secret, including those portions of code that underlie the commands, interfaces and program files associated with the dozens of specific features which were wrongfully acquired and used in Defendants' ZWCAD+ 2012 and 2014 programs.

*Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (Davila, J.); *see also Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015) (in connection with a preliminary injunction motion, trade secret in computer code was sufficiently identified where plaintiff provided declaration describing the code, but the code itself was not filed with the court); *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *5 (N.D. Cal. June 14, 2012) (trade secret sufficiently identified "where SocialApps identified a specific file name" even if code was not filed).

None of Defendants' cases are to the contrary, and some expressly confirm that identifying file names and explanations of the code (as WeRide did here) is sufficient. *See, e.g.*, *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *5 (identifying file names sufficient); *Integral Development Corporation v. Tolat*, 2015 WL 674425, at *4 (N.D. Cal. Feb. 12, 2015) (plaintiff failed to identify specific files); *Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, 2017 WL 1198992, at *6 (S.D. Cal. Mar. 31, 2017) (similar). Defendants' remaining cases do not discuss source code. *See Sunbelt Rentals, Inc. v. Victor*, 2014 WL 492364, at *5 (N.D. Cal. Feb. 5, 2014) (discussing customer list); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *2 (N.D. Cal. June 29, 2017) (discussing customer and supplier information); *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1165 (9th Cir. 1998) (trade secret in camera lens dimensions); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (granting motion to dismiss because plaintiff did not identify trade secrets at all). WeRide has adequately identified its trade secrets.

---

Dr. Walter's opinion includes "too great an analytical gap between the data and the opinion proffered," as required for a *Daubert* challenge. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### B.      Defendants Fail to Show that WeRide's Trade Secrets Are Public

Both Huang and AllRide make the same mischaracterization: they contend that WeRide's trade secrets are merely the "narratives and general descriptions of autonomous vehicle technology" included in WeRide's 2019.210 statement in order to provide context and identify the trade secrets.  Dkt. 70 at 16; Dkt. 66 at 8 (similar).  But as WeRide has made clear, WeRide is *only* asserting a trade secret in code (*e.g.* Dkt. 34-45 at 4 ("WeRide is the creator of—and claims as a trade secret—the unique implementation of sensor fusion localization *found in WeRide's code*") (emphasis added)) and Defendants provide no evidence that WeRide's code is in the public domain.  Indeed, Dr. Walter analyzed the academic papers Huang submitted, and they do *not* reveal WeRide's code.  Walter Reply ¶¶10-13.  Relying on this same mischaracterization—but without providing any analysis, expert opinion, or explanation—Huang claims that "many of [WeRide's] alleged trade secrets are readily available in the public domain." *See* Dkt. 70 at 16.  Huang is wrong, as Dr. Walter's unchallenged testimony establishes.  *See* Dkt. 34-43 at ¶¶68, 70, 72, 74, 78, 82, 86, 90, 94, 98, 103, 106, 108.

AllRide makes a related throw-away argument, citing no authority whatsoever, that WeRide has "not evidenced that Plaintiffs' alleged source code is not readily ascertainable through proper means." Dkt. 66 at 8.  This is untrue; Dr. Walter repeatedly avers that WeRide's trade secret code cannot be derived from publicly available code.  *See* Dkt. 34-43 ¶¶68, 70, 72, 74, 78, 82, 86, 90, 94, 98, 103, 106, 108.  WeRide's Head of Engineering Operations, Paul Liu, explained that WeRide's code cannot be accessed without overcoming numerous security measures.  *See* Paul Liu ¶¶3-16.  Given this undisputed evidence, it is unclear what "proper means" AllRide believes can be used to access WeRide's source code, and AllRide does not say.  AllRide's argument is baseless.

Huang also falsely claims that "a significant portion of [WeRide's] software consist[s] of open-source code."  Dkt. 70 at 4.  While it is true that WeRide used open-source code early in its development, that approach was not scalable, and thus since July 18, 2017 WeRide has been developing its own autonomous driving code-base without any open source code.  Li Reply ¶¶3-12.  This code base was fully developed and operational by the summer of 2018 (Li Reply ¶12) which is when Huang stole

1   the code.  *E.g.* Paul Liu ¶¶22-26; Kunkel ¶8.  Huang's own declaration makes no reference to WeRide's

2   use of open source code after 2017.  *See, generally* Dkt. 70-1.[9]

3          Finally, Huang appears to argue that, because one WeRide laptop may have had a weak

4   password at some point in time, WeRide did not adequately protect its trade secrets.  *See* Dkt. 70 at 6.

5   This is not a serious argument; Huang cites no authority, and fails to address the myriad additional

6   security measures used by WeRide—including physical and network security, employment contracts,

7   and confidentiality agreements.  *See* Paul Liu ¶¶3-16; Zhang at ¶¶3-11.  Nor does Huang address or

8   rebut any of the authority in WeRide's motion holding these measures to be more than adequate.  Dkt.

9   34 at 14.  Worse, Huang's brief falsely claims that "[o]utside vendors routinely accessed [WeRide's]

10  laptop" even though the cited paragraph of Huang's declaration makes no such claim.  *Compare* Dkt. 70

11  at 6 (citing Huang ¶14) *with* Huang ¶14.  If this were true, it would be a violation of WeRide's policies

12  and further evidence of Huang's breach of contract and fiduciary duty.  *See* Li Reply ¶¶13-15.

13         **C.      The Copyright Act Does Not Preclude Trade Secret Claims**

14         Without any argument or citations to evidence, AllRide references a separate motion to argue

15  that WeRide's "CUTSA [*sic*] is preempted in its entirety by the Copyright Act."  Dkt. 66 at 8.  Even if

16  this argument could be incorporated by reference into an already impermissibly overlong brief (*see* Dkt.

17  76), AllRide is nonetheless wrong on the law.  Preemption by the Copyright Act requires a two-part

18  showing: "First, the content of the protected right must fall within the subject matter of copyright as

19  described in 17 U.S.C. §§ 102 and 103.  Second, the right asserted under state law must be equivalent to

20  the exclusive rights contained in section 106 of the Copyright Act."  *Sybersound Records, Inc. v. UAV*

21  *Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008).

22         AllRide cannot make the second showing.  The Ninth Circuit has explained that CUTSA is ***not***

23  subject to preemption because CUTSA does not create a right equivalent to an exclusive right in

24  copyright.  *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1090 n. 13 (9th Cir. 1989) ("Since [CUTSA]

25  does not involve a legal or equitable right equivalent to an exclusive right of a copyright owner under

---

9   AllRide states in an argument heading that WeRide has not demonstrated "Economic Value" in its
27  trade secrets (Dkt. 66 at 8), but provides no actual argument on this point (*id.*); it is thus waived.  The
    point would fail in any event, as WeRide has produced testimony from multiple witnesses about the
28  value of its trade secrets.  *See* Li ¶¶8-11; Dkt. Walter ¶110.

the Copyright Act, but only prohibits certain means of obtaining confidential information, its application here would not conflict with federal copyright law."). Accordingly, courts routinely reject the argument that CUTSA is preempted by the copyright act. *See, e.g. Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 4128484, at *5 (N.D. Cal. July 8, 2015) (citing *S.O.S., Inc.* and finding no preemption); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1131 (N.D. Cal. 2001) (same).

**D.    Jing Wang Controls ZZX and AllRide and Is Liable for Misappropriation**

Jing Wang's carefully wordsmithed denials that he controls AllRide and ZZX are not credible in light of the evidence submitted in WeRide's opening briefs – and the additional admissions Defendants make in their opposition papers. *First*, none of the Defendants deny that Kun Huang said he was going to work at "Jing Wang's new company" right before he left to join AllRide.[10] *Second*, Chinese tech industry publications report that Wang is trying to obscure his connections to AllRide to "avoid repeating the mistakes of [Jing Wang]'s being sued," but "the actual controller behind [AllRide] is still Jing Wang."[11] (Pfingst Ex. 11). *Third*, Wang now admits that he is an advisor to the founders of AllRide, and that he referred investors to AllRide. (Wang ¶29). *Fourth*, Wang now admits he has started a venture capital fund *to invest in autonomous vehicle technology*, and he carefully does not deny that the fund has invested in AllRide, or that it functionally controls AllRide. (Wang ¶32). *Fifth*, AllRide/ZZX does not disclose its investors or management structure in its opposition brief or in the two motions filed concurrently with its opposition. In light of all the evidence, Jing Wang's self-serving, carefully crafted denials do not overcome WeRide's showing that it is likely to prevail on the merits; at a minimum, it raises "serious questions" as to Wang's involvement with the other Defendants.

**III.    WERIDE IS LIKELY TO SUCCEED ON ITS DEFAMATION CLAIMS**

**A.    Jing Wang Made Defamatory Statements to Potential Investors**

Like the other Defendants, Jing Wang does not deny any of the core evidence of his wrongdoing. Wang does not deny that he spoke to WeRide's investors at the critical time when they

---

[10]    And now, Kun Huang reveals that he returned his personal MacBook to Apple at 7:45 p.m. on October 1, the same day Wang received WeRide's cease and desist letter. (Huang Ex. B).

[11]    Jing Wang's text message denying his connection with AllRide to a reporter does not give his denial any greater weight. *See Harris v. City of Seattle*, 152 F. App'x 565, 569 (9th Cir. 2005) ("A reporter need not believe self-serving denials, 'as such denials are so commonplace in the world of polemical charge and countercharge.'").

were considering or had already signed term sheets to invest in WeRide.  Wang ¶¶ 34-37.  Wang does not deny knowing at the time of his conversations that these investors had existing relationships with WeRide.  *Id.*  And Wang does not deny that the specific purpose of these discussions was to dissuade these investors from investing in WeRide, a goal he achieved.  *Id.*

The only thing Wang denies is that he made the five specific false statements that have been attributed to him by numerous investors.  Wang ¶¶ 33-34.  Wang claims that his conclusory denial is entitled to more weight than WeRide's evidence because Wang's self-serving denial is "direct" testimony, whereas WeRide's evidence is hearsay.  Dkt. 68 at 18.  But affidavits containing hearsay are routinely accepted in preliminary injunction proceedings, because they show that direct evidence exists that can be developed through discovery and presented at trial.  *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial.");  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (preliminary injunctions are usually granted on "evidence that is less complete than in a trial on the merits").[12]  In contrast, self-serving denials like Wang's are appropriately treated with skepticism.  *See Armstrong v. Sutter Cty. Superintendent of Sch.*, 2017 WL 6448000, at *6 (E.D. Cal. Dec. 18, 2017) ("A blanket 'I didn't do it' declaration can rarely create a material factual dispute, and that is particularly true here where Armstrong intersperses her denials with concessions that each incident did in fact happen but instead justifies why she did it.").

Wang, of course, could have submitted evidence corroborating his self-serving denial, but he did not.  WeRide identified the specific investors, specific statements, and specific times that Wang made the defamatory statements, and Wang never denies participating in these conversations.  Dkt. 34 at 8-9.

---

[12]  None of the "hearsay" cases Wang cites are from the Ninth Circuit, and none holds that a defendant's self-serving denial can overcome testimony from hearsay declarants with direct knowledge of the facts at issue.  In fact, one of Wang's cases *granted* a preliminary injunction because the defendants' evidence did not overcome the plaintiff's hearsay affidavits.  *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 683 (N.D. Tex. 2015).  In another, the defendant responded to a trademark infringement suit by producing a contract assigning the trademark at issue to the defendant.  *Chattery Int'l, Inc. v. JoLida, Inc.*, 2011 WL1230822, at *9 (D. Md. Mar. 28, 2011).  Wang's other authority all relies on *Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*, 446 F.2d 353, 357 (5th Cir. 1971), where the court denied the preliminary injunction because, unlike here, the defendants had no real opportunity to be heard.

Wang is no less able than WeRide, and in many cases he is likely *more capable*, of presenting supporting evidence of what *he said* in these conversations. *See Maaso v. Signer*, 203 Cal. App. 4th 362, 371, (2012) ("An inference may be drawn from a party's failure to produce available evidence or to explain evidence or facts in the case against him.").

Critically, Wang's argument that evidence is lacking for a preliminary injunction is based on a misapplication of the legal standard. He asserts that WeRide must overcome any factual dispute with direct, non-hearsay evidence. Wang Opp. At 13-14. Not so; this is not a summary judgment motion. Given that Wang has not, and cannot, demonstrate any hardship he would suffer from being enjoined against defaming WeRide and interfering with its investors—whereas WeRide would suffer serious hardship from continued defamation, *see supra*—WeRide need only show there are "serious questions" regarding Wang's disparagement. It surely has done so. *See Rapid Pharm. AG v. Kachroo*, 180 F. Supp. 3d 96, 103 (D. Mass. 2015) (granting preliminary injunction where defendant admitted to conversations with third parties who subsequently ceased doing business with the plaintiff).

Wang next argues incorrectly that *three* of the five at-issue statements are inactionable; he apparently concedes that the other two (regarding WeRide supposedly faking its videos, and Waymo supposedly preparing to sue WeRide) could support a defamation claim. Wang's efforts to neutralize the three statements all fail. **One**, Wang asserts without authority that the statement that WeRide's technology did not work would "obviously have been understood in context as an opinion," not as a false factual statement. Dkt. 68 at 16. The Ninth Circuit has squarely rejected this argument. *Unelko Corp. v. Rooney* 912 F.2d 1049, 1053 (9th Cir. 1990) ("The statement 'It didn't work' is essentially factual"). **Two**, Wang claims it is truthful that WeRide's car was in an accident, attaching a DMV accident record showing that a WeRide car was rear-ended by another vehicle while stopped in traffic. But the false statement at issue was not that WeRide was in an accident, but that WeRide *covered up an accident*. Dkt. 68 at 16. Wang offers no evidence of this cover up, or even an explanation as to why WeRide would seek to cover up an accident where it obviously was not at fault. And **three**, Wang asserts that WeRide did dilute his shares, but he has it backwards. *Id.* When WeRide terminated Wang, none of Wang's shares were vested and he was not entitled to any of them under his employment agreement. Nevertheless, WeRide agreed to *accelerate* the vesting of 50% of Wang's unvested shares.

Lu Ex. A (Wang offer letter); Ex.C (Separation Agreement).  Wang comes nowhere near meeting his burden of proving these statements are truthful.  *See Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001).

### B.  Jing Wang's Defamatory Statements Caused Harm to WeRide

Wang fails to overcome WeRide's evidence of harm it has suffered due to Wang's defamation and interference.  First, Wang ignores that harm to reputation—which WeRide established by showing in unrebutted evidence that it was required to abandon its existing trademarks—is conclusively presumed in cases of per se defamation. *In re Peck*, 295 B.R. 353, 361 (B.A.P. 9th Cir. 2003); *Contento v. Mitchell*, 28 Cal. App. 3d 356, 358 (1972).  Nor does Wang deny that WeRide had economic relationships with multiple prospective investors, and that the loss of these investments caused significant financial and nonmonetary, irreparable harm.  Wang now speculates that WeRide's ongoing litigation "might have" caused these investors to withdraw, but he has no authority that such speculation can carry the day, and no answer for the documented evidence that these investors decided to invest *after* WeRide explicitly disclosed the lawsuits to them.  *See* Lu ¶¶25-27.  It was only after Wang's conversations with these investors that they decided not to invest—a timeline and causal link that Wang does not deny. *Id.* ¶30.

### C.  Jing Wang's Non-Disparagement Agreement Is Enforceable

Wang claims that the non-disparagement clause in his Separation Agreement is unenforceable under Cal. Bus. & Prof. Code § 16600.  But section 16600 only prohibits contracts that restrain someone "from engaging in a lawful profession"; it has nothing to do with non-disparagement clauses. Wang cites no authority for his position;[13] and he ignores WeRide's authority upholding non-disparagement clauses.  *See* Op. Br. at 19; *Bakst*, 2011 WL 13214315, at *40 (enforcing nondisparagement clause); *Edwards v. Arthur Andersen LLP*, 47 Cal. Rptr. 3d 788, 811 (2006) (same), *rev'd in part on other grounds*, 44 Cal. 4th 937 (2008).

---

[13]  Wang's only case, *Webspectator Corp. v. Parreira*, 2018 WL 3829223, at *3 (C.D. Cal. July 9, 2018), suggested in dicta that an injunction preventing defendants from "***competing with*** or disparaging" the plaintiff could violate section 16600, without ever stating that the disparagement provision alone would violate section 16600.

Wang's argument that the injunction would be an impermissible "prior restraint" also fails. Wang completely ignores the Ninth Circuit authority in WeRide's motion expressly holding that preliminary injunctions on defamation claims, similar to the proposed injunction here, can be appropriate. *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1239 (9th Cir. 1997). Wang's cited authority either expressly recognizes this same rule, or else struck down injunctions only because they purported to prohibit *protected* speech, rather than defamation. *See DVD Copy Control Assn.*, 31 Cal. 4th at 880 (preliminary injunction against defamation "achieves the requisite balance"); *Balboa Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1150 (2007) (upholding injunction prohibiting defamatory statements); *Near v. Minn.*, 283 U.S. 697, 709 (1931) (no discussion of injunctions); *Maggi v. Sup. Ct.*, 119 Cal. App. 4th 1218, 1225 (2004) (gag order impermissible where it prohibited protected speech); *Evans v. Evans*, 162 Cal. App. 4th 1157, 1171 (2008) (proposed preliminary injunction was "vague, overbroad, and not narrowly tailored"); *Hassell v. Bird*, 247 Cal. App. 4th 1336, 1360 (2016) (order to take down "all reviews" and "any subsequent comments" posted by a reviewer on Yelp was overbroad). An injunction against Wang's further defamation is appropriate.

## IV.   HUANG BREACHED HIS CONTRACTS AND FIDUCIARY DUTIES TO WERIDE

### A.   Liren Xu's Unrebutted Testimony Establishes Huang's Liability

Breaching both his employment contract and fiduciary duties to WeRide, Huang *twice* tried to recruit Liren Xu to work for a competitor, going so far as offer a specific salary and benefits. That is Liren Xu's testimony, and it is uncontested. *See* Xu ¶¶21-26, 34-47.[14] Unable to dispute his bad acts, Huang resorts to arguing that WeRide has not sufficiently demonstrated damage from those acts, and therefore cannot prove "damages" related to Huang's admitted breaches. *See* Dkt. 70 at 17-18.[15] Huang is fundamentally wrong, and this argument fails for three reasons.

**Huang stipulated to irreparable harm.** Huang's contract with WeRide expressly provides that "any breach of this Agreement will cause irreparable harm to [WeRide] for which damages would not be an adequate remedy." *See* Zhang Ex. B. Huang completely ignores the argument and the

---

[14]  Wang actually *corroborates* Liren Xu's statements. *See* Wang ¶31.

[15]  Notably, Huang does *not* contest the other elements of these claims, including the validity of the contracts and his status as a fiduciary at WeRide. *See, generally* Dkt. 70.

authority in WeRide's moving papers establishing that these clauses are enforceable and that they can (and regularly do) support findings of irreparable harm and preliminary injunctions.  *See* Dkt. 34 at 23; *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 954 (N.D. Cal. 2009).

**Huang's behavior is repeatable and may cause harm in the future.**  Huang's contract prohibits the solicitation of WeRide employees for a period of one year following Huang's departure from WeRide.  *See* Zhang Ex. B.  As Huang's last day was in August 2018, the prohibition remains in force until August 2019.  *See* Zhang Ex. F.  Nonetheless, Huang already repeatedly attempted to solicit Liren Xu over a period of approximately four months.  *See* Xu ¶¶21-26, 34-47.  Accordingly, Huang is engaged in an ongoing pattern of behavior that breaches his contract to WeRide; in instances like this, WeRide is not required to wait for a breach to cause harm before seeking injunctive relief.  *E.g. Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 1425981, at *5 (E.D. Cal. Mar. 22, 2018) (rejecting argument that an injunction is not an appropriate contract remedy because "the Court is aware of no authority suggesting that an injunction cannot issue to enjoin an unfair pattern of business practice . . . [that] involves a breach of contract"); *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *16 (N.D. Cal. Aug. 2, 2012) (injunctive relief is appropriate where defendant is engaged in ongoing breach of terms of service, has failed to respond to cease-and-desist letters, and an award of money damages is unlikely to change defendant's behavior).

**The costs of WeRide's lawsuit and investigation are sufficient damages.**  While WeRide has shown irreparable harm, it is separately worth noting that this District has accepted the costs of an investigation and lawsuit as the "harm" element for a breach of contract claim.  *E.g. Craigslist*, 2012 WL 3166798, at *14 ("investigative" costs related to breach sufficient to prove "harm" element).

The two cases Huang cites are not to the contrary.  First, in *Smith v. Visa U.S.A., Inc.*, the court was faced with a *pro se* plaintiff who had not even alleged the existence of a contract.  *See* 2011 WL 2709819, at *2 (N.D. Cal. July 12, 2011) (granting leave to amend and explaining "the plaintiff might tell the Court whether she had an enforceable contract with Visa").  That is plainly not the case here. Second, in *RCRV Inc. v. J L J Inc.*, the court denied summary judgment for both the plaintiff ***and*** the defendant by appealing to the summary judgment standard and explaining that there was a question of fact as to whether the plaintiff could prove damages.  *See* 2013 WL 12133691, at *12 (C.D. Cal. Jan.

1   30, 2013).  Again, this is inapposite; WeRide has not moved for summary judgment, and multiple

2   measures of damages have been provided and are undisputed.

3   **B.    Overwhelming Evidence of Huang's Misappropriation Also Demonstrates Huang's**

4   **Breach of Contract and Breach of Fiduciary Duty**

5        As discussed above, the evidence of Huang's misappropriation is overwhelming and almost

6   entirely undisputed.  *See, supra* section I(A); *see also* Gayford ¶14; Kunkel ¶8; Li Reply ¶¶20-27.

7   Huang's failure to return WeRide's confidential information, his exfiltration of that information, and his

8   use of that information when competing against WeRide all constitute a breach of Huang's contract

9   with WeRide and fiduciary duties to WeRide.  *E.g. Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 417

10  (2007) (granting preliminary injunction and holding that misuse of confidential information constituted

11  breach of fiduciary duty); *see also* Zhang Ex. B (Huang's contract containing confidentiality provision).

12       Insofar as Huang's breach encompasses the disclosure of confidential information, that is also

13  sufficient to demonstrate harm—and irreparable harm at that.  Courts have long recognized that

14  disclosure of trade secrets, or other confidential information, completely destroys confidentiality,

15  resulting in irreparable harm.  *See, e.g. Waymo LLC v. Uber Techs., Inc*., 2017 WL 2123560, at *11

16  (N.D. Cal. May 15, 2017) ("any Waymo trade secret used in defendants' technology may be destroyed

17  via disclosure" by defendants); *see also FMC Corp. v. Taiwan Tainan Giant Indus. Co*., 730 F.2d 61,

18  63 (2d Cir. 1984) ("A trade secret once lost is, of course, lost forever.").  Thus, the fact of Huang's

19  disclosure is ***also*** evidence of harm to WeRide's confidential information.  Any argument that WeRide

20  has not shown harm must fail.

21  **C.    Huang's Non-Solicitation Agreement Is Fully Enforceable**

22       When WeRide first moved for a preliminary injunction, the solicitation clause in Jing Wang's

23  contract had not yet lapsed, and the hearing was scheduled before the lapse date.  However, that clause

24  will now lapse before WeRide's motion is heard, rendering the issue moot as to Wang.  Nonetheless,

25  because Huang's contract also contains a non-solicitation clause that remains in force until August

26  2019, it is important to note the error in Wang's argument that non-solicitation clauses are

27  unenforceable in California.  *See* Dkt. 68 at 13.  Wang's argument is based on a recently decided

28  California Court of Appeal case, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th

923 (2018).  This reliance is misplaced for two reasons.  **First**, the court in *AMN Healthcare* departed from established authority enforcing non-solicit clauses, *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268 (1985), on the basis of the specific fact pattern in *AMN Healthcare*, which bear no resemblance to the facts here.   *See AMN Healthcare*, 28 Cal. App. 5th 923, 939 ("[W]e find *Moyes* factually distinguishable to our case. Unlike the former employee in *Moyes*, who was an executive officer of the plaintiff employer [like Huang was for WeRide], in the instant case individual defendants were in the ***business*** of recruiting and placing on a temporary basis medical professionals, primarily nurses, in medical facilities throughout the country.") (emphasis in originl)).   As the *AMN Healthcare* court explains, because the defendants' business was recruiting (unlike Huang), any bar to solicitation was a bar on employment—which is not the case when the defendant is simply an ex-employee who works in an industry other than staffing.  *Id.*  The rule from *Moyes* applies here.  And **second**, "this Court is bound by the Ninth Circuit's interpretation of California law until the California Supreme Court offers convincing evidence of a contrary view[.]"  *Lusson v. Apple, Inc*., 2016 WL 6091527, at *3 (N.D. Cal. Oct. 19, 2016).  The Ninth Circuit has held that employee non-solicitation clauses are enforceable under California law.  *See, e.g. In re Ingle Co., Inc*., 116 F.3d 1485 at *3-4 (9th Cir. 1997) (unpublished) ("The nonsolicitation provision, however, is not prohibited by California law.").[16]

## V.      DEFENDANTS HAVE PRESENTED NO EVIDENCE JUSTIFYING A BOND

Because Defendants have presented no evidence that an injunction would harm them, as discussed above, there is no reason to post a bond (Wang does not even request one).  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  None of the Defendants addresses the fact that Wang and Huang both agreed that "any breach of this [PIIA] will cause irreparable harm to [WeRide] for which damages would not be an adequate remedy, and, therefore, [WeRide] will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond."  Pl. Br. at 6.  Nor do Defendants address any of the authority cited in WeRide's opening brief that a bond should not be granted for injunctive relief that "simply enjoin[s] Defendant from doing

---

[16]   Wang also relies on a recent decision of this District applying *AMN Healthcare*: *Barker v. Insight Glob., LLC*; however, that decision did not consider the issues of federalism discussed herein, or the binding nature of prior Ninth Circuit decisions in the absence of a ruling by the California Supreme Court.  *See* 2019 WL 176260, at *2 (N.D. Cal. Jan. 11, 2019).

something Defendant never had a right to do in the first place," *Comet Techs. United States of Am. Inc. v. Beuerman*, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018), or where the parties have agreed to waive bond. *2Die4Kourt v. Hillair Capital Mgmt.*, 2016 WL 4487895, at *7 (C.D. Cal. Aug. 23, 2016).

## VI.    WERIDE'S SHOWING OF IRREPARABLE HARM REMAINS UNREBUTTED

### A.    <u>Huang and Wang Contractually Stipulated to Irreparable Harm</u>

Both Huang and Wang entered into contracts with WeRide stipulating that breach of those contracts would create irreparable harm. *See* Zhang Ex. B, Lu Ex. A. As discussed *supra*, section IV(A), these contracts are enforceable, and Defendants do not argue otherwise.

### B.    <u>AllRide's Ongoing Disclosure of Weride's Code Threatens to Irreparably Destroy WeRide's Trade Secrets</u>

It is well established that where the defendant is disclosing the plaintiff's trade secrets or other confidential information, then "irreparable harm will result from further unauthorized disclosures by [the d]efendant." *Solarbridge Techs., Inc. v. Ozkaynak*, 2012 WL 2150308, at *8 (N.D. Cal. June 12, 2012). This is because trade secrets—unlike other forms of intellectual property—are completely, irreparably destroyed if disclosed publicly. *See, e.g. Waymo*, 2017 WL 2123560, at *11; *FMC Corp.*, 730 F.2d at 63 ("A trade secret once lost is, of course, lost forever."). And here, WeRide has presented ample evidence that AllRide intends to continue disclosing WeRide's code—particularly because AllRide and Huang have ***not*** denied using WeRide's code, and AllRide does not deny its intent to hire at least 100 employees, to whom the code will presumably also be disclosed. *See* Zhang ¶29. This disclosure threatens to destroy WeRide's trade secrets, causing irreparable harm.

Defendants cite numerous ***non-***trade secret cases for the proposition that intellectual property infringement does not cause a risk of irreparable harm. *See, e.g.* Dkt. 70 at 18-19 (citing *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (trademarks); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 2014 WL 4312021, at *4 (N.D. Cal. Aug. 28, 2014) (trademarks)); Dkt. 66 at 9-10 (citing *Herb Reed Enterprises*, 736 F.3d at 1250 (trademarks); *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) (trademarks); *Jumbo Bright Trading Ltd. v. Gap, Inc.*, 2012 WL 5289784, at *1 (C.D. Cal. Oct. 25, 2012) (trademarks and patents). Defendants' near-total reliance on cases occurring in the context of either trademarks or patents

1  undercuts their argument: trademarks and patents are both required to be publicly available, so there can

2  be no harm from public disclosure.  Defendants' evidence and authority establishing irreparable harm

3  from disclosure of its trade secrets is essentially unrebutted.

4        **C.**      <u>**WeRide's Evidence of AllRide's Illicit "head start" Is Unrebutted**</u>

5        Defendants also ignore WeRide's ample evidence of irreparable harm in the form of lost time.

6  Dr. Walter testified that AllRide was able to gain an unfair head-start by developing the Advanced

7  Capabilities much faster than would be possible through independent development.  *See* Walter ¶121.

8  As discussed *supra*, section I(B), Defendants never present any evidence countering Dr. Walter's

9  testimony.  Moreover, it is well established that an illicit head-start, of the sort AllRide has unfairly

10  gained, constitutes irreparable harm.  *See, e.g. Netlist Inc v. Diablo Techs. Inc*, 2015 WL 153724, at *8

11  (N.D. Cal. Jan. 12, 2015) ("The Court finds that the showing of a head-start advantage to Diablo, based

12  upon an improper use of Netlist's technology, is sufficient to establish that any harm to Netlist would

13  not be remedied by money damages alone."); *see also Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941

14  F.2d 970, 974 (9th Cir. 1991) (head start constituted irreparable harm); *Heritage Cablevision of*

15  *California, Inc. v. J.F. Shea Co., Inc.*, 1990 WL 1241400, at *3 (N.D. Cal. June 4, 1990) (same).  Once

16  again, Defendants ignore, rather than rebut, WeRide's evidence and authority.

17        **D.**      <u>**Wang Fails to Address Reputational Harm**</u>

18        It is well established that "[r]eputational harm . . . can constitute irreparable harm."  *Go Daddy*

19  *Operating Co., LLC v. Ghaznavi*, 2018 WL 1091257, at *13 (N.D. Cal. Feb. 28, 2018) (granting

20  preliminary injunction); *see also Fid. Brokerage Servs. LLC v. Rocine*, 2017 WL 3917216, at *5 (N.D.

21  Cal. Sept. 7, 2017) (granting preliminary injunction, citing potential reputational harm).  WeRide

22  presented evidence that Wang damaged WeRide's reputation so badly that WeRide was forced to

23  change its name and re-brand.  *See* Lu ¶¶46, 47.  Wang never denies that this occurred, nor does he

24  explain why this is insufficient to show irreparable harm.

25  **VII.**    <u>**DEFENDANTS' MISAPPROPRIATION AND SPOLIATION NECESSITATES**</u>

26        <u>**EXPEDITED DISCOVERY**</u>

27        Defendants argue that WeRide has  not shown "good cause" for expedited discovery because

28  WeRide has not sufficiently identified where in *Defendants'* source code WeRide's trade secrets might

1   be located.   Dkt. 66 at 12-13.   This is precisely why WeRide needs expedited discovery – to

2   immediately identify the portions of AllRide's code using WeRide's trade secrets, as well as the identity

3   of the parties who need to be bound by an injunction.   Defendants address neither of these issues.

4         Huang's assertion that expedited discovery is not necessary because he has "turned over the

5   relevant devices in his possession" is belied by his own admission that he has not returned the USB

6   drives that were plugged into his laptop shortly before his departure from WeRide, and further by his

7   suspicious disposal of his personal laptop, and further still by the forensic evidence that Huang attached

8   the USB drive with WeRide's confidential information to unreturned laptops as recently as December

9   2018.  Dkt. 70 at 22; Huang Dec. ¶¶ 16-17.[17]

10         AllRide's attempt to evade discovery by hiding behind the Chinese state secrecy laws, Dkt. 66 at

11   13, has already been rejected by courts in the Ninth Circuit and this District – including the cases

12   AllRide cites.[18]   *See  Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1478 (9th Cir.

13   1992) ('We therefore conclude that the order compelling discovery should be upheld in spite of the PRC

14   secrecy statute."); *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015 WL

15   1928184, at *5 (N.D. Cal. Mar. 27, 2015) ("Chinese companies may not avoid producing documents in

16   United States litigation" by broadly invoking state secrets laws); *Masimo Corp. v. Mindray DS USA,*

17   *Inc.*, 2014 WL 12589321, at *2 (C.D. Cal. May 28, 2014) (same).   The AllRide defendants' ongoing

18   attempts to avoid the consequences of their actions by hiding behind their foreign status only

19   emphasizes the need for prompt discovery.

20   **VIII.   DEFENDANTS' EVIDENTIARY OBJECTIONS ARE MERITLESS**

21         As more fully explained in WeRide's Cross-Motion to Strike, Defendants have improperly

22   asserted numerous evidentiary objections in violation of the Civil Loral Rules.   *See* Dkt. 76.  For the

23   reasons stated in that filing, the Court should strike Defendants' objections.   However, if the objections

24   are considered, even a casual examination demonstrates that they are meritless for at least three reasons.

---

25   [17]  Huang also purports to request expedited discovery, but has not made a properly noticed motion for
26   discovery under Local Rule 7-1 or 7-2.  Huang's improper request should be ignored.

27   [18]  The only case AllRide cites where expedited discovery was denied is *T-Mobile USA, Inc. v. All Pro
     Distrib. Inc.*, 2008 WL 11339967, at *2 (C.D. Cal. Apr. 30, 2008), where the court denied an ex parte
     discovery motion because the requesting party did not explain why it had not filed a properly noticed
28   expedited discovery motion.  WeRide did file a properly noticed motion.

**Evidentiary objections are generally not available in preliminary injunction proceedings.** As a general rule, "[i]n light of the relaxed evidentiary standard for preliminary injunction proceedings, the court need not rule on admissibility" of evidence submitted. *See Go Daddy Operating Co., LLC v. Ghaznavi*, 2018 WL 1091257, at *15 (N.D. Cal. Feb. 28, 2018). Defendants failure to discuss this rule is all the more confusing because it is prominently explained in cases Defendants cited. *See, e.g. Herb Reed Enterprises*, 736 F.3d at 1250 n. 5 ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."); *see also* Dkt. 66 at 9-10 (AllRide's opposition brief, repeatedly citing and block quoting *Herb Reed Enterprises*). Since the rules of evidence are not strictly applied to preliminary injunction proceedings, the Court may ignore Defendants' objections altogether.

**Defendants' objections contain factual errors**. First, many of the Defendants' objections rely on misrepresentations of facts that the Court can readily verify. For example, Defendants object to Yan Li's testimony claiming "[t]he declaration is unexecuted" (Dkt. 66-3 at 1), even though Dr. Li's signature can clearly be seen on the last page of his declaration when it is accessed on PACER. Similarly, Defendants complaint that Paul Liu's declaration contains "no discussion . . . as to what constitutes a 'normal' amount of data" (Dkt. 66-3 at 3), even though in the immediately preceding paragraph Mr. Liu established a pattern by explaining that "for the four months preceding May 6, 2018, Mr. Huang's credentials did not receive more than 400 MB on any one day, except for a single instance on January 20." Paul Liu ¶22. Defendants' failure to read the declarations closely enough to discern signatures and background facts do not demonstrate valid objections.

**Defendants failed to consider the party-opponent rule.** Defendants' most frequent objections are hearsay objections to Bijun Zhang's introduction of video, photos, and statements that AllRide made at a recruiting event in Nanjing, China. *See* Zhang ¶¶24-33; *see also* Dkt. 66-3 at 3-6. Defendants ignore that statements made by AllRide's representatives at an official AllRide event (which event Huang admits participating in, *see* Dkt. 18-1 ¶6) are party opponent admissions, and thus ***not*** hearsay. *See* FRE 801(d)(2). Importantly, because party opponent admissions are ***not*** hearsay, there is no need to address multi-layered hearsay exceptions as Defendants suggest—even second hand testimony by a party opponent is admissible as non-hearsay. *See, e.g. Coburn v. PN II, Inc.*, 372 F. App'x 796, 800 n.3

1    (9th Cir. 2010) ("Palmer could testify in court about a statement that Degen said Petruska made to him

2    under the exception to the hearsay rule for admissions by party-opponents, because Degen (a national

3    vice president) had authority to make admissions on behalf of Pulte").  Defendants' failure to consider

4    the party opponent rule undermines huge swaths of their evidentiary objections.

5                                                    **<u>CONCLUSION</u>**

6            For the foregoing reasons, the Court should grant WeRide's motion for a preliminary injunction,

7    and enter the proposed injunction filed by WeRide at Docket Entry 34-65.

8    DATED:  January 31, 2019                    QUINN EMANUEL URQUHART & SULLIVAN,
                                                  LLP
9

10

11                                               By   */s/ Ryan S. Landes*
                                                     Claude M. Stern
12                                                   Ryan S. Landes
                                                     Michael F. LaFond
13                                                   Attorneys for Plaintiffs WeRide Corp. and WeRide
                                                     Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28