1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Claude M. Stern (Bar No. 96737)
2     claudestern@quinnemanuel.com
      Michael F. LaFond (Bar No. 303131)
3     michaellafond@quinnemanuel.com
    555 Twin Dolphin Drive, 5th Floor
4   Redwood Shores, California 94065-2139
    Telephone:      (650) 801-5000
5   Facsimile:      (650) 801-5100

6     Ryan Landes (Bar No. 252642)
      ryanlandes@quinnemanuel.com
7   865 South Figueroa Street
    Los Angeles, California 90017
8   Telephone:      (213) 443-3000
    Facsimile:      (213) 443-3100

9
    *Attorneys for Plaintiff WeRide Corp. and*
10  *WeRide Inc.*

11

12                    UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14

15  WERIDE CORP. f/k/a JingChi Corp,;          CASE NO. 5:18-cv-07233-EJD
    WERIDE INC. f/k/a JingChi Inc.,
16                                             **BRIEF OF PLAINTIFFS WERIDE CORP.**
                 Plaintiff,                     **AND WERIDE INC. IN OPPOSITION TO**
17                                             **DEFENDANT ALLRIDE.AI INC'S**
          vs.                                  **MOTION TO DISMISS FIRST AMENDED**
18                                             **COMPLAINT**
    JING WANG, an individual, KUN HUANG,
19  an individual, ZHONG ZHI XING              Date:    May 23, 2019
    TECHNOLOGY CO. LTD.. d/b/a                 Time:    9:00 A.M.
20  ALLRIDE.AI, ALLRIDE.AI INC.,               Ctrm:    4

21               Defendant.                    The Hon. Edward J. Davila

22                                             Action Filed:   November 29, 2018
                                               Trial Date:     None Set
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

PROCEDURAL HISTORY ........................................................................................................3

 A. Defendants Attempt to Evade Service of Process .....................................................3

 B. WeRide Adds ZZX as a Defendant ...........................................................................4

 C. Defendants Seek to Hide Behind the Corporate Form and the Chinese Government in Response to WeRide's Preliminary Injunction Motion ...................4

ARGUMENT ............................................................................................................................5

I. WERIDE PLEADS THAT ALLRIDE MISAPPROPRIATED ITS TRADE SECRETS.......................................................................................................................6

 A. WeRide Clearly Identifies Its Trade Secrets .............................................................6

 B. WeRide Alleges Its Trade Secrets Have Economic Value..........................................8

 C. WeRide Alleges that AllRide Both Used and Acquired Its Trade Secrets by Improper Means ........................................................................................................9

 D. WeRide Alleges Damages.........................................................................................12

II. ALLRIDE COMMITTED ACTS IN FURTHERANCE OF MISAPPROPRIATION IN THE UNITED STATES...........................................................13

III. THE COPYRIGHT ACT DOES NOT PRECLUDE TRADE SECRET CLAIMS.............15

IV. ALLRIDE INTENTIONALLY INTERFERED WITH WERIDE'S INVESTMENT OPPORTUNITIES THROUGH ITS AGENT, JING WANG............................................17

CONCLUSION ........................................................................................................................18

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

## <u>Cases</u>

4

*Advanced Modular Sputtering, Inc. v. Superior Court*,
    132 Cal. App. 4th 826 (2005) ........................................................................................... 6

5

6

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ........................................................................... 8

7

*Ajaxo Inc. v. E\*Trade Grp. Inc.*,
    135 Cal. App. 4th 21 (2005) ........................................................................................... 10

8

9

*Allergan, Inc. v. Merz Pharm., LLC*,
    2012 WL 781705 (C.D. Cal. Mar. 9, 2012) ................................................. 10, 13, 14, 17

10

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
    226 Cal. App. 4th 26 (2014) ............................................................................................. 8

11

12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 5

13

*Autodesk, Inc. v. ZWCAD Software Co.*,
    2015 WL 2265479 (N.D. Cal. May 13, 2015) .................................................................. 6

14

15

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
    2018 WL 2298500 (N.D. Cal. May 21, 2018) .................................................................. 7

16

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
    2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) .................................................................. 6

17

18

*Comet Techs. United States of Am. Inc. v. Beuerman*,
    2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ............................................................... 12

19

*Creager v. Masuo Yoshimoto*,
    2005 WL 8156308 (N.D. Cal. Nov. 22, 2005) ............................................................... 18

20

21

*Del Madera Properties v. Rhodes & Gardner, Inc.*
    820 F.2d 973 (9th Cir. 1987) .......................................................................................... 16

22

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
    2018 WL 2463869 (E.D. Cal. June 1, 2018) ................................................................ 6, 7

23

24

*Firoozye v. Earthlink Network*,
    153 F. Supp. 2d 1115 (N.D. Cal. 2001) .......................................................................... 16

25

*Founder Starcoin, Inc. v. Launch Labs, Inc.*,
    2018 WL 3343790 (S.D. Cal. July 9, 2018) ..................................................................... 8

26

27

*Gatan, Inc. v. Nion Co.*,
    2017 WL 1196819 (N.D. Cal. Mar. 31, 2017) .............................................................. 6, 7

28

*GSI Tech., Inc. v. United Memories Inc.*,
    2015 WL 5655092 (N.D. Cal. Sept. 25, 2015) ............................................ 10, 13

*GTAT Corp. v. Fero*,
    2017 WL 7035655 (D. Mont. May 3, 2017) ......................................................... 10

*H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*,
    2016 WL 7439355 (S.D. Cal. Dec. 21, 2016) ..................................................... 11

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016) .............................................................. 10

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ................................................................................. 8

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) ................................................................. 17

*Integral Dev. Corp. v. Tolat*,
    675 F. App'x 700 (9th Cir. 2017) ........................................................... 8, 10, 12

*Jobscience, Inc v. CVPartners, Inc.*
    2014 WL 93976 (N.D. Cal. Jan. 9, 2014) ........................................................... 16

*Johnson Controls Inc. v. Phoenix Control Sys., Inc.*,
    886 F.2d 1173 (9th Cir. 1989) ............................................................................. 17

*Joint Equity Comm. of Inv'rs of Real Estate Partners Inc. v. Coldwell Banker Real Estate Corp.*,
    2011 WL 13130010 (C.D. Cal. Sept. 6, 2011) ................................................... 18

*JustMed, Inc. v. Byce*,
    600 F.3d 1118 (9th Cir. 2010) ............................................................................. 17

*KEMA, Inc. v. Koperwhats*,
    658 F. Supp. 2d 1022 (N.D. Cal. 2009) ............................................................. 16

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    941 F.2d 970 (9th Cir. 1991) ............................................................................... 12

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
    2010 WL 2764714 (N.D. Cal. July 13, 2010) .............................. 9, 10, 14, 17

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
    2015 WL 4149066 (N.D. Cal. July 9, 2015) ................................................. 7, 16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ......................................................................... 5, 14

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*,
    575 F. App'x 801 (9th Cir. 2014) ......................................................................... 6

*Meyer v. Holley*,
    537 U.S. 280 (2003) ............................................................................................. 18

*Micron Tech., Inc. v. United Microelectronics Corp.*,
     2019 WL 266518 (N.D. Cal. Jan. 18, 2019) ..................................................... 15

*Nanodetex Corp. v. Defiant Techs.*,
     349 F. App'x 312 (10th Cir. 2009).................................................................... 18

*Newport News Indus. v. Dynamic Testing, Inc.*,
     130 F. Supp. 2d 745 (E.D. Va. 2001)................................................................ 10

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
     54 F.3d 1424 (9th Cir. 1995)............................................................................. 17

*Pellerin v. Honeywell Int'l, Inc.*,
     877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................................ 8

*Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*,
     2017 WL 1198992 (S.D. Cal. Mar. 31, 2017) .................................................... 7

*PSC Indus. Outsourcing, LP v. Kodysz*,
     2013 WL 3354452 (E.D. Cal. July 3, 2013) ..................................................... 11

*Roberti v. OSI Sys., Inc.*,
     2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ................................................... 17

*S.O.S., Inc. v. Payday, Inc.*,
     886 F.2d 1081 (9th Cir. 1989)........................................................................... 16

*Secci v. United Independant Taxi Drivers, Inc.*,
     8 Cal. App. 5th 846 (Cal. Ct. App. 2017) ........................................................ 18

*Soc. Apps, LLC v. Zynga, Inc.*,
     2012 WL 2203063 (N.D. Cal. June 14, 2012) .................................................... 7

*Space Data Corp. v. X*,
     2017 WL 3007078 (N.D. Cal. July 14, 2017) ............................................. 5, 6, 8

*Sybersound Records, Inc. v. UAV Corp.*,
     517 F.3d 1137 (9th Cir. 2008)........................................................................... 16

*T&S Brass & Bronze Works, Inc. v. Slanina*,
     2016 WL 11201768 (D.S.C. Dec. 20, 2016) ............................................... 14, 15

*Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*,
     2009 WL 902337 (N.D. Cal. Apr. 1, 2009) ...................................................... 18

*TMX Funding, Inc. v. Impero Techs., Inc.*,
     2010 WL 2509979 (N.D. Cal. June 17, 2010) ................................................ 6, 7

*Troyk v. Farmers Grp., Inc.*,
     171 Cal. App. 4th 1305 (2009)......................................................................... 11

*Waymo LLC v. Uber Techs., Inc.*,
     2017 WL 2123560 (N.D. Cal. May 15, 2017) ...................................... 8, 10, 12, 13

*Webpass Inc. v. Banth*,
    2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ................................................................ 8

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
    556 F.2d 406 (9th Cir. 1977) .......................................................................................... 12

### **Statutes**

18 U.S.C. §1837 ................................................................................................................ 14

18 U.S.C. § 1839(5) ............................................................................................................ 9

18 U.S.C. § 1839(6) ............................................................................................................ 9

Cal. Civ. Code § 2332 ................................................................................................. 10, 13

Cal. Civ. Code § 3426.1(a) ................................................................................................. 9

Cal. Civ. Code § 3426.1(b)(1) ............................................................................................ 9

## PRELIMINARY STATEMENT

The facts and claims that WeRide has alleged against the Defendants here are typical of well-pled trade secret cases.  WeRide alleges that Kun Huang, a faithless employee, absconded with its trade secrets and other confidential information, took that information to found a new company (Corporate Defendants AllRide and ZZX), and used that information to give the new company a head start in autonomous vehicle development to compete with WeRide.  The Defendants did not stop with trade secret misappropriation.  Another faithless employee, WeRide's former CEO Jing Wang, disparaged WeRide to its investors in order to encourage the investors to shift their investments to AllRide. Together, Defendants' use of WeRide's trade secrets to accelerate AllRide's progress and Jing Wang's direct assault on WeRide's investment have harmed WeRide's finances, reputation, and ability to compete in the emerging autonomous vehicle industry.

The Corporate Defendants' motion to dismiss seeks to extricate themselves from this lawsuit by disclaiming responsibility for the acts of their founder, Jing Wang, and Vice President of Engineering, Kun Huang—whose misconduct was specifically intended to benefit the Corporate Defendants, and who have not joined in this motion to dismiss.  In essence, the Corporate Defendants argue that WeRide states a claim for misappropriation only against Huang and a claim for intentional interference only against Wang.  This is wrong; AllRide is responsible for the acts of its agents, which Huang and Wang certainly are.

More fundamentally, the bulk of the motion consists of a smattering of technical arguments that ignore WeRide's allegations—the motion is *not* directed against the complaint and allegations that WeRide actually filed.  On top of its factual misfiring, the motion's legal arguments are "supported" either by sparse and inapplicable authority, no authority at all, or cases that are expressly contrary to controlling law.  All of the Corporate Defendants' arguments fail:  WeRide pleaded the existence and value of its trade secrets with adequate particularity; WeRide pleaded damages; WeRide alleged that ZZX committed acts in furtherance of misappropriation in the United States; and state trade secret claims are not preempted by federal copyright law.  Defendants cannot succeed on a motion to dismiss by pretending these allegations are not there.  Defendants' motion to dismiss should be denied.

**STATEMENT OF FACTS**

Defendants Jing Wang and Kun Huang were executives at WeRide, a company at the forefront of developing autonomous vehicles for the Chinese market.  Dkt 24 ("FAC") ¶ 1.  Wang left WeRide in January 2018, and is reported to have founded a competing self-driving car company called AllRide shortly thereafter.  *Id.* ¶ 4.  Defendant AllRide.AI, Inc. ("AllRide.AI") filed its certificate of incorporation with the Delaware Secretary of State on July 19, 2018, one day before the website www.allride.ai was registered.  *Id.* ¶ 15.  Defendant Zhong Zhi Xing ("ZZX," and, together with AllRide.AI, "AllRide") owns the website www.allride.ai and employs Kun Huang as Vice President of Engineering.  *Id.* ¶ 14; Dkt. 18 ¶ 6; Dkt. 70-1 ¶ 1.  According to ZZX's website, it maintains a research and development office in Silicon Valley.  FAC ¶ 14.

In June and July 2018, Wang made a number of false and defamatory statements about WeRide to prospective investors, including that (i) Waymo was going to bring a lawsuit against WeRide for stealing Waymo's source code; (ii) WeRide's self-driving technology did not work, (iii) the videos WeRide created to demonstrate its self-driving technology had been "faked" (iv) WeRide's self-driving cars had been involved in a traffic accident that WeRide was attempting to "cover up," and (v) WeRide had purposefully and maliciously diluted Wang's shares in WeRide.  *Id.* ¶ 62.  Wang knew these investors had signed term sheets or had significant discussions with WeRide about investing, and Wang intended to cause these investors to withdraw their commitments.  *Id.* ¶¶ 56, 148-50.  As a result of Wang's defamatory statements, several investors did in fact delay, reduce, or withdraw their investments.  *Id.* ¶¶ 66-69.  This caused significant harm to WeRide, including financial harm, lost opportunities, and loss of goodwill.  *Id.* ¶¶ 66-69, 139, 158.

Wang also recruited Huang to join him at AllRide.  *Id.* ¶ 82.  Huang left WeRide on August 13, 2018.  *Id.* ¶ 85.  Before he left, he downloaded significant amounts of confidential, proprietary, and trade secret information from WeRide ("Confidential Information"), in violation of his contractual and fiduciary duties to WeRide.  *Id.* ¶¶ 94-98.  He then wiped his two company-owned devices clean before returning them to WeRide, but did not return at least three USB drives and a personal laptop onto which

he had copied WeRide Confidential Information.[1]  *Id.* ¶¶ 100-102.  Among the Confidential Information Huang took were the following trade secrets developed by WeRide:

- The specific implementation of sensor-fusion and localization developed in-house by WeRide;

- The mapping algorithms used by WeRide to convert data received from the sensor fusion and localization process into an HD Map;

- The ability to generate an HD Map using a combination of both WeRide's sensor fusion and localization and mapping modules;

- The set of state machines used in WeRide's code; and

- The code, developed by WeRide, that makes up each of the individual state machines used in WeRide's decision module.

*Id.* ¶¶ 27-34, 115, 125.  WeRide invested tens of millions of dollars and eighteen months to develop this code with a team of dozens of engineers.  *Id.* ¶ 35.

Over the next ten weeks, Huang, working at AllRide, used WeRide's trade secrets to develop an autonomous vehicle for AllRide.  *Id.* ¶¶ 103-112.  In early October, AllRide's WeChat account posted a video demonstrating an autonomous vehicle with advanced capabilities.  *Id.* ¶ 103.  AllRide subsequently used this video at campus recruiting events, which Huang also attended on behalf of AllRide.  *Id.* ¶ 106.  AllRide could not have developed the capabilities shown in the video independently in the ten weeks from Huang's departure from WeRide and the release of the video, especially given that AllRide was still recruiting developers during this time.  *Id.* ¶ 105.

## PROCEDURAL HISTORY

### A.   Defendants Attempt to Evade Service of Process

WeRide filed its initial complaint against Defendants Jing Wang, Kun Huang, and AllRide.AI on November 29, 2018, asserting claims for misappropriation of trade secrets, defamation, intentional interference with prospective economic advantage, breach of contract, and breach of fiduciary duty and the duty of loyalty.  Dkt. 1.  WeRide sent emails to each Defendant to ask them to accept service, and

---

[1]   Huang has now returned one of the USB drives, but not the others.  Dkt. 70 at 6-7.

attempted to serve the Defendants personally. Dkt. 15 at 5. WeRide successfully served Kun Huang, but was unable to locate Jing Wang or AllRide. *Id.* WeRide's process servers could not locate Wang at his last known addresses, emails went unanswered, and Wang's counsel claimed that they were not authorized to accept service. *Id.* AllRide simply failed to respond, and both Wang and Huang refused to accept service for AllRide. *Id.* WeRide filed a motion under Fed. R. Civ. P. 4(f)(3) to authorize alternative service on Jing Wang and AllRide through email and FedEx. *Id.* at 1.

**B.     WeRide Adds ZZX as a Defendant**

In response to WeRide's motion for alternative service, Kun Huang filed a declaration and a statement of "non-opposition." Dkt. 18. Huang stated that he was in fact employed by ZZX, a Chinese startup company. *Id.* ¶ 2. Huang stated that ZZX, not AllRide.AI, owns the website www.allride.ai. *Id.* ¶ 6.e. Huang admitted that he had been involved in "recruiting events" and "marketing videos" on behalf of ZZX. *Id.* ¶ 6.f. Huang denied that he was employed by AllRide.AI, yet he apparently knew enough about AllRide.AI to state under oath that "AllRide.ai Inc. is a Delaware corporation and has no office or employee in the United States." *Id.* ¶ 6.d. Huang also stated that "Jing Wang does not hold any formal position at ZZX or AllRide.ai Inc." *Id.* ¶ 6.g. Huang did not clarify what qualified, in his view, as a "formal position."

At the hearing after receiving Huang's statement of non-opposition, the Court asked WeRide's counsel if, in light of Huang's statements, there was any need to amend the complaint and service motion to add ZZX. Dkt. 21. Consistent with this direction, WeRide amended its complaint and its proposed order on the motion for alternative service to add ZZX. Dkt. 22, 24. The Court granted WeRide's motion for alternative service, and WeRide promptly effected service on all Defendants. Dkt. 23.

**C.     Defendants Seek to Hide Behind the Corporate Form and the Chinese Government in Response to WeRide's Preliminary Injunction Motion**

On December 26, 2018, WeRide filed a preliminary injunction motion seeking to prevent Defendants from further use of WeRide's Confidential Information, solicitation of WeRide's employees, disparagement of WeRide, and destruction of evidence. Dkt. 34 ("PI Motion"). AllRide opposed the preliminary injunction motion, and simultaneously filed: (1) the instant Motion to Dismiss,

1  and (2) a brief styled "Motion to Quash Service of Process" which seeks reconsideration of the Court's

2  order granting alternative service.  Dkt. 64 ("MTQ"), 65 ("MTD"), 66 ("PI Opp").

3       In these various briefs, AllRide repeatedly attempts to hide behind ZZX's status as a Chinese

4  company.  In opposition to the preliminary injunction motion, AllRide claims that ZZX is protected

5  from discovery by Chinese State Secrecy laws.  PI Opp. at 11.  In its motion to quash, AllRide argues

6  that, despite the Court's order, the Court has no jurisdiction over ZZX because it was not properly

7  served, and suggests that it will encourage Chinese courts to disregard any judgement issued by this

8  Court.  MTQ at 1, 8.  Finally, in this motion to dismiss, AllRide argues that ZZX is not subject to state

9  and federal trade secret laws because the entity itself did not commit any acts in furtherance of

10  misappropriation in the United States (though it does not contest that Huang, its Vice President of

11  Engineering, misappropriated WeRide's trade secrets in the United States and that he now serves as the

12  head of ZZX's Silicon Valley office).  MTD at 13.

13       At the same time, AllRide claims that AllRide.AI Inc. (the Delaware entity) is not responsible

14  for misappropriation because it is a mere shell company of ZZX.  In fact, AllRide submitted a sworn

15  declaration from ZZX's legal representative in support of the motion to quash, which explicitly admits

16  that "AllRide, AI, Inc. is shell company that is registered in Delaware, USA."  Dkt. 64-1 ("Lam Decl.")

17  ¶ 6.  The legal representative goes on to state that he serves as AllRide's "chief executive officer,

18  secretary, and chief financial offer [sic]," that AllRide "has to date never issued shares," that AllRide

19  "has loaned money" to ZZX to "pay certain debts in the USA," and that AllRide "was incorporated with

20  the possibility in mind that [ZZX] might one day in the future need a subsidiary or partner in the USA."

21  *Id.*

22                              **ARGUMENT**

23       To survive a Rule 12(b)(6) motion to dismiss, a complaint need only contain "sufficient factual

24  matter, accepted as true, to state a claim to relief that is plausible on its face."  *Space Data Corp. v. X*,

25  2017 WL 3007078, at *1 (N.D. Cal. July 14, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

26  (2009)).  On a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and

27  construe[s] the pleadings in the light most favorable to the nonmoving party."  *Id.* (quoting *Manzarek v.*

28  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

1    **I.      WERIDE PLEADS THAT ALLRIDE MISAPPROPRIATED ITS TRADE SECRETS**

2           **A.      WeRide Clearly Identifies Its Trade Secrets**

3           WeRide's FAC identifies its claimed trade secrets with sufficient particularity.  Trade secret

4    misappropriation claims are not subject to a heightened "particularity" pleading standard, as AllRide

5    seems to suggest.  *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *4 (C.D. Cal.

6    Feb. 27, 2018) ("a heightened pleading standard is not applicable to Plaintiff's statutory trade secret

7    misappropriation claims"); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th

8    826, 835 (2005) ("The rule that a trade secret must be pled with 'reasonable particularity' does not

9    mean that the designation must be strictly construed against the pleader."); *see also Meggitt San Juan*

10   *Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801, 803 (9th Cir. 2014) ("Appellants cite no state

11   authority for the proposition that Meggitt SJC should have identified the particular trade secrets at the

12   pleading stage.").  Rather, "pleadings for trade secret misappropriation should be held to the standard

13   articulated in Rule 8(a)(2)," *Cedars Sinai,* 2018 WL 2558388, at *4, which requires only that the

14   complaint provide enough detail "to prepare a defense and for the court to craft limits on discovery."

15   *Gatan, Inc. v. Nion Co.*, 2017 WL 1196819, at *6 (N.D. Cal. Mar. 31, 2017); *Space Data Corp. v. X*,

16   2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017); *see also E. & J. Gallo Winery v. Instituut Voor*

17   *Landbouw-En Visserijonderzoek*, 2018 WL 2463869, at *6 (E.D. Cal. June 1, 2018) ("In arguing that

18   plaintiffs have not affirmatively distinguished their alleged trade secrets from public information,

19   defendants effectively ask the court to conduct a review of the evidence to determine whether plaintiffs'

20   trade secrets have been made public.  This sort of review is more appropriate on a motion for summary

21   judgment.").

22          Courts in this District deny motions to dismiss where, as here, the complaint identifies software

23   or source code by its specific function.  *See TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL

24   2509979, at *3 (N.D. Cal. June 17, 2010) (denying motion to dismiss where the plaintiff identified as a

25   trade secret "[i]ts software, source codes, data, formulas, and other technical information developed as

26   proprietary and confidential products and services"); *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL

27   2265479, at *5 (N.D. Cal. May 13, 2015) (Davila, J.) ("[S]ource code which comprises AutoCAD 2007

28   and 2008 is a trade secret, including those portions of code that underlie the commands, interfaces and

program files associated with the dozens of specific features which were wrongfully acquired and used in Defendants' ZWCAD+ 2012 and 2014 programs."); *E. & J. Gallo Winery*, 2018 WL 2463869, at *5 (holding allegations that "the trade secrets concern the design of specific parts of a specific machine" sufficient to survive a motion to dismiss).

That is exactly what WeRide has done here—it identified each of its trade secrets as its algorithms, code, and "specific implementation" of five specific functions. FAC ¶¶ 115, 125. That is more than enough detail to allow AllRide to prepare a defense and for the Court to craft limits on discovery. *Gatan*, 2017 WL 1196819, at *6.[2] Plaintiffs never explain what more specificity they envision in a complaint, or how it would be helpful to their defense. Indeed, spelling out the details of WeRide's trade secrets in any more specificity effectively would require WeRide to disclose its source code, risking disclosure of WeRide's trade secrets into the public domain. *See TMX*, 2010 WL 2509979, at *3 ("One who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid [dismissal]. To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself."); *see also Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015) (holding trade secret source code was sufficiently identified where plaintiff described the code, but did not file the code itself with the court); *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *5 (N.D. Cal. June 14, 2012) (same).

WeRide's allegations identifying its trade secrets by function distinguish this case from the cases AllRide cites, which generally involved plaintiffs—who were not software developers like WeRide—asserting their "source code" or "software" generally as a trade secret, with no distinctions between functions or programs. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (medical technology company claimed its "source code" generally as a trade secret.); *Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, 2017 WL 1198992, at *6 (S.D. Cal. Mar. 31, 2017) (medical research company claimed its "database design,

---

[2]   AllRide's argument is a purely formalistic one in any event, given that WeRide already has submitted a statement pursuant to California Code of Civil Procedure section 2019.210 identifying the trade secrets at issue with even more particularity than is contained in the complaint.  Dkt. 34-45.

1  computer software, and procedures for implementing a database"). AllRide's remaining cases do not

2  address source code, *see Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)

3  (foam earplug manufacturing); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16,

4  2017) (data from weather balloons), or were decided on preliminary injunction or summary judgement

5  motions, and are thus inapplicable on a motion to dismiss. *See Imax Corp. v. Cinema Techs., Inc.*, 152

6  F.3d 1161, 1164–65 (9th Cir. 1998) (motion to compel/summary judgment); *Founder Starcoin, Inc. v.*

7  *Launch Labs, Inc.*, 2018 WL 3343790, at *4 (S.D. Cal. July 9, 2018) (preliminary injunction); *Agency*

8  *Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (preliminary

9  injunction). WeRide has adequately identified its trade secrets, and AllRide is simply ignoring the

10  actual allegations in WeRide's complaint describing its trade secrets.

11  **B.   WeRide Alleges Its Trade Secrets Have Economic Value**

12       AllRide argues that WeRide fails to plead facts sufficient to show how its trade secrets derive

13  value.[3] MTD at 10. This argument, too, ignores what WeRide actually pled. WeRide alleges that it

14  employed "dozens of engineers" and spent "tens of millions of dollars developing its autonomous

15  driving program over the past eighteen months." FAC ¶ 35. Courts routinely recognize that source

16  code—such as the source code WeRide is asserting here—derives economic value from the time and

17  cost needed to develop it.[4] *See Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26,

18  64 (2014) (software was a protectable trade secret where eight to ten software engineers developed it

19  over a period of four to five months); *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir.

20  2017) (similar). This is especially true in an emerging industry such as the autonomous vehicle

21  industry, where the value of a company (and its ability to attract future investment) is based on the

22  likelihood that it will reach market ahead of its competitors. *See Waymo LLC v. Uber Techs., Inc.*, 2017

23  WL 2123560, at *11 (N.D. Cal. May 15, 2017) ("It would likely be futile to attempt, after the fact, to

24  estimate the monetary value of injury suffered from either the loss of Waymo's competitive position in

25

26       [3]  The only case AllRide cites, *Webpass Inc. v. Banth*, 2014 WL 7206695, at *1 (N.D. Cal. Dec. 18, 2014), has no relevance here because, unlike here, the complaint in that case contained no allegations about the time or cost to develop the alleged trade secrets.

27

28       [4]  WeRide has also alleged that it takes reasonable steps to ensure the secrecy of its trade secrets, FAC ¶¶ 36-43, which AllRide does not contest.

this nascent industry or the destruction of its trade secrets pertaining to the same.").  The FAC also alleges that given the enormous amount of work that went in to developing this code, the code's primary value comes from it being secret and proprietary to WeRide, so that WeRide has a competitive advantage over its competitors.  FAC ¶ 118.  AllRide ignores these allegations as well.  WeRide has sufficiently pled its trade secrets.

## C.   WeRide Alleges that AllRide Both Used and Acquired Its Trade Secrets by Improper Means

AllRide argues that WeRide "fails to connect Huang's purported misappropriation of WeRide's confidential information with AllRide's purported use or potential use of this information."  MTD at 11.  But WeRide alleges in detail how Huang and AllRide misappropriated its trade secrets.  FAC ¶¶ 94-112.  "Misappropriation" of a trade secret includes acquiring another's trade secret "by a person who knows or has reason to know that the trade secret was acquired by improper means."  Cal. Civ. Code § 3426.1(b)(1); 18 U.S.C. § 1839(5).  Third parties who use trade secrets are also liable for misappropriation if they know or have reason to know that "the trade secret was derived from or through a person who had utilized improper means to acquire it."  Cal. Civ. Code § 3426.1(b)(2); 18 U.S.C. § 1839(5).  "Improper means" includes "theft" and "breach of a duty to maintain secrecy."  Cal. Civ. Code § 3426.1(a); 18 U.S.C. § 1839(6).  Where employees take trade secrets to a new employer, both the employee and the employer are liable for trade secret misappropriation.  *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010) (holding defendant company liable for misappropriation of trade secrets that new employee "secretly took with him to Defendant" because "an act of this nature was generally foreseeable").

Although AllRide ignores the allegations, WeRide thoroughly alleges that AllRide knowingly misappropriated WeRide trade secrets, including by using them.  WeRide alleges that AllRide advertised a fully autonomous car less than three months after its founding and with minimal resources, which would not have been possible if AllRide was independently developing its own code.  FAC ¶ 105.  WeRide also alleges that AllRide's rapid development strongly suggests the improper use of WeRide's trade secrets (*id.* ¶ 112).  *See Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 53 (2005) (affirming finding of misappropriation where defendant "developed the same technology in too

short a time for independent development"); *GTAT Corp. v. Fero*, 2017 WL 7035655, at *1-3 (D. Mont. May 3, 2017) (granting preliminary injunction on trade secret claims where plaintiff's former employee and his new company had "detailed . . . engineering information which [defendant] could not have developed on his own in a matter of months without using [plaintiff's] proprietary technology").

Notably, AllRide does not challenge the sufficiency of WeRide's allegations that Huang misappropriated trade secrets. MTD at 11-12. As an employee of AllRide, Huang's misappropriation of WeRide's trade secrets is imputed to AllRide. *See Language Line*, 2010 WL 2764714, at *4; *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 754 (E.D. Va. 2001) (holding company vicariously liable for prospective employee's misappropriation of trade secrets). Huang's knowledge that the trade secrets were misappropriated is similarly imputed to AllRide. *GSI Tech., Inc. v. United Memories Inc.*, 2015 WL 5655092, at *10 (N.D. Cal. Sept. 25, 2015) ("A company is deemed to have notice of any facts its employees or agents "ought, in good faith and the exercise of ordinary care and diligence, to communicate to the [company].") (citing Cal. Civ. Code § 2332); *Allergan, Inc. v. Merz Pharm., LLC*, 2012 WL 781705, at *12 (C.D. Cal. Mar. 9, 2012) ("The Merz Defendants are liable for the acts of misappropriation committed by their employees and former employees.").

In yet more allegations that AllRide ignores, WeRide alleges that shortly before leaving WeRide to join AllRide, Huang—who admits to being an executive at ZZX (Dkt. 18)—downloaded large amounts of WeRide data, in violation of his contractual and fiduciary duties, and then deleted data to erase any trace of his recent activity. FAC ¶¶ 96-102. Huang committed misappropriation by accessing data in violation of his contractual and fiduciary duties, and by covering up his illicit file transfers. *See, e.g.*, *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (granting preliminary injunction on trade secret claims against former employee who downloaded and emailed confidential data in violation of employment agreements); *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) (reversing grant of summary judgment based in part on evidence defendant "tried to cover up the evidence that he had transferred the files to his personal device). Even by itself, the fact that Huang engaged in the improper downloading on his way out the door, then began working at AllRide immediately, strongly suggests that Defendants, including AllRide, are using the information Huang took. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *6 (N.D. Cal. May 15, 2017) ("[I]t

1   would strain credulity to imagine that [Defendant] plundered [Plaintiff's] vault the way he did with no

2   intent to make use of the downloaded trove.").  Finally, Huang did not deny that he had possession of

3   WeRide Confidential Information or return the requested materials (FAC ¶ 113), and in fact **to this day**

4   Huang and AllRide still have not denied that they have possession of and continue to use WeRide's

5   trade secrets.  *See PSC Indus. Outsourcing, LP v. Kodysz*, 2013 WL 3354452, at *1 (E.D. Cal. July 3,

6   2013) (granting temporary restraining order where "Defendant has not responded to demands for return

7   of Plaintiff's property nor acknowledged his obligations under the non-compete and trade secret

8   agreements").

9          AllRide's argument that WeRide has not adequately alleged that AllRide knew or had reason to

10  know of Huang's misappropriation borders on frivolity.  Although the motion is unclear, AllRide seems

11  to suggest that Huang's misappropriation cannot be imputed to AllRide because Huang stole WeRide's

12  code while he was still employed at WeRide.  MTD at 11-12.  AllRide's argument cites no authority

13  and misses the point.  WeRide alleges that Huang and AllRide **continue to use** the trade secrets, and

14  that AllRide used WeRide's trade secrets to develop its own autonomous vehicle.  FAC ¶ 112.

15         AllRide also argues, without citing any authority, that WeRide's claims against AllRide.AI (but

16  not ZZX) should be dismissed because the FAC does not distinguish between the two Corporate

17  Defendants.  MTD at 11.  In fact, WeRide is free to  plead "improper actions by two defendants

18  together," and AllRide's argument asking the Court to make factual conclusions regarding AllRide's

19  corporate structure are not proper on a motion to dismiss.  *H.I.S.C., Inc. v. Franmar Int'l Importers,*

20  *Ltd.*, 2016 WL 7439355, at *4 (S.D. Cal. Dec. 21, 2016) (" Logically, if Rajanayagam finds a cogent

21  claim asserted against Franmar, she can similarly find a cogent claim asserted against herself.").  That is

22  especially appropriate here, given that by all outward appearances there is no distinguishing between

23  AllRide.AI and ZZX: both hold themselves out as "AllRide," the two are clearly closely related, *see*

24  *supra* at 4-5, and both have taken significant efforts to cloak their corporate and ownership structure.[5]

25

26         [5]  Indeed, AllRide admits it is merely a "shell" controlled by a ZZX executive that ZZX uses to pay
    its debts in the United States, likely making it liable as the alter ego of ZZX.  *See Troyk v. Farmers*
27  *Grp., Inc.*, 171 Cal. App. 4th 1305, 1341-42 (2009) (holding a shell company liable as an alter ego of its
    sister company, which exercised "managerial and administrative control" despite not having any
28  ownership interest in the shell); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 421 (9th

Lam Decl. ¶ 6. Tellingly, even ZZX's and AllRide.AI's other briefing in this case repeatedly conflates the two entities as a single coordinated operation. P.I. Opp at 1 ("…portions of ZZX and AllRide's proprietary code"), 11 ("…parse through ZZX and AllRide's source code…"), 12(…forcing ZZX and AllRide to produce the complete source code…"); *Id.* at 7 ("…ZZX and AllRide developed the autonomous vehicle in 10 weeks…"), 8 ("…even if ZZX and AllRide's development had taken only 10 weeks…"); *id.* at 7 ("Plaintiffs have no idea when ZZX and AllRide's personnel began development"). AllRide's argument that WeRide must parse its allegations between ZZX and AllRide.AI is not proper on a motion to dismiss.

### D.    WeRide Alleges Damages

AllRide's argument that WeRide has "suffered no damages" once again ignores a litany of damage allegations. As an initial matter, this District has held that use of trade secret information by a former employee to compete with a former employer (*i.e.*, exactly what WeRide alleges) causes not just harm to the employer, but *irreparable* harm.[6] *See Comet Techs. United States of Am. Inc. v. Beuerman*, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018) (recognizing presumption of irreparable harm in trade secret cases).

Moreover, WeRide alleges that AllRide has gained an unfair edge in the race to commercialize self-driving cars by using its trade secrets (FAC ¶ 112). *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (recognizing the competitive harm caused by a trade secret misappropriator's "unfair head start"). AllRide's ill-gotten momentum could "accelerate [AllRide's] own progress," which "would improve [its] ability to attract investors and talented engineers away from competitors—including [WeRide] itself." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017) (granting preliminary injunction).

---

Cir. 1977) ("A foreign shareholder should not be permitted to own a shell American corporation that engages in wrongful conduct for which the foreign shareholder may potentially be held liable on an alter ego theory, but for which he cannot be reached because he claims that the corporation did not act as his agent to further his business affairs.").

[6]    *Integral Dev. Corp. v. Tolat*, 2014 WL 721844, at *4 (N.D. Cal. Feb. 24, 2014), which the Corporate Defendants cite, was **reversed** by the Ninth Circuit because the District Court did not adequately consider evidence of the harm caused when the defendants released a competing product after misappropriating the plaintiffs' source code.

1    WeRide also explicitly alleges that its research and investment into autonomous vehicles was

2    extremely costly,  FAC ¶ 35, and that AllRide's use of WeRide's Confidential Information has caused

3    "competitive harm" and "significant damages."  *Id.* ¶¶ 121, 131.  And WeRide alleges that AllRide's

4    continued possession of WeRide's Confidential Information increases the risk of further disclosure (*id.*

5    ¶¶ 120, 130).  AllRide ignores these allegations too, which are more than adequate to claim damage.

6    *See* 18 U.S.C. § 1836(b)(3)(A) (authorizing district courts to issue injunctions to prevent "threatened

7    misappropriation"); *Waymo*, 2017 WL 2123560, at *11 (recognizing risk of harm through public

8    disclosures required by autonomous vehicle regulators).  AllRide also ignores that WeRide alleges that

9    Huang and Wang agreed in the PIIA that misuse of the Confidential Information would cause

10   *irreparable harm* warranting injunctive relief.  FAC ¶ 39.

11   Further, as AllRide admits, WeRide alleges that Jing Wang's defamatory statements harmed its

12   investment opportunities and reputation.  *Id.* ¶¶ 67-69; MTD at 14.  WeRide also alleges that Jing Wang

13   founded AllRide and continues to control it.  FAC ¶ 53.  As the founder and controller of AllRide,

14   Wang's actions are imputed to AllRide.  *See GSI Tech., Inc. v. United Memories Inc.*, 2015 WL

15   5655092, at *10 (N.D. Cal. Sept. 25, 2015) ("A company is deemed to have notice of any facts its

16   employees or agents "ought, in good faith and the exercise of ordinary care and diligence, to

17   communicate to the [company].") (citing Cal. Civil C. § 2332); *Allergan, Inc. v. Merz Pharm., LLC*,

18   2012 WL 781705, at *12 (C.D. Cal. Mar. 9, 2012).  Thus, even under AllRide's mischaracterization of

19   the complaint, WeRide has still pled damages.

20   **II.     ALLRIDE COMMITTED ACTS IN FURTHERANCE OF MISAPPROPRIATION IN**

21   **THE UNITED STATES**

22   AllRide's DTSA extraterritoriality argument strategically ignores key allegations in WeRide's

23   FAC that squarely defeat AllRide's argument.  The DTSA applies to misappropriation that occurs

24   outside of the United States provided that:

25          (1) the offender is a natural person who is a citizen or permanent resident alien of the
             United States, or an organization organized under the laws of the United States or a
26          State or political subdivision thereof; or

27          (2) an act in furtherance of the offense was committed in the United States.

28

18 U.S.C. §1837.  Courts applying this statute have found that bad acts committed by disloyal United States-based employees meet this standard.  For example, in *T&S Brass & Bronze Works, Inc. v. Slanina*, 2016 WL 11201768, at \*4 (D.S.C. Dec. 20, 2016), the court found that "the defendants are citizens of the United States [and] 'an act in furtherance of the offense was committed in the United States'" because two of the defendants were based in the United States, even though the trade secret misappropriation was conducted by transmitting materials and information to the United Kingdom.  *Id.* at \*4-6.  This is exactly what WeRide alleges here.

WeRide pleaded that Defendant Huang resides and maintains a house in the United States, has been employed in the United States for years, and continues to work in the United States on behalf of AllRide, in California office space that he investigated for AllRide.  *See* FAC ¶¶13, 19, 71-73, 86, 92, 108.  Unless Huang has been illicitly and illegally working in the United States for years (something WeRide decidedly does ***not*** allege), WeRide's allegations easily give rise to an inference that Huang "is a natural person who is a citizen or permanent resident alien of the United States," and on a motion to dismiss, the Court is required to accept inferences in WeRide's favor.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (on a motion to dismiss, the Court must "construe the pleadings in the light most favorable to the nonmoving party").  This is where the analysis ends, because Huang is the offender, he is a citizen or permanent resident of the United States, and as Huang's new employer, AllRide is vicariously liable for Huang's acts.  *E.g. Allergan, Inc. v. Merz Pharm., LLC*, 2012 WL 781705, at \*12 (C.D. Cal. Mar. 9, 2012) ("a defendant company [is] liable for acts of trade secret misappropriation . . . committed by [an] individual who 'secretly took with him to Defendant' trade secrets of the plaintiff" (quoting *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at \*3, 12 (N.D. Cal. July 13, 2010)).

Even if Huang was not a citizen or permanent resident of the United States (and he is), he performed at least two acts in the United States on behalf of AllRide that furthered AllRide's trade secret misappropriation.  First, Huang stole WeRide's trade secrets while he was present in Northern California by using WeRide's VPN network.  *See* FAC ¶96.  AllRide quibbles with this allegation by pointing out that Huang was still employed by WeRide when this occurred. Dkt. 65 at 13.  While true, the fact that he was employed by WeRide does not mean that he was acting on WeRide's behalf—in

1   fact he was acting on *AllRide's* behalf, which is precisely why WeRide has also sued Huang for breach

2   of his fiduciary duties to WeRide.  *See* FAC ¶¶163-172.  This is no different than *T&S Brass & Bronze*

3   *Works*, wherein the defendants included two former employees and their new company, where the

4   former employees stole trade secrets while still employed by the plaintiff, and those actions were found

5   sufficient to meet the requirement that "an act in furtherance of the offense was committed in the United

6   States."  *See* 2016 WL 11201768, at *6.  AllRide has ignored the allegations of Huang's disloyalty to its

7   own detriment, and its argument fails.

8        Further, as WeRide has alleged, AllRide is currently making illicit use of WeRide's trade secrets

9   at an office located in Silicon Valley, which office Huang runs.  *See* FAC ¶¶14, 20, 83, 86, 92.

10  Tellingly, AllRide's motion never mentions its Silicon Valley office, or the fact that WeRide has

11  alleged that Huang is in charge of that office and exploiting information stolen from WeRide while

12  working there.  AllRide's motion fails because it does not address WeRide's actual allegations.

13       Finally, the only authority AllRide cites in support of its argument is *Micron Tech., Inc. v.*

14  *United Microelectronics Corp.*, which is completely inapposite, because in that case (i) no offender was

15  a US citizen or permanent resident, and (ii) the only US-based acts alleged in the complaint were

16  recruiting employees, but the recruitment was not tied to misappropriation.  *See* 2019 WL 266518, at *3

17  (N.D. Cal. Jan. 18, 2019).  That is nothing like this case, where Huang is alleged to be the primary

18  offender, he lives and works in the United States, and he stole trade secrets while physically present in

19  Northern California.  *Cf.* FAC ¶¶13, 19, 71-73, 86, 92, 96, 108.  Nor did that case examine a defendant

20  corporation with a research facility in Northern California that was alleged to be making illicit use of

21  the plaintiff's trade secrets.  *Cf.*  FAC ¶¶14, 20, 83, 86, 92.  AllRide's argument fails.

22  **III.    THE COPYRIGHT ACT DOES NOT PRECLUDE TRADE SECRET CLAIMS**

23       AllRide's argument that "CUTSA is preempted in its entirety by the Copyright Act" is contrary

24  to directly on-point Ninth Circuit precedent that AllRide inexplicably fails to mention.[7]  Preemption by

25  the Copyright Act requires a two-part showing: "First, the content of the protected right must fall within

26  _____

27       [7]   Because AllRide purported to incorporate this argument into its opposition to WeRide's
    preliminary injunction motion, WeRide addressed this argument in its reply brief.  Dkt. 80.  WeRide
28  sets forth its argument again here for the Court's convenience.

the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.  Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008).

AllRide cannot make the second showing.  The Ninth Circuit explained that CUTSA is ***not*** subject to preemption because CUTSA does not create a right equivalent to an exclusive right in copyright.  *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1090 n. 13 (9th Cir. 1989) ("Since [CUTSA] does not involve a legal or equitable right equivalent to an exclusive right of a copyright owner under the Copyright Act, but only prohibits certain means of obtaining confidential information, its application here would not conflict with federal copyright law.").  Accordingly, courts routinely reject the argument that CUTSA is preempted by the copyright act.  *See, e.g. Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 4128484, at *5 (N.D. Cal. July 8, 2015) (citing *S.O.S., Inc.* and finding no preemption); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1131 (N.D. Cal. 2001) (same).

AllRide never cites or discusses the Ninth Circuit's binding decision in *S.O.S., Inc. v. Payday, Inc.*, even though that case is cited in *Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc.*, which case AllRide relies on.  *See* Dkt. 15.  Of course, *Lilith Games* does not help AllRide, because that decision also holds that CUTSA is ***not*** preempted by the copyright act—in accordance with the Ninth Circuit law AllRide leaves out.

The other decisions AllRide cites are completely inapposite.  *Del Madera Properties v. Rhodes & Gardner, Inc.* examined claims for unjust enrichment and unfair competition related to the drafting of a copyrighted work—trade secret misappropriation was not discussed.  *See* 820 F.2d 973, 977 (9th Cir. 1987).  *Jobscience, Inc v. CVPartners, Inc.* examined a case where, unlike here, the plaintiff pleaded ***both*** copyright infringement and trade secret misappropriation based on a single common nucleus of facts.  *See* 2014 WL 93976, at *5 (N.D. Cal. Jan. 9, 2014).  This is key, because there the plaintiff could not "show efforts to maintain privacy of the so-called trade secret because it received copyrights for its software applications." *Id*.  Thus, *Jobscience* only applied the well-recognized principle that disclosing code to the Copyright Office destroys the secrecy of that code, absent additional protections.  *See KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1030 (N.D. Cal. 2009) (depositing source code with the Copyright Office without secrecy protections destroyed trade secret in the code).  Needless to say,

1    WeRide has not disclosed its code to the Copyright Office, so reliance on *Jobscience* fails.  AllRide's

2    remaining two citations, *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125 n.3 (9th Cir. 2010) and *Johnson*

3    *Controls Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) merely stand for the

4    proposition that the Copyright Act can protect source code—neither discusses preemption at all.

5        Finally, AllRide's argument that "there are no allegations that AllRide and ZZX knew that any

6    information purportedly used by the companies was a trade secret[ or] knew that Huang had 'stolen' the

7    information" ignores the well-established principle that where, as here, "the Amended Complaint

8    adequately pleads scienter as to [an] individual executive[] . . . this scienter can be imputed to [AllRide]

9    as a corporation."  *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *13 (C.D. Cal. Feb. 27, 2015); *see*

10   *also In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1024 (S.D. Cal. 2005) ("Since the

11   Complaint adequately pleads scienter, it is imputed to the Company" citing *Nordstrom, Inc. v. Chubb &*

12   *Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995)).  AllRide does not—and cannot—dispute that WeRide

13   alleges Huang knew he was stealing WeRide's information in violation of his contractual and fiduciary

14   duties to WeRide.  *See* FAC ¶¶94-102.  Huang's knowledge is thus imputed to AllRide, and AllRide

15   "knew" that Huang used improper means.  *Id*.  Nor is this controversial, as noted above, it is well

16   established that companies are vicariously liable for the trade secret misappropriation of their

17   employees, because the employees' knowledge is imputed to the company.  *See Allergan, LLC*, 2012

18   WL 781705, at *12; *Language Line Servs.,* 2010 WL 2764714, at *3.

19       AllRide's preemption argument must fail, because it ignores WeRide's allegations and

20   controlling Ninth Circuit law.

21   **IV.    <u>ALLRIDE INTENTIONALLY INTERFERED WITH WERIDE'S INVESTMENT</u>**

22   **<u>OPPORTUNITIES THROUGH ITS AGENT, JING WANG</u>**

23       AllRide's final argument is that the WeRide's intentional interference claim should be dismissed

24   because "the FAC fails to provide sufficient details to explain how Wang's statements can be attributed

25   to either or both corporate entities."  MTD at 18.  Not so; WeRide explicitly alleges that Wang founded

26   AllRide and interfered with WeRide's investors in order to finance AllRide and for AllRide's benefit.

27   FAC ¶¶ 53, 56.  It is black letter law that a corporation is responsible for the torts of its agent committed

28   within the scope of the relationship.  *Secci v. United Independant Taxi Drivers, Inc.*, 8 Cal. App. 5th

846, 855 (Cal. Ct. App. 2017), *review denied* (May 17, 2017) ("A corporation may be held vicariously liable as a principal for the torts of its agents.") (citing *Meyer v. Holley*, 537 U.S. 280, 285-86 (2003)). As AllRide's founder, Wang is its agent, and one of his key responsibilities is to obtain investment and funding for AllRide (FAC ¶¶ 53-54). *See Joint Equity Comm. of Inv'rs of Real Estate Partners Inc. v. Coldwell Banker Real Estate Corp.*, 2011 WL 13130010, at *7 (C.D. Cal. Sept. 6, 2011) (denying motion to dismiss where plaintiff adequately alleged agency based on defendant's solicitation of investments); *Creager v. Masuo Yoshimoto*, 2005 WL 8156308, at *6 (N.D. Cal. Nov. 22, 2005) ("Plaintiff makes out a prima facie case that Yoshimoto, as MPT's founder, CEO, board chairman, and major shareholder, served as MPT's agent with reference to the MOU").  AllRide does not dispute that WeRide states a claim for intentional interference against Wang.  MTD at 17-18.  Because Wang's attempts to divert investment capital were committed within the scope of his work for AllRide, AllRide is liable for Jing Wang's intentional interference.

AllRide also argues that WeRide fails to plead that ZZX was responsible for Wang's disparagement because "there is no allegation concerning when ZZX was formed." MTD at 18. This argument fails because WeRide explicitly alleges that ZZX was founded on or around June 6, 2018 – before Wang interfered with WeRide's investors in June and July 2018. FAC ¶ 87. But even if Wang interfered before ZZX's founding, ZZX would still be liable if it received any benefit from the interference (e.g. if any of WeRide's potential investors instead made an investment in ZZX). *See Nanodetex Corp. v. Defiant Techs.*, 349 F. App'x 312, 322 (10th Cir. 2009) ("corporations are usually prevented from retaining the benefits of wrongful conduct while escaping liability for it.").

## CONCLUSION

For the foregoing reasons, the Court should deny AllRide's motion to dismiss.  If the Court does believe that any of AllRide's arguments have merit, WeRide should be granted leave to amend to cure any of the supposed (mostly formalistic) deficiencies AllRide asserts. *See Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*, 2009 WL 902337, at *1 (N.D. Cal. Apr. 1, 2009) (noting that motions to amend should be granted with "extreme liberality").

1 | DATED:  February 7, 2019                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3

4 |                                    By   */s/ Ryan S. Landes*

5 |                                         Claude M. Stern
                                            Ryan S. Landes
6 |                                         Michael F. LaFond
                                            Attorneys for Plaintiffs WeRide Corp. and WeRide
7 |                                         Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28