QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  Ryan Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 South Figueroa Street
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Plaintiff WeRide Corp. and WeRide Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE CORP. f/k/a JingChi Corp,; WERIDE INC. f/k/a JingChi Inc., <br><br> Plaintiff, <br><br> vs. <br><br> JING WANG, an individual, KUN HUANG, an individual, ZHONG ZHI XING TECHNOLOGY CO. LTD.. d/b/a ALLRIDE.AI, ALLRIDE.AI INC., <br><br> Defendant. | CASE NO. 5:18-cv-07233-EJD <br><br> **OPPOSITION OF PLAINTIFFS WERIDE CORP. AND WERIDE INC. TO DEFENDANT KUN HUANG'S MOTION TO DISMISS** <br><br> Date:       May 23, 2019 <br> Time:      9:00 A.M. <br> Ctrm:     5, 4th Floor <br><br> The Hon. Edward J. Davila <br><br> Action Filed:     November 29, 2018 <br> Trial Date:       None Set |

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .................................................2

LEGAL STANDARD ............................................................................................5

ARGUMENT ........................................................................................................6

I.    HUANG STOLE WERIDE'S TRADE SECRETS AND DISCLOSED THEM TO A COMPETITOR ................................................................................................6

    A.    WeRide Clearly Alleged Ownership of Trade Secrets, and Thus Has Standing........................................................................................................7

        1.    Huang's Pure Speculation About a "Chinese Company" Is Not Permissible on a Motion to Dismiss.............................................7

        2.    Both WeRide Entities Have Standing to Assert Trade Secret Claims ..........8

    B.    WeRide's Complaint Clearly Identifies Trade Secrets and Explains Them in More Detail Than Is Required....................................................................10

    C.    Huang Stole WeRide's Trade Secrets and Disclosed Them to AllRide..................13

II.    HUANG SOLICITED EMPLOYEES FOR A COMPETITOR WHILE EMPLOYED BY WERIDE, BREACHING HIS FIDUCIARY DUTIES AND DUTY OF LOYALTY ................................................................................................16

    A.    Huang Owed Fiduciary Duties to *Both* WeRide Entities ........................17

    B.    Huang's Solicitation of Employees for a Competitor Shares no Common Nucleus of Facts with Huang's Theft of Trade Secrets...........................18

III.    HUANG BREACHED HIS CONTRACT WITH WERIDE, DAMAGING WERIDE ................................................................................................20

    A.    Huang Cannot Simply Ignore His Multiple Contract Breaches.............................20

    B.    WeRide Has Clearly Alleged Harm Based on Huang's Breach .............................21

    C.    There Is Nothing "Vague" About the Written Contract Before the Court.............22

IV.    EVEN IF THE DTSA CLAIM IS DISMISSED, THE COURT SHOULD RETAIN JURISDICTION................................................................................................22

V.    IF HUANG'S MOTION IS GRANTED, WERIDE SHOULD BE GIVEN LEAVE TO AMEND ITS COMPLAINT........................................................................23

CONCLUSION ..................................................................................................24

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010) ............................................................................. 9

*Ajaxo Inc. v. E\*Trade Grp. Inc.*,
    135 Cal. App. 4th 21 (2005) ................................................................... 6, 14, 22

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018) ........................................................ passim

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
    28 Cal. App. 5th 923 (2018) ................................................................................. 20

*Angelica Textile Servs., Inc. v. Park*,
    220 Cal. App. 4th 495 (2013) ............................................................................... 18

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co., LTD*,
    2009 WL 10692715 (N.D. Cal. Nov. 30, 2009) ..................................................... 8

*Autodesk, Inc. v. ZWCAD Software Co.*,
    2015 WL 2265479 (N.D. Cal. May 13, 2015) ..................................................... 12

*Bancroft-Whitney Co. v. Glen*,
    64 Cal. 2d 327 (1966) .......................................................................................... 17

*Barker v. Insight Global, LLC*,
    2019 WL 176260 (N.D. Cal. Jan. 11, 2019) ....................................................... 20

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
    2018 WL 2298500 (N.D. Cal. May 21, 2018) ..................................................... 13

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
    331 F. Supp. 3d 977 (N.D. Cal. 2018) ................................................................ 13

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
    2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ...................................................... 12

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
    219 F. Supp. 3d 984 (N.D. Cal. 2017) .................................................................. 9

*Brown v. Adidas Int.*,
    938 F. Supp. 628 (S.D. Cal. 1996) ...................................................................... 15

*California Dep't of Water Res. v. Powerex Corp.*,
    533 F.3d 1087 (9th Cir. 2008) .............................................................................. 23

*Congrove v. W. Mesquite Mines, Inc.*,
    2009 WL 10671745 (S.D. Cal. May 5, 2009) ............................................... 17, 19

*Convolve, Inc. v. Compaq Computer Corp.*,
    2006 WL 839022 (S.D.N.Y. Mar. 31, 2006) ...................................................................... 19

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
    345 F. Supp. 3d 1207 (E.D. Cal. 2018) ............................................................................ 9

*Digitech Image Techs., LLC v. Newegg Inc.*,
    2013 WL 1871513 (C.D. Cal. May 3, 2013) ...................................................................... 9

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ...................................................................................................... 9

*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*,
    176 Cal. App. 4th 697 (2009) ...................................................................................... 21

*Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*,
    24 F.3d 1545 (9th Cir. 1994) ...................................................................................... 23

*Fallay v. City & Cty. of San Francisco*,
    604 F. App'x 539 (9th Cir. 2015) ................................................................................ 23

*Farhang v. Indian Inst. of Tech., Kharagpur*,
    2010 WL 2228936 (N.D. Cal. June 1, 2010) .................................................................. 15

*Huong Que, Inc. v. Luu*,
    150 Cal. App. 4th 400 (2007) ...................................................................................... 17

*Ikon Office Sols., Inc. v. Rezente*,
    2010 WL 5129293 (E.D. Cal. Dec. 9, 2010) .................................................................. 19

*Imax Corp. v. Cinema Techs., Inc.*
    152 F.3d 1161 (9th Cir. 1998) .................................................................................... 13

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ................................................................................ 5, 22

*Integral Dev. Corp. v. Tolat*,
    675 F. App'x 700 (9th Cir. 2017) ................................................................................ 15

*Intel Corp. v. Rais*,
    2019 WL 164958 (W.D. Tex. Jan. 10, 2019) .................................................................. 14

*Jasmine Networks, Inc. v. Superior Court*,
    180 Cal. App. 4th 980 (2009) .................................................................................... 8, 9

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009) ...................................................................................... 19

*Keyssa, Inc. v. Essential Prod., Inc.*,
    2019 WL 176790 (N.D. Cal. Jan. 11, 2019) ............................................................. 10, 12

*Matelyan v. Empire Dist. Co.*,
    2017 WL 4708120 (C.D. Cal. June 14, 2017)................................................................ 18

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*,
    575 F. App'x 801 (9th Cir. 2014) ........................................................................ 10

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ............................................................................ 5

*Nat'l Educ. Ass'n v. DeVos*,
    345 F. Supp. 3d 1127 (N.D. Cal. 2018) .............................................................. 6

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) .................................................................. 19

*Norkunas v. Wynn Las Vegas, LLC*,
    343 F. App'x 269 (9th Cir. 2009) ........................................................................ 10

*Palermo v. Pyke*,
    111 Cal. App. 2d 350 (1952) ............................................................................... 21

*Paradise Creations, Inc. v. U v. Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003) ........................................................................... 9

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ........................................................... 12, 15

*Pierce v. Lyman*,
    1 Cal. App. 4th 1093 (1991) ................................................................................ 16

*Pollara v. Radiant Logistics Inc.*,
    2012 WL 12887095 (C.D. Cal. Sept. 13, 2012) ................................................. 9

*Poynt Corporation v. Innowi, Inc.*,
    2019 WL 935499 (N.D. Cal. Feb. 26, 2019) ...................................................... 12

*PQ Labs, Inc. v. Yang Qi*,
    2014 WL 334453 (N.D. Cal. Jan. 29, 2014) ...................................................... 17

*PQ Labs, Inc. v. Yang Qi*,
    2014 WL 4954161 (N.D. Cal. Sept. 30, 2014) ................................................... 8

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
    641 F. Supp. 2d 913 (N.D. Cal. 2009) ............................................................... 21

*Resonance Tech., Inc. v. Koninklijke Philips Electronics, N.V.*,
    2008 WL 4330288 (C.D. Cal. Sept. 17, 2008) ................................................... 9

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ..................................................................... 5, 6, 8, 14

*Robert Half Int'l, Inc. v. Ainsworth*,
    68 F. Supp. 3d 1178 (S.D. Cal. 2014) ........................................................... 18, 19

*Rovince Int'l Corp. v. Preston*,
    2013 WL 5539430 (C.D. Cal. Oct. 7, 2013) ...................................................... 9

*S. California Inst. of Law v. TCS Educ. Sys.*,
    2011 WL 1296602 (C.D. Cal. Apr. 5, 2011)..............................................................15

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988) ....................................................................................18

*Serv. Employees Internat. Union, Local 250 v. Colcord*,
    160 Cal. App. 4th 362 (2008) .................................................................................19

*SI Handling Sys., Inc. v. Heisley*,
    658 F. Supp. 362 (E.D. Pa. 1986) ............................................................................9

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210, 109 Cal. Rptr. 3d 27 (2010) .............................................19

*SMC Networks Inc. v. Hitron Techs. Inc.*,
    2013 WL 12114104 (C.D. Cal. Nov. 13, 2013) .....................................................19

*SOAProjects, Inc. v. SCM Microsystems, Inc.*,
    2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ...............................................10, 12

*Social Apps, LLC v. Zynga, Inc.*,
    2012 WL 2203063 (N.D. Cal. June 14, 2012) .............................................10, 13

*Space Data Corp. v. X*,
    2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .......................................................12

*SunPower Corp. v. SolarCity Corp.*,
    2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) .......................................................19

*Synopsys, Inc. v. ATopTech, Inc.*,
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .......................................................12

*Synventive Molding Sols., Inc. v. Husky Injection Molding Sys., Inc.*,
    2009 WL 10678879 (D. Vt. May 8, 2009) ..............................................................7

*Thomas Weisel Partners LLC v. BNP Parabas*,
    2010 WL 1267744 (N.D. Cal. Apr. 1, 2010) .........................................................16

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
    2016 WL 3475322 (C.D. Cal. Jan. 29, 2016)........................................................15

*TMX Funding, Inc. v. Impero Techs., Inc.*,
    2010 WL 2509979 (N.D. Cal. June 17, 2010) ...............................................10, 12

*Top Agent Network, Inc. v. Zillow, Inc.*,
    2015 WL 7709655 (N.D. Cal. Apr. 13, 2015) .......................................................12

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011)..................................................................................23

*United States v. Hays*,
    515 U.S. 737 (1995) ..............................................................................................10

*Viernes v. Exec. Mortg., Inc.*,
    372 F. Supp. 2d 576 (D. Haw. 2004) ............................................................. 23

*Way.com, Inc. v. Singh*,
    2018 WL 6704464 (N.D. Cal. Dec. 20, 2018) .............................................. 6, 12

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017) ............................................. 14, 15

*Zody v. Microsoft Corp.*,
    2013 WL 2468250 (N.D. Cal. June 7, 2013) ............................................... 20, 21

## **Statutory Authorities**

18 U.S.C. §1836 ................................................................................................. 6

18 U.S.C. §1839 ............................................................................................... 14

28 U.S.C. §1367 ............................................................................................... 23

28 U.S.C. §1367(c) ........................................................................................... 23

35 U.S.C. § 281 .................................................................................................. 8

Cal. Civ. Code §3426 .......................................................................................... 6

Cal. Civ. Code §3426.1 ..................................................................................... 14

Cal. Civ. Proc. Code §2019.210 .................................................................. 10, 12

Cal. Evid. Code § 622 ....................................................................................... 21

## **Rules and Regulations**

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ............................................................. 5, 6

## INTRODUCTION

Defendant Kun Huang has filed a meritless motion to dismiss that ignores the simple allegations in the operative complaint. This is a straightforward case: Huang was employed by WeRide Corp., a wholly owned subsidiary of WeRide Inc. (collectively "WeRide"), to develop hardware as part of a self driving car program; however, Huang became convinced that WeRide was not giving him the money or the power that he "deserved," and on that basis, Huang stole WeRide's trade secrets and used them to leverage a better position at WeRide's competitor, AllRide.AI ("AllRide"). Huang stole WeRide's trade secrets using both USB thumb drives and WeRide's VPN network. AllRide then used the trade secrets to develop a fully functional self-driving car in weeks instead of months, illicitly and secretly benefiting from the information Huang stole. Huang's malfeasance did not stop at intellectual property theft. He also spent months conspiring with WeRide's competitors to recruit WeRide's employees away from WeRide—a violation of both Huang's contract with WeRide and Huang's common law duties to WeRide. In sum, rather than earning the money and power he believed that he deserved through diligence and hard work, Huang raiding his employer's intellectual property portfolio, computer systems, and workforce for his own benefit and the benefit of his co-defendants.

All of this is set forth clearly and in detail in WeRide's First Amended Complaint ("FAC"), but Huang meticulously ignores both WeRide's substantive allegations and controlling law to assert several meritless and mostly technical arguments. Huang ignores WeRide's allegations relating to the illicit head start that AllRide gained when Huang disclosed trade secrets to AllRide. Huang also ignores both the steps he took to steal trade secrets and the steps he took to cover his tracks (including wiping multiple computer hard drives). Perhaps more importantly, Huang also ignores dispositive law: Huang ignores case law holding that a parent corporation (WeRide Inc.) may assert claims for trade secret misappropriation and breach of fiduciary duty on behalf of its wholly owned subsidiaries. Huang also ignores case law holding that the payment of salary to a disloyal employee is "harm" sufficient to state a claim for breach of fiduciary duty. Huang's various other baseless arguments fail for the same underlying reasons—Huang's attacks ignore WeRide's well-pleaded allegations and governing law.

Huang's misdeeds are many, they are meticulously documented in the FAC, and they are actionable under well-established law. Huang's motion should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

**WeRide is founded in February 2017 as "JingChi," but later rebrands as WeRide.[1]** JingChi Corp. was a Delaware corporation that was incorporated on February 23, 2017. FAC ¶¶ 10, 22. JingChi Inc. was incorporated in the Cayman Islands and owned 100% of JingChi Corp. *Id.* ¶¶10, 11. Both JingChi entities were subsequently rebranded as WeRide entities: JingChi Corp. became WeRide Corp. and JingChi Inc. became WeRide Inc. *Id.*[2] The ownership structure remained the same after the rebranding: WeRide Corp. is the wholly owned subsidiary of WeRide Inc. *Id.* WeRide is in the business of developing self-driving cars for the Chinese market. *Id.* ¶10. Over the past 18 months, WeRide has invested over $45 million in developing self-driving car technology, and has employed dozens of engineers. *See id.* ¶¶2, 35.

**Huang joined WeRide in April 2017, signed an employment contract, and performed adequately for one year.** Huang first joined WeRide in April of 2017. *Id.* ¶71. As an employee of WeRide, Huang was required to sign (and did sign) WeRide's Proprietary Information and Inventions Agreement (the "PIIA"). *Id.* ¶¶39, 183-86; *see also* Dkt. 34-08 (Huang's signed PIIA, which is incorporated by reference into the FAC). Pursuant to the PIIA, Huang was prohibited from assisting any competitor of WeRide during the term of his employment, and was further prohibited from soliciting WeRide employees to work for a competitor for a period of one year following the end of his employment. *Id.*

At WeRide, Huang was entrusted with hardware development, was given discretion to manage the hardware development budget, and eventually came to supervise a team of nine to ten employees. *Id.* ¶71. However, Huang was not in charge of WeRide's overall technology development—instead, Huang reported to WeRide's CTO. *Id.* For the first year that Huang worked at WeRide, from April

---

[1]  Throughout his moving papers, Huang refers to "JingChi" despite the clear allegations in WeRide's complaint that JingChi was renamed to WeRide. Huang appears to be purposefully ignoring this rebranding in an effort to confuse the issue: JingChi's rebranding as WeRide cannot be debated.

[2]  Huang's argument that WeRide "fails to clarify how two companies, WeRide Inc. and WeRide Corp., could both be the 'successor to, and rebranding of' one company (JingChi)" (Mot. at 6) is disingenuous: paragraphs 10 and 11 of the FAC make very clear that WeRide Inc. was formerly known as ("f/k/a" in the FAC) JingChi Inc., and WeRide Corp. was formerly known as JingChi Corp. *See* FAC ¶¶10, 11. Thus the FAC is clear: JingChi rebranded as WeRide because both JingChi entities were rebranded as WeRide entities. Huang's arguments to the contrary ignore these allegations.

2017 until April 2018, Huang appeared to perform his work adequately; he was thus entrusted with a growing team of employees. *See Id*. ¶¶72-74.

**In April of 2018, Huang became disloyal and began plotting against WeRide.** However meritorious Huang's prior performance was, his performance changed in April of 2018. *Id*. ¶73. At that time, as a cover, Huang stated to coworkers that he no longer agreed with the directions of WeRide's management. *Id*. ¶74. In truth, Huang wanted to be in charge of technological development and to receive more pay; in essence, Huang was looking for an un-earned promotion. *See id*. ¶¶76, 77. Moreover, Huang made it clear that he did not respect the hard work and efforts of his WeRide co-workers, as Huang believed he could (apparently single-handedly) recreate the same technology WeRide had already developed "very quickly" at a "new company," even though it had taken WeRide nearly two years and tens of millions of dollars to develop its self-driving vehicle technology. *Id*. ¶75. To that end, Huang contacted representatives of another company, AI Ways, and tried to convince that company to not only compete directly with WeRide for the Chinese self-driving car market, but to put Huang in charge of their development efforts. *Id*. ¶¶78-81. When that "opportunity" fell through, Huang kept looking elsewhere. *Id*.

**Huang begins working for AllRide while still employed by WeRide.** In or around June of 2018, Huang began considering an offer from WeRide's competitor AllRide. *Id*. ¶82. AllRide was willing to put Huang in charge of his own research team, which is what Huang wanted, and thus he decided to join AllRide. *Id*. ¶¶83, 84. But Huang did ***not*** quit WeRide before he started working for AllRide; instead, while still employed by WeRide, Huang began openly recruiting employees to join him at AllRide. *Id*. ¶¶83-85. These actions were prohibited by Huang's contract with WeRide, the PIIA, which explicitly prohibited Huang from assisting any of WeRide's competitors during the term of his employment, and further prohibited Huang from soliciting of WeRide's employees for an entire year following the end of his employment with WeRide. *Id*. ¶¶183-85.

**Huang steals WeRide's trade secrets after he is forced to resign.** By July of 2018, WeRide's management was aware of Huang's work for AllRide, and WeRide forced Huang to resign. *Id*. ¶85. Huang's resignation became effective on August 13, 2018. *Id*. Rather than simply walking away, Huang raided WeRide's intellectual property on his way out the door; specifically, Huang connected

multiple USB thumb drives to his WeRide-issued corporate laptops, used those USB drives to steal WeRide's files, and then wiped the laptops in an attempt to obscure evidence of his theft. *Id*. ¶¶99-102. After WeRide discovered Huang's actions, WeRide also audited Huang's use of WeRide's VPN networks, and discovered that Huang downloaded unusually large amounts of data on several occasions between May 2018 and July 2018—the period when Huang had become disloyal and started working for AllRide. *Id*. ¶¶96, 97. WeRide asked Huang to explain his actions and identify both the data he downloaded from the VPN and copied to the USB drives, but Huang refused. *Id*. ¶113.

Moreover, pursuant to the PIIA, Huang was required to return all of WeRide's files upon resigning. *Id*. ¶184. However, in violation of the PIIA and his duties to WeRide, Huang steadfastly refused to return the files he copied to the USB devices or downloaded using WeRide's VPN network, even after WeRide explicitly demanded that Huang return all of the files he stole. *Id*. ¶113.

**Huang discloses WeRide's trade secrets to AllRide.** Within three months of Huang leaving WeRide to work for AllRide full-time, AllRide released a marketing video that showed a fully operational self-driving car. *Id*. ¶¶103-105. This is an impossible feat from a company that was just getting started and still trying to recruit engineers. *Id*. ¶¶104-105. Specifically, the development of self-driving cars, even using the very latest technology, requires extensive data collection and iterative improvement, such that development of a fully autonomous vehicle with the capabilities shown in AllRide's marketing video is not possible in the short period of time that AllRide has been in existence. *Id*. ¶¶26, 103-105. A closer examination of the marketing video showed striking similarities between certain features of AllRide's self-driving program and WeRide's self-driving program, particularly in the appearance and features of the "HD Map" required to operate both programs. *Id*. ¶109. Moreover, the wiring and radar placement on AllRide's self-driving cars appears to mimic the placement of the wiring and radar on WeRide's self-driving cars. *Id*. ¶110. Taken together, the impossible timeline of AllRide's self-driving car development, coupled with Huang's theft via VPN and USB drives, gives rise to an inference that Huang has stolen WeRide's trade secrets and disclosed them to AllRide, and now AllRide is using WeRide's trade secrets. *Id*. ¶112.

**WeRide has identified, and explained, the trade secrets at issue.** Based on its analysis of AllRide's marketing materials, WeRide understands that Huang stole trade secret computer code relating to, at least, the following features of WeRide's self-driving car program:

- The specific implementation of sensor-fusion and localization developed in-house by WeRide;

- The mapping algorithms used by WeRide to convert data received from the sensor fusion and localization process into an HD Map;

- The ability to generate an HD Map using a combination of both WeRide's sensor fusion and localization and mapping modules;

- The set of state machines used in WeRide's code; and

- The code, developed by WeRide, that makes up each of the individual state machines used in WeRide's decision module.

*Id.* ¶¶115, 125. In addition to identifying these trade secrets in the complaint, WeRide has also provided an extensive, high-level discussion of each of these trade secrets and how they operate. *See* FAC ¶¶30, 31 (explaining sensor fusion and localization); ¶¶28, 29 (explaining WeRide's use of mapping algorithms to generate an HD Map); ¶¶32-34 (explaining WeRide's use of state machines, including the development of the set of state machines, and the code making up each state machine).

## LEGAL STANDARD

Huang has brought his motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On a motion pursuant to 12(b)(6), the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Additionally, on a 12(b)(6) motion the Court may only consider "the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

A motion brought pursuant to 12(b)(1) "can be either facial or factual. . . . A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Nat'l Educ. Ass'n v. DeVos*, 345 F. Supp. 3d 1127, 1138 (N.D. Cal. 2018). Where, as here, the moving defendant submits no evidence controverting the facts in the complaint, the motion is "facial." *Id*. On a "facial" motion, "[t]he court . . . accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Id*. That is identical to the 12(b)(6) standard. *Compare Retail Prop. Tr.*, 768 F.3d at 945 *with Nat'l Educ. Ass'n*, 345 F. Supp. 3d at 1138.

## ARGUMENT

## I.  HUANG STOLE WERIDE'S TRADE SECRETS AND DISCLOSED THEM TO A COMPETITOR

Huang seeks to escape liability for his trade secret theft through a series of narrow, technical arguments that cannot support a motion to dismiss, all the while ignoring dispositive law and the allegations in the complaint. "[U]nder the DTSA[3] and the CUTSA[4], a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." *Way.com, Inc. v. Singh*, 2018 WL 6704464, at \*4 (N.D. Cal. Dec. 20, 2018) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880 (N.D. Cal. 2018)). An examination of the FAC confirms that WeRide has alleged all of the required elements.

First, WeRide has alleged that it owns multiple, specifically identified trade secrets. *See* FAC ¶¶115, 125 ("The information Defendants misappropriated constitutes protectable trade secrets owned by WeRide . . ."). Next, WeRide alleged that the combination of Huang's statements, forensic evidence of Huang's theft of electronic files, and the sudden advancement of AllRide's technology once Huang joined AllRide, combine to give rise to an inference of misappropriation. *See* FAC ¶112; *see also Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 53 (2005) (affirming inference of misappropriation where defendant "developed the same technology in too short a time for independent development"). Finally, WeRide alleged that it was harmed, because its investment (which exceeds $45 million, FAC

---

[3]  The "Defend Trade Secrets Act," 18 U.S.C. §1836, *et seq*.
[4]  The "California Uniform Trade Secrets Act," Cal. Civ. Code § 3426, *et seq*.

¶2) is now being used unfairly to benefit AllRide, a direct competitor.  *See* FAC ¶¶112, 121, 122.

WeRide's claims under both the DTSA and CUTSA are well pleaded and not subject to dismissal.

**A.     WeRide Clearly Alleged Ownership of Trade Secrets, and Thus Has Standing**

Huang admits, up-front, that WeRide clearly alleged ownership of the trade secrets at issue.  *See*

Mot. 6 (admitting "[WeRide] allege[s] "that "[t]he information Defendants misappropriated constitutes

protectable trade secrets **owned by WeRide**." FAC ¶¶ 115, 125 (emphasis in original)).  This is the ***end***

of the analysis regarding trade secret ownership.  On a motion to dismiss, the allegations in the

complaint are taken as true, including allegations of trade secret ownership.  *See, e.g.*, *Synventive*

*Molding Sols., Inc. v. Husky Injection Molding Sys., Inc.*, 2009 WL 10678879, at *3 (D. Vt. May 8,

2009) (denying motion to dismiss because "[t]aking the allegations of the counterclaim as true, Husky is

the owner of certain drawings that constitute trade secrets").

Huang ignores this fact and makes two baseless arguments.

> 1.     Huang's Pure Speculation About a "Chinese Company" Is Not Permissible
>        on a Motion to Dismiss

For the better part of a page, Huang speculates that "some or all of the alleged trade secrets

developed in China [could] belong to a Chinese company."  Mot. at 6.  This argument is spun from

whole cloth and completely divorced from the factual allegations in the complaint.  To be clear:

WeRide Corp. is a Delaware corporation, that was founded in Sunnyvale, California, where its primary

office is still located. FAC ¶10.  WeRide Inc. is a Cayman Islands corporation, and the parent company

of WeRide Corp. *Id*. ¶11.  ***Neither*** is a Chinese corporation, nor is any Chinese corporation identified

in the complaint as an "owner" of the trade secrets at issue.  *See, generally* FAC.  The complaint also

clearly alleges that WeRide "was founded in Sunnyvale, CA, where WeRide Corp. ***still maintains its***

***primary research and development office***." FAC ¶10 (emphasis added).  In other words, WeRide

clearly alleged that its primary research and development takes place at its office in Sunnyvale,

California. *Id*.  WeRide also alleged that the trade secrets at issue reside in Northern California. *Id*.

¶17.  Huang cannot simply ignore these allegations, and he cannot controvert the allegations in the

complaint with supposition.  On a motion to dismiss, the allegations in the complaint are accepted as

true, inferences are drawn in WeRide's favor, and Huang's concoctions are given no credit. *See Retail Prop. Tr.*, 768 F.3d at 945.

2.    Both WeRide Entities Have Standing to Assert Trade Secret Claims

Huang's other argument is that it is improper to use the term "WeRide" to refer to both WeRide Corp. and WeRide Inc. *See* Mot. at 6. In addition to being completely unsupported—Huang cites no authority for the proposition that grouping two plaintiffs together is reason to dismiss—this argument fails because **both** WeRide entities have standing.

As alleged in the complaint, all of WeRide Corp.'s employees are required to enter into the PIIA with WeRide Corp, and the PIIA grants WeRide Corp. "right, title, and interest" in any and all intellectual property developed by WeRide Corp.'s employees, including trade secrets. *See* FAC ¶39; *see also* Dkt. 34-8 (copy of the PIIA, which lists the contracting party as WeRide Corp.'s predecessor in interest, and is incorporated into the complaint by reference). The complaint further alleges that WeRide Corp. is the wholly owned subsidiary of WeRide Inc. FAC ¶11. This is key, because "[a] parent corporation has an ownership interest in the trade secrets of its wholly-owned subsidiary." *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co., LTD*, 2009 WL 10692715, at *3 (N.D. Cal. Nov. 30, 2009) (refusing to grant motion for summary judgment that argued parent corporation lacked standing); *see also PQ Labs, Inc. v. Yang Qi*, 2014 WL 4954161, at *6 n. 7 (N.D. Cal. Sept. 30, 2014) (refusing to consider standing argument where "Defendants do not dispute that PQ Labs owned all of the trade secrets asserted here, nor do they dispute that PinQi is a wholly owned subsidiary of PQ Labs"). Thus, **both** WeRide Corp. and WeRide Inc. have ownership of the trade secrets: the trade secrets are assigned to WeRide Corp. by the PIIA, and WeRide Inc. has an ownership interest by virtue of its status as WeRide Corp.'s parent company. There is no ambiguity.

None of Huang's cited authority supports a different outcome. Huang relies almost entirely on patent cases—likely because trade secret cases mandate a different outcome, as discussed above. But patents are creatures of statute (35 U.S.C. § 281), whereas trade secrets derive from the common law, and there is clear authority rejecting the application of patent standing principles to trade secret cases. *E.g. Jasmine Networks, Inc. v. Superior Court*, 180 Cal. App. 4th 980, 1008 (2009) (refusing to apply current-ownership standing requirements to UTSA claim and noting "Marvell speaks . . . as if the

property at issue were a patent. But it is not a patent. It is one or more trade secrets.").[5]

The distinction between patent and trade secret standing is based in the relative policies relating to the two distinct forms of intellectual property. As this Court previously recognized, "courts reason[ing] that 'fee simple ownership' [i]s an element of a trade secret misappropriation claim 'may not be particularly relevant' because 'the 'proprietary aspect' of a trade secret flows, not from the knowledge itself, but from its secrecy.'" *BladeRoom Grp. Ltd. v. Facebook, Inc.,* 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017) (Davila, J.). Thus, "the better focus for determining whether a party can assert a misappropriation claim is on that party's possession of secret knowledge, rather than on the party's status as a true 'owner.'" *Id.*; *see also SI Handling Sys., Inc. v. Heisle*y, 658 F. Supp. 362, 370 (E.D. Pa. 1986) (explaining that a parent company acquires an ownership interest in a subsidiary's trade secrets, and can assert misappropriation claims based on them, due to the fiduciary-like nature of the parent-subsidiary relationship).

This failure to differentiate between patents and trade secrets undermines Huang's reliance on nearly all of his authority: *Digitech Image Techs., LLC v. Newegg Inc.*, 2013 WL 1871513 (C.D. Cal. May 3, 2013) (examining patent standing), *Resonance Tech., Inc. v. Koninklijke Philips Electronics, N.V.*, 2008 WL 4330288 (C.D. Cal. Sept. 17, 2008) (same), *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010) (same), and *Paradise Creations, Inc. v. U v. Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003) (same). Similarly, while *Pollara v. Radiant Logistics Inc.*, 2012 WL 12887095 (C.D. Cal. Sept. 13, 2012) does examine trade secrets, that case is an outlier that does not appear to have been cited by any other courts, and stands in contrast to the wealth of authority cited above (including from this Court) because *Pollara* only relies on authority from **patent** cases. *See, generally*, *id.* As *Pollara* considered the wrong authority, it reached the wrong conclusion. Huang's remaining authority has no relevance at all. *See Rovince Int'l Corp. v. Preston*, 2013 WL 5539430, (C.D. Cal. Oct. 7, 2013) (no discussion of standing); *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) (mass tort case that does not

---

[5] Courts have noted that the similarities between the DTSA and CUTSA merit applying CUTSA case law to the DTSA. *E.g. Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1228 (E.D. Cal. 2018) ("given the similarity between the DTSA and CUTSA, the Court will interpret Deerpoint's DTSA claims consistently with its CUTSA claims"). Thus the Court may properly apply *Jasmine Networks* to WeRide's DTSA claim.

discuss trade secret standing); *Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269 (9th Cir. 2009) (Americans with Disabilities Act case that does not discuss trade secret standing); *United States v. Hays*, 515 U.S. 737 (1995) (vote redistricting case that does not discuss trade secret standing). Huang's standing arguments should be rejected.

### B.   WeRide's Complaint Clearly Identifies Trade Secrets and Explains Them in More Detail Than Is Required

Huang's motion blatantly misrepresents the standard for pleading the identity of trade secrets in a complaint. Specifically, Huang's entire argument revolves around a quote from *Social Apps, LLC v. Zynga, Inc.*, which states that "[a] description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret." Mot. at 8 (citing *Social Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012)). Huang neglects to mention that *Social Apps* is a ***discovery*** decision pursuant to California Code of Civil Procedure 2019.210, even though Huang himself admits that "Rule 8 [pleading] is separate from the pre-discovery identification requirements imposed by California Code of Civil Procedure § 2019.210." Mot. at 8 n.3. Relying on 2019.210 at the ***pleading stage***, as Huang does here, is contrary to Ninth Circuit law. *See Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801, 803 (9th Cir. 2014) (declining to apply 2019.210; "Appellants cite no state authority for the proposition that Meggitt SJC should have identified the particular trade secrets ***at the pleading stage***" (emphasis in original)); *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 882 (N.D. Cal. 2018) ("California Civil Procedure Code § 2019.210 has no place at the pleading stage.").

Huang's misrepresentation of the trade secret pleading standard is not a minor point: contrary to Huang's argument, this District has repeatedly held that, at the pleading stage, the mere identification of categories of trade secrets ***is*** sufficient to overcome a motion to dismiss. *See, e.g.*, *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (on a motion to dismiss complaint sufficiently identified trade secrets where "TMX alleges nine broad ***categories*** of trade secret information" (emphasis added)); *Keyssa, Inc. v. Essential Prod., Inc.*, 2019 WL 176790, at *2 (N.D. Cal. Jan. 11, 2019) (trade secrets sufficiently identified where "The complaint describes the ***categories*** of trade secret" (emphasis added)); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 WL 5069832, at

*10 (N.D. Cal. Dec. 7, 2010) (trade secrets sufficiently identified where "SOAProjects has, however, identified a number of **categories** of trade secrets" (emphasis added)). Huang's attempt to impose the requirements of section 2019.210 onto Rule 8 fails as contrary to law.

Huang's application of the wrong legal standard is compounded by his ignoring the extensive descriptions of the trade secrets at issue, as pleaded in the complaint. Under the **correct** standard, a complaint need only "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Alta Devices*, 343 F. Supp. 3d at 881. WeRide has alleged more than enough information to meet this standard—Huang simply ignores WeRide's extensive allegations.

For example, while it is true that WeRide has alleged that Huang misappropriated "[t]he set of state machines used in WeRide's code," and "[t]he code, developed by WeRide, that makes up each of the individual state machines used in WeRide's decision module," (Mot. at 9; FAC ¶¶115, 125) WeRide has **also** provided a fulsome description of state machines themselves, and of WeRide's development of the state machines at issue:

> **32. State Machines.** As mentioned above, WeRide's autonomous vehicle system includes a decision model that determines what immediate actions the car should take at a given moment (i.e. turn left, turn right, brake, reverse, etc.). While the model is complex and consists of multiple interconnected parts, one aspect, referred to as "state machines," is particularly relevant here. State machines are code modules that instruct the car about what actions to take in particular situations (or "states") encountered on the road, such as a traffic light, a cross walk, a slow moving vehicle, etc. State machines are more complex than a simple set of rules, because state machines must control for uncertainty; for example, the rules for a flashing red traffic light and a solid red traffic light are different, so the state machine must be able to dynamically check and re-verify that the appropriate state machine is being used.

> **33.** WeRide has developed its own set of state machines from the ground up. The set of state machines used by WeRide's autonomous vehicle program is proprietary to WeRide. The number of state machines and the set of states covered were determined by WeRide's in-house development team. While other autonomous driving programs, including open-source programs, may include certain common states (e.g. "what to do at a stop sign"), WeRide's program includes a vast number of states well beyond what can be found in open-source programs. The selection of which states to use was created by, and is proprietary to, WeRide.

> **34.** Additionally, WeRide has developed the code for each individual state machine inhouse, including proprietary code controlling for uncertainty. Accordingly, in addition to the set of state machines, the code making up each individual state machine is also WeRide's proprietary information.

*See* FAC ¶¶32-34.  That kind of extensive description both explains how the trade secrets differ from matters of "general knowledge" in the field (as indicated by WeRide's allegations contrasting its own state machine set with those in open source programs, *see* FAC ¶33), and provides Huang with "the boundaries within which the secret lies."  *Alta Devices*, 343 F. Supp. 3d at 881.

WeRide has also provided Huang with similarly extensive narrative descriptions of its other trade secrets, including the HD Map system (FAC ¶¶28, 29) and sensor fusion (FAC ¶¶30, 31).  These descriptions more than adequately explain, for pleading purposes, the "boundaries within which" WeRide's trade secrets may be found.  Far more simplistic descriptions of trade secrets are routinely accepted at this stage.  *See, e.g.*, *TMX Funding*, 2010 WL 2509979, at *3; *Keyssa*, 2019 WL 176790, at *2; *SOAProjects, Inc.*, 2010 WL 5069832, at *10; *Way.com, Inc. v. Singh*, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018); *see also Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) (Davila, J.) ("[C]ourts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." (internal quotation omitted)).[6]

None of Huang's cited authority holds otherwise.  None of the motion to dismiss decisions that Huang relies on examined complaints with the kind of narrative description found in the FAC at ¶¶28-34; the plaintiffs in all of the cases Huang cites alleged extremely generalized descriptions of the trade secrets—along the lines of "source code files"—with no further description.  *See Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (no narrative description of the trade secrets); *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) (same); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) (same)*; Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (same); *Top Agent Network, Inc. v.*

---

[6]  To the extent that the Court has any remaining concerns regarding WeRide's identification of trade secrets, the Court should defer ruling on this motion until after WeRide's 2019.210 trade secret identification (already filed with the Court at Dkt. 34-45) is evaluated in discovery.  *See POYNT CORPORATION, Plaintiff, v. INNOWI, INC., Defendant.*, 2019 WL 935499, at *3 (N.D. Cal. Feb. 26, 2019) ("Defendant's motion to dismiss as to Plaintiff's trade secret claims (Claims 3 and 4 of the Complaint) is DEFERRED pending the discovery process. Specifically, the Court directs the parties to engage in the process set forth in California Code of Civil Procedure ("CCP") 2019.210").

*Zillow, Inc.*, 2015 WL 7709655, at \*4 (N.D. Cal. Apr. 13, 2015) (same); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at \*3 (N.D. Cal. May 21, 2018) (same; also lacking allegations of how defendants acquired the trade secrets).[7]

Huang is wrong on the law and the facts; his motion should be denied.

### C.   Huang Stole WeRide's Trade Secrets and Disclosed Them to AllRide

Huang's argument that WeRide's "FAC does not plead any requisite facts to back up" WeRide's allegations of misappropriation completely ignores the extensive factual allegations on this point, including by describing in detail how AllRide's technology advanced much faster than can be explained by independent development as soon as Huang started working there.  *See* FAC ¶¶103-112.  As this Court has previously explained:

> Misappropriation and misuse can rarely be proved by convincing direct evidence.  In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 984 (N.D. Cal. 2018) (Davila, J.). The "web" of evidence supporting Huang's misappropriation and disclosure of WeRide's trade secrets to AllRide (summarized at FAC ¶112) is more than adequate at this stage.  WeRide alleges:

- Huang told his coworkers that he could "quickly" re-create the same technology that it took WeRide 18 months to develop; FAC ¶¶94, 112

- Huang exfiltrated WeRide's confidential information using WeRide's VPN and multiple USB drives, which Huang refused to return to WeRide, in violation of his contractual obligations and fiduciary duty; FAC ¶¶96-97, 98-102, 112

- Huang wiped data from the laptops that he used to download and copy WeRide's files in an attempt to cover his tracks; FAC ¶¶100-102

- Huang refused to return files he stole from WeRide when confronted, or otherwise explain his VPN and USB drive usage, again in violation of his contractual obligations and fiduciary duties; FAC ¶113

- Huang then took a job at AllRide as the head of AllRide's research and development; FAC ¶108

---

[7]   Huang's other cases were not even decided in the context of a motion to dismiss.  As noted above, *Social Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063 (N.D. Cal. June 14, 2012) is a discovery order that relies on 2019.210—a statute that "has no place at the pleading stage."  *Alta Devices*, 343 F. Supp. 3d at 882.  Similarly, *Imax Corp. v. Cinema Techs., Inc.* is an appeal following summary judgment that was granted when the plaintiff ignored a magistrate judge's discovery order compelling supplementation of an interrogatory response requesting a description of the trade secrets at issue.  *See* 152 F.3d 1161, 1167 (9th Cir. 1998).  These cases are irrelevant on Huang's motion to dismiss.

- Immediately after Huang started working at AllRide, as the head of AllRide's research and development, AllRide released marketing materials showing that it achieved a fully functional self-driving car much faster than could be explained through independent development; FAC ¶¶103-112

- Finally, WeRide has alleged—and Huang does not challenge—that Huang was subject to contractual obligations precluding him from taking WeRide's confidential information with him when he left WeRide's employ, and from disclosing WeRide's confidential information to a competitor. FAC ¶¶39, 80, 113.

Taken together, these allegations are more than sufficient to support an inference that Huang (i) stole WeRide's trade secrets using WeRide's VPN and USB drives, (ii) disclosed those trade secrets to AllRide, such that AllRide is now using WeRide's trade secrets, and (iii) that this disclosure was in violation of Huang's confidentiality obligations. This inference is particularly appropriate because, at the pleading stage, all inferences must be drawn in WeRide's favor. *Retail Prop. Tr.*, 768 F.3d at 945.

Moreover, contrary to Huang's argument which only discusses "use," misappropriation may be shown by impermissible "disclosure *or* use of a trade secret". *See* 18 U.S.C. § 1839; Cal. Civ. Code § 3426.1. Thus WeRide needed only plead facts sufficient to permit an inference that Huang improperly *disclosed* the trade secrets to AllRide, in violation of his contract with WeRide—Huang himself need not have personally used them. That inference follows from AllRide's sudden development of a fully functional self-driving car much more quickly than independent development allows. *See* FAC ¶¶103-111; *see also Ajaxo*, 135 Cal. App. 4th at 53; *GTAT Corp. v. Fero*, 2017 WL 7035655, at *1-3.

But even this is more than WeRide needed to plead—other Courts have found that the mere refusal to return a USB drive (as Huang refused to return three of them, FAC ¶¶101, 102, 113) is enough to infer that the defendant has misappropriated trade secrets. *See, e.g. Intel Corp. v. Rais*, 2019 WL 164958, at *4 (W.D. Tex. Jan. 10, 2019) (inference of misappropriation under the DTSA appropriate in light of defendant's "month-long delay in returning the Company Laptop, avoidance of meetings or communications with Intel, and ongoing failure to return the USB Drive—now six months after his departure"). As this District previously explained, it is appropriate to infer use or disclosure from an employee's theft of files because "it would strain credulity to imagine that [the defendant] plundered [the plaintiff's] vault the way he did with no intent to make use of the downloaded trove." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *6 (N.D. Cal. May 15, 2017). As with the defendant in *Waymo*, Huang cannot possibly have a legitimate explanation for copying WeRide's files

to a USB drive fully a week ***after*** he agreed to resign (*see* FAC ¶¶85, 102)—and in the absence of a legitimate explanation, misappropriation is properly inferred. *Waymo*, 2017 WL 2123560 at *6.

Notably, none of the cases Huang cites examine a situation like this one, where the plaintiff alleges the existence of forensic evidence showing an ex-employee exfiltrated files, went to work for a competitor, and then the competitor suddenly evinced technological capabilities that it did not have before. In *S. California Inst. of Law v. TCS Educ. Sys.*, 2011 WL 1296602, at *8 (C.D. Cal. Apr. 5, 2011), the complaint contained no allegations from which disclosure to a third party could be inferred; that is not the case here, where AllRide's sudden technological jump permits an inference of misappropriation. FAC ¶¶103-112. Likewise, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012), relied on the impermissible doctrine of "inevitable disclosure," to infer that trade secret disclosure "would" happen; again that is not the case here, where WeRide has alleged that AllRide's marketing materials show that disclosure has ***already*** happened. FAC ¶¶103-112. *TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, 2016 WL 3475322, at *6 (C.D. Cal. Jan. 29, 2016) and *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 2228936, at *7 (N.D. Cal. June 1, 2010) both examine situations where the defendant had a license for limited use, and the plaintiff claimed that the defendant's use exceeded that license; that is completely inapposite, because here Huang was not licensed to use ***any*** of WeRide's trade secrets after leaving WeRide—in fact he was required to return all of WeRide's information, but failed to do so. FAC ¶¶39, 80, 113. *Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996), examined a situation where there was merely an allegation of similarity between the products, without any allegation that the defendant actually copied the trade secret drawings at issue; that is a far cry from this case where WeRide has specifically alleged how Huang used WeRide's VPN and USB drives to copy the files at issue. FAC ¶¶96-97, 98-102, 112.

The Ninth Circuit has actually overturned dismissals where the plaintiffs make flimsy inferences that are a far cry from WeRide's allegations here. In *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017), for example the Ninth Circuit ***reversed*** a grant of ***summary judgment*** based on the following showing:

> There is evidence in the record that Tolat copied at least a portion of Integral's source code on to an external hard drive, in violation of Integral's policies, on November 5, 2012, shortly before he planned to retire from Integral. There is also evidence that, on

this date, Tolat copied only the recent updates in the source code to the external hard drive and that he tried to cover up the evidence that he had transferred the files to his personal device. Based on this evidence, a fact finder could conclude that Tolat had previously copied all of Integral's source code, and that he periodically copied the updates to the code.

WeRide has provided all of these factual allegations: (i) Huang copied WeRide's files to external USB devices and using WeRide's VPN (FAC ¶¶96-97, 98-102, 112); (ii) Huang attempted to cover his tracks by wiping the computers containing forensic evidence of this copying, and refused to explain himself when given the chance (FAC ¶¶100, 113); (iii) Huang's copying and deletion occurred immediately after he resigned from WeRide and after he had already started soliciting employees for AllRide (FAC ¶¶102, 85-86); and (iv) Huang's exfiltration of these files was a breach of his agreements with WeRide and WeRide's internal policies (FAC ¶¶39-40). Already this is all that the Ninth Circuit required in *Integral* to send the case to a jury—but WeRide offers even ***more*** in the form of allegations showing that the trade secrets were actually disclosed to AllRide. FAC ¶¶103-112. WeRide's robust allegations more than meet the standard for Rule 8. *See Integral*, 675 F. App'x at 703. Huang's arguments ignore these allegations and fail.

## II.   HUANG SOLICITED EMPLOYEES FOR A COMPETITOR WHILE EMPLOYED BY WERIDE, BREACHING HIS FIDUCIARY DUTIES AND DUTY OF LOYALTY

Huang does not (because he cannot) dispute that WeRide has alleged all of the required elements of a breach of fiduciary duty claim. Alleging a breach of fiduciary duty only requires "[1] the existence of a fiduciary relationship, [2] its breach, and [3] damage proximately caused by that breach." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991).[8] Huang was a fiduciary of WeRide because he was entrusted with managing a budget and overseeing employees. *See* FAC ¶164; *see also Thomas Weisel Partners LLC v. BNP Parabas*, 2010 WL 1267744, at *6 (N.D. Cal. Apr. 1, 2010) (under California law, a "non-officer who supervised two employees [still] owed [a] fiduciary duty"). Huang breached that fiduciary duty because, among other things, he spent months soliciting employees on

---

[8] As alleged in the complaint, Huang lives in Northern California and worked at WeRide's offices in Sunnyvale, California. *See* FAC ¶19. Additionally, Huang's contracts with WeRide, which are incorporated by reference in the complaint, all state that California law governed the terms of his employment by WeRide. *See* Dkt. 34-07 (Huang's employment agreement), 34-08 (Huang's signed copy of the PIIA). Accordingly, California law governs WeRide's state tort claims against Huang.

behalf of AllRide while working at WeRide. *See* FAC ¶¶79, 84; *see also Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 352 (1966) (assisting a competitor in soliciting employees is a breach of fiduciary duty under California law). And WeRide was harmed by Huang's breach because it continued to pay him during his months' long period of disloyalty. *See* FAC ¶¶79, 84, 168 (seeking "the forfeiture and return of all monies and compensation paid to [Huang] during his period of disloyalty"); *see also Congrove v. W. Mesquite Mines, Inc.*, 2009 WL 10671745, at *4 (S.D. Cal. May 5, 2009) (complaint that "seeks forfeiture of compensation paid during the period of disloyalty" sufficiently alleges harm due to a breach of fiduciary duty under California law). In sum, there can be no dispute that WeRide has alleged all of the required elements of a claim against Huang for a breach of fiduciary duty.

Moreover, under California law, a claim for a breach of the duty of loyalty has the same elements as a claim for breach of fiduciary duty, *see Huong Que, Inc. v. Luu,* 150 Cal. App. 4th 400, 410 (2007), so WeRide has clearly alleged that claim against Huang as well. Unable to point to a missing element, Huang resorts to two meritless technical arguments.

### A. Huang Owed Fiduciary Duties to *Both* WeRide Entities

First, Huang disingenuously argues that the FAC "is hopelessly ambiguous as to whom Huang owed a fiduciary duty and a duty of loyalty[.]" Mot. at 16-17. Huang claims this argument is based on the FAC's use of "WeRide" to refer to both WeRide Corp. and WeRide Inc. (*see* Mot. 16-17), but Huang ignores that "California courts have recognized that the 'fiduciary of a subsidiary also owes a fiduciary duty to the subsidiary's parent corporation.'" *PQ Labs, Inc. v. Yang Qi*, 2014 WL 334453, at *12 (N.D. Cal. Jan. 29, 2014). This is dispositive.

Huang admits he entered into a contract with, and was employed by, JingChi Corp., as reflected in the PIIA which is incorporated by reference in the FAC. *See* Mot. at 16 (admitting Huang was employed by JingChi); *see also* Dkt. 34-08 (PIIA between JingChi Corp. and Huang). As explained above, the FAC alleges that JingChi Corp. was rebranded as WeRide Corp. (FAC ¶10) and that WeRide Corp. is a wholly owned subsidiary of WeRide Inc. FAC ¶11. Thus, Huang owed direct fiduciary duties to WeRide Corp. (as his direct employer), and indirect fiduciary duties to WeRide Inc. because WeRide Inc. is the parent corporation of WeRide Corp. *See PQ Labs*, 2014 WL 334453, at *12.

Huang's claim to "confusion" is really an attempt to avoid California law that holds Huang liable to both WeRide entities.

Huang's cited authorities do not hold otherwise; those cases stand merely for the proposition that truly unintelligible complaints—ones that border on gibberish—may be dismissed with leave to amend. *E.g.*, *Matelyan v. Empire Dist. Co.*, 2017 WL 4708120, at *1 (C.D. Cal. June 14, 2017) (dismissing, with leave to amend, a *pro se* plaintiff's "42-page, handwritten complaint [that] is largely incomprehensible"); *see also Salahuddin v. Cu*omo, 861 F.2d 40, 41 (2d Cir. 1988) (**reversing** dismissal of complaint written by *pro se* prisoner plaintiff and explaining that leave to amend should have been granted). Huang's need to rely on such inapplicable cases only reinforces that his argument is contrary to California law.

**B.** **Huang's Solicitation of Employees for a Competitor Shares no Common Nucleus of Facts with Huang's Theft of Trade Secrets**

Huang separately argues that WeRide's breach of fiduciary duty claim is preempted by the California Uniform Trade Secrets Act because, supposedly, "[t]here is no material distinction between [WeRide's] CUTSA claim and its breach of fiduciary duty and duty of loyalty claim." Mot. at 13. This argument is demonstrably wrong and ignores WeRide's allegations. As noted above, WeRide has alleged, *inter alia*, that Huang breached his fiduciary duties by assisting AllRide in the recruitment of WeRide employees while Huang was still working for WeRide. *See* FAC ¶167 ("Huang knowingly and willingly breached his fiduciary duty and duty of loyalty to WeRide by . . . soliciting WeRide employees to join him [at AllRide.]"); *see also Bancroft-Whitney Co.*, 64 Cal. 2d at 352 (assisting a competitor in soliciting employees constitutes a breach of fiduciary duty).

CUTSA "does not displace noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013). Therefore, when a claim is based on separate factual allegations—here, the solicitation of employees, a fact not present in WeRide's trade secret claims (*see* FAC ¶¶114-33)—then the claim is not preempted. *See, e.g. Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1190 (S.D. Cal. 2014) (fiduciary

duty claim based on employee solicitation not preempted by CUTSA); *SMC Networks Inc. v. Hitron Techs. Inc.*, 2013 WL 12114104, at *9 (C.D. Cal. Nov. 13, 2013) (same).

Perhaps aware that his argument fails as a matter of law, Huang shifts gears and argues that WeRide has failed to allege "harm" from Huang's employee solicitation. Mot. at 15. As noted above, this is wrong too: WeRide alleged that it paid Huang's salary during the period of his disloyalty and now seeks the forfeiture of that salary (FAC ¶ 168), which sufficiently identifies harm stemming from a breach of fiduciary duty. *See Congrove*, 2009 WL 10671745, at *4 (allegation that plaintiff "seeks forfeiture of compensation paid during the period of disloyalty" sufficient to allege harm stemming from breach of fiduciary duty at the pleading stage). Indeed, under California law, the primary measure of damages for a breach of fiduciary duty is the amount of money paid to the employee during the period of disloyalty. *See Serv. Employees Internat. Union, Local 250 v. Colcord*, 160 Cal. App. 4th 362, 371 (2008) ("the disgorgement of salary and benefits was an appropriate remedy" for a breach of fiduciary duty). Thus Huang's argument once again fails as it is contrary to established law.

None of the cases Huang cites are apposite. *Ikon Office Sols., Inc. v. Rezente*, 2010 WL 5129293, at *5 (E.D. Cal. Dec. 9, 2010), comes closest to relevance, as that case examined a fiduciary duty claim based on employee solicitation; but as that court noted, the plaintiff (unlike WeRide here) did not allege any harm from the disloyalty—there was simply no discussion of disgorgement. *See, id.* Huang's other cases are not even remotely on-point, as none examine CUTSA preemption in the context of a fiduciary duty claim based on employee solicitation. *See, generally K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939 (2009) (no allegations of employee solicitation); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 109 Cal. Rptr. 3d 27 (2010) (same); *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) (same); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839 (N.D. Cal. 2014) (same); *Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 839022, at *3 (S.D.N.Y. Mar. 31, 2006) (same). By contrast, and as discussed above, cases examining allegations mirroring those here consistently hold that breach of fiduciary duty claims based on employee solicitation are not preempted. *See Robert Half*, 68 F. Supp. 3d at 1190; *SMC Networks*, 2013 WL 12114104 at *9. Huang's examination of irrelevant cases cannot help him; Huang's motion should be denied.

# III. HUANG BREACHED HIS CONTRACT WITH WERIDE, DAMAGING WERIDE

## A. Huang Cannot Simply Ignore His Multiple Contract Breaches

In a theme common throughout his motion, Huang again ignores numerous allegations demonstrating several, distinct breaches of his PIIA with WeRide.  Huang argues instead that WeRide's "breach of contract claim is premised on the same deficient conclusions of trade secret misuse as is its misappropriation claims."  Mot. at 18.  This is wrong: WeRide has alleged *multiple* breaches of the PIIA by Huang, including "[f]ailing to return WeRide's Proprietary Information to WeRide" "[s]oliciting and encouraging WeRide employees to leave WeRide to join AllRide, both during and after the term of his employment," and "[e]ngaging in business activities in competition with WeRide during the term of his employment, namely assisting at least two competing companies by . . . helping them recruit employees from WeRide[.]"  *See* FAC ¶188.  None of those allegations have anything to do with the trade secret claim.

As WeRide alleged, under the PIIA Huang was prohibited from "engaging in any activity that is competitive with WeRide" during the term his employment with WeRide.  FAC ¶39.  In violation of that clause, Huang openly helped two of WeRide's competitors (AI Ways and AllRide) to recruit WeRide employees while Huang was still working for WeRide.  *See* FAC ¶¶77-86.  As noted above, under California law, assisting a competitor in the solicitation of employees is an act of competition that breaches an employee's duty of loyalty.  *See Bancroft-Whitney*, 64 Cal. 2d at 352.  Thus, when Huang assisted AI Ways and AllRide to recruit WeRide employees, he was acting in competition against WeRide, and breaching his contract in a manner unrelated to WeRide's trade secret claims.[9]

Likewise, this District has recognized that a complaint states a claim for breach of contract where it describes an ex-employee's "failure to return documents after her employment ended" and the contract at issue mandates a return of all documents.  *See Zody v. Microsoft Corp.*, 2013 WL 2468250, at *6 (N.D. Cal. June 7, 2013).  Here, WeRide has alleged that Huang illicitly copied WeRide's files

---

[9]  As Huang's solicitation took place ***while he was still working for WeRide***, Huang's reliance on cases that examine restrictions on post-employment employee solicitation does not help him.  *See* Mot. at 19 (relying on *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923 (2018), and *Barker v. Insight Global, LLC*, 2019 WL 176260, at *3 (N.D. Cal. Jan. 11, 2019), both of which only involved ***post***-employment solicitation).

using WeRide's VPN and USB drives, and failed to return those files when he his employment ended or even when he was confronted by WeRide about it. *See* FAC ¶¶96-102 (describing file exfiltration); FAC ¶¶113, 184 (Huang's failure to return documents when WeRide demanded he return them).

Moreover, Huang's recycled argument that WeRide "do[es] not plead any facts showing that Huang breached the PIIA through the claims related to the alleged misappropriation of trade secrets," fails for the same reason that Huang's trade secret arguments fail: WeRide has clearly alleged specific facts giving rise to an inference that Huang ***disclosed*** WeRide's confidential trade secrets to AllRide, as evinced by AllRide's sudden advancement in the field of self-driving cars. *See* FAC ¶¶103-112; *supra* Section I(C). Just as Huang's trade secret arguments ignore these allegations (*see id.*), so too do Huang's breach of contract arguments. *See* Mot. at 18. Huang cannot succeed on a motion to dismiss by ignoring well-pleaded allegations. WeRide has alleged multiple breaches of the PIIA by Huang.

### B.      WeRide Has Clearly Alleged Harm Based on Huang's Breach

Huang's argument that WeRide has "not pleaded any plausible theory of damages" is once again contradicted by the plain language of the complaint. As an initial matter, WeRide pleaded that the PIIA included a clause ***stipulating*** that any breach of the PIIA by Huang would cause irreparable harm. *See* FAC ¶39 ("Anticipating a potential breach, the PIIA provides that 'any breach of the agreement will cause irreparable harm to [WeRide] for which damages would not be an adequate remedy'"). A contractual agreement that a breach will cause harm is binding under California law. *See* Cal. Evid. Code § 622 ("The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto[.]"); *Palermo v. Pyke*, 111 Cal. App. 2d 350, 355 (1952) ("irreparable harm" recital was binding under California law and predecessor statute to Evidence Code § 622); *see also DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 727 (2009) (reversing trial court decision that refused to enforce "irreparable harm" clause); *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 953 (N.D. Cal. 2009) (concluding that "irreparable harm" clause was enforceable under California law). In sum, when Huang agreed to the PIIA, he agreed that any breach would harm WeRide, and he is now bound by that agreement and prohibited from arguing that WeRide has failed to demonstrate "harm."

Moreover, WeRide has alleged harm arising from Huang's disclosure of WeRide's confidential information to AllRide. Under California law, if a defendant's breach of a nondisclosure agreement confers an unearned benefit, then the plaintiff is entitled to unjust enrichment damages in an amount equal to the benefit conferred. *See, e.g. Ajaxo*, 135 Cal. App. 4th at 56–57("E*Trade was benefited by breaching the NDA. Accordingly, Ajaxo must be 'compensated' for E*Trade's breach of the NDA, i.e. by E*Trade disgorging its unjust enrichment."). Here, Huang's breach of the NDA conferred a multimillion dollar benefit on AllRide at WeRide's expense. *See* FAC ¶2 (WeRide spent $45 million to develop the trade secrets); FAC ¶¶103-112 (Huang's disclosure of WeRide's trade secrets conferred a benefit on AllRide in the form of a "head start" technological advantage). Huang cannot seriously claim that WeRide's allegations in this area are insufficient.

### C. There Is Nothing "Vague" About the Written Contract Before the Court

Huang's final argument on the contract claim—for which he cites no authority at all—is that WeRide "fail[s] to identify which party entered into a contract with Huang." Mot. at 21. This has no merit. The contract at issue, the PIIA, is incorporated by reference in the complaint, and it has been filed on the docket in this litigation. *See* Dkt. 34-8. The Court may examine the contract on a motion to dismiss. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (on a motion to dismiss, documents incorporated into the complaint by reference may be considered). The plain language of the contract states that it is between Huang and JingChi Corp. (*see* Dkt. 34-8 at 1 ("The following confirms and memorializes an agreement that ***JingChi Corp.*** . . . and I [Kun Huang] have had . . .") (emphasis added, brackets in original)). As explained above, the FAC clearly alleges that WeRide Corp. was "f/k/a" ("formerly known as") JingChi Corp., but had to rebrand. *See* FAC ¶10. There is simply no ambiguity; Huang contracted with WeRide Corp. and his argument fails.

## IV. EVEN IF THE DTSA CLAIM IS DISMISSED, THE COURT SHOULD RETAIN JURISDICTION

Huang argues that this Court should decline supplemental jurisdiction over Huang in the event that the DTSA claim is dismissed, because Huang claims that WeRide "will not be able to identify any extraordinary circumstances that would justify supplemental jurisdiction over [WeRide's] remaining claims." Mot. at 22. Huang's argument flips the burden for this analysis. Under controlling Ninth

Circuit precedent, it is **Huang** who must show extraordinary circumstances justifying the decline of supplemental jurisdiction, not WeRide. *See Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1556 (9th Cir. 1994) ("[U]nless a court properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction **must** be asserted." (emphasis added)).[10] As it stands, Huang cannot make any of the showings under 28 U.S.C. § 1367(c), because: (i) Huang identifies no novel issues of state law, (ii) Huang makes no showing that the state law claims asserted against him "substantially predominate" over the DTSA claims asserted against his codefendants, (iii) WeRide's DTSA claims would still stand against Huang's codefendants, and thus not all federal claims would be dismissed, and (iv) Huang makes no effort to show "exceptional circumstances"—indeed he improperly attempts to shift that burden to WeRide. In multi-defendant cases like this one, courts regularly assert supplemental jurisdiction over defendants whose federal claims have been dismissed where interrelated federal claims remain against their co-defendants. *E.g.*, *Viernes v. Exec. Mortg., Inc.*, 372 F. Supp. 2d 576, 584 (D. Haw. 2004). As Huang has failed to meet his burden, the Court **must** assert supplemental jurisdiction over the state law claims asserted against Huang.

## V. IF HUANG'S MOTION IS GRANTED, WERIDE SHOULD BE GIVEN LEAVE TO AMEND ITS COMPLAINT

As set forth above, Huang's motion lacks merit and should be denied. However, in the event that the Court grants any portion of Huang's motion, then WeRide should receive an opportunity to amend its complaint. *See United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (abuse of discretion to dismiss a complaint "without considering whether additional facts could cure any deficiencies"). WeRide has submitted extensive briefing and evidence as part of a preliminary injunction motion, including a 20-page trade secret identification, a 40-page expert declaration explaining AllRide's use of the trade secrets, statements of witnesses who Huang wrongfully solicited to work at AllRide while Huang was still at WeRide, and the originals of the contracts that Huang

---

[10] *Executive Software* was overruled on unrelated grounds in *California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008), but remains controlling on the standard for 28 U.S.C. § 1367. *See Fallay v. City & Cty. of San Francisco*, 604 F. App'x 539, 542 (9th Cir. 2015) (same standard, citing *Executive Software*).

breached. *See, generally* Dkts. 34, 80. Not to mention the numerous declarations from *Huang and his Co-Defendants* that either outright admit or at least fail to deny the most salient allegations against them. All of that briefing and evidence may be a source of additional facts that will cure any and all deficiencies the Court may perceive in the FAC.

## **CONCLUSION**

For the foregoing reasons, Defendant Kun Huang's Motion to Dismiss should be denied.

DATED: March 7, 2019                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   */s/ Ryan S. Landes*
    Claude M. Stern
    Ryan S. Landes
    Michael F. LaFond
    Attorneys for Plaintiffs WeRide Corp. and WeRide Inc.