QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:    (650) 801-5100

  Ryan Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 South Figueroa Street
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Plaintiff WeRide Corp. and WeRide Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE CORP. f/k/a JingChi Corp,;<br>WERIDE INC. f/k/a JingChi Inc.,<br><br>             Plaintiff,<br><br>     vs.<br><br>JING WANG, an individual, KUN HUANG, an individual, ZHONG ZHI XING TECHNOLOGY CO. LTD.. d/b/a ALLRIDE.AI, ALLRIDE.AI INC.,<br><br>             Defendant. | CASE NO. 5:18-cv-07233-EJD<br><br>**BRIEF OF PLAINTIFFS WERIDE CORP. AND WERIDE INC. IN OPPOSITION TO DEFENDANT JING WANG'S MOTION TO DISMISS**<br><br>Date:   May 23, 2019<br>Time:  9:00 A.M.<br>Ctrm:   4<br><br>The Hon. Edward J. Davila<br><br>Action Filed:   November 29, 2018<br>Trial Date:      None Set |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

ARGUMENT ................................................................................................................................. 3

I. WERIDE ADEQUATELY ALLEGED TRADE SECRET MISAPPROPRIATION AGAINST JING WANG ............................................................................................... 3

II. WERIDE HAS STATED A CLAIM FOR BREACH OF CONTRACT AGAINST WANG ............................................................................................................................. 8

III. THIS COURT SHOULD CONTINUE TO EXERCISE JURISDICTION EVEN IF THE TRADE SECRET CLAIMS ARE DISMISSED ..................................................... 10

CONCLUSION ........................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................................. 6, 7

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
    28 Cal. App. 5th 923 (2018) .................................................................................................. 8, 9

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ................................................................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 3

*Bahrampour v. Lampert*,
    356 F.3d 969 (9th Cir. 2004) ................................................................................................... 10

*Barker v. Insight Glob., LLC*,
    2018 WL 3548911 (N.D. Cal. July 24, 2018) .......................................................................... 9

*Barker v. Insight Glob., LLC*,
    2019 WL 176260 (N.D. Cal. Jan. 11, 2019) ............................................................................. 9

*Bright v. Bechtel Petroleum, Inc.*,
    780 F.2d 766 (9th Cir. 1986) ................................................................................................... 10

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
    2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ......................................................................... 8

*California, Loral Corp. v. Moyes*,
    174 Cal. App. 3d 268 (1985) .................................................................................................... 9

*Citcon USA, LLC v. RiverPay Inc.*,
    2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ......................................................................... 6

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
    2014 WL 466274 (E.D. Cal. Feb. 5, 2014) ................................................................. 4, 5, 6, 7

*Gartner, Inc. v. Parikh*,
    2008 WL 11336333 (C.D. Cal. Oct. 10, 2008) ..................................................................... 8, 9

*Gatan, Inc. v. Nion Co.*,
    2017 WL 1196819 (N.D. Cal. Mar. 31, 2017) ......................................................................... 3

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
    2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) ........................................................................ 12

*Hutchens v. Alameda County Soc. Servs. Agency*,
    2008 WL 4193046 (N.D.Cal. Sept. 9, 2008) ........................................................................... 8

*In re Ingle Co., Inc.*,
    116 F.3d 1485 (9th Cir. 1997) ................................................................................................... 9

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
    2010 WL 2764714 (N.D. Cal. July 13, 2010) ............................................................... 4, 5

*Lusson v. Apple, Inc.*,
    2016 WL 6091527 (N.D. Cal. Oct. 19, 2016) .................................................................. 8

*Mackey v. Pioneer National Bank*,
    867 F.2d 520 (9th Cir. 1989) ......................................................................................... 11

*Moore v. Pflug Packaging & Fulfillment, Inc.*,
    2018 WL 2430903 (N.D. Cal. May 30, 2018) ............................................................... 11

*Nishimoto v. Federman-Bachrach & Assocs.*,
    903 F.2d 709 (9th Cir. 1990) ......................................................................................... 10

*Parrish v. Solis*,
    2014 WL 1921154 (N.D. Cal. May 13, 2014) ................................................................. 6

*PMC, Inc. v. Kadisha*,
    78 Cal. App. 4th 1368 (2000) .......................................................................................... 6

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ........................................................................................... 4

*Rosado v. Wyman*,
    397 U.S. 397 (1970) ....................................................................................................... 10

*Space Data Corp. v. X*,
    2017 WL 3007078 (N.D. Cal. July 14, 2017) .................................................................. 3

*Spring Design, Inc. v. Barnesandnoble.com, LLC*,
    2010 WL 11607095 (N.D. Cal. Apr. 8, 2010) .................................................................. 3

*Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*,
    2009 WL 902337 (N.D. Cal. Apr. 1, 2009) .................................................................... 12

*TMX Funding, Inc. v. Impero Techs., Inc.*,
    2010 WL 2509979 (N.D. Cal. June 17, 2010) ................................................................. 3

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ........................................................................................... 3

*Viernes v. Exec. Mortg., Inc.*,
    372 F. Supp. 2d 576 (D. Haw. 2004) ............................................................................. 12

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 2123560 (N.D. Cal. May 15, 2017) ................................................................. 7

**Statutory Authorities**

18 U.S.C. §1839(5) ........................................................................................................................ 4

28 U.S.C. §1367(a) ...................................................................................................................... 10

28 U.S.C. §1367(c)(3) ................................................................................................................. 10

Cal. Bus. & Prof. Code § 16600 .................................................................................................. 8

Cal. Civ. Code §3426.1 ............................................................................................................... 4

**PRELIMINARY STATEMENT**

WeRide's former CEO, Jing Wang, left the company on January 31, 2018 to found a competing autonomous vehicle company known as AllRide,[1] and then began a campaign to enrich AllRide at WeRide's expense. Wang contacted a number of WeRide's investors and made false and defamatory statements to them about WeRide (violating the non-disparagement clause contained in Wang's separation agreement with WeRide), in an attempt to divert funding from WeRide to AllRide. Wang concedes that WeRide's claims based on this defamation are adequately pled.

Wang also personally recruited Kun Huang, WeRide's Director of Hardware, to join AllRide (violating the non-solicitation clause contained in Wang's employment agreement with WeRide). On his way out the door, Huang downloaded large amounts of confidential and trade secret information from WeRide for the purpose of accelerating AllRide's development of its own autonomous vehicle. Using WeRide's trade secrets, Wang's company AllRide was able to develop its own autonomous vehicle in record time. Based on these facts and the others alleged in its First Amended Complaint ("FAC"), WeRide asserts claims against Wang for misappropriation of trade secrets, defamation, intentional interference with prospective economic advantage, breach of fiduciary duty and duty of loyalty, and breach of contract.

Jing Wang now moves to dismiss WeRide's claims for trade secret misappropriation and breach of non-solicitation agreement; he concedes that all of the remaining claims are adequately pled. Rather than contend with the facts *as alleged*—which are entirely adequate at this stage—Wang ignores numerous allegations that place him at the center of the wrongdoing, disputes other factual allegations, and asks to have inferences drawn in his favor. All of this is improper on a motion to dismiss, where WeRide's allegations must be accepted as true and inferences must be drawn in WeRide's favor.

Looking to WeRide's actual allegations, rather than Wang's slanted view of the facts as he wishes them to be, Wang's motion fails. With respect to the trade secret misappropriation, WeRide's allegations that Wang founded AllRide, that he recruited Kun Huang, and that the three of them put WeRide's stolen trade secrets to use are more than sufficient to establish Wang's liability for trade

---

[1] Two AllRide entities are defendants in this action, Chinese entity Zhong Zhi Xing Technology Co. Ltd. ("ZZX") and Delaware corporation AllRide, AI Inc.

secret misappropriation and breach of his non-solicitation agreement. And Wang's argument that the non-solicitation agreement is unenforceable ignores controlling Ninth Circuit law holding the opposite.

All of WeRide's claims against Wang are sufficiently pled, and even if they are not WeRide should be granted leave to amend and this Court should retain supplemental jurisdiction over Wang's claims because they are closely related to the claims against the other defendants in this suit. Wang's motion to dismiss should be denied.

## STATEMENT OF FACTS

Jing Wang was the CEO of WeRide until his resignation on January 31, 2018. FAC ¶¶ 44, 49. While he was employed at WeRide, Wang signed a Proprietary Information and Inventions Agreement ("PIIA"). *Id.* ¶¶ 39, 48. The PIIA contained a non-solicitation clause providing that "[u]ntil one year after the term of my employment, [Wang] will not encourage or solicit any employee or consultant of [WeRide] to leave [WeRide] for any reason." *Id.* ¶ 176. In connection with his departure, Wang signed a Separation Agreement. *Id.* ¶ 48. The Separation Agreement contained a non-disparagement clause providing that Wang will "never make any negative or disparaging statements (orally or in writing) about the Company or its stockholders, directors, officers, employees, products, services or business practices." *Id.* ¶ 48.

Following his departure, Wang founded a competing autonomous vehicle company, AllRide. *Id.* ¶ 53. Wang then contacted a number of WeRide's investors and attempted to divert financing away from WeRide and to AllRide by making false statements about WeRide (in violation of the non-disparagement clause in his Separation Agreement). *Id.* ¶ 56. Those statements included: (i) WeRide's self-driving technology did not work, (ii) the videos WeRide created to demonstrate its self-driving technology had been faked, (iii) WeRide's self-driving cars had been involved in a traffic accident that WeRide was attempting to cover up, and (iv) WeRide had purposefully and maliciously diluted the shares of prior investors. *Id.* ¶ 62. Wang's interference succeeded; many of WeRide's investors reduced, delayed, or withdrew planned investments in WeRide based on Wang's statements. *Id.* ¶¶ 64-69.

Wang also recruited Kun Huang, WeRide's former Director of Hardware, to leave WeRide and join AllRide. *Id.* ¶ 5. Huang and Wang knew each other from the Chinese internet company Baidu,

where they had worked together before WeRide. *Id.* ¶ 70. Huang had become dissatisfied with his position at WeRide, and told coworkers that he was leaving to join "Jing Wang's new company." *Id.* ¶¶ 74, 82. Huang left WeRide in August 2018 and joined AllRide by October 2018, less than ten months after Wang left WeRide. *Id.* ¶¶ 85-86. Before Huang left, he downloaded large amounts of confidential data from WeRide, and deleted files from his company laptops to cover his tracks. *Id.* ¶¶ 94-102. AllRide then used that data to develop its own autonomous vehicle technology, in competition with WeRide, faster than it would be possible for AllRide to develop such technology independently. *Id.* ¶ 112.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Space Data Corp. v. X*, 2017 WL 3007078, at *1 (N.D. Cal. July 14, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Spring Design, Inc. v. Barnesandnoble.com, LLC*, 2010 WL 11607095, at *1 (N.D. Cal. Apr. 8, 2010) (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).

### I.   WERIDE ADEQUATELY ALLEGED TRADE SECRET MISAPPROPRIATION AGAINST JING WANG

Jing Wang devotes the first several pages of his argument to contending that WeRide has alleged no more than "conclusory statements" of a "hazy financial tie" between Wang, Huang, and AllRide, and therefore that WeRide has not pled a misappropriation claim against Wang.[2] Mot. at 3-7.

---

[2] In a footnote, Wang asserts that WeRide has "failed to properly define its trade secrets and to establish that they are not publicly available information," pointing without elaboration to the arguments made in AllRide's motion to dismiss (Dkt. 65 at 7-10) and Kun Huang's opposition to WeRide's preliminary injunction motion (Dkt. 70 at 11-12). Mot. at 10 n.8. As set out in WeRide's reply in support of its preliminary injunction motion (Dkt. 80 at 9-10) and opposition to AllRide's motion to dismiss (Dkt. 84 at 6-8), WeRide has identified each of its trade secrets as its algorithms, code, and specific implementation of certain functions, which is more than enough detail at this stage. *See Gatan, Inc. v. Nion Co.*, 2017 WL 1196819, at *6 (N.D. Cal. Mar. 31, 2017); *TMX Funding, Inc. v. Impero Techs.,* Inc., 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010). Moreover, WeRide has

Wang's argument ignores most of WeRide's allegations tying Wang to the other defendants and the misconduct at issue, including that Wang *founded* AllRide (FAC ¶ 63); that Wang misappropriated WeRide's trade secrets by recruiting Kun Huang and then by using WeRide's trade secrets at AllRide to develop a competing autonomous vehicle (*see*, *e.g.*, FAC ¶¶ 5, 53, 112); and that Wang embarked on a campaign of disparaging WeRide to its investors to support his competing enterprise (FAC ¶¶ 53-54).[3] Wang cannot avoid responsibility by simply ignoring the well-pled allegations in WeRide's complaint, which must be accepted as true at this stage. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Wang cites no authority whatsoever in this pages-long argument for the proposition that allegations such as these are insufficient.

Wang next argues that WeRide's allegations are substantively deficient. Mot. at 7-10. This argument fails as well. Under both the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"), "misappropriation" of a trade secret includes acquisition of another's trade secret "by a person who knows or has reason to know that the trade secret was acquired by improper means." Cal. Civ. Code § 3426.1(b)(1); 18 U.S.C. § 1839(5). Third parties who use trade secrets are also liable for misappropriation if they know or have reason to know that "the trade secret was derived from or through a person who had utilized improper means to acquire it." Cal. Civ. Code § 3426.1(b)(2); 18 U.S.C. § 1839(5). Importantly, recruiting an employee who takes trade secrets from his former employer constitutes misappropriation. *See Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2014 WL 466274, at *4 (E.D. Cal. Feb. 5, 2014) (denying motion to dismiss trade secret claims against defendants who recruited others to take trade secrets from the plaintiff).

*Language Line* is instructive. In that case, one of the plaintiffs' former employees, Patrick Curtin, left to join a competitor (as Wang did here), and recruited William Schwartz, another of the plaintiffs' employees, to join him. 2010 WL 2764714 at *1. When Schwartz left, he took with him trade secret information (as Huang did here) regarding the plaintiffs' customers, including the plaintiffs'

---

already submitted its Section 2019.210 statement, which identifies its trade secrets with even more particularity. Dkt. 34-45.

[3] Wang concedes that WeRide's defamation-related claims are adequately pled.

1  customer list and pricing, sales volume, and revenues for each customer. *Id.* Schwartz gave the trade
2  secret customer information to Curtin. *Id.* Curtin distributed the customer information to other sales
3  personnel, but Curtin did not use the customer information himself to contact customers. *Id.*
4  Nevertheless, the court granted a preliminary injunction against both employees and their employer,
5  finding that Curtin as well as Schwartz had acquired *and used* the trade secret through improper
6  means," and that "an act of this nature was generally foreseeable as part of their duties to solicit
7  customers." *Id.* at *4 (emphasis added).

8        Similarly, in *Farmers Insurance*, defendant Troy Steele left the plaintiff to found his own
9  insurance company. *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2014 WL 466274 (E.D. Cal. Feb. 5,
10 2014); LaFond Decl. Ex. A ("Farmers Complaint") at 7 ¶ 26. Steele recruited a number of his former
11 co-workers to join him. Farmers Complaint at 8 ¶ 27. While some of the employees Steele recruited
12 downloaded confidential customer information from the plaintiff and used that information to solicit
13 customers for Steele, there was no allegation that Steele himself took or used any trade secrets to solicit
14 insurance customers. *Farmers Ins. Exch.,* 2014 WL 466274, at *1. Nevertheless, and contrary to
15 Wang's argument that allegations of his connection with Huang are not sufficient to plead
16 misappropriation, Mot. at 9, the court held that the allegations that Steele recruited employees from the
17 plaintiff who themselves took the plaintiff's trade secrets were sufficient to plead misappropriation. *Id.*
18 at *4. In addition, the court held that the complaint adequately pled a claim for conspiracy to
19 misappropriate trade secrets against Steele due to his recruitment and direction of his co-defendants. *Id.*

20       As in *Language Line* and *Farmers Insurance*, Wang misappropriated WeRide's trade secrets by
21 personally recruiting Huang, who expropriated WeRide's trade secrets and brought them to AllRide, the
22 company Wang founded. FAC ¶¶ 5, 53, 112. Huang and AllRide then used WeRide's trade secrets to
23 develop a competing autonomous vehicle in record time. *Id.* ¶ 112. WeRide's allegations go far
24 beyond "conclusory statements" – to the contrary, WeRide supports its allegation that Wang recruited
25 Huang (which itself is a non-conclusory factual allegation) with a number of specific facts, including
26 that Huang previously worked at Baidu with Wang, *id.* ¶ 70, Huang became dissatisfied with his job
27 shortly after Wang left, *id.* ¶ 74, Huang told his coworkers that he was leaving to go to "Jing Wang's
28 new company," *id.* ¶ 82, and Huang in fact left to join AllRide, the company Jing Wang founded, *id.* ¶

1  86.[4]  Wang either disputes or outright ignores all of these allegations, which is inappropriate on a
2  motion to dismiss.  *Parrish v. Solis*, 2014 WL 1921154, at *7 (N.D. Cal. May 13, 2014) (denying
3  motion to dismiss because "Defendants' argument ignores Plaintiff's factual allegations and attempts
4  solely to dispute the factual allegations in Plaintiff's Complaint, and factual disputes are not properly
5  resolved in a motion to dismiss").

6  Wang cannot immunize himself from liability for trade secret misappropriation by arguing that
7  it was his company (AllRide) that used WeRide's trade secrets rather than Wang personally.  *See PMC,*
8  *Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) ("Under the plain terms of the Uniform Trade
9  Secrets Act, defendants may be personally liable if: they used, through the corporation, WFI's trade
10 secrets.").  As WeRide's former CEO, it is entirely reasonable to infer (and must be inferred in
11 WeRide's favor at this stage) that Wang had reason to know of Huang's duty to protect WeRide's
12 confidential information, especially given that Wang himself had this same obligation (FAC ¶¶ 39-40).
13 *See* Farmers Complaint at 8 ¶ 27; *Farmers Ins. Exch.,* 2014 WL 466274, at *4 (denying motion to
14 dismiss where complaint alleged that "[b]y virtue of his experience" working for the plaintiff "and
15 because of the many former employees of the plaintiff working for him, defendant was "well aware of
16 the contractual restrictions . . . to refrain from using or divulging [the plaintiffs' trade secrets").  And as
17 AllRide's founder and *de facto* controller (FAC ¶¶53, 54), Wang had reason to know that AllRide was
18 using WeRide's trade secrets that Huang stole to develop AllRide's own autonomous vehicle far faster
19 than would have been possible if AllRide developed the product independently (FAC ¶¶ 104-5, 112).
20 *See Farmers Ins. Exch.*, 2014 WL 466274, at *4 (holding allegations that founder of competing
21 company recruited employees who stole and used plaintiffs' trade secrets stated claim for
22
23
   [4] The only two cases Wang cites, *Citcon USA, LLC v. RiverPay Inc.*, 2018 WL 6813211 (N.D. Cal.
24 Dec. 27, 2018), and *AccuImage Diagnostics Corp v. Terarecon, Inc*., 260 F. Supp. 2d 941 (N.D. Cal.
   2003), are inapposite.  Neither case involved a situation where the defendant actively recruited the
25 another person who took the plaintiff's trade secrets (as Wang did for Huang here), and then the two of
   them worked together at a company that made use of those stolen trade secrets (as Wang, Huang, and
26 AllRide did here).  Wang's liability is not premised on his mere involvement with AllRide, as was the
27 case in *Citcon* and *AccuImage*, but rather on Wang's own actions in recruiting in founding AllRide,
   then recruiting Huang—who stole trade secrets from WeRide specifically for the purpose of using them
28 at Wang's company, AllRide.

misappropriation against the founder).  AllRide's use of WeRide's trade secrets to develop its own competing product thus provides an independent basis to hold Wang liable for misappropriation.

Wang's recruitment of Huang also constitutes conspiracy to commit trade secrets.[5]  "The elements of a civil conspiracy are: (1) the formation and operation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct." *Farmers Ins. Exch.*, 2014 WL 466274, at *4 (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510 (1994)).  "[P]articipation in a civil conspiracy can be inferred from circumstantial evidence of defendant's conduct."  *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 952 (N.D. Cal. 2003) (denying motion to dismiss trade secret misappropriation claims against shareholder who knew employee had kept a laptop containing trade secret information when he moved companies).  Even if, contrary to fact, Wang did not himself misappropriate WeRide's trade secrets, he conspired with his co-defendants to do so.  In furtherance of the conspiracy, Wang recruited Huang to expropriate WeRide's trade secrets, and founded AllRide to develop a competing autonomous vehicle using WeRide's trade secrets.  FAC ¶¶ 5, 63, 112.  AllRide's use of WeRide's trade secrets to gain an unfair jump start has caused competitive harm to WeRide.  *See id.* ¶ 121, 131; *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017) (finding harm from misappropriation included the defendants' use of trade secrets to "accelerate their own progress" and "improve their ability to attract investors and talented engineers away from competitors – including [plaintiff] itself").

WeRide adequately alleges that Wang misappropriated trade secrets directly or, at a minimum, through a conspiracy with Defendants Kun Huang and AllRide.  The Court should deny Wang's motion to dismiss WeRide's trade secret misappropriation claims.

---

[5]  Wang argues that WeRide has not included a cause of action for conspiracy.  Mot. at 8 n.8.  But under California law, civil conspiracy is a legal theory that can support other claims, not an independent cause of action to be separately pled.  *See Farmers Ins. Exch.*, 2014 WL 466274, at *3 ("civil conspiracy is not a cause of action but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (internal quotation omitted)).

## II. WERIDE HAS STATED A CLAIM FOR BREACH OF CONTRACT AGAINST WANG

Wang first argues that WeRide "pleads no [] allegations" that Wang solicited WeRide employees to join AllRide. Mot. at 10-11. This is wrong. WeRide alleges that "[i]n violation of his employment agreement, Wang began recruiting WeRide employees to join him at AllRide" and "[o]ne of the WeRide employees Wang recruited was Kun Huang." FAC ¶¶ 4-5. WeRide supports this allegation with more specific factual allegations (most of which Wang improperly disputes or ignores), including that Wang and Huang previously worked together, *id.* ¶ 70, that Huang became dissatisfied with his job shortly after Wang left, *id.* ¶ 74, that Huang told his coworkers that he was leaving to go to "Jing Wang's new company," *id.* ¶ 82, that Huang in fact left to join Wang's new company (AllRide), *id.* ¶ 86, and that Wang tried to recruit other WeRide employees as well, *id* ¶¶5, 155. Obviously without discovery WeRide is not privy to the specific communications between Wang and Huang on this subject, but the facts as alleged are sufficient at this stage to create an inference that Wang solicited Huang, and Wang cites no authority to the contrary. *See Gartner, Inc. v. Parikh*, 2008 WL 11336333, at *9 (C.D. Cal. Oct. 10, 2008) (denying defendant's motion for summary judgment on claim for breach of nonsolicitation clause based on evidence defendant communicated with recruits).[6]

Wang next argues that the non-solicitation provision in Wang's agreement with WeRide is *per se* unenforceable under California Business and Professions Code § 16600, relying on a California Court of Appeal decision, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923 (2018). As discussed in WeRide's reply brief in support of its motion for a preliminary injunction, Dkt. 80 at 19-20, Wang is incorrect for two reasons. First, Wang ignores that "this Court is bound by the Ninth Circuit's interpretation of California law until the California Supreme Court offers convincing evidence of a contrary view[.]" *Lusson v. Apple, Inc.*, 2016 WL 6091527, at *3 (N.D. Cal. Oct. 19,

---

[6] Wang makes much of WeRide's allegations "on information and belief," but Wang cites no authority that these allegations should be discounted on a motion to dismiss, and courts in this District have repeatedly held that allegations on information and belief are "acceptable for information that is not presumptively in the knowledge of the pleading party." *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,* 2011 WL 1044899, at *6 (N.D. Cal. Mar. 23, 2011) (citing *Hutchens v. Alameda County Soc. Servs. Agency*, 2008 WL 4193046 (N.D.Cal. Sept. 9, 2008)).

2016).  The Ninth Circuit has held that employee non-solicitation clauses are enforceable under California law.  *See, e.g., In re Ingle Co., Inc.*, 116 F.3d 1485 at *3-4 (9th Cir. 1997) (relying on *Moyes* to hold that Section 16600 does not bar enforcement of a non-solicitation clause because such a clause does not "prevent persons from engaging in their profession, trade or business; it does not even preclude them from going to work for the competitor").

Second, even if this Court looked to the California Court of Appeal's decision in *AMN Healthcare* rather than binding Ninth Circuit authority in *Ingle*, the court in *AMN Healthcare* did not hold that non-solicitation clauses are *per se* void.  Rather, as Wang recognizes, the court addressed the narrow issue of whether non-solicitation clauses could be enforced against former employees whose business was recruiting nurses and other medical professionals.  *Id.* at 939.  The court held that because the defendants' business was recruiting, a bar on solicitation was necessarily a bar on employment.  The court specifically distinguished long-standing authority enforcing non-solicitation clauses in California, *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268 (1985), because—unlike the situation in *AMN* but just like the situation here—*Moyes* involved a former employee "who was an executive officer of the plaintiff employer," not someone in the business of recruiting.  Nothing in WeRide's employment agreement with Wang prevents him from practicing his chosen procession of developing autonomous vehicles.  His non-solicitation clause merely prevented him from actively soliciting employees away from WeRide for one year following the end of his employment.  *See Gartner, Inc. v. Parikh*, 2008 WL 11336333, at *9 (C.D. Cal. Oct. 10, 2008) (following *Moyes* and upholding non-solicitation clause where "Defendants do not argue and have not introduced any evidence to show that this non-solicitation provision has an overall negative impact on trade or business.").  Wang's citation to *Barker v. Insight Glob., LLC*, 2019 WL 176260, at *2 (N.D. Cal. Jan. 11, 2019), similarly fails because that decision relied exclusively on *AMN Healthcare* and did not consider the binding nature of prior Ninth Circuit decisions in the absence of a ruling by the California Supreme Court.  *Barker* is also factually distinguishable from this case because, as in *AMN Healthcare*, the employee subject to the non-solicitation agreement worked for a staffing company, and thus was in the business of recruiting.  *See Barker v. Insight Glob., LLC*, 2018 WL 3548911, at *1 (N.D. Cal. July 24, 2018).

Wang's non-solicitation agreement is enforceable, and WeRide has alleged that Wang breached that agreement by soliciting Kun Huang.[7]

### III. THIS COURT SHOULD CONTINUE TO EXERCISE JURISDICTION EVEN IF THE TRADE SECRET CLAIMS ARE DISMISSED

Wang argues that if the federal DTSA claim is dismissed (it should not be), the Court should decline to exercise supplemental jurisdiction over WeRide's remaining claims against Wang. Wang fails to mention that WeRide has alleged DTSA claims against the other defendants in this action that arise from the same nucleus of facts as the state law claims against Wang (most of which Wang does not challenge in his motion). It serves the interests of judicial economy, convenience, fairness, and comity to litigate all these related claims together.

28 U.S.C. § 1367(a) provides that federal courts "*shall* have supplemental jurisdiction' over any claims that are "so related" to any claim over which the court has original jurisdiction that "they form part of the same case or controversy." 28 U.S.C. § 1367(a) (emphasis added). "A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims and the state and federal claims would normally be tried together. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (internal quotations omitted). The court "*may* decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (emphasis added). Even then, "[d]ismissal of the federal claim does not deprive a federal court of the power to adjudicate the remaining pendent state claims." *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 771 (9th Cir. 1986) (citing *Rosado v. Wyman*, 397 U.S. 397, 403–04 (1970)). Rather, the court may determine, in its discretion, whether retaining jurisdiction over the claims promotes "judicial economy, convenience, fairness, and comity." *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir. 1990).

Here, Wang does not dispute that the Court has supplemental jurisdiction over the state law claims based on the common nucleus of facts between the DTSA and state law claims. *See* Mot. at 12-

---

[7] Even though WeRide's request for injunctive relief on this claim is moot because the non-solicitation provision recently expired, WeRide alleged and still seeks damages arising from Wang's breaches that occurred within the term of the agreement. Those damages include "WeRide's loss of development time and recruitment costs above those it would have normally incurred." FAC ¶ 157.

14. Wang is one of the central figures in this case – his departure from WeRide and founding of AllRide started the cascade of events that resulted in this lawsuit, and he recruited Huang, the former WeRide employee who expropriated WeRide's trade secrets. FAC ¶¶ 5, 49, 53. These facts will need to be developed to litigate the state law claims as well as the DTSA claims against Wang and his co-defendants. For example, WeRide alleges that Wang and Huang breached the exact same non-solicitation provision of the exact same agreement. *Id.* ¶¶ 5, 39, 80, 179, 188. Further, WeRide's claim that Wang defamed WeRide in violation of his anti-disparagement agreement in order to divert funding from WeRide to AllRide, *id*. ¶¶ 56-69, will require development of the facts around Wang's departure from WeRide and founding of AllRide. WeRide's federal DTSA claims against all four defendants will require development of the same facts regarding the impossible timeline in which AllRide developed its competing autonomous vehicle.

Requiring WeRide to re-file its claims against Wang in state court would not further judicial economy or convenience for any party. Litigation has been ongoing in this Court since November 2018. In that time, the parties have briefed a preliminary injunction motion and three motions to dismiss, filing hundreds of pages of briefs, declarations, and exhibits addressing the merits of both the federal and state law claims. *See Mackey v. Pioneer National Bank*, 867 F.2d 520, 523 (9th Cir. 1989) (holding that "retention of jurisdiction well served the purposes of judicial economy and efficiency" when the case had been in federal court for just over four months). It would make no sense to litigate these same issues from scratch before a new court, especially given that the parties will need to continue to litigate those issues here regardless of the outcome of this motion. Indeed, as noted above, even if WeRide is forced to file its claims against Wang in state court, Wang would be a central witness in this federal action, and all of the defendants in this federal action would be central witnesses in Wang's state court action. This purely duplicative litigation is exactly what the doctrine of supplemental jurisdiction is intended to prevent. *See Moore v. Pflug Packaging & Fulfillment, Inc.*, 2018 WL 2430903, at *4 (N.D. Cal. May 30, 2018) (retaining supplemental jurisdiction because dismissal of state law claims "would create the type of duplicative and fragmented litigation that supplemental jurisdiction is meant to avoid").

Even if the Court dismisses the federal DTSA claims against Wang (which it should not), federal DTSA claims would still remain against Wang's co-defendants, Huang and AllRide. *See Viernes v. Exec. Mortg., Inc.*, 372 F. Supp. 2d 576, 584 (D. Haw. 2004) (retaining supplemental jurisdiction over state law claims where federal claims were dismissed as to two of the four defendants, but remained pending against the other two defendants). Thus, Section 1367(c)(3) does not apply, and there is no basis to decline supplemental jurisdiction.[8]

## CONCLUSION

For the foregoing reasons, the Court should deny Jing Wang's motion to dismiss. If the Court does believe that any of Wang's arguments have merit, the Court should retain jurisdiction over the remaining claims and WeRide should be granted leave to amend to cure any of the supposed (mostly formalistic) deficiencies Wang asserts. *See Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*, 2009 WL 902337, at *1 (N.D. Cal. Apr. 1, 2009) (leave to amend should be granted with "extreme liberality").

DATED: March 7, 2019

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Ryan S. Landes*
Claude M. Stern
Ryan S. Landes
Michael F. LaFond
Attorneys for Plaintiffs WeRide Corp. and WeRide Inc.

---

[8] The cases Wang cites, including *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633 (S.D. Cal. Dec. 18, 2018), are inapplicable because all of the federal claims had been dismissed; unlike this case, there were no federal claims remaining against co-defendants.