**quinn emanuel**   trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 | FAX (650) 801-5100

June 17, 2019

The Honorable Nathanael Cousins
Magistrate Judge of the Northern District of California
San Jose Courthouse, Courtroom 5 - 4th Floor
280 South 1st Street, San Jose, CA 95113

Re:   *WeRide Corp., et al v. Huang, et al*, Case No. 18-cv-7233

Dear Judge Cousins,

Pursuant to the Court's notice (Dkt. 147), the Parties[1] respectfully submit this joint status report regarding the parties' discovery disputes. Each party's proposed order is being filed separately.

**Proposed Agenda Items for June 19 Discovery Hearing**

The parties propose the following Agenda Items for the June 19 Discovery Hearing:

    **A.**     **WeRide's proposed Agenda Items**

        1.     Defendants' refusal to discuss document collection or production

        2.     ZZX's failure to produce source code.

        3.     ZZX, AllRide, and Huang's deficient responses to Court-ordered discovery.

            a.     ZZX refuses to produce source code, documents, and information until WeRide removes its "Attorneys Eyes Only" designation from its trade secrets

            b.     ZZX refuses to respond to 57 document requests and 2 interrogatories.

            c.     ZZX objects that information on its research and development is irrelevant – despite the Court's express Order.

            d.     ZZX asserts a baseless objection based on the Chinese State Secrets Law, without giving any justification for withholding documents.

---

[1] This letter update is submitted jointly by WeRide, Huang, ZZX, and AllRide. Counsel for Jing Wang did not respond to WeRide's request for Mr. Wang's participation.

    e. ZZX must provide information on its true corporate controllers.

    f. Huang and ZZX fail to identify documents referred to in their interrogatory responses.

  4. ZZX and AllRide's unprepared corporate representative.

 B. **AllRide and ZZX's proposed Agenda Items:**

  1. Allride and ZZX request an order allowing the parties to exceed 10 total depositions per side.

  2. WeRide has refused to make its source code available in a reciprocal manner to that it has demanded of ZZX.

  3. WeRide's past-due document production.

**WeRide's Statement**

**Introduction.** The Court's March 22, 2019 Preliminary Injunction Order (the "PI Order," Dkt. 116) authorized WeRide to depose Defendants on 14 days' notice and to serve expedited written discovery. WeRide noticed depositions and served discovery on April 22, 2019. Nearly two months later, Defendants have provided almost no substantive responses to discovery requests; they have produced none of the at-issue source code they were ordered to produce; they refuse even to discuss when they will begin the process of collecting and searching documents, let alone produce them; and their 30(b)(6) witness was woefully unprepared for deposition. Seeking to minimize their own total refusal to engage in discovery, Defendants assert a few illusory discovery "disputes" of their own. Defendants' non-issues are easily dismissed.

**All Defendants Refuse to Discuss Document Collection and Production.** In their written responses to *some of* WeRide's document requests, Defendants ostensibly agreed on May 22 and June 5 to produce documents in their possession (subject to a host of objections). Since that time, WeRide has asked the Defendants again and again to propose a protocol for collection of their documents—i.e., which custodians, document repositories, and search terms they will use. Defendants are completely ignoring these requests. They have not produced any documents (aside from a subset of the files from a subset of the physical devices the Court ordered Huang to surrender in its PI Order, and 41 pages of AllRide's public government filings). Defendants will not even say why are they are refusing to propose a search protocol, or when they might be willing to submit a proposal. Meanwhile, Defendants routinely "respond" to interrogatories by referring generally to non-existent document productions. This is improper; interrogatory responses invoking Rule 33(d) must produce and "cit[e] the relied upon documents by Bates number." *Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, 2011 WL 1483706, at *4 (N.D. Cal. Apr. 19, 2011). Defendants should be ordered to collect and produce responsive documents.

Defendants' portion of this status report, sent this morning at 8:30 a.m., repeats their oft-provided statement that they are willing to discuss a possible protocol for document collection.

2

But the "promise" is a hollow one meant to save face before the court for an indefensible position—Defendants' "assurance" has no substance or timeline for this process, and Defendants are still not actually agreeing to produce anything.

**Issues Specific to ZZX and AllRide.**  ZZX Refuses to Produce Source Code.  The PI Order authorized discovery of Defendants' source code.  Dkt. 116 at 27.  That PI Order was based on a finding that Defendants likely misappropriated WeRide's trade secrets in order to achieve the autonomous driving functionality displayed in an October 2018 demonstration video.  *Id.* at 15.  Accordingly, WeRide formally requested the source code used in that video, as well as other relevant code.  After much delay and wrangling, ZZX finally agreed that WeRide could review only limited source code files that happened to be saved on the physical devices Huang had surrendered to WeRide pursuant to the PI Order—but ZZX refuses to produce its own code, and the limited code that happened to be on Huang's devices was the wrong code.  That code could not perform the functionality in the video, and most of the code was not created until 2019; ***none*** of it was created before November 2018.  ZZX should be ordered (again) to produce its code.

ZZX's excuse seems to be that it need only produce the code corresponding to the specific functionality in WeRide's 2019.210 statement, and because ***parts of*** the 2019.210 statement were designated AEO (because they contain WeRide's trade secrets), ZZX is incapable of finding the correct code to produce.  This is wrong.  First, the PI Order is not so limited; it authorized discovery of all ZZX's source code.  Second, even the ***public*** portions of WeRide's 2019.210 statement (Dkt. 34-45) provide enough information for ZZX to determine what functionality is at issue.  Third, ZZX has retained outside counsel and an expert who can review a ***fully unredacted*** version of WeRide's 2019.210 statement ***and*** WeRide's actual code described therein (which WeRide made available six weeks ago).  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (defendant's in-house employees need not see a plaintiff's confidential information, provided the defendant has "access to [that] information through an independent consultant").  And fourth, ZZX has produced ***no code whatsoever***.

ZZX Refuses to Provide Court-Ordered Discovery Related to Its Research and Development.  The PI Order authorized discovery of "***any*** research and development of products or technology related to autonomous vehicles."  Dkt. 116 at 27.  ZZX is refusing to comply, as manifested in ZZX's blanket objection to 57 document requests and 2 interrogatories on exactly this topic— e.g., requests for vehicle information, design and planning documents, budgets and product roadmaps, hardware schematics, funding sources and amounts, partnerships with other autonomous driving companies, and more.  ZZX's responses to several other document requests and interrogatories on this topic are also evasive and facially incomplete—e.g., ZZX's interrogatories requesting information on ZZX's development timeline, plan to "directly develop advanced smart vehicles," and the scope of work performed for ZZX by Kun Huang.

ZZX's objections are baseless.  *First*, ZZX objects that this discovery is either irrelevant or overbroad. This is nonsense.  The PI Order ***expressly authorized*** discovery on this subject.  Moreover, many of the requests are relevant to other issues beyond just development, such as whether Kun Huang is compensated above market (suggesting he was paid to steal WeRide's trade secrets), or the extent of ZZX's partnerships (indicating possible dissemination of WeRide's trade secrets).  ZZX's overbreadth objection rings hollow given that ZZX is refusing to produce ***anything***.  The fact that ZZX thinks (incorrectly) that ***some*** of the discovery is objectionable does not permit it to reject the discovery in its entirety.  Fed. R. Civ. P. 33(b)(3),

34(b)(2)(c).  ZZX also objects that some of the interrogatories are compound, but ZZX has served *even broader* interrogatories regarding WeRide's development that—by ZZX's logic—contain hundreds of subparts, proving that its objections to WeRide's discovery are baseless.

*Second*, ZZX claims its in-house employees cannot "understand" this interrogatory unless they are allowed to see WeRide's confidential information (including WeRide's 2019.210 statement). Again this is meritless–especially where the request calls for **ZZX's own** development timeline.

*Third*, ZZX objects that it will limit its production (including of source code) based on China's State Secrets Law.  As above, the fact that ZZX thinks that *some* of its material may be protected does not allow it to withhold *everything*.  In any event, the Court already ruled that "[t]o the extent that discovery of ZZX's source code" or "any research and development of products or technology related to autonomous vehicles…is complicated by Chinese law,…the Court finds the importance of this discovery weighs heavily in favor of authorizing the discovery."  Dkt. 116 at 27; *see also Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 1928184, at *4-*5 (N.D. Cal. Mar. 27, 2015) ("Chinese companies may not avoid producing documents in United States litigation" by invoking state secret laws).  Defendants demonstrate no competing interest.

*Fourth*, ZZX informed WeRide for the first time on Monday morning that it intends to stand on its objection that certain requests are impermissible "contention" requests that seek to "circumvent" Rule 33.  That is not correct; WeRide's requests seek documents relating to Defendants' claims and defenses – which, given that Defendants have so far avoided answering the complaint, have tremendous potential to narrow the scope of discovery.  Courts in this District have compelled production of documents on similar facts.  *See, e.g., Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6648170, at *1 (N.D. Cal. Nov. 2, 2015) (Compelling production of all documents "in support of Defendants' denial of Plaintiffs' class action allegations").  Even if these requests were interrogatories, they would be proper; WeRide is well within the permitted number of interrogatories and Rule 33(a)(2) provides that an interrogatory "is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  While the court may allow the responding party to delay responses to such interrogatories until the close of discovery, courts have compelled early responses where they will narrow the issues for dispute (which they will), or where the responding party does not show undue burden (which ZZX has not).  *See N. Am. Co. for Life & Health Ins. v. Philpot*, 009 WL 10672468, at *2 (S.D. Cal. June 1, 2009).  *Rutherford v. Paloverde Health Care Dist.*, 2014 U.S. Dist. LEXIS 197183 (C.D. Cal. Apr. 25, 2014), the only case ZZX cites from this Circuit is not to the contrary – there the responding party produced documents, but only refused to accept the burden of labelling them by request.

<u>ZZX Has Hidden Its True Corporate Controllers.</u>  As in WeRide's complaint (and detailed in Chinese press reports), WeRide believes Defendant Jing Wang is deliberately hiding his control over ZZX.  Government records reveal that ZZX is wholly owned by a Hong Kong shell company called HKZZX, and HKZZX is in turn wholly owned by a Cayman Islands company called SmartCar.AI Holdings Limited—but then the notorious "tax haven" laws of the Cayman Islands prevent further investigation.  A ZZX employee, Johnny Chen, is also an "authorized representative" of both HKZZX and its Cayman-based owner, and could thus provide information about the actual controllers of ZZX.  But ZZX refuses to provide that information,

arguing that WeRide's interrogatory asking for who "controls" ZZX is "too narrowly worded" to capture the "ultimate controller." ZZX simply wants to hide its actual ownership.

<u>ZZX and AllRide's Unprepared Corporate Representative.</u> The PI Order required ZZX and AllRide to sit for expedited 30(b)(6) depositions. WeRide noticed the depositions weeks in advance, ZZX and AllRide did not object to any of the topics, so WeRide flew to Hong Kong for the depositions. ZZX and AllRide presented the same corporate representative, Yahui Liu, a mid-level engineer who freely admitted that he knew nothing about many topics and did nothing to prepare for them; these topics included (among others) AllRide/ZZX's corporate structure, development budgets, financing, investors, employee compensation, and Wang's involvement in the companies. Mr. Liu's lack of preparation for a court-ordered deposition – which ZZX now admits below – fails to satisfy Defendants' obligations under Rule 30(b)(6), and so WeRide should be granted another deposition with a ***prepared*** witness at Defendants' expense. *See Molex v. City & Cty. of San Francisco*, 2012 WL 1965607, at *4 (N.D. Cal. May 31, 2012) (ordering second deposition on topics first deponent was unprepared to answer).

**Issues Specific to Kun Huang.**  <u>Mr. Huang Gives No Substantive Response to Over a Dozen Discovery Requests.</u> Mr. Huang's responses to ten RFPs and five Interrogatories simply state that he is willing to "meet and confer," without stating what will be produced or withheld, and without identifying any issues for conference. These responses must be supplemented. *See* Fed. R. Civ. P. 33(b)(3), 34(b)(2)(c). Even where Mr. Huang provides responses, they are inadequate. For example, Mr. Huang provides only a one-sentence response to two interrogatories about the nature and scope of his work for ZZX, and fails to identify, among other things, the time, date, or location that his work began, any other person who recruited him, trained him, or worked with him, or any related documents. *See, e.g. Purnell v. Rudolph & Sletten Inc.*, 2019 WL 1776961, at *3 (N.D. Cal. Apr. 23, 2019) (ordering supplementation of similarly abbreviated responses). Mr. Huang's deficient responses frustrate WeRide's ability to prepare for his long-overdue deposition—which the Court ordered to occur within 14 days of the deposition notice (served on April 22), but which Huang has already delayed to June 25.

Mr. Huang confirmed for the first time that he will supplement his responses to Interrogatory Nos. 1–4, 7–9 and to "work out mutually agreeable search terms for his personal emails" in his portion of this letter update, provided this morning at 9:30 a.m. While WeRide appreciates Mr. Huang's movement on this issue, WeRide still needs Mr. Huang to provide dates certain by which he will provide his updated responses and document production. In addition, there may be additional locations in which Mr. Huang has responsive documents that have not been produced – only Mr. Huang knows the answer to that question.

Mr. Huang objects that providing source code, development, and planning documents that he provided to ZZX would be "unduly burdensome" because "writing and checking in source code" and "[c]reating development and planning documents" are his "daily tasks." This is inconsistent with ZZX's interrogatory responses, which claim that Mr. Huang has not provided any source code, development, or planning documents. Either ZZX's responses are incorrect and need to be supplemented, or it is no burden at all for Mr. Huang to provide this information.

Finally, while Mr. Huang has agreed to produce the documents on his devices previously withheld from production, except to the extent they are privileged or covered by a legally recognized privacy right, WeRide has not yet received production of those documents.

Accordingly, WeRide asks Mr. Huang once again to provide these documents by no later than June 19, 2019.

**ZZX and AllRide Try to Muddy the Waters with Manufactured "Disputes"**

<u>WeRide Has Fulfilled All of Its Discovery Obligations, Unlike Defendants.</u>  WeRide responded to ZZX's document requests on May 20, and the next day proposed a protocol for its ESI collection that identified custodians, document repositories, and search terms.  Despite prodding from WeRide, ZZX sat silent for weeks.  The parties met and conferred on June 3, and ZZX has not followed up since then, or identified a single deficiency in WeRide's search protocol or proposed document production, other than the fact that it is not yet finished.  (Huang and Wang have not responded at all.)  WeRide has *already* collected its documents and applied search terms, it is *already* in the process of reviewing those documents for responsiveness and privilege, and it will begin rolling productions shortly and expects to complete its production well in advance of depositions of WeRide's witnesses (which are not starting for a month). Meanwhile, Defendants refuse to produce any of their own documents.

As for source code, WeRide made all of its at-issue source code available for ZZX's expert's review beginning on May 6.  In the six weeks since, ZZX's expert has come to source code review room only once, for about four hours.  ZZX has not identified any missing code.  As best WeRide can tell, ZZX wants WeRide to produce every bit of code it has ever written, and ZZX wants its own employees to be permitted to review that code (i.e., removing the "Attorneys' Eyes Only designation) *before* it will produce *any* of its own code.  ZZX's cries of "reciprocity" make no sense.  WeRide has made *all* of its at-issue code available.  ZZX, on the other hand, was *already ordered* to make available the code used in its October 2018 demonstration video, and ZZX has provided *none of it*.  And as discussed above, there is no need for ZZX's employees to review WeRide's trade secret code, especially when ZZX has retained outside counsel and an expert.  *See Brown Bag,* 960 F.2d at 1471.

<u>ZZX Has Not Made the Required Showing for 10 Extra Depositions.</u>  Apparently without coordinating with the other Defendants, ZZX noticed six depositions of WeRide employees: all five employees identified in WeRide's initial disclosures, plus WeRide's CEO, who does not seem to have any relevant, unique personal knowledge of the issues.  ZZX simultaneously demanded that WeRide agree Defendants could take a total of 20 depositions, rather than the ten-deposition limit in Rule 30(a)(2).  ZZX has not made a "particularized showing" of its need for additional depositions, including "who [they] propose to depose, [and] why the depositions are necessary."  *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2017 WL 8948736, at *2 (N.D. Cal. June 12, 2017). Nor has ZZX "exhaust[ed] less expensive and burdensome means of discovery."  *X One, Inc. v. Uber Techs., Inc.*, 2019 WL 2207645, at *2 (N.D. Cal. May 22, 2019).  ZZX's only purported justification is that WeRide identified eight third parties in its initial disclosures, though ZZX has not said these are the additional people it wants to depose, let alone provided a reason for doing so.[2]  Parties are not automatically permitted to depose every person who could

---

[2]   This alone distinguishes the two cases ZZX cites, where the party requesting additional depositions specifically identified its requested witnesses and explained the need for the deposition, allowing the Court to determine whether to allow each deposition on a witness-by-witness basis.  *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL (footnote continued)

conceivably have relevant knowledge. *See id.* (denying request to take additional depositions of new witnesses added to initial disclosures); *CFTC v. Commodity Inv. Grp., Inc.*, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005) ("Although a witness might have discoverable information, a party is not always entitled to depose that individual."). And even if Defendants wanted to depose every employee and third party in WeRide's initial disclosures, that would still be only 13 depositions, not the 20 ZZX demands.

**ZZX and AllRide's Statement.**

**Introduction.** ZZX and AllRide have and will continue to attempt to work with Plaintiffs to produce discovery in an efficient manner, including discussing a search protocol and continuing to produce documents on a rolling basis. Further, ZZX has already briefed issues relating to (1) the need for greater explanation by Plaintiffs as to the trade secret functions at issue so that ZZX employees can provide written responses, as well as produce responsive documents that may exist, that are related to the functions at issue; (2) that certain information such as the cost and source of funds is not relevant to the alleged misappropriation of trade secrets; and (3) that information about the officers, executives and shareholders of ZZX's shareholder is not within the call of Plaintiffs' Interrogatory No. 6 as stated. *See* ECF No. 139, at 3-5. ZZX does not repeat those arguments here, although some of these arguments apply to the matters Plaintiffs have newly raised. Below, ZZX and AllRide respond to the specific items and requests that Plaintiffs identified in their correspondence on June 13, 2019. As explained, the Court should not enter any order with respect to Plaintiffs' discovery demands. With respect to AllRide and ZZX's discovery, WeRide's dismissive response in its opening statement is entirely consistent with WeRide's belief that only WeRide should be allowed to conduct discovery in this matter, and WeRide's continued refusal to meet and confer about basic issues such as allowable depositions per side

**1. *ZZX requests an order allowing the parties to exceed 10 total depositions per side.*** The Court may allow additional depositions where appropriate in light of the case's complexity and the numerous defendant and third-party percipient witnesses. *See Del Campo v. American Corrective Counseling Services, Inc.*, 2007 WL 3306498 at *5 (N.D. Cal. Nov. 6, 2007). Further, courts have observed it would be "inefficient" and "prejudicial" to require Plaintiffs to wait until the 10 deposition limit expired before bringing an additional motion for each additional deposition sought. *Id.*; *see also Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, 2018 WL 5993585 at *1 (E.D. Cal. Nov. 6, 2018).

Here, this action is an extremely complex multi-national matter that comprises two plaintiffs, four defendants, and six federal and state law claims. Indeed, WeRide alone has disclosed 13 percipient witnesses thus far: 5 affiliated with WeRide and 8 third party witnesses.

Defendants propose 20 depositions per side, without prejudice to the parties' ability to request more if necessary. WeRide, however, has steadfastly refused to meet and confer.

---

3306496, at *5 (N.D. Cal. Nov. 6, 2007); *Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-CV-01515-KJM-AC, 2018 WL 5993585, at *5 (E.D. Cal. Nov. 6, 2018); *Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*, 2018 WL 5993585, at *5 (E.D. Cal. Nov. 6, 2018).

Because the parties are already two months into discovery, and AllRide has noticed depositions for July, Defendants have no choice but to seek the Court's assistance.

**2.   *WeRide has refused to make its source code available in a reciprocal manner to that it has demanded of ZZX.*** The Court's March 22, 2019 Preliminary Injunction Order (the "PI Order," Dkt. 116) imposed the same obligation upon WeRide and ZZX to produce their respective source code. WeRide, however, has improperly interpreted the PI Order in a completely lopsided manner, such that WeRide insists it need only produce hand-picked lines of WeRide's code that WeRide deems relevant at this time, while requiring ZZX to produce every line and file of ZZX's source code as it existed in October 2018.

As of this filing, ZZX has already produced ***all*** of ZZX's source code from Defendant Huang's devices per the PI Order and precisely as WeRide initially requested.

In addition, ZZX has repeatedly agreed to make available for inspection the ZZX source code that existed in October 2018 that performs the functions that Plaintiffs claim are trade secrets— and that presumably corresponds to the narrow production of hand-picked lines that WeRide has made.  (AllRide has no source code to produce and the source code that has been made available to Plaintiffs were portions of the ZZX code that were on the iCloud account of defendant Kun Huang).  Although ZZX's expert can review the ZZX code, only ZZX's engineers, who are most familiar with the code, can fully identify those portions that perform the "at issue" functions.  Yet for many of the alleged functions, the portions available to ZZX are so heavily-redacted to render them meaningless.  *See, e.g.,* ECF No. 34-45 at 13-14.  Until ZZX is able to have a better understanding of what functions are at issue, there is no way for it to make available the "at issue" portions of the source code as they existed in October 2018.

**3.   *WeRide's past-due document production.*** Thus far, WeRide has produced thirty-three (33) documents, and obviously has failed to produce a single page in response to nearly all of AllRide's document requests.  Notwithstanding AllRide's numerous attempts to meet and confer, WeRide has refused to clarify when WeRide's production will resume or be substantially completed.

**4.   *The application of Chinese Law is not ripe for adjudication*.** To be clear, ZZX and AllRide have not withheld any documents under the laws of the Peoples Republic of China. Instead, similar to a review for privilege, ZZX and AllRide have stated that a Chinese law firm will review the documents and information to be produced.  If the production would be in violation of Chinese law, ZZX or AllRide will inform Plaintiffs that they were withholding the documents on the basis of particular Chinese law and describe the document so that Plaintiffs can decide whether to challenge.  Unless and until that occurs, there is nothing for the Court to decide.

**5.   *ZZX has provided complete responses to Interrogatories Nos. 1, 5, 6, 9, 16 on all relevant topics*.** ZZX has already briefed its response to Plaintiffs multi-part Interrogatory No. 1, which sought information about the development of autonomous driving technology. *See* ECF No. 139 at 3-4.  Plaintiffs' Interrogatories Nos. 5 and 16 sought the same type of development information (with no. 16 even incorporating the multiple parts of Interrogatory No. 1), and ZZX responded with information about development, including the start of the

development, the number of engineers involved, and the use of open source code, among other things. (Further, a ZZX engineer was deposed over two days on these same facts, as discussed further below.) ZZX has also briefed its response to Interrogatory No. 6, which sought corporate information about ZZX, and has no additional arguments to provide. *See* ECF No. 139 at 5.

As for Plaintiffs' Interrogatory No. 9, it seeks the "scope and nature of the work performed" by Kun Huang. ZZX responded:

> Kun Huang is the Vice President of Engineering at ZZX. His responsibilities at ZZX include AV path planning, simulation, hardware and software infrastructure. Starting in August 2018, Kun Huang assisted ZZX in developing an autonomous vehicle system based on an automatic driving technical solution independently designed by ZZX that integrates both software and hardware, including the use of open source code, through our engineers' independent research and development, proprietary technology integration, continuous iteration, and road test of hardware and software. ZZX has begun its autonomous driving program prior to Kun Huang's arrival, including the use of open source code.

This response is accurate and as complete as possible without ZZX knowing what functions are at issue. No action should be taken on these interrogatories.

**6.     ZZX and AllRide have unsuccessfully sought to narrow the scope of otherwise overbroad or irrelevant interrogatories and document requests**. As ZZX has previously noted, Plaintiffs' allegations of what functions they claim are trade secrets set the parameters of discovery. *See, e.g.*, *Cedars Sinai Med. Ctr. V. Quest Diagnostics Inc., Case No.* CV 17-5169-GW (FFMx), 2018 WL 2558388, *4 (C.D. Cal. Feb. 27, 2018) (explaining that trade secrets complaint must include sufficient detail "for the court to craft limits on discovery"). Nothing in Judge Davila's preliminary injunction order suggests the Court intended to expand discovery beyond what functions Plaintiffs allege are at issue. Indeed, Plaintiffs themselves have interpreted the order as so limited because they have made available only the "at issue" portions of their source code.

Nonetheless, Plaintiffs propounded discovery on ZZX and AllRide that is unrelated to the trade secrets at issue. In particular, Plaintiffs' Interrogatory No. 2 asks for the identity of "all persons who are involved" in ZZX's development of autonomous vehicles. As ZZX objected, "involved" in this context is hopelessly vague and the interrogatory had no limitation to temporal scope or to the functions at issue. Similarly, Plaintiffs Interrogatory No. 11 seeks, without any limitations, information about all cars owned by ZZX with external sensors. Interrogatory No. 14 is even broader, seeking all assets of ZZX, including "current funds available in cash," all "real estate," "all vehicles," and all "other assets." Despite their overbreadth, ZZX has offered to meet and confer to limit the scope these interrogatories. To date, Plaintiffs have refused to inform ZZX whether any narrowed interpretation would be acceptable. Nonetheless, ZZX remains willing to supplement and produce information if the scope is narrowed to information relevant to the claims at issue.

Plaintiffs have served similar overbroad requests for production ("RFP") about ZZX's development of autonomous driving technology without limitation to time or functions at issue,

including Plaintiffs RFP No. 7 (VIN for all vehicles as part of development of technology); No. 8 (purchase history of all vehicles as part of development of technology); No. 10 (first purchase of vehicle); No. 13 (first creation of all source code by ZZX); No. 16 ("version controls" for all source code); No. 17 (storage software for all code); No. 18 (servers for all code); No. 19 (everyone with access to source code); No. 20 (all development and design documents); No. 27 (all analysis of WeRide); No. 31 (all documents "relating" to WeRide); No. 53 (development budget); 54 (monthly expenditures); No. 55 (total engineers); No. 62 (all business plans); Nos. 63, 69, 73 (all development plans); No. 68 (market analysis); Nos. 74-78 (dealings with other companies).   In other instances, Plaintiffs have sought information from ZZX and AllRide as to their finances, bank accounts, or investors without any effort to limit the request to the claims at issue.   *See* RFPs Nos. 64-67, 70-72 (to ZZX); RFP Nos. 21, 23-24, 28-30, 42 (to AllRide).   Yet, as with the interrogatories, in each of these instances, ZZX has offered to meet and confer to limit the scope to all of these otherwise overbroad requests.   Despite Plaintiffs refusal to inform ZZX whether any narrowed interpretation would be acceptable, ZZX remains willing to supplement and produce information is the scope is narrowed to the claims at issue.   However, until the requests are narrowed to evidence relevant to the claims at issue, no Court action should be taken on these requests.

   7.   ***Plaintiffs have also propounded improper requests to ZZX and AllRide***.   Plaintiffs served identically-phrased RFPs on ZZX and Allride seeking information "if you contend" a certain proposition applies.   *See* RFPs. Nos. 21-26, 33 (to ZZX) and Nos. 32-39 (to AllRide).   Such requests are not permitted under the Federal Rules, particularly because Plaintiffs have exceeded the number of permissible interrogatories under Rule 33.   *See*, *e.g.*, *Rutherford v. Paloverde Health Care Dist*., 2014 U.S. Dist. LEXIS 197183, *13 (C.D. Cal. April 24, 2015) (use of "contention requests" to circumvent limit on interrogatories is "is improper and an abuse of the discovery process"); *Bonilla v. Trebol Motors Corp*., 1997 U.S. Dist. LEXIS 4370, *214 (D. Puerto Rico May 27, 1997) (explaining that "contention requests to produce documents" do "not exist under the Federal Rules"), *overruled on other grounds by Bonilla v. Volvo Car Corp*., 150 F.3d 88 (1st Cir. 1998).   Many of these same requests also seek premature disclosure of expert opinions, or seek legal opinions about whether ZZX or AllRide acted "lawfully" or "unlawfully."   Plaintiffs have even challenged AllRide's objection to producing its trial exhibits now.   RFP. No. 42.   The Court should not grant any relief to compel responses to these improper requests.

   8.   ***ZZX's and AllRide's witness adequately testified as to the central issue of the case***.   Over the course of two days, a ZZX engineer who was involved in the development of ZZX's autonomous driving technology, testified at length and in detail about its development.   Despite his knowledge on the most salient issue in this case, Plaintiffs complain that the engineer did not know about how much other engineers were paid, or ZZX's budget, or about who were ZZX's investors, or who technically owned the licenses for certain software.   It is not unreasonable that an engineer focused on ZZX's source code may not have been able to fully answer each question on irrelevant topics.   Regardless, Judge Davila's order permitted Plaintiffs to take another Rule 30(b)(6) deposition of ZZX and AllRide in this case.   This will be more than sufficient to address any lingering questions remaining as the parties continue discovery.   As such, no Court action is required with respect to the Rule 30(b)(6) depositions that have occurred to date.

Mr. Kun Huang has been actively producing documents in compliance with the Court's order. Indeed, Mr. Huang has produced tens of thousands of documents to WeRide. Mr. Huang also handed over various electronic devices—including his personal laptop, iPhone, iPad, USB drive, and hard drive—for WeRide's inspection. Mr. Huang is also willing to work with WeRide and conduct a reasonable search in his personal email using mutually agreed search terms.

Mr. Huang's new counsel was informed of the discovery issues claimed to be in dispute on the evening of Tuesday June 7, with a demand that Mr. Huang immediately amend his responses. At the time, Mr. Huang's counsel was working with WeRide's counsel to produce certain documents previously withheld, which was subject to WeRide's *previous* motion to compel. Mr. Huang's new counsel informed WeRide's counsel that due to the transition, the parties should have a meet and confer session, so Mr. Huang's new counsel could better understand exactly what the requests at issue were, and what was needed from WeRide. WeRide, however, refused to engage and decided to file this motion with the Court. As noted below, Mr. Huang is willing to supplement his to responses to Interrogatory Nos. 1–4, 7–9 and work out mutually agreeable search terms for his personal emails demanded by WeRide.

**Kun Huang's Statement.**

Mr. Kun Huang has been actively producing documents in compliance with the Court's order. Indeed, Mr. Huang has produced tens of thousands of documents to WeRide. Mr. Huang also handed over various electronic devices—including his ZZX laptop, iPhone, iPad, USB drive, and hard drive—for WeRide's inspection. Mr. Huang is also willing to work with WeRide and conduct a reasonable search in his personal email using mutually agreed search terms.

Mr. Huang's new counsel was informed of the discovery issues claimed to be in dispute on the evening of Tuesday June 7, with a demand that Mr. Huang immediately amend his responses. At the time, Mr. Huang's counsel was working with WeRide's counsel to produce certain documents previously withheld, which was subject to WeRide's *previous* motion to compel. Mr. Huang's new counsel informed WeRide's counsel that due to the transition, the parties should have a meet and confer session, so Mr. Huang's new counsel could better understand exactly what the requests at issue were, and what was needed from WeRide. WeRide, however, refused to engage and decided to file this motion with the Court. As noted below, Mr. Huang is willing to supplement his to responses to Interrogatory Nos. 1–4, 7–9 and work out mutually agreeable search terms for his personal emails demanded by WeRide.

**Mr. Huang Has Produced Tens of Thousands of Documents and Will Continue to Search and Produce Responsive and Nonprivileged Documents**. As discussed above, Mr. Huang has produced tens of thousands of documents to WeRide, and handed over various electronic devices—including his ZZX laptop, iPhone, iPad, USB drive, and hard drive—for WeRide's inspection. With respect to WeRide's demand to search and produce additional documents from additional devices and accounts, Mr. Huang understands that defendants are working with WeRide on an ESI protocol to facilitate efficient search and production of responsive information. As to email production, Mr. Huang is willing to work with WeRide and conduct a reasonable search in his personal email using mutually agreed search terms. But Mr. Huang has no right or authority to produce his ZZX emails, which are controlled by co-defendant ZZX. WeRide will need to seek such emails from ZZX.

**Mr. Huang Agrees to Provide Supplemental Responses to Interrogatory Nos. 1–4, 7–9 by June 21**. Mr. Huang stands by his objections to Interrogatory Nos. 5 and 6. Interrogatory No. 5 requires Mr. Huang to "IDENTIFY, INCLUDING by file name or source code line number, all source code YOU provided to any other Defendant in this case." This interrogatory is vague, over broad, and unduly burdensome. In his everyday work for ZZX, Mr. Huang would be writing or checking in source code to ZZX's code base, and it is impractical to identify all of the source code by file names and line numbers. The same is true for Interrogatory No. 6, which demands Mr. Huang to "IDENTIFY all development, design, or planning DOCUMENTS that YOU provided to any other Defendant, INCLUDING DOCUMENTS purportedly written by YOU, received by YOU from any third parties, or otherwise acquired by any Defendant due to YOUR efforts." Creating development and planning documents is another one of Mr. Huang's daily tasks, and it is unduly burdensome and impractical for him to identify all of these documents. Interrogatory No. 9 is also vague and ambiguous, which asks Mr. Huang to "IDENTIFY all files you downloaded on May 6, 2018, May 9, 2018, May 30, 2018, June 7, 2018, June 9, 2018, June 11, 2018, June 25, 2018, June 26, 2018, July 12, 2018, July 17, 2018, and July 20, 2018 and state the size of each file." Mr. Huang will provide supplemental response to Interrogatory No. 9 with information he has custody, possession, or control, i.e., his browsing history on those dates.

DATED: June 17, 2019

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Ryan S. Landes
Claude M. Stern
Ryan S. Landes
Michael F. LaFond
*Attorneys for Plaintiffs WeRide Corp. and WeRide Inc.*

DATED: June 17, 2019

GREENBERG TRAURIG, LLP

By /s/ Todd Pickles
Kurt A. Kappes
Howard Holderness
Michael Lane
Todd Pickles
*Attorneys for Defendants ZZX and AllRide*

DATED: June 17, 2019

VINSON & ELKINS, LLP

By /s/ Wendy Wang
Mortimer Hartwell
Wendy Wang
*Attorneys for Defendant Kun Huang*

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

/s/ *Ryan S. Landes*

Ryan S. Landes
