QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  William T. Pilon (Bar No. 326487)
  williampilon@quinnemanuel.com
  Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  Ryan S. Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa Street
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Plaintiffs WeRide Corp. and WeRide Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE Corp. f/k/a JingChi Corp., WERIDE Inc. f/k/a JingChi Inc., | CASE NO. 5:18-cv-07233-EJD |
| Plaintiffs, | **WERIDE PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(B); 37(E)(1); 37(E)(2) AND THE COURT'S INHERENT POWERS** |
| vs. | |
| JING WANG, an individual, KUN HUANG, an individual, ZHONG ZHI XING TECHNOLOGY CO. LTD.. d/b/a ALLRIDE.AI, ALLRIDE.AI INC., KAIZR, INC., ZKA INC., DOES 1-10 | Date:       February 27, 2020<br>Time:       9:00 A.M.<br>Courtroom: 4, 5th Floor |
| Defendants. | The Hon. Edward J. Davila |
| | Action Filed: November 29, 2018<br>Trial Date:   None Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 27, 2019, at 9:00 A.M. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward J. Davila at the United States District Court for the Northern District of California, Courtroom 4 – 5th Floor, 280 South 1st Street, San Jose, California, Plaintiffs WeRide Corp. and WeRide Inc. (collectively "WeRide") shall move and hereby do move the Court to issue sanctions against Defendants Kun Huang, Jing Wang, Zhong Zhi Xing Technology Co. Ltd. ("ZZX"), and AllRide.AI, Inc. (collectively with ZZX, "AllRide").

WeRide's motion requests that the Court enter the following sanctions, pursuant to Federal Rules of Civil Procedure 37(b), 37(e)(1), 37 (e)(2), and the Court's inherent powers:

- An order striking the answers of Defendants Kun Huang, Jing Wang, Zhong Zhi Xing Technology Co. Ltd., and AllRide.AI, Inc. and entering a default judgment against them;

- An award of WeRide's attorneys' fees and costs associated with a series of needless discovery motions that WeRide was forced to file while Defendants concealed their spoliation; and

- An award of WeRide's attorneys' fees and costs associated with WeRide's investigation into Defendants' spoliation.

Alternatively, if the Court is not inclined to strike Defendants' answers and enter a default judgement, WeRide requests lesser sanctions as follows:

- That, for the purposes of trial in this matter, it shall be taken as conclusively established that Huang downloaded WeRide's source code, shared that code with AllRide, and AllRide used that code to develop its own source code and autonomous vehicle technology;

- An adverse inference jury instruction that the contents of the four laptops and two USB drives spoliated by Kun Huang would have been unfavorable to the Defendants;

- That, for the purposes of trial in this matter, it shall be taken as conclusively established that the Defendants did not independently develop their own source code, products, or technology, at least through February 28, 2019;

- An adverse inference jury instruction that the lost weekly engineering reports and Phabricator notice emails would have been unfavorable to the Defendants;

- That, for the purposes of trial in this matter, it shall be taken as conclusively established that the "waypoint files" Defendants are unable to recover never existed in the first instance;

- That, for the purposes of trial in this matter, it shall be taken as conclusively established that Wang controlled AllRide at all times relevant during this lawsuit, and that Wang knew of, and ratified, AllRide's misappropriation of WeRide's code, and that Wang recruited Huang to work for AllRide;

- An adverse inference jury instruction that the emails in Wang's various @allride.ai email accounts would have been unfavorable to the Defendants;

- That, for the purposes of trial in this matter, it shall be taken as conclusively established that Huang, while still employed by WeRide, acted in the service of AllRide to recruit his coworkers to work at AllRide, against WeRide's best interests, and in doing so, breached his fiduciary and contractual duties to WeRide;

- An adverse inference jury instruction that the emails in Huang's original @allride.ai email account would have been unfavorable to the Defendants;

- That, for the purposes of trial in this matter, it shall be taken as conclusively established that Wang, make false and defamatory statements to WeRide's investors, including Hanfor, Xiaopeng He, SenseTime, Goldstone, Lenovo, Bojiang Capital, Xinding Capital, and Oriza Prior, for the purpose of inducing them not to invest in WeRide and to invest in AllRide;

- That the Defendants shall be precluded from adducing evidence or argument at trial contrary to any of the established facts listed here;

- That WeRide is entitled to an award of its attorneys' fees and costs incurred in connection with (i) this motion; (ii) all discovery related to Defendants' spoliation of evidence; (iii) the discovery motion practice before Judge Cousins related to Docket Nos. 139, 146, 149, 157, 170, 192; and (iv) WeRide's efforts to enforce compliance

1    with the Court's orders including those filed at Docket Nos. 235, 252, 266, 273, 289,

2    and 319.

3    The remedies sought by WeRide, both in the first instance and in the alternative, are more fully

4    set forth in the accompanying proposed order prepared by WeRide.

5    WeRide's motion is based on this notice of motion and motion, the following memorandum of

6    points and authorities; the supporting declarations of Ryan Landes, Dr. Matthew R. Walter, and

7    Michael Kunkel, and the exhibits to those declarations; all matters of which the Court may take

8    judicial notice; other pleadings on file in this action; and other written or oral argument that WeRide

9    may present to the Court.

10   DATED:  October 22, 2019          QUINN EMANUEL URQUHART & SULLIVAN,
                                       LLP

11

12

13                                     By   *Ryan S. Landes*
                                              Claude M. Stern

14                                            Ryan S. Landes
                                              Michael Kang

15                                            Michael F. LaFond
                                              *Attorneys for Plaintiffs WeRide Corp. and WeRide*

16                                            *Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ISSUES TO BE DECIDED......................................................................................................2

BACKGROUND OF WERIDE'S CLAIMS ................................................................................2

TIMELINE OF DEFENDANTS' SPOLIATION AND DISSEMBLING .........................................3

LEGAL AUTHORITY FOR SANCTIONS AND THE BURDEN OF PROOF ..........................16

ARGUMENT .......................................................................................................................16

I.      DEFENDANTS' MISCONDUCT REQUIRES TERMINATING SANCTIONS .............16

      A.    Terminating Sanctions Are Proper Under Rule 37(b) and the Court's Inherent Power .........................................................................................17

            1.    Defendants' Are at Fault for Willful, Bad Faith Conduct..........................17

            2.    Defendants' Conduct Easily Meets the First Two *Leon* Factors.................18

            3.    WeRide is Decisively Prejudiced, Meeting the Third *Leon* Factor.............19

            4.    Defendants' Dissembling Meets the Fourth *Leon* Factor...........................21

            5.    The Last *Leon* Factor Also Favors Dismissal. ............................................22

      B.    Terminating Sanctions Are Also Appropriate Pursuant to Rule 37(e)(2). ..............23

II.     IF THE COURT IS NOT INCLINED TO GRANT TERMINATING SANCTIONS, THEN PRECLUSIVE SANCTIONS ARE THE MOST APPROPRIATE. ...................................................................................................25

III.    IN EITHER CASE, ATTORNEYS' FEES ARE A NECESSARY SANCTION ..............25

IV.    CONCLUSION ......................................................................................................25

# TABLE OF AUTHORITIES

**Page**

### Cases

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
   69 F.3d 337 (9th Cir. 1995)...................................................................................................... 17

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)....................................................................................................................... 17

*Collins v. United States*,
   269 F.2d 745 (9th Cir. 1959)...................................................................................................... 23

*Columbia Pictures, Inc. v. Bunnell*,
   2007 WL 4877701 (C.D. Cal. Dec. 13, 2007) ............................................................... 17, 20, 23

*Compass Bank v. Morris Cerullo World Evangelism*,
   104 F. Supp. 3d 1040 (S.D. Cal. 2015) ....................................................................................... 17

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007) .................................................................................................... 20

*Coyne v. Los Alamos Nat'l Sec., LLC*,
   2017 WL 3225466 (D.N.M. May 1, 2017) ................................................................................. 25

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
   2017 WL 2298473 (S.D. Cal. May 26, 2017) ............................................................... 20, 22, 26

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*,
   2009 WL 1949124 (N.D. Cal. July 2, 2009) ........................................................................ 18, 26

*Fair Hous. of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002)...................................................................................................... 20

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
   2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) .............................................................................. 24

*Hugler v. Sw. Fuel Mgmt., Inc.*,
   2017 WL 8941163 (C.D. Cal. May 2, 2017) .............................................................................. 17

*Inland Concrete Enterprises, Inc. v. Kraft Americas LP*,
   2011 WL 13209166 (C.D. Cal. Mar. 9, 2011) ........................................................................... 26

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006).............................................................................................. passim

*OmniGen Research v. Yongqiang Wang*,
   321 F.R.D. 367 (D. Or. 2017) ............................................................................................ passim

*Oppenheimer v. City of La Habra*,
   2017 WL 1807596 (C.D. Cal. Feb. 17, 2017) ........................................................................... 25

*Padgett v. City of Monte Sereno*,
  2007 WL 878575 (N.D. Cal. Mar. 20, 2007) ........................................................ 18

*Porter v. City & Cty. of San Francisco*,
  2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ................................................. 24, 25

*Pringle v. Adams*,
  2012 WL 1103939 (C.D. Cal. Mar. 30, 2012) ..................................................... 23

*The Sunrider Corp. v. Bountiful Biotech Corp.*,
  2010 WL 4589156 (C.D. Cal. Nov. 3, 2010) ................................................. 17, 20

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998) ............................................................... passim

*Williams v. Am. Coll. of Educ., Inc.*,
  2019 WL 4412801 (N.D. Ill. Sept. 16, 2019) ............................................... 23, 25

## Rules and Regulations

Fed. R. Civ. P. 37(b), 37(e)(1), 37 ........................................................... i

Fed. R. Civ. P. 37(e)(2) ...................................................................... 24

Fed. R. Civ. P. Rule 37(b)(2) ................................................................ 17

Fed. R. Civ. P. Rule 37(e) ................................................................... 17

## Additional Authorities

*https://www.wechat.com/en/.* .................................................................. 6

**PRELIMINARY STATEMENT**

Plaintiffs WeRide Corp. and WeRide Inc. (collectively "WeRide") have filed claims against defendants Kun Huang, Jing Wang, Zhong Zhi Xing Technology Co. Ltd. ("ZZX"), and AllRide.AI, Inc. (collectively with ZZX, "AllRide") for trade secret misappropriation, breach of fiduciary duty, breach of contract, libel, intentional interference, and other claims.  Based on WeRide's allegations, the key issues in this lawsuit are, and have always been:

1. Did the Defendants take WeRide's trade secrets?

2. Did the Defendants use WeRide's trade secrets?

3. Was Huang breaching his fiduciary duty, and his contract with WeRide, by working for the other Defendants while still employed by WeRide?

4. Did Wang libel WeRide to its investors; breaking his contract, and by extension, interfere with WeRide's economic relationships with its investors?

These questions can no longer be answered because Defendants engaged in a months-long course of evidence destruction calibrated to undermine reaching the truth for every one of these issues:

1. Whether WeRide's code was taken cannot be answered because Defendant Huang wiped files from two laptops, destroyed a third, spoliated code files on a fourth, and "lost" two additional USB drives, cutting off all efforts to trace files from WeRide.

2. Whether Defendants have used WeRide's code cannot be determined because AllRide has produced, and intends to rely on, *false* code that contradicts the testimony of its own corporate representative, and destroyed weekly engineering reports and countless other contemporaneous documents that could have shown the actual course of code development.

3. Whether Huang worked for AllRide before he left WeRide cannot be determined because Huang and AllRide destroyed the ██████████████████████████

4. Whether Wang libeled WeRide cannot be determined because Wang and AllRide destroyed *four* separate email accounts (including the emails sent or received by those accounts), eliminating prime evidence of libelous communications.

As the Ninth Circuit has explained, "[t]here is no point to a lawsuit, if it merely applies law to lies." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).  Consistent with

that understanding, this lawsuit should be brought to its inevitable conclusion.  Defendants intentionally or recklessly destroyed thousands of documents and whole document repositories.  With the documents gone, Defendants began changing their testimony with the winds, ensuring that there is no way for WeRide, the Court, or an eventual jury to determine the truth.  Any trial in this matter would be purely for show: witnesses who have contradicted themselves two and three times already would doubtless tell brand new stories, none of which could be tested because Defendants destroyed everything written down.  If there is to be any semblance of justice or fairness, Defendants' mass, coordinated, spoliation campaign following multiple Court orders must result in case dispositive sanctions.  And if not justice, then pragmatism: Defendants who will do or say anything to avoid liability should not get to take up more of the Court's time and resources.  Dispositive sanctions must issue.

## ISSUES TO BE DECIDED

Whether the bad faith, willful destruction of at least thousands of highly relevant documents by all Defendants, in violation of multiple Court orders, coupled with their ever-changing, counter-factual testimony, has so undermined the truth seeking purpose of litigation that the only reasonable remedy is striking their answers, issuing a default judgment, and awarding fees.  In the alternative, to the extent that the Court does not enter a default judgment, whether issue, evidentiary, and fee-shifting sanctions are sufficient to remedy Defendants' evidence destruction and dissembling testimony.

## BACKGROUND OF WERIDE'S CLAIMS

The events underlying WeRide's claims are set forth in the Second Amended Complaint ("SAC," Dkt. 210), but briefly summarized here to explain the prejudice resulting from the countless documents Defendants destroyed, either intentionally or with willful indifference.  WeRide brought this suit against two former employees, Jing Wang, WeRide's former CEO; Kun Huang, WeRide's former Heard of Hardware Technology; and their newly founded companies, Defendants ZZX and AllRide.AI Inc.  *See* SAC ¶1.  WeRide alleges that in June 2018, Wang founded AllRide to compete with WeRide, but has tried to hide his involvement in AllRide; and Wang recruited Huang to join him in July 2018. *See* SAC ¶¶56-59, 74-90.  While still working for WeRide, Huang stole WeRide's autonomous driving source code and other confidential material, disclosed it to AllRide, and AllRide put the stolen material to use no later than October 2018.  *See* SAC ¶¶99-118.  Meanwhile, in August and September 2018, as

1  he was orchestrating Huang's theft, Wang was also slandering and disparaging WeRide to WeRide's

2  potential investors, in violation of Wang's separation agreement with WeRide.  SAC ¶¶60-73.

3      However, as set forth below, Defendants have systematically destroyed all of the evidence

4  (physical and electronic) that could shed any light upon WeRide's claims—and that destruction took

5  place *after* Defendants were "on notice" that a lawsuit would be filed.

6  **TIMELINE OF DEFENDANTS' SPOLIATION AND DISSEMBLING**

7      **Wang Is Sued by His Former Employer and WeRide Terminates Wang.**  In December

8  2017, Wang's former employer, the Chinese tech company Baidu, sued Wang and WeRide, alleging

9  trade secret theft. Ex. 9 at 91:13-17; 93:5-18.[1]  In the lawsuit, Baidu produced a letter signed by Wang,

10  stating that he "lost" a Baidu-issued laptop, and therefore could not return it to Baidu.  Ex. 85.[2]  ████

11  ████████████████████████████████████████████████████████████  WeRide terminated

12  Wang's employment in February 2018. Ex. 9 at 118:11-21; 120:10-16; 121:16-123:10; 125:23-126:9.

13      WeRide alleges that, after Wang's employment at WeRide was terminated, he founded the

14  AllRide enterprise.  *See* SAC ¶4.  Wang disputes this, but has yet to provide a coherent counter-

15  explanation: instead, he has told multiple, ever-changing stories of how AllRide was founded.

16      **Wang's Changing Tales of AllRide's Founding.**  Wang has presented three contradictory

17  versions of AllRide's founding.  ***First***, Wang claimed that AllRide's other founders, Johnny Chen,

18  Peijian Gu, and Patrick Lam (in Chinese, Hui Ling Lam, *see* Ex. 4 at 48:18-50:18), asked Wang to help

19  them found AllRide, but he could not become involved because he was too busy running the "Nanjing

20  Industrial Travel Fund."  *See* Ex. 54 ¶32; Ex. 67 45:9-23.  ***Second***, when confronted with evidence that

21  Wang did, in fact, take on a leadership role at AllRide and directly supervised its engineers, Wang's

22  counsel said that  ████████████████████████████████████████████████████

23  ████████  *See* Ex. 78 at 10. ***Third***, Wang later admitted that this new tale was also incorrect, because

24  ████████████████████████████████████████████████████████████

25  ██████████████████.  *See* Ex. 70 ¶15.  Wang's documents from this time could help resolve

26  ——————————————————

27  [1]  Exhibits to the Declaration of Ryan Landes are cited herein simply as "Ex."

28  [2]  Wang's "lost" Baidu laptop is not independently relevant here, except that it demonstrates the
Defendants *regularly* "lose" laptops when confronted with legal troubles.

1   which story is true, but Wang "lost" or gave away his laptop (distinct from the "lost" Baidu laptop) in

2   June 2018.  *See* Ex. 79 at 10.  **Running Spoliation Total: 1 laptop.**[3]

3         **Huang Begins Working for AllRide While Still Employed by WeRide, and Lies About It.**

4   In July 2018—while he was still a senior executive at WeRide—Huang asked WeRide employee Liren

5   Xu to leave WeRide to join "Jing Wang's new company." Ex. 52 ¶34.  Mr. Xu reported Huang's

6   behavior to WeRide's HR department, as corroborated both by his WeChats (*see* Ex. 43) and ███

7   ████████████████████████████████████████████████████████████████████████████

8   ████  Ex. 41.  Forensic analysis of Huang's laptop reveals that he ████████████████

9   ████████████████████████████ Kunkel Decl. ¶12.

10        Despite this documentary evidence and testimony, Huang has repeatedly claimed, under oath,

11  that he ***never even met*** anyone from AllRide until August 2, 2018. ███████████████

12  ██████████████████████████████████ Ex. 8 at 582:1-588:18.[4]

13        **Huang Is Terminated, Has a Duty to Preserve Evidence, but Destroys Evidence.**  In the face

14  of Huang's disloyalty, WeRide terminated Huang's employment on July 31, 2018, and cautioned Huang

15  not to take WeRide's intellectual property or solicit WeRide's employees.  Ex. 55 ¶13. ████

16  ████████████████ (Ex. 8 at 466:16-19), ███████████████████████

17  ████████████████████████ *See* Ex. 35 (emphasis added).  Over the next

18  two days, ████████████████████████████████████████████████

19  ████████████████████████ Kunkel Decl. ¶11 & Ex. C.

20      ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22

---

23  [3] WeRide will be using this **red font** notation to show Defendants' cumulative spoliated content and
    media at each point in the timeline.

24  [4] Huang repeatedly feigned ignorance in an attempt to escape his misdeeds.  Huang claimed he "does
    not know" how ████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████ Ex. 8 at 582:1-
    588:18; *see also* Ex. 3 at 311:16-314:5; Ex. 6 at 263:1-274:22.  Huang cannot rely on professed

28  forgetfulness to nullify incriminating evidence.

1    ████████████████ Dkt. 34-3 ¶ 11-20.  Huang also took with him three USB drives that had been

2    connected to those laptops, and later claimed to have lost two of them.  *Id.*; Ex. 82 ¶12.  ██████

3    ████████████████████████████████████████████████████████████████████████████████████

4    ████████████████████ *See* Ex. 11 at 119:5-123:22.  **<span style="color:red">Running Spoliation Total: 3 laptops, 2 USB</span>**

5    **<span style="color:red">devices, entire</span>** ██████████████████████████

6        **AllRide Begins Regular Email Deletions.**   In July 2018, ████████████████████████

7    ████████████████████████████████████████████████████████████████████████████████████

8    █████████████████████████████████████████████████████████ Ex. 11 at 249:1-

9    20; Ex. 12 at 37:21-2.[5]  AllRide has given inconsistent testimony on why it set an auto delete policy; for

10   example, ███████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████████

12   ██████   *See* Ex. 12 at 55:2-59:7; Ex. 4 at 268:15-269:4.  Indeed, the Court-appointed forensic neutral,

13   FTI Consulting ("FTI"), found AllRide gave "inconsistent" answers on this point.  Ex. 84 at 19.

14       With the rolling email deletion policy in place, AllRide began generating key, dispositive ***email***

15   evidence in August 2018.  No later than August 15, 2018, ███████████████████████████

16   ████████████████████████████████████████████████████ Ex. 3 at 359:19-360:1; Ex.

17   8 at 547:8-549:21.  ████████████████████████████████████████████████████████

18   █████████████████████████████████ Ex. 8 at 566:19-567:14; Ex. 25.  But

19   Defendants have not produced ***any*** reports dated before November 2, 2018, and Huang confirmed the

20   ███████████████████████████████████████████████.  Ex. 8 at 567:15-23.

21       Moreover, emails recovered from Huang's laptop indicate ████████████████████████

22   ████████████████████████ (*see* Ex. 83), ████████████████████████████████

23   ████████████████████████████ *See* Ex. 6 at 204:14-205:8; Ex. 27.  However, Defendants

24   have not produced any such emails pre-dating March 2019—i.e., no such emails from more than 90

25   days before AllRide deactivated its 90-day auto delete in June 2019.  *See* Ex. 56.  **<span style="color:red">Running Spoliation</span>**

26

27   _____
     [5]  As described below, ***all*** of the Defendants had a duty to preserve evidence by November 2018.  *See,*
     *infra*, at 8.  Emails from August 2018 and later are within 90 days of November 2018; had the deletion
28   policy been disabled then (or never implemented), those emails would still exist.

1   <u>**Total: 3 laptops, 2 USB devices,**</u> ███████████████████████

2   ████████████████████████████████████ **all other company emails older than 90 days.**

3       **Huang Spoliates Another Laptop; Wang Disparages WeRide to Its Investors and Receives**

4   **a Cease & Desist Letter.**   On the night of October 1, 2018, Huang "turned in" his personal Macbook

5   laptop to an Apple Store, allegedly because it was broken.  *See* Ex. 55 ¶16.  However, the receipt lists

6   the condition as "working" (Ex. 1); this was just more spoliation.

7       Earlier that same day, WeRide's outside counsel sent Wang a cease and desist letter, alerting

8   Wang to a potential lawsuit and triggering Wang's duty to preserve evidence. Ex. 72.  WeRide was

9   forced to send the letter because, in August and September of 2018, Wang contacted multiple WeRide's

10   investors—as confirmed by WeChats[6] Wang has produced, and those same investors (including Hanfor,

11   Lenovo, Sensetime, and Oriza) then pulled their investments, despite previously signing term sheets.

12   Exs. 36-39 (Wang WeChats), Exs 62-66 (Term Sheets); Ex. 60 (Lu Decl.) ¶38.  The clear inference is

13   that Wang violated the non-disparagement clause in his separation agreement.  *See* Ex. 61.  <u>**Running**</u>

14   <u>**Spoliation Total: 4 laptops, 2 USB devices,**</u> ███████████████████████

15   ████████████████████ **all other company emails older than 90 days.**

16       **AllRide's Changing Tales Regarding Its October 2018 Code.**   On October 22, 2018, Huang

17   showed a slide show and a video showcasing AllRide's autonomous vehicle at a university in Nanjing,

18   China.   Dkt. 34-14, Ex. 51 ¶6; Ex. 59 ¶17.   WeRide's third-party expert analyzed the video and

19   determined that it showed  five advanced autonomous driving capabilities (the "Advanced

20   Capabilities")[7] that AllRide could not have independently developed in its short existence. Ex. 59 ¶17.

21   AllRide's vehicles also made use of radar sensors positioned in the same way as on WeRide's vehicles.

22   *Id.*  AllRide has told two contradictory stories to try and justify its inexplicable development timeline.

23       *AllRide's First Story*: AllRide and Huang claimed that AllRide made use of open source code

24   and a "pre-existing" team of engineers to "quickly" develop technology.  Ex. 55 ¶25; Ex. 53 at 7-8.

25

---

26   [6]   WeChat is a popular Chinese-language messaging and communication app that can be used with most cell phones.  *See https://www.wechat.com/en/.*

27

28   [7]   The Advanced Capabilities included: (i) operating without a safety driver; (ii) steering, accelerating, and braking smoothly; (iii) using an HD Map; (iv) detecting and stopping for pedestrians in crosswalks; and (v) changing lanes to pass a slower moving vehicle.  *See* Dkt. 34-43 ¶17.

AllRide also claimed (incorrectly) that third party autonomous vehicle developers used WeRide's radar positioning.  Ex. 53 at 7-8.  AllRide produced a Rule 30(b)(6) witness, Dr. Yahui Liu, who testified extensively about how each of the capabilities shown in the video worked.  For example, Dr. Liu provided this explanation for how AllRide's lane changing capability worked:

Ex. 1 at 127:16-128:8.  The trouble is, ███████████████████████████████████████████████
███████████████████████████████████████████████████  Ex. 44 ¶¶11-17.
Accordingly, WeRide moved to compel production of the actual October 2018 Code.  *See* Dkts. 170, 252.  Rather than admit it had ████████████████AllRide chose instead to change its story.

*AllRide's Second Story:*  After WeRide's motion to compel production of the October 2018 code was referred to the Special Master, AllRide produced a declaration from Dr. Liu that ***disavowed*** his extensive, detailed deposition testimony.  Dr. Liu now claims ██████████████████████████
██████████████████████████████████████████████████████████  Ex. 47 ¶15.  That is completely inconsistent with his prior testimony: ███████████████████████████████████████████████████
██████████████████████████████████████████████████████████████  *See* Walter Decl. ¶17.  In essence, AllRide now claims ███████████████████.  *Id.*
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████Ex. 49 ¶10.

Put simply: █████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████  Walter Decl. ¶17.  And, in his new declaration, Dr. Liu similarly disavows his prior testimony about ████████████████████████████████████
█████████████  *Compare* Ex. 1 at 124:9-22; 74:11-19; 74:20-75:4; 108:5-11; 123:3-6; *with* Ex. 47 ¶¶18,

25; *see also* Walter Decl. ¶¶24-31.  But Dr. Liu submitted an errata after his deposition and did **not**

correct any of that testimony (despite making substantive changes on other topics).  *See* Ex. 2.  And, of

course, Dr. Liu avers that █████████████████████████████████████████

███████████████  *See* Ex. 47 ¶26.  **<span style="color:red">Running Spoliation Total: 4 laptops, 2 USB devices,</span>**

██████████████████████████████████████████████████████ **<span style="color:red">all other</span>**

**<span style="color:red">company emails older than 90 days,</span>** █████████████████████████

**All Remaining Defendants Receive Notice of the Lawsuit by November 2018.**  After seeing

AllRide's October 22, 2018 video, WeRide sent Huang a cease and desist letter on November 15, and

Huang's attorneys (the same firm he consulted in July) acknowledged receipt on November 20.  *See*

Exs. 73-74.  The letter demanded that Huang preserve AllRide-related documents.  *Id.* ██████

████████████████████████████████████████████████████████

██████  *See* Ex. 35.  WeRide filed suit on November 29, 2018 (Dkt. 1); ███████████████

██████████████████████████  *See* Ex. 40.

**Despite Notice of the Lawsuit, Wang Intentionally Destroys His AllRide Emails, as well as**

**Hard Copy Documents.**  Weeks after the litigation hold notices to AllRide (which Wang was leading,

or at least in regular communication with), ████████████████████████████████

███████████████████  Ex. 7 at 90:4-9, 97:18-21; Ex. 12 at 20:7-18.  Wang says ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████  Ex. 7 at 16:1-18:4.[8]

████████████████████████████████████████████████████████

████████████████████████████████████  *See* Ex. 70 ¶12.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████  Ex. 7 at 29:17-20; 33:19, 35:23-37:6, 39:8-10.  **<span style="color:red">Running Spoliation Total: 4</span>**

---

[8]  At deposition, █████████████████

Ex. 7 at 128:4-10.  That cannot be true: ██████████████████████████

████████████████████  *Id.*  What changed between October and December?

WeRide's complaint (referencing the media reports) was filed on November 29.  *See* Dkt. 1.

1  **laptops, 2 USB devices,** ████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ███████, **all other company emails older than 90 days.**

4        **Despite the (Tepid) Advice of Their Counsel, _None_ of the Defendants Took _Any_ Steps to**

5  **Preserve Evidence.**  By December 4, 2018, all of the Defendants had received actual notice of the

6  lawsuit or the impending lawsuit; but they took no steps to preserve evidence.  Huang testified that ███

7  ████████████████████████████████████████████████████████████

8  ██████████████████████████████  Ex. 8 at 414:2-415:21, 517:14-518:3.  Wang ██████

9  ████████████████████████████████████████████████████████████

10  ████████ (_see_ Ex. 78 at 10; Gao Decl. ¶¶3-5), ████████████████████  Ex. 7 at 90:4-9,

11  97:18-21; Ex. 12 at 20:7-18. ████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████  Ex. 12 at 158:8-159:3; Ex.

16  42 at AllRide0405370. ████████████████████████████████

17  ████████████████████████████████████████████████  (Ex. 8 at

18  503:6-511:11); Wang's devices and accounts were not imaged until August 2019 (Ex. 79); ████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████  _See_ Ex. 11 at 91:14-98:7.  Meanwhile, AllRide's 90-day automated email

22  deletion continued apace, and ████████████████████████████████████

23  ████████████████████████████████████████.  _See_ Ex. 56; Ex. 12 at 57:2-59:7.

24        **The Court Issues a Preliminary Injunction; All of the Defendants Promptly Violate It.**  The

25  Court granted WeRide's motion for a preliminary injunction, in part, on March 22, 2019.  _See_ Ex. 68.

26  The Court's injunction ordered the following:

27        [The] Enjoined Defendants, and all persons acting under, in concert with, or for any one
      of them, whether or not in the United States, are hereby restrained and enjoined from . . .

28        [:] Destroying, concealing, disposing, deleting, removing or altering any and all
      documentation of any kind, whether paper or electronic . . . relating in any way to

source code written, developed, edited, reviewed, or used by Defendants and all persons acting under, in concert with, or for any one of them. . . .

Huang and AllRide and their agents and all of those in active concert or participation with Huang or AllRide shall, [by March 26, 2019], make the following items . . . available to WeRide's counsel of record for full-disk forensic imaging . . . [:] Any computer (laptop and/or desktop) and every form of media . . . which contain or have ever contained WeRide's trade secrets . . . .

Dkt. 116 at 24-26. *All* of the Defendants promptly and continuously disobeyed this Court order, and most of them testified ███████████████████████. Ex. 7 at 211:20-212:2, Ex. 5 at 165:9-16, Ex. 11 at 199:13-19. ████████████████████████████████████████

████████████████████████████████ Ex. 11 at 230:16-231:12.

Days after the injunction issued, ████████████████████████████████████

████████████████████████████ Ex. 5 at 222:5-223:2, 230:1-232:15.[9]

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 7 at 126:21-128:25. ██████████████████████████████ Ex. 4 at 312:17-313:2.

████████████████████████████████████████ Ex. 10 at 156:22-157:9; Ex. 42 at AllRide0405082.  And Huang, upon receiving a court order directing him to surrender his laptop on March 26, ██████████████████████████████████

██████████████████████ Kunkel Decl. ¶¶6-10. █████████████████████

██████████████ despite the order requiring production by March 26.  *See* Ex. 68; Ex. 8 at 503:6-511:11.  **Running Spoliation Total: 4 laptops, 2 USB devices,** ████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ **all other company**

_____

[9]  Emails recovered from Huang's laptop show ████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

<span style="color:red">**emails older than 90 days, all manually deleted files from any source,** ████████████ ████████████████████ **unknown volume of documents from** ████████████ ██████████████████████████████.</span>

**Defendants Destroy _Thousands_ of Emails.**  AllRide's counsel claims to have first discovered in mid-June 2019 that AllRide's custom company-wide 90-day deletion policy was still active – months after the Court issued the preliminary injunction order, and longer still after Defendants had notice of this suit.  *See* Dkts. 1, 231; Exs. 35, 40, 72-74.  Even AllRide's corporate representative testified that t████████████████████████████████████████ Ex. 11 at 174:16-20, but it unquestionably includes **thousands** of emails.  AllRide produced a report showing how many emails from its 15 custodians were collected from its email server by month from July 2018 through August 2019, which is summarized in Table 1 below (March 2019 is 90 days before the auto-delete was deactivated):

**Table 1: Total AllRide Custodian Emails Collected from Email Server[10]**

| 2018 | | | | | | 2019 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| July | Aug. | Sep. | Oct. | Nov. | Dec. | Jan. | Feb. | Mar. | Apr. | May | Jun. | July | Aug. |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |

AllRide asserts that it has recovered "a few emails" from certain employees' local devices, but ████████████████████████████████████████████████.  Ex. 56; Ex. 11 at 106:12-107.  Table 2 shows the number of "unique" (i.e. non-duplicative) emails sent to the @allride.ai email addresses recovered from **all** locations for all of AllRide's custodians (with the single exception of Huang's devices turned over after the PI Order, which only include emails to and from Huang).

**Table 2: Unique AllRide Emails Collected from All Sources[11]**

| 2018 | | | | | | 2019 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| July | Aug. | Sep. | Oct. | Nov. | Dec. | Jan. | Feb. | Mar. | Apr. | May | Jun. | July | Aug. |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |

*See* Ex. 12 at 61:23-63:9; Ex. 31.

Defendants have tried various theories to explain this dropoff.  First, ████████████████████████████████████████████████

---

[10]  Ex. 30.
[11]  Ex. 31.

█████████. Ex. 11 at 233:21-234:19, 248:17-25. ████████

████████████████████████████████████████████████████████████

████████████ (*see* Ex. 12 at 93:13-25), but that explanation is inconsistent with the evidence AllRide itself has produced.  For example, ████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████

| Kun Huang's Emails by Month (Collected from Microsoft Outlook) | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | | | 2019 | | | | | | | |
| J | A | S | O | N | D | J | F | M | A | M | J | J | A |
| ████████████████████████████████████████████████████████████ | | | | | | | | | | | | | |

| Yahui Liu's Emails by Month (Collected from Microsoft Outlook) | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | | | 2019 | | | | | | | |
| J | A | S | O | N | D | J | F | M | A | M | J | J | A |
| ████████████████████████████████████████████████████████████ | | | | | | | | | | | | | |

It is not credible that █████████████████████████████████████████

█████████████████████████████.  Further, AllRide claims its mass deletion is limited to email, but █████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Ex. 12 at 57:2-59:7.

**Defendants Attempt to Cover Up Their Mass Spoliation.**  WeRide served discovery on April 22, 2019.  By the end of May, Defendants had not produced *any* documents or proposed a methodology for collection, other than the devices that Huang was ordered to surrender.  Decl. ¶78 & Ex. 77.  AllRide's counsel claimed, in a May 29, 2019 meet and confer letter, that "[AllRide] conducted an electronic search of communications between Wang and . . . officers and employees of [AllRide] . . . .  No documents responsive to any topics relevant to this case—*e.g.* WeRide, Kun Huang, or autonomous driving vehicles—were located as a result of this search." Ex. 76.  ███████████████

█████████████████████████████████████████ *See, e.g.* Exs. 17-18; Dkt. 166 at 13.  On May 30, WeRide's counsel informed AllRide's counsel that it knew AllRide was either lying about these documents, or spoliating evidence.  Landes Decl. ¶ 78.

Despite discovering the spoliation in mid-June at the latest, AllRide hid it from WeRide and the Court until mid-August.  *See* Dkt. 231.  In the meantime, WeRide was forced to file wasteful motions to compel the production of already-destroyed documents.  *See* Dkt. 235.  In Judge Cousins' words,

"the timing of [Defendants' spoliation] disclosure . . . very much undercuts the credibility of the Defendants and their counsel's representations about all the discovery." Ex. 69 at 38:12-14.

Meanwhile, the spoliation did not end.  AllRide's eDiscovery vendor, KLDiscovery ("KLD")

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████. Ex. 11 at 198:20-200:3. ████████████████████████████

████████████████████████████████████████████. *Id.* 101:14-23.

In June or July 2019 ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████ *See* Ex. 7 at 183:18-187:22.[12]

Additionally, the forensic neutral determined that AllRide continued to permanently delete the email accounts of former employees upon their resignation until at least August 2019—████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████ *See* Ex. 84 at 8, 16-17; Ex. 12 at

57:5-59:7.  **Running Spoliation Total: 4 laptops, 2 USB devices,** ██████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ **former employee**

**email accounts, all other company emails older than 90 days, all manually deleted files from any**

**source,** ████████████████████████████████████████████████ **, unknown documents from the**

███████████████████████████████████████████████████ **,** ████████████████

_____

[12] ██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

[13]  Documents recovered from Huang's laptop suggest that ████████████████████

████████████████████████████████████ *See* Landes Decl. ¶¶ 14-17 & Exs. 13-15.

███████████████████████████████████████████████████████████. *See*

Ex. 16 at 22.

**AllRide Spoliated Source Code.**  To this day, AllRide *still* refuses to confirm whether it has produced its "October 2018 Code," giving rise to a clear inference of spoliation.  First—and in contravention of the Court's order—Defendants Huang and AllRide refused to make the code on Huang's surrendered laptop (which code Huang spoliated on March 24 and 25, *see, supra* at 10) available until May 29, 2019.  Ex. 75.  And when WeRide's expert reviewed the code, ████████

████████████████████████████████ *See* Ex. 44 ¶¶9-10. ████████

████████████████████████████████████████

████████████████████████ Ex. 45 ¶12.

While this was happening, and unbeknownst to WeRide, ████████

████████████████████ *See* Ex. 6 at 201:6-204:10.[14]  Dr. Liu now swears that ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ *See* Ex. 12 at 117:9-18; Ex. 6 at 164:10-166:25.

On July 5, AllRide finally announced it was producing the code it used in October 2018, and that Dr. Liu described at his deposition.  *See* Dkt. 166-63. ████████

████████████████████████████████

████████ *See* Ex. 46 ¶26.  More than a month later, on August 16, AllRide represented that it would be producing additional files in response to Dr. Walter's opinions.  *See* Ex. 69 at 55:2-6.  What followed is outlined above (*supra* at 6-7): ████████

████████████████████████████████████████

████████████ *See* Ex. 50 ¶¶ 18, 22.  Then, on October 2, following yet another declaration from Dr. Walter identifying yet more inconsistencies, AllRide claimed that, due to a "miscommunication," AllRide had not actually produced all of the relevant files, and would be

[14] ████████

████████████████████████████████████████

1   producing more.  Ex. 80.  At wit's end, WeRide ████████████████████████████

2   ███████████████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████████████

4   ██████████████████████████████████  Ex. 81.  On these facts there is only one clear

5   inference: ████████████████████████████████████

6         **Defendants Obstruct the Investigation into Their Spoliation.**  After Defendants' months-late

7   admission of their mass spoliation, they promised to comply with any investigation, and to be open and

8   transparent.  *See* Dkt. 231.  That has not happened.  The Court-appointed forensic neutral reported that

9   AllRide's employees have given contradictory and inconsistent accounts of the spoliation, defeating any

10  attempt to determine who, or how, most of the emails were deleted.  *See* Ex. 84 at 19.

11  ███████████████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████████████

13  ████████████████████████████[15] *Compare* Dkt. 255 *with* Ex. 11 at 91:14-98:7.  █████████

14  ██████████████████████████████████████████

15  ████████████████████████████████████████  *See, e.g.* Ex. 6 at 204:14-205:14; Exs. 26-29.

16  ███████████████████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████████████████

19  █████████████████████████████████████████  Ex. 4 at 274:9-278:16.  And Defendants

20  missed court-ordered deadlines for document production and depositions, and withheld relevant

21  documents even after ordered to produce them.  *See* Dkts. 286, 300, 319.  <u>**Running Spoliation Total:**</u> **4**

22  **laptops,  2  USB  devices,** ████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████  **former employee email accounts, all other**

25  **company emails older than 90 days, all manually deleted files from any source,** ████████

26  _____

27  [15] ██████████████████████████████████████████████

28  █████████████████████████████████████████████████████

1   ████████████████████████████ **unknown documents from** ████████████

2   ██████████████████████████████████████████████████████████████

3   ███████████████████████████████████

4   <u>**LEGAL AUTHORITY FOR SANCTIONS AND THE BURDEN OF PROOF**</u>

5      The "Court may remedy the spoliation of evidence with terminating sanctions under: (1) FRCP

6   Rule 37(b)(2), which permits the Court to sanction a party for disobeying a discovery order; (2) the

7   Court's inherent authority to sanction abusive litigation practices; and (3) FRCP Rule 37(e), which

8   permits the Court to sanction a party for the spoliation of electronic evidence." *OmniGen Research v.*

9   *Yongqiang Wang*, 321 F.R.D. 367, 371 (D. Or. 2017); *accord Hugler v. Sw. Fuel Mgmt., Inc.*, 2017 WL

10   8941163, at \*7-\*9 (C.D. Cal. May 2, 2017); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

11   "The applicable standard of proof for spoliation motions in the Ninth Circuit is the preponderance of

12   evidence." *OmniGen*, 321 F.R.D. at 372 (citing *Compass Bank v. Morris Cerullo World Evangelism*,

13   104 F. Supp. 3d 1040, 1052–53 (S.D. Cal. 2015).[16]

14                                  **ARGUMENT**

15   **I.**     **DEFENDANTS' MISCONDUCT REQUIRES TERMINATING SANCTIONS**

16      "There is no point to a lawsuit, if it merely applies law to lies." *Valley Engineers Inc. v. Elec.*

17   *Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). As set forth at length above, all Defendants have

18   completely undermined the truth-seeking process of litigation using a combination of destroying

19   obviously relevant documents and offering contradictory testimony in an attempt to distract from the

20   spoliation. Where Defendants "destroy evidence and have provided false testimony under oath in an

21   effort to hide evidence of such destruction," terminating sanctions are the appropriate remedy.

22   *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701, at \*8 (C.D. Cal. Dec. 13, 2007); *see also The*

23   *Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4589156, at \*4 (C.D. Cal. Nov. 3, 2010); *Leon*,

24

---

25   [16]   The 2015 Advisory Committee Notes to Rule 37 purport to "foreclose[] reliance on inherent authority," to sanction the spoliation of ESI; however, "[i]t is an irrefutable principle of law that the

26   Supreme Court's authority cannot be limited by a body such as the Advisory Committee," and the Supreme Court has previously explained that the Advisory Committee may not limit the inherent

27   powers. *See Hugler v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941163, at \*8 (C.D. Cal. May 2, 2017) (rejecting argument that 2015 Rule 37 Advisory Committee notes precluded spoliation sanctions

28   pursuant to the inherent powers pursuant to *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

1    464 F.3d at 956; *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

2         **A.**      **Terminating Sanctions Are Proper Under Rule 37(b) and the Court's Inherent**

3                  **Power**

4         Rule 37(b)(2) authorizes terminating sanctions where a party "fails to obey an order to provide

5    or permit discovery," including failing to obey a preliminary injunction order to preserve evidence. *See*

6    *OmniGen*, 321 F.R.D. at 377. The Ninth Circuit applies the same test for sanctions pursuant to either

7    Rule 37(b)(2) or the Court's inherent powers. *See Leon*, 464 F.3d at 958 & n.4. Under this test, "the

8    district court should consider the following factors: '(1) the public's interest in expeditious resolution of

9    litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking

10   sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of

11   less drastic sanctions.'" *Id.* at 958 (further requiring "a finding of 'willfulness, fault, or bad faith'" for

12   dismissal). Here, WeRide can easily show "willfulness, fault, or bad faith," and all five *Leon* factors

13   favor striking Defendants' Answers and entering default.

14            **1.**      **Defendants' Are at Fault for Willful, Bad Faith Conduct.**

15        In the Ninth Circuit, "[a] party's destruction of evidence qualifies as willful spoliation if the

16   party has some notice that the documents were ***potentially*** relevant to the litigation before they were

17   destroyed." *Leon*, 464 F.3d at 959 (emphasis in original). As for "fault," "fail[ing] to take adequate

18   precautions to preserve [evidence specifically identified as relevant prior to its destruction] whether

19   characterized as willful or negligent . . . constitutes the kind of 'fault' sufficient to warrant sanctions,

20   including dismissal, under the Court's inherent powers." *Padgett v. City of Monte Sereno*, 2007 WL

21   878575, at *3 (N.D. Cal. Mar. 20, 2007); *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL

22   1949124, at *9 (N.D. Cal. July 2, 2009) (same). Finally, "[a] party demonstrates bad faith by delaying

23   or disrupting the litigation or hampering enforcement of a court order." *Leon*, 464 F.3d at 961.

24        WeRide only needs to show "willfulness, fault, ***or*** bad faith," (emphasis added), but on this

25   record, WeRide can easily show all three. As described above, █████████████████████

26   ████████████████████████████████████████████████████ Ex. 7 at

27   90:4-9, 97:18-21; Ex. 12 at 20:7-18. ██████████████████████████

28   ████████████████████████████████████████████████████████

1   ███████   Exs. 35, 40, 73-74.  The Court *issued an order* commanding Huang to surrender his laptop

2   and preserve source code evidence on it—████████████████████████████████████████████████

3   █████████████████████   Kunkel Decl. ¶¶6-10; Ex. 44 ¶¶11-17.   ████████████████████████

4   ███████████████████████████████████████████████████████████████████████████████████

5   ██████████████████████████   Ex. 5 at 222:5-223:2, 230:1-232:15.   ██████████████████████

6   ███████████████████████████████████████████████████████████████████████████████████

7   ████████████████████████   Ex. 12 at158:8-159:3; Ex. 42 at AllRide0405370.   ████████████

8   ███████████████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████   Ex. 11 at 198:20-

10  200:3.  Viewed more generally, essentially every significant act of spoliation has happened close in

11  time to important litigation events (e.g., filing the complaint, issuance of the preliminary injunction,

12  requirement to produce source code).  The fact that this keeps happening weighs in favor of willfulness

13  and against innocence or coincidence.[17]

14      Defendants' misconduct has disrupted and delayed this litigation.  As Judge Cousins found,

15  Defendants' months-long delay in disclosing their spoliation created multiple wasteful discovery

16  motions and hearings.  *See* Dkt. 235.  WeRide has readily shown willfulness, fault, and bad faith.

17              **2.      Defendants' Conduct Easily Meets the First Two *Leon* Factors.**

18      The first two *Leon* factors are "(1) the public's interest in expeditious resolution of litigation;

19  [and] (2) the court's need to manage its dockets[.]"  *Leon*, 464 F.3d at 958.  Where, as here, "a court

20  order is violated, factors 1 and 2 support sanctions[.]"  *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158

21  F.3d 1051, 1057 (9th Cir. 1998).  As noted above, *all* of the Defendants violated the preliminary

22  injunction order: ██████████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████████████████████████.  *See*

25

_____

26      [17]  Defendants have also claimed they are blameless  because they are a small Chinese startup and
   couldn't know any better. But it is *counsel's* duty to ensure documents are preserved and collected, and

27  Defendants here retained no fewer than four separate top-flight, international law firms to represent
   them in this litigation. *See, e.g., Brock v. Cty. of Napa*, 2012 WL 2906593, at *5 (N.D. Cal. July 16,

28  2012). Defendants and all of their counsel failed to perform their duty at every turn.

1   Kunkel Decl. ¶¶6-10; Ex. 44 ¶¶11-17, Ex. 12 at 26:14-28:20; Dkt. 231.

2       Even beyond violation of the preliminary injunction, Defendants' months-long delay in (1)

3   collecting documents, and (2) admitting to spoliation further support the first two *Leon* factors.  As the

4   Ninth Circuit has explained, "[l]ast-minute tender of documents does not cure the prejudice to

5   opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts."

6   *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Forcing a party to file wasteful,

7   seriatim motions to compel (as happened here), supports terminating sanctions under these factors.  *See,*

8   *e.g.*, *See Columbia Pictures*, 2007 WL 4877701, at *6; *The Sunrider Corp.*, 2010 WL 4589156, at *7.

9   Finally, where the spoliation occurs on such a large scale that "the sheer breadth of the misconduct

10   means that terminating the case would essentially be a cleaner and more expedient disposal," these

11   factors favor dismissal.  *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2017 WL 2298473, at

12   *5 (S.D. Cal. May 26, 2017).  For any of these reasons—and ***all*** of them—dismissal is appropriate.

13           **3.      WeRide is Decisively Prejudiced, Meeting the Third *Leon* Factor.**

14       The third *Leon* factor, "the risk of prejudice to the party seeking sanctions," (464 F.3d at 958) is

15   "[t]he most critical factor to be considered in case-dispositive sanctions," (*Connecticut Gen. Life Ins.*

16   *Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007)); dispositive sanctions may be

17   awarded on a strong enough showing of prejudice alone regardless of the other factors.  *See Valley*

18   *Engineers*, 158 F.3d at 1058; *OmniGen*, 321 F.R.D. at 371.  The third factor weighs overwhelmingly in

19   WeRide's favor.  The prejudice to WeRide cannot be overstated; each of the Defendants ***intentionally***

20   spoliated the most critical evidence relevant to WeRide's claims.

21       **WeRide's Breach of Fiduciary Duty and Contract Claims Against Huang.**   The best

22   evidence that Huang was disloyal to WeRide (and thus also breached his employment contract) would

23   have been found in ████████████████████████████████████████████████

24   ████████   *See* Ex. 12 at 119:5-123:22.  ████████████████████████████████

25   ████████████████████████████████████████████████████.  *Id.*

26       **WeRide's Trade Secret Claim Against Wang.**   WeRide alleges that Wang runs and controls

27   the entire AllRide Enterprise and supervises its engineers (including Huang), and thus directed and

28   ratified Huang's trade secret misappropriation.  *See* SAC ¶¶56-59; 147; 159. ████████████████

1    ███████████████████████████████████████████████████████████████

2    ████████████████████████████████████████ Ex. 7 at 16:1-18:4.

3    **WeRide's Libel and Intentional Interference Claims Against Wang.**  WeRide alleges that

4    Wang contacted WeRide's investors and disparaged WeRide—█████████████████████

5    ███████████████████████████████████████████████. *Id.*

6    **WeRide's Trade Secret Misappropriation Claim Against Huang.**  The best evidence of trade

7    secret misappropriation against Huang likely would have been one or more of ████████████

8    ██████████████████████████████████████████████████ (Dkt. 34-2 ¶

9    11-20); another when he returned it to the Apple Store even though it was in "working" condition (Ex.

10   55 ¶16 & Ex. 1); █████████████████████████████ *See* Kunkel

11   Decl. ¶¶6-10; Ex. 44 ¶¶11-17; Ex. 82 ¶12.  WeRide can never know exactly what Huang stole (though

12   he admits to downloading WeRide source code before his departure, Ex. 55 ¶18), because Huang

13   destroyed all of the evidence.

14   **WeRide's Trade Secret Misappropriation Claim Against AllRide.**  Across six months, from

15   January 2019 through at least June 7, 2019, ████████████████████████████

16   ███████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████

18   █████████████████████ *See* Walter Decl. ¶¶25-26.

19   But after the rest of the spoliation came to light, and it became apparent that WeRide would

20   never receive meaningful document discovery from July to October 2018, ████████████

21   ███████████████████████████████████████████████████████████████

22   ████████████████████████ *See, supra* at 6-7; *see also* Walter Decl. ¶9. █████████

23   ███████████████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████████████

25   █████████████████████████ WeRide could have tested Dr. Liu's stories using t███

26   ████████████████████████████████████████ (Landes Decl. ¶20); WeRide

27   could have tested Dr. Liu's stories using ███████████████████████████████

28   ████████████████ (*id.* ¶27); WeRide could have tested Dr. Liu's stories using ██████

1   ██████████████████████████████████████████ (Ex. 47 ¶26); and WeRide likely could

2   have tested Dr. Liu's stories using the ████████████████████████████████████

3   ████████████████████████

4   ████████████████████████████████████████████

5   ██████████████████████████████████████████████ *See, e.g.* Ex. 45

6   ¶27; Ex. 49 ¶19. ███████████████████████████████████████████

7   ████████████████████████████████████████████████████

8   ███████████████████████████████████████ *See* Walter Decl. ¶¶23,

9   31; Ex. 46 ¶¶25-26.  WeRide is irreparably prejudiced if AllRide can rely on ██████████

10  ████████████████████████████████████████████████.[18]  In

11  situations like this, courts recognize that the truth will never come out, and terminating sanctions are

12  appropriate.[19]

### 4.   Defendants' Dissembling Meets the Fourth *Leon* Factor.

14          The fourth *Leon* factor, "the public policy favoring disposition of cases on their merits, although

15  usually weighing against terminating sanctions, slightly weighs in favor of terminating sanctions"

16  where the spoliating party has made misrepresentations in discovery.  *See CrossFit, Inc.*, 2017 WL

17  2298473, at *5.  Here, there is no question that ***all*** of the Defendants have made misrepresentations in

18  discovery.  AllRide falsely claimed emails between Huang and Wang did not exist in an attempt to

19  cover up their spoliation.  *See* Ex. 76 at 7.  AllRide then filed a false declaration with the Court,

20  claiming that it did not use OneDrive, Sharepoint, or shared network locations—even though ███

21  ████████████████████████████████ that same declaration also failed to disclose more than

22  a dozen separate document repositories—none of which AllRide has collected.  *Compare* Ex. 58 ¶¶5-6

---

23  [18] ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ███ *See* Ex. 47 ¶5. ████████████████████████████████████ (*see* Ex. 50 ¶¶38-39.). ███

26  ████████████████████████████████████████. *See* Walter Decl. ¶31.

27  [19]  *See, e.g. OmniGen*, 321 F.R.D. at 375-76 (terminating sanctions appropriate where Defendant
    "changed his account" of events, then made it "impossible to prove" which version of events was true

28  because he "intentionally deleted" the relevant computer file and metadata, and plaintiff submits that
    defendants' newly submitted evidence is false).

1   *with* Ex. 11 at 91:14-98:7. █████████████████████████████

2 ████████████████████████████████████████████████████████.

3 *See* Ex. 78 at 10; Gao Decl. ¶¶3-5. █████████████████████

4 ████████████████████████████████████████████████████████

5 ██████ *See* Ex. 8 at 582:1-588:18; *see also* Ex. 3 at 311:16-314:5; Ex. 6 at 263:1-274:22; *see also*

6 *Collins v. United States*, 269 F.2d 745, 751 n.1 (9th Cir. 1959) (witnesses who unbelievably answered

7 "I don't know" about multiple topics were in contempt).  This factor also favors sanctions.

8          **5.**      **The Last *Leon* Factor Also Favors Dismissal.**

9      The last *Leon* factor is "the availability of lesser sanctions"; however, "it is not always necessary

10 for the court to impose less serious sanctions first, or to give any explicit warning" prior to issuing a

11 dismissal sanction.  *See Valley Engineers Inc.*, 158 F.3d at 1057.  In fact, the Ninth Circuit has

12 recognized that the District Court need not impose lesser sanctions in cases of severe spoliation where

13 "less drastic sanctions are not useful because a ruling excluding evidence would be futile [since the

14 evidence has already been destroyed], and fashioning a jury instruction that creates a presumption in

15 favor of [defendants] would leave [plaintiff] equally helpless to rebut any material that [defendant]

16 might use to overcome the presumption."  *Leon*, 464 F.3d at 960; *see also Columbia Pictures*, 2007 WL

17 4877701 at *8 (same); *Pringle v. Adams*, 2012 WL 1103939, at *10 (C.D. Cal. Mar. 30, 2012) (same);

18 *Williams v. Am. Coll. of Educ., Inc*., 2019 WL 4412801, at *16 (N.D. Ill. Sept. 16, 2019).

19      The same challenges facing the *Leon* panel are ever-present here.  In *Leon*, a former employee

20 sued his ex-employer for a series of labor law violations, alleging retaliation and ADA violations.  464

21 F.3d at 955.  The former employee then wiped two thousand files from his laptop computer, after

22 receiving a litigation preservation letter.  *Id*. at 956.  The Defendant pointed out that several of the files

23 appeared to constitute violations of company policies (i.e. they contained pornography), and thus they

24 could have demonstrated that the former employee was properly discharged.  *Id*. at 956-67.  The former

25 employee objected, stating that he would ***testify*** that the files were irrelevant to the litigation.  *Id*. at 959.

26 On those facts, the Ninth Circuit found that terminating sanctions were appropriate, because the former

27 employee's testimony might overcome a mere "inference" or "presumption" and the defendant would

28 be left helpless to rebut the testimony as the evidence had been destroyed.  *Id*. at 959-60.

1    This risks presented to WeRide in this litigation are no less stark.  As explained above, ███

2  ████████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████  *See, supra* at 21.  ████████████

4  ████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████

6  ████████████████████  *Id*.  A jury instruction cannot overcome unverifiable expert testimony about

7  unverifiable code—as in *Leon*, WeRide is "helpless" without terminating sanctions.

8    Moreover, the Court here ***did*** try lesser sanctions, and they were unsuccessful.  Defendants have

9  been subject to a preliminary injunction that they all violated.  *See, supra* at 9-10.  The Court ordered

10 AllRide to pay for a Special Master and Forensic Neutral, and sanctioned AllRide for presenting an

11 unprepared 30(b)(6) witness, but that did not stop AllRide from ████████████████████

12 ████████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████.  *Compare* Ex. 16 at 22-23 *with* Ex.

14 6 at 204:14-205:14; *compare* Ex. 58 ¶6 *with* Ex. 11 at 91:14-98:7.  The Court reprimanded Defendants

15 for their pervasive email spoliation, so ████████████████████████████████████

16 ████████████████████  Terminating sanctions are the next step.

17    **B.    Terminating Sanctions Are Also Appropriate Pursuant to Rule 37(e)(2).**

18    "Rule 37(e) sets forth three criteria to determine whether spoliation of ESI has occurred: (1) the

19 ESI should have been preserved in the anticipation or conduct of litigation; (2) the ESI is lost because a

20 party failed to take reasonable steps to preserve it; and (3) the ESI cannot be restored or replaced

21 through additional discovery."  *Porter v. City & Cty. of San Francisco*, 2018 WL 4215602, at *3 (N.D.

22 Cal. Sept. 5, 2018).  For dispositive sanctions, there must also be a "finding that the [spoliating] party

23 acted with the intent to deprive another party of the information's use in the litigation[.]"  Fed. R. Civ.

24 P. 37(e)(2); *see also* Dkt. 235.  On this record, WeRide easily meets all of these criteria.

25    ***First,*** all of the Defendants had notice of pending litigation—and thus a duty to preserve

26 ESI[20]—no later than November 21, 2018.  ████████████████████████████████

27 ─────────────────────

28 [20]  *See First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) ("The duty to preserve evidence begins when litigation is pending or reasonably foreseeable.").

1    ███████ ██████████████████████████████████████. *See* Ex. 35; Kunkel Decl. ¶¶12 & Ex. C.

2    Wang and Huang were sent cease and desist letters on October 1 and November 15, respectively, and

3    both responded through counsel. *See* Landes Decl. ¶74 & Exs. 72-74. ███████████████████

4    █████████████████████████████████████████████████████████████████████████████

5    ████████ *See* Exs. 35, 40. **Second**, despite the duty to preserve, **all** of the Defendants continued to

6    spoliate evidence well into 2019. *See supra* at 11-15. **Third**, the lost electronic evidence is

7    unrecoverable: the initial report of the Court's appointed forensic neutral described near-Herculean

8    efforts taken in an attempt to recover the lost documents (*see* Ex. 84 at 11), and yet the key documents

9    identified above are all missing. *See* Landes Decl ¶¶18, 27; Walter Decl. ¶22.

10         Additionally, the deletions were intentional. "[C]ourts have found that a party's conduct

11    satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that the

12    a party purposefully destroyed evidence to avoid its litigation obligations." *Porter*, 2018 WL 4215602

13    at *3. For example, in *Oppenheimer v. City of La Habra*, 2017 WL 1807596, at *13 (C.D. Cal. Feb. 17,

14    2017), the court inferred intentional spoliation from two facts: (i) the defendant had an automated email

15    deletion policy that it failed to deactivate, and (ii) one of the individual defendant officers admitted to

16    intentionally deleting text messages with another officer. *Id*. WeRide's showing is much greater: not

17    only did AllRide have a custom, automated email deletion policy that it failed to deactivate, but the

18    Defendants intentionally deleted multiple email accounts, Huang wiped two computers and destroyed a

19    third, and Huang spoliated source code on a fourth laptop **after** he was ordered to surrender it to

20    WeRide. *See, supra* at 11-15 (describing even more misconduct). Defendants' intent was clear.

21         The only remaining question is whether dispositive sanctions are appropriate under Rule

22    37(e)(2): on this record, they are. Courts applying Rule 37(e)(2) have followed the Ninth Circuit's *Leon*

23    decision, and held that lesser sanctions are inappropriate in the face of mass spoliation, because it is

24    "futile" to exclude spoliated evidence, and an adverse inference is not sufficient if the plaintiff is

25    helpless to rebut evidence that may overcome the inference. *See Williams*, 2019 WL 4412801, at *16

26    (citing *Leon*); OmniGen, 321 F.R.D. at 371 (citing *Leon*); *see also Coyne v. Los Alamos Nat'l Sec.,*

27    *LLC*, 2017 WL 3225466, at *10 (D.N.M. May 1, 2017) (terminating sanctions appropriate under

28    37(e)(2) where party both spoliated evidence and changed her testimony).

1    Rules 37(b)(2), 37(e)(2), and the Court's inherent power all support dispositive sanctions.

2   **II.      IF THE COURT IS NOT INCLINED TO GRANT TERMINATING SANCTIONS,**

3   **THEN PRECLUSIVE SANCTIONS ARE THE MOST APPROPRIATE.**

4    The purpose of spoliation sanctions is to "avoid substantial unfairness to the [non-spoliating]

5   party[.]" *Inland Concrete Enterprises, Inc. v. Kraft Americas LP*, 2011 WL 13209166, at *6 (C.D. Cal.

6   Mar. 9, 2011).  Although terminating sanctions are necessary and appropriate on this record, Courts will

7   enter evidentiary or issue preclusion sanctions (to take certain facts as conclusively established) where

8   the defendants have spoliated evidence that likely supported one or more of the plaintiff's claims.  *See*

9   *id.* at *8  (precluding defendant from introducing contrary evidence); *CrossFit, Inc.*, 2017 WL 2298473

10  at *6 (entering issue preclusion sanctions taking several facts as conclusively established).  WeRide has

11  made that showing here, as set forth at length above.  The full set of preclusive and evidentiary

12  sanctions—all of them tied to what Defendants destroyed—is listed in WeRide's proposed order.

13  **III.     IN EITHER CASE, ATTORNEYS' FEES ARE A NECESSARY SANCTION**

14   Whether the Court issues terminating or issue sanctions, attorneys' fees are a necessary

15  additional sanction (though, for the reasons stated above, a fee sanction is not sufficient on its own).

16  WeRide is entitled to its fees and costs for: (i) this motion, (ii) the investigation into this motion, and

17  (iii) the wasteful motion practice previously identified by Judge Cousins.  *See* Dkt. 235; *See, e.g. Leon* ,

18  464 at 961; *Dong Ah Tire & Rubber*, 2009 WL 1949124, at *11; *see also* Dkt. 252 at 12 (awarding

19  monetary sanctions for unprepared 30(b)(6) witness).  In short, Defendants' spoliation has required

20  several months of full-time work, and if the Court agrees that fees are an appropriate sanction, WeRide

21  will submit a declaration tabulating and demonstrating the reasonableness its fees and costs.

22  **IV.     CONCLUSION**

23   Defendants Wang, Huang, and AllRide engaged in a months' long campaign of intentional

24  document destruction, ultimately destroying data on four separate laptops, "losing" two USB drives,

25  outright destroying at least six email accounts, and rendering ***thousands*** of emails unrecoverable,

26  including key evidence identified by WeRide.  Dispositive sanctions are the only reasonable remedy.

27

28

DATED:  October 22, 2019                Respectfully submitted,

                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By   /s/ Ryan S. Landes
                                             Claude M. Stern
                                             Ryan S. Landes
                                             William T. Pilon
                                             Michael F. LaFond
                                             Attorneys for Plaintiffs WeRide Corp. and WeRide
                                             Inc.