| | |
|---|---|
| WERIDE CORP., et al., | Case No. 5:18-cv-07233-EJD |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION** |
| KUN HUANG, et al., | |
| Defendants. | Re: Dkt. No. 166 |

In March of this year, the court granted the motion for preliminary injunction ("the PI Order") brought by Plaintiffs WeRide Corp. and WeRide, Inc. (collectively "WeRide"). Dkt. No. 116 (the "PI Order"). The Preliminary Injunction binds Defendants Zhong Zhi Xing Technology Co. Ltd. ("ZZX"), AllRide.AI, Inc. ("AllRide.AI," collectively with ZZX, as "the AllRide Defendants"), and Kun Huang. *Id.* at 24-28. The court denied the motion as to Defendant Jing Wang, finding—as relevant here—that WeRide had not shown that it was likely to succeed on the merits of its trade secret misappropriation claim against him. *Id.* at 16. Since then, the parties have been engaged in discovery, the assigned Magistrate Judge has considered and ruled on discovery disputes (Dkt. No. 252), WeRide amended its complaint to add Kaizr, Inc. and ZKA, Inc. (together with the AllRide Defendants as the "Corporate Defendants") as defendants, the AllRide Defendants notified that court that they had destroyed potentially discoverable documents (Dkt. No. 231), and the assigned Magistrate Judge ordered the appointment of both a neutral forensic inspector to investigate that destruction and a special master to resolve any disputes related to the forensic neutral's investigation (Dkt. Nos. 266, 273). The parties and the court have been busy.

WeRide now moves the court to modify the Preliminary Injunction, based on new evidence obtained during discovery, to enjoin Wang, Kaizr and ZKA to the Preliminary Injunction

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

1

as issued on March 22, 2019, to enjoin all Defendants from creating any new legal entities or otherwise shuffle assets between their extant corporate entities, to enjoin all Defendants from using any source code that the AllRide Defendants possessed in October 2018 (the "October 2018 Source Code"), to compel Corporate Defendants to disclose their complete corporate structures and the persons and entities that control them, to compel Defendants to make their entire source code repositories available for inspection, and to compel the Corporate Defendants to make their complete email servers available for inspection. The court has considered the parties' briefing and heard their oral arguments. The court will first consider whether to modify the Preliminary Injunction to include Wang, Kaizr, and ZKA. The court will then turn to whether to modify the injunctive relief ordered. The court partially grants and partially denies the motion.[1]

## I. Enjoining the New Parties

### a. The Court's Authority to Expand the Injunction to New Parties

The instant motion asks the court to modify the Preliminary Injunction based on its inherent authority to do so, and in the alternative, to do so as a motion for reconsideration. The court first addresses Wang's arguments (a) that that the court lacks authority to modify the injunction to bind Wang, and (b) that the motion must be denied because it does not comply with the procedural requirements of Civil Local Rule 7-9 for motions for reconsideration. Wang is incorrect on his first argument, so the court need not consider the second.

It would be improper, Wang argues, to allow WeRide to modify the Preliminary Injunction to bind him because the court denied the original motion against him. The court is not persuaded. "An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 559 U.S. 700, 714 (2010). "The source of the power to modify is of course the fact that an

---

[1] The court has filed this order under seal because it contains material subject to sealing orders. Within seven days of the filing date of this order, the parties shall provide the court a stipulated redacted version of this order, redacting only those portions of the order containing or referring to material for which the court has granted a motion to seal and for which the parties still request the material be sealed. The court will then issue a redacted version of the order.

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION
2

injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961); *see also A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts.").

Under the facts here, the court finds that it may exercise its equitable authority to modify the Preliminary Injunction to bind Wang. First, Wang remains subject to the court's jurisdiction. He owns a home in this judicial district. Dkt. Nos. 210 ¶ 21, 261 ¶ 21. He has answered the Second Amended Complaint. Dkt. No. 261. Second, the court denied the original motion as to Wang's role in the alleged trade secret misappropriation because WeRide had not shown it was likely to succeed on those claims. PI Order at 16-17. The court based its decision on Wang's declaration denying WeRide's factual allegations. *Id.* However, as discussed more fully below, Wang's declaration on these points was, at best, inaccurate. Wang frustrated the intention of the Preliminary Injunction by making these inaccurate statements to the court. Provided that the other preliminary injunction factors support enjoining Wang, the court has the equitable power to modify the Preliminary Injunction to ensure that it will accomplish its intended result. *Cf. United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 251 (1968).

Similarly, the court finds that it has the equitable authority to bind ZKA and Kaizr even though they were only recently added as defendants because, as discussed below, the court finds, for this motion, WeRide had sufficiently shown that they are respectively the alter egos of Huang and the AllRide Defendants. *See I. C. C. v. Rio Grande Growers Co-op.*, 564 F.2d 848, 849 (9th Cir. 1977). Because Huang and the AllRide Defendants are already enjoined, the court will not apply the traditional preliminary injunction factors to ZKA and Kaizr.

### b. Jing Wang

As to Wang, the court will first consider whether WeRide has presented sufficient evidence to show that it is likely to succeed on its misappropriation claims against Wang, and it will then

decide whether WeRide has met the other preliminary injunction factors.

### i. WeRide is Likely to Succeed on Its Misappropriation Claims Against Wang

WeRide seeks to hold Wang liable for trade secret misappropriation as the controller of the AllRide Defendants. The court, of course, has already held that WeRide is likely to succeed on its trade secret misappropriation claims against them. *See* PI Order at 12-16. Corporate officers do not incur liability for the torts of their businesses merely through their position, but they may be held liable in certain circumstances. *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379 (2000), *as modified on denial of reh'g* (Apr. 7, 2000). In *PMC, Inc. v. Kadisha*, the California Court of Appeal "h[e]ld that a corporate officer or director may be liable for an intentional tort if" three factors are met. *Id.* at 1372. First, the defendant officer must have "purchased or invested in the corporation the principal assets of which were the result of unlawful conduct." *Id.* Second, that person must have "control of the corporation and appointed personnel to run the corporation, which was engaging in unlawful conduct." *Id.* And finally, "the officer . . . did so with knowledge or, with respect to trade secret misappropriation, when she or he had reason to know, of the unlawful conduct." *Id.*

In denying the original motion as to Wang, the court reasoned, "Wang denies receiving any payment for his consulting with ZZX or AllRide ([Jan.] Wang Decl. ¶ 27), denies having anything to do ZZX's product development or technical work (*id*. ¶ 29), or calls media reports that he controls ZZX 'inaccurate' (*id*. ¶ 37), and he denies encouraging Huang to leave WeRide for ZZX (*id*. ¶ 24)." PI Order at 16-17 (citations to Jan. Wang Decl. (Dkt. No. 68-1) in the original). Evidence unearthed in discovery contradicts these representations.

As to the first *PMC* factor, the court finds that WeRide has shown that it is likely to succeed at showing that Wang has invested in the AllRide Defendants. First, Wang's wife initially and "nominally" owned 90 percent of the parent company of ZZX, and has since acquired 100 percent of it. Landes Ex. 42 at 8. Second, Wang loaned ZZX $200,000 at three percent interest in 2018. Landes Ex. 39; *compare id. with* Jan. Wang Decl. ¶ 27 ("I have not received any

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

4

consulting or other payments from ZZX."). Additionally, at some point earlier this year, Wang began negotiations to join ZZX as its CEO; those negotiations included a "future ownership interest is part of the calculation about whether Jing Wang will accept the offer." *Id.* At the hearing on the instant motion, Wang's counsel represented to the court that Wang has accepted that offer and become ZZX's CEO. Oct. 10, 2019 Hr'g Tr. at 35:24-36:2. The court finds that WeRide has carried its burden to show that Wang has invested in the AllRide Defendants.

The second *PMC* factor considers whether Wang has control of the AllRide Defendants and has appointed personnel to the ZZX Defendants. Again, WeRide has presented sufficient evidence. In his January declaration, Wang told this court that he "ha[s] nothing to do with ZZX's . . . operations." Jan. Wang Decl. ¶ 29. The evidence though contradicts this statement. An AllRide/ZZX business plan recovered from one of Huang's devices, and later produced by Wang, identifies Wang as "the pioneer of autonomous driving in China," who "le[ads]" the AllRide Defendants. Landes Ex. 36 at 47. An employee chart for the AllRide Defendants indicates that the three members of the "Management" team, including Huang, all report to "jing." Landes Ex. 9. In November 21, 2019, the AllRide Defendants and FAW—a state-owned Chinese car manufacturer—held a meeting to discuss a collaboration. Landes Ex. 4. Wang attended the meeting, and the minutes of that meeting identify Wang as one of AllRide's representatives. *Id.* Shortly before that meeting, FAW created a Power Point presentation that describes Wang as the "principal" and "soul" of the AllRide Defendants, and notes that "Jing Wang hasn't held a position at AllRide[] *yet*." Landes Ex. 24 at 1-2 (emphasis added). Wang admits to "facilitate[ing]" the AllRide/ZZX – FAW collaboration, but he disputes the accuracy of the minutes identifying him as an AllRide/ZZX representative. Wang Ex. K at 2, 6. He has attended at least one meeting with Huang and potential investors. Landes Ex. 8. He has also been involved with the AllRide Defendants' hiring. He introduced Huang to the AllRide Defendants' formal founders. Landes Exs. 37 at 137:18-22, 42 at 4. The AllRide Defendants offered Huang a job the next day. Landes Ex. 37 at 139:12-14. Wang interviewed at least one other job applicant for the

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

5

AllRide Defendants. Wang Ex. K at 7-8. The court finds that WeRide has satisfied the second *PMC* factor.

Finally, the third *PMC* factor looks at whether Wang had reason to know of the alleged trade secret misappropriation by Huang and the AllRide Defendants. Earlier this year, Wang represented to the court that he "ha[s] nothing to do with ZZX's product development . . . [or] its technical work." Jan. Wang Decl. ¶ 29. Again, this statement is at odds with the evidence. Wang now admits that he has been provided with high level reports on the AllRide Defendants' technological capabilities. Wang Ex. K at 3. In August 2018 Huang sent him, and ZZX engineers an email with the subject line "Engineers Weekly Status Update" that included a note to "[p]lease include Kun . . . and Jing for now." Landes Ex. 5. These reports were intended to cover the engineers' "1. Work done last week; 2. Plan for next week; 3. Roadblockers, help needed, dependency on other team or members." *Id.* ZZX's 30(b)(6) witness, who had received this email, testified that he understood the email to mean that he should copy Wang when sending such reports. Landes Ex. 33 at 166:5-9. Huang testified that it was "fair" to say he "was deliberately circulating [ZZX] engineering reports to Wang." Landes Ex. 37 at 356:11-18. Huang also sent Wang an email to schedule "weekly" one-on-one meetings between them so they could "sync." Landes Exs. 20-22. Given Wang's close connection with the AllRide Defendants' engineering development and his repeated contacts with Huang, the court finds that WeRide has met the third *PMC* factor.

WeRide has shown that WeRide is likely to succeed at showing that Wang should be held liable under *PMC* for the alleged misappropriation. WeRide has met the first factor of the preliminary injunction test. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20-22 (2008).

### ii. The Other Preliminary Injunction Factors Weigh In Favor of Binding Wang

To enjoin a defendant, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

United States District Court
Northern District of California

The court has already found that WeRide has shown that it will face irreparable harm absent the Preliminary Injunction, that the balance of hardships tips in favor of WeRide, and that the public interest would be served by the Preliminary Injunction. PI Order at 21-22. Because the court finds that WeRide is likely to succeed on its misappropriation claim against Wang based on his control of the AllRide Defendants, the court finds that the same reasoning the PI Order applied to the AllRide Defendants applies to Wang to the extent that he should be bound by the Preliminary Injunction.

First, absent the Preliminary Injunction, WeRide's alleged trade secrets may be disclosed—destroying their value—and Wang and the AllRide Defendants would gain an unfair competitive edge over WeRide. *Id.* at 21 (citing *Comet Techs. U.S.A. Inc. v. Beuerman*, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017)). Enjoining Wang will help preserve the status quo as it existed before the alleged misappropriation. Next, the balance of hardships tilts in WeRide's favor because "[i]t is no burden for [Wang] to do what the law already requires," *i.e.*, not use WeRide's alleged trade secrets. PI Order at 22 (citing *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016); *Pyro Spectactulars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012)). Wang's arguments about the supposed reputational harm he would suffer do not move the court. Any such harm does not outweigh the risk of the disclosure of WeRide's alleged trade secrets. Finally, the public interest is served by the Preliminary Injunction because it protects intellectual property rights. PI Order at 22 (citing *Comet Techs.*, 2018 WL 1990226, at *5; *Waymo*, 2017 WL 2123560, at *11-12).

At the October 10 hearing, Wang's counsel represented that, since briefing closed on this motion, Wang has formally taken the role of CEO at the AllRide Defendants, and he consents to be bound by the Preliminary Injunction through his formal role. Oct. 10, 2019 Hr'g Tr. at 35:24-26:2. The court appreciates Wang's candor on this matter. However, for the reasons discussed above, the court finds that WeRide has carried its burden against Wang based on his earlier

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

7

conduct and separately from his formal role at the AllRide Defendants. The court will enjoin Wang in his personal capacity.

### c. Kaizr

The court finds it prudent to briefly recount the procedural history as it relates to Kaizr. WeRide moved for leave to amend its complaint to, among other things, add Kaizr and ZKA as defendants on June 28, 2019. Dkt. No. 161. It filed the instant motion seeking to modify the Preliminary Injunction to include Kaizr on July 5. Dkt. No. 166. On August 6, WeRide, with leave of court, filed its Second Amended Complaint ("SAC"). Dkt. No. 209. The summons issued to Kaizr was returned executed on September 10. Dkt. No. 284. Kaizr—represented by the same counsel as Wang—answered the SAC on September 30, 2019. Dkt. No. 293. Kaizr did not file an opposition to the instant motion or make any other filing in connection with this motion. Wang's opposition, in a footnote, includes ZKA and Kaizr in its argument that the court may not add them to the injunction through a motion to modify. *See infra* § I.a; *see also* Wang Opp'n at fn. 2. The opposition filed by the AllRide Defendants states that it does not address matters related to Kaizr because they and Kaizr have separate counsel. AllRide Opp'n at fn. 1. It then argues that there is no evidence that the AllRide Defendants own Kaizr or that they transferred WeRide's source code to Kaizr. *Id.* at 19. At the October 10 hearing, Kaizr's counsel represented that Kaizr had not been served with the instant motion, but did not provide any authority that the issue of service would support denying the motion as to Kaizr. Oct. 10, 2019 Hr'g Tr. at 37:3-4, 14-16. Nor did he argue against the motion based on any evidence in the record. *See generally id.* at 35:2-49:23. The court finds that counsel's argument that Kaizr was never served with the motion is not grounds to deny the motion. Kaizr had constructive notice of the motion though its counsel—who had filed an opposition on behalf of Wang—and through its own appearance in this matter. Kaizr could have filed an opposition or moved for an extension of time. Its failure to do so is not grounds to deny the motion.

Turning to WeRide's substantive arguments—which are unopposed—the court finds them

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION
8

persuasive. WeRide contends that the AllRide Defendants created Kaizr as an alter ego to operate in the United States outside of this litigation, so Kaizr should be bound by the injunction. The corporate structure of the AllRide Defendants and Kaizr appears to be as follows: ZZX owns AllRide.AI. Landes Ex. 42 at 8. AllRide.AI was incorporated in Delaware in July 2018. PI Order at 5. AllRide.AI, though, has no officers, no directors, and no employees. Landes Ex. 35 at 21:6-14. There is no evidence that it has any operations in the U.S. Kaizr is a California corporation (Landes Ex. 44), with a place of business in California (Landes Ex. 47 at 4), and employees based in the United States (Landes Exs. 9, 19). Kaizr was incorporated less than three weeks after WeRide initiated this litigation by the same person who incorporated AllRide.AI. Landes Exs. 43, 44; Dkt. No. 1.

WeRide has also presented evidence that the business, personnel, and operations of Kaizr overlap with the AllRide Defendants. Kaizr, like the AllRide Defendants, is an autonomous vehicle company. *See generally* Landes Ex. 47. In February 2019—while the original motion was being briefed—the AllRide Defendants and Kaizr executed a contract providing that the AllRide Defendants would provide Kaizr with "[f]iles required for research and development." Landes Ex. 40 at 4. Individuals who used to be identified as employees of the AllRide Defenndats based in the United States, now continue to interact with Huang, but use Kaizr email addresses. Landes. Exs. 9, 19. Huang, using his AllRide.AI email account, sent an "[e]ngineers weekly status update" email to several individuals with Kaizr email addresses. Landes. Ex. 19. At other times, he has received business emails from people using Kaizr emails. For example, Kaizr emailed an individual, who had submitted an "application to Kaizr, Inc.," and copied Huang's AllRide email address, to say that Huang was a "Site Manager" for Kaizr, and that Huang would interview the applicant. Landes Ex. 15. A Kaizr vendor contract from March 2019 has the same billing contact and technical contact as an AllRide Defendants' vendor contract from November 2018 with the same vendor and for the same products. *Compare* Landes Ex. 11 *with* Landes Ex. 12. In the Kaizr contract, the technical contact lists their "@allride.ai" as their contact

information. Landes Ex. 12. The billing contact for both vendor contracts is Rongrong Guo—Wang's wife. Landes Exd. 11, 12, 42 at 6. While the AllRide Defendants argue that WeRide has not presented evidence that they have transferred any assets, or WeRide's allegedly misappropriated source code, to Kaizr, the court does not find this argument persuasive. For this motion, WeRide need only show that it is likely to succeed on the merits of its claims, not to prove them outright.

Based on the evidence above, the court finds that WeRide has shown that Kaizr should be bound by the preliminary injunction because it is the alter ego of the AllRide Defendants. *See Rio Grande Growers*, 564 F.2d at 849.

### d. ZKA

WeRide seeks to have ZKA added to the preliminary injunction. Huang concedes that ZKA is a shell company that he set up to receive his salary from ZZX. Huang Opp'n at 1. He calls it "his alter ego." *Id.* at 1, 3. Huang and ZKA argue that binding ZKA would be redundant because Huang is already bound by the injunction so ZKA is as well. However, WeRide represents that Huang and ZKA refused to stipulate that ZKA is in fact bound by the Preliminary Injunction. Because Huang concedes that ZKA is his "shell company" and "alter ego," the court will enjoin ZKA. *See Rio Grande Growers*, 564 F.2d at 849.

## II. Modifying the Injunctive Relief

The court now considers WeRide's request to modify the injunctive relief applied to the Defendants. WeRide asks the court (a) to enjoin Defendants from using any source code the AllRide Defendants possessed in October 2018, (b) to compel the Corporate Defendants to make their entire source code repositories available for inspection, (c) to compel the Corporate Defendants to make their entire email servers available for inspection, (d) to compel the Corporate Defendants to disclose their corporate structures and the entities and persons who control them, and (e) to enjoin Defendants from creating new corporate entities.

### a. The October 2018 Source Code

The PI Order found that the AllRide Defendants had likely used WeRide's alleged trade secret source code to achieve the Advanced Capabilities demonstrated by one of their driverless cars in a promotional video from October 2018. PI Order at 15. Huang has denied that the video actually shows the Advanced Capabilities because he says he was secretly driving the car from its back seat. Landes Ex. 30 at 12. WeRide contends that the AllRide Defendants review of their code base for any WeRide source code was intentionally insufficient, and therefore unsurprisingly, the review found that they were not using WeRide's code. *See* § II.b. WeRide argues that the court should now prohibit Defendants from using the source code that the AllRide Defendants possessed in October 2018 in order to ensure that Defendants are not using WeRide's alleged trade secrets.

The court will not grant this relief. It is overly broad and goes beyond preserving status quo from before the alleged misappropriation. The AllRide Defendants have presented evidence that the 2018 source code includes some publicly available open source code. There is no basis for enjoining Defendants from using such open source code. Additionally, such a prohibition would unfairly harm the AllRide Defendants' ability to compete in the market. The court has already enjoined them from using WeRide's Confidential Information. Enjoining them from also using other source code—whether open source code, or source code created in-house—would shift the balance of hardships in favor of Defendants. *See Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, 2018 WL 2573192, at *9 (N.D. Cal. Apr. 16, 2018).

### b. Inspection of Source Code Repositories

WeRide argues that—despite the Preliminary Injunction—the AllRide Defendants have not produced the October 2018 Source Code. While the AllRide Defendants have mode some source code available for inspection, WeRide contends that it does not match the capabilities that the AllRide Defendants claimed to have developed by October of last year. For example, the October 2018 Source Code █████████████████████████, but ZZX witnesses have testified that ZZX possessed ████████████████████████████ *Compare* Walter

1   Reply Decl. ¶¶ 14-16 ("[T]he Suspect October 2018 Code ▮▮▮▮▮▮▮▮▮▮▮▮▮▮") *with*

2   Landes Ex. 33 at 74:17-18 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Similarly, the

3   AllRide Defendants have represented that their source code, as of October 2018, ▮▮▮▮▮▮▮

4   but the produced October 2018 Source Code ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Compare* Landes

5   Ex. 33 at 124:2-22 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

6   *with* Walter Reply Decl. ¶ 17 (the October 2018 Source Code ▮▮▮▮▮▮▮▮▮▮▮▮▮

7   ▮▮▮▮▮▮▮▮▮▮). The source code that the AllRide Defendants have produced does not

8   substantiate the AllRide Defendants' claims or testimony. *See, e.g.*, Walter Decl. ¶¶ 18-21; Walter

9   Reply Decl. ¶¶ 11-26. The analysis of the October 2018 Source Code by the AllRide Defendants'

10  expert, Dr. Miller, provides them with no support. As WeRide's expert, Dr. Walter points out, it

11  appears as though Dr. Miller did not analyze whether the October 2018 Source Code could

12  perform the Advanced Capabilities that the AllRide Defendants claim that it can. Walter Reply

13  Decl. ¶¶ 27, 29-30. WeRide has adequately shown that the AllRide Defendants have not produced

14  the relevant source code.

15      At the hearing, the court noted that the assigned magistrate judge had declined to order the

16  AllRide Defendants to produce the entirety of their source code as that request was "overly

17  broad." Dkt. No. 252 at 6. Instead, he ordered them to produce all "relevant" source code. *Id.* at

18  6-7. This court has reviewed the relevant briefing filed before the magistrate judge (*see e.g.*, Dkt.

19  Nos. 170, 192), and finds that the assigned magistrate did not have the benefit the complete record

20  that is before this court. Based on the record filed for this motion, the court finds a disconnect

21  between the explanations and defenses of the AllRide Defendants and the capabilities of the

22  source code they have produced. In the Preliminary Injunction, the court ordered Defendants to

23  make their source code available through discovery. WeRide has presented convincing evidence

24  that they have not done so. This goes beyond a mere discovery dispute to an implicit challenge to

25  the Preliminary Injunction.

26      The court will compel Defendants to make their complete source code repositories

27  available—subject to the protections of the Protective Order—for inspection by WeRide. *See* Dkt.

No. 127. True, this order goes beyond the alleged trade secrets, but the AllRide Defendants' failure to comply with the Preliminary Injunction justifies the order. And contrary to the representations of their counsel, their source code will not be available to "unfettered examination" by WeRide. The Protective Order provides specific protections for source code. Dkt. 127 § 9. Those protections obviate the AllRide Defendants' concerns. S*ee Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4865549, at *2 (N.D. Cal. Oct. 26, 2017); *Hawai'i Disability Rights v. Cheung*, 2007 WL 9711102, at *1-2 (D. Haw. Aug. 16, 2007).

### c. Inspection of the Corporate Defendants' Email Servers

WeRide argues that the AllRide Defendants cannot be trusted to meet their discovery obligations, so the court should compel them to make the full contents of their email servers available for inspection by WeRide, or a neutral third-party. The court finds that WeRide has not sufficiently shown on this motion that it is entitled to this relief.

### d. The Corporate Defendants' Corporate Structure

WeRide has shown that the Corporate Defendants should be compelled to disclose their corporate structure, and their controllers and owners. The AllRide Defendants argue that this matter is better handled through discovery and managed by the assigned magistrate judge. The court disagrees. As discussed in Section I above, this relief is necessary because the court finds that WeRide has sufficiently shown that—contrary to his representations to the court—Wang actually controls the AllRide Defendants, and that the AllRide Defendants and Huang have engaged in chicanery with shell companies to avoid the consequences of this litigation. The court will order the Corporate Defendants to make this disclosure.

### e. Enjoining Defendants From Creating New Corporate Entities

Finally, WeRide asks the court to enjoin Defendants from creating any new corporate entities. Wang opposes this relief on several grounds. First, he contends that WeRide has not shown that it will suffer irreparable harm if he is not enjoined. The conduct of Wang—and the other Defendants—in this litigation undercuts this argument. As discussed in Section I, WeRide has shown that Wang has made, at best, inaccurate representations to the court about his

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

13

involvement with the AllRide Defendants, and his counsel has informed the court that he has, in fact, formally become CEO of ZZX. WeRide has also shown that the AllRide Defendants have engaged in shell games to evade this litigation. Finally, the court has already found that WeRide faces the very real threat of having its alleged trade secrets exposed by the AllRide Defendants. Taken together, this evidence convinces the court that it is necessary to enjoin Wang from creating any new corporate entities to ensure that new companies do not disclose or use WeRide's allegedly misappropriated trade secrets. The court also finds that the balance of hardships weighs in WeRide's favor. As discussed above, any reputational harm to Wang is less than the harm that WeRide would suffer from the disclosure of its alleged trade secrets. Further, Wang does not identify any concrete hardship he will face from a prohibition on creating new entities, but rather, he suggests that he may wish to create a new company that is not competitive with WeRide and would have no use for its alleged trade secrets. However, that he has become CEO of ZZX disposes of this argument. The balance of hardships weighs in WeRide's favor. Finally, the court finds that the public interest will be best served by enjoining Wang from creating any new corporate entities. The public interest will be served by protecting both intellectual property rights and the court's authority to enforce its orders. The court will enjoin Defendants from creating any new corporate entities.

### III. Conclusion and Order

For the reasons discussed above, WeRide's motion to modify the preliminary injunction is granted in part and denied in part. The Preliminary Injunction entered on March 22, 2019 (Dkt. No. 116) is hereby modified so that it now reads as follows:

A. Defendants Kun Huang, Jing Wang, Zhong Zhi Xing Technology Co. Ltd. ("ZZX"), AllRide.AI Inc. ("AllRide.AI"), Kaizr, Inc. ("Kaizr"), and ZKA Inc. ("ZKA") (collectively the "Enjoined Defendants") and all persons acting under, in concert with, or for any one of them, whether or not in the United States, are hereby restrained and enjoined from each and all of the following:

1. Forming any additional companies, corporations, partnerships, limited liability companies, or other entities, for the purpose of developing, commercializing, or researching autonomous vehicle technology; to the extent Enjoined Defendants transfer any of their assets, business, operations, or intellectual property to any company, corporation, partnership, person, limited liability company, or other entity, Enjoined Defendants must provide WeRide notice within forty-eight (48) hours of such transfer.
2. Any and all use, disclosure, providing third parties access to, transferring, copying, duplication, reproduction, publication, distribution, broadcasting or marketing of any version of WeRide Confidential Information. Confidential Information includes, but is not limited to, trade secrets (as defined in WeRide's statement pursuant to Code of Civil Procedure Section 2019.210) and other proprietary information from all WeRide products and projects, such as (but not limited to) source code, schematics, and other business, technical, and financial information developed, learned, or obtained by a WeRide employee.
3. Destroying, concealing, disposing, deleting, removing or altering any and all documentation of any kind, whether paper or electronic (including but not limited to computer files, emails, hard drives, disk drives, USB drives, zip drives, cloud-based storage accounts), data, drafts or other things or materials:
    i. obtained from or belonging to WeRide, or containing or derived from WeRide Confidential Information, including but not limited to modified versions of WeRide documentation or data;
Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

15

  ii. relating in any way to WeRide or WeRide Confidential Information, including any use, disclosure, possession and/or transfer of WeRide Confidential Information, including but not limited to modified versions of, copies of and/or references thereto;

  iii. relating in any way to the creation, copying, duplication, development, production, distribution, publication and/or broadcast of any version of WeRide Confidential Information or any derivative, copy, or reproduction thereof;

  iv. relating in any way to instructions, requests, directives, or agreements with or by any third party concerning the use or disclosure of WeRide Confidential Information, specifically but not limited to instructions, requests, directives or agreements made by and between any Defendant and any new or potential employer and/or partner; and/or

  v. relating in any way to source code written, developed, edited, reviewed, or used by Defendants and all persons acting under, in concert with, or for any one of them, including (but not limited to) any source code relating to the operation of the autonomous vehicle depicted in the video attached as Exhibit H to the Declaration of Bijun Zhang.

B. All discovery disputes arising from this Preliminary Injunction are referred to the assigned magistrate judge.

C. Enjoined Defendants shall, no later than 5:00 p.m. PT on November 12, 2019, make the following items in their possession, custody, or control (and not previously returned to WeRide's counsel of record) available to WeRide's counsel of record for full-disk forensic imaging and data preservation by WeRide, for

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

16

WeRide's counsel's review subject to the Protective Order, any computers, servers, or cloud computing accounts that serve as code repositories for any of the corporate Enjoined Defendants.

D. Enjoined Defendants shall, no later than 5:00 p.m. PT on November 1, 2019, identify to WeRide's counsel of record, in writing and under oath, the identity and last-known contact information, including the title, email address, physical address, telephone number, employer and other identifying information in any Enjoined Defendant's possession, custody or control, of the individuals, groups, companies, governmental entities, or other persons or entities, if any, to whom Enjoined Defendant and, as applicable, any Enjoined Defendant's agents and all of those acting in active concert or participation with any Enjoined Defendant, have disclosed, transferred, published, distributed, broadcasted, or marketed any WeRide Confidential Information.

E. Enjoined Defendants shall, no later than 5:00 p.m. PT on November 1, 2019, identify to WeRide's counsel of record, in writing and under oath, the identity and last-known contact information, including the title, email address, physical address, telephone number, employer and other identifying information in any Enjoined Defendant's possession, custody or control, of all companies, corporations, partnerships, limited liability entities, or other juridical persons or entities, with whom Enjoined Defendant and, as applicable, any Enjoined Defendant's agents, have acted in concert with for the purpose of developing, commercializing, researching, or funding the development of, autonomous vehicle technology, along with an organizational chart, or similar graphic, setting forth the precise, accurate, and current relationships between said companies, corporations, partnerships, limited liability entities, or other juridical persons or entities.

F. To the extent not already accomplished, the Enjoined Defendants and their agents and all of those acting in active concert or participation with the Enjoined Defendants shall, no later than 5:00 p.m. PT on November 1, 2019, make the following items in their possession, custody, or control (and not previously returned to WeRide's counsel of record) available to WeRide's counsel of record for full-disk forensic imaging and data preservation by WeRide, for WeRide's counsel's review on an Attorney's Eyes Only basis:

1. Any computer (laptop and/or desktop) and every form of media, including but not limited to electronic storage devices, external hard drives, zip drives, memory sticks, jump drives, USB/flash drive devices, CDs, DVDs, floppy disks, email accounts or other cloud storage services, Blackberries, other PDAs, cell phones, and/or tablets with text messaging or electronic mail capabilities, including logon credentials necessary to access such media, which contain or have ever contained WeRide's trade secrets as identified in WeRide's statement pursuant to Code of Civil Procedure Section 2019.210, whether original or derivative, and/or any copies and/or references thereto, including any mirror images of any media, whether or not previously sent by Huang or AllRide to WeRide and/or its counsel; specific devices include, but are not limited to:
2. USB Device with serial number 6&2a218f49&0&;
3. USB Device with serial number 44817566;
4. USB Device with serial number 4C530001090127115393;
5. All documents and things, or other materials containing or derived from WeRide Confidential Information;

G. Pursuant to Federal Rule of Civil Procedure 26(d)(1), the following discovery is authorized:

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY THE PRELIMINARY INJUNCTION

18

1. The parties may take discovery of each other's source code. To the extent that discovery of ZZX's source code is complicated by Chinese laws, the assigned magistrate judge shall consider briefing on the matter. The court directs the assigned magistrate judge that, for the reasons discussed in this order, the court finds the importance of ZZX's source code weighs heavily in favor of authorizing the discovery. *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1475 (9th Cir. 1992).

2. WeRide is granted leave to take written discovery of any research and development of products or technology related to autonomous vehicles by Enjoined Defendants. To the extent discovery of ZZX is complicated by Chinese law, the assigned magistrate judge shall consider briefing on the matter. The court directs the assigned magistrate judge that, for the reasons discussed in this order, the court finds the importance of this discovery weighs heavily in favor of authorizing the discovery. *Richmark, 959* F.2d at 1475.

3. To the extent not already accomplished in connection with the PI Order, WeRide is granted leave to take seven-hour, oral depositions of Huang, Wang, and of designated representatives for AllRide, Kaizr, ZKA, and ZZX. Each Enjoined Defendant shall appear for deposition within 14 days of the deposition notice. These depositions shall not count against any deposition limitations otherwise imposed by the Federal Rules. The court hereby grants WeRide leave to depose each Enjoined Defendant a second time at later date.

4. WeRide may issue discovery requests under Federal Rule of Civil Procedure 34 to Huang's personal devices, computers, files or documents, email accounts, Dropbox or other cloud storage accounts, and any backups

of the Apple MacBook that Huang traded in with the Apple Store on or around October 2, 2018. Huang shall maintain an Attorneys' Eyes Only log of files, documents, and things not produced based on objections. The assigned magistrate shall resolve any disputes that arise.

    H.  This Preliminary Injunction is issued without prejudice to WeRide or Enjoined Defendants seeking further additional discovery or other relief as appropriate, including further equitable or legal relief.

    I.  The $25,000 bond posted by WeRide on March 28, 2019, shall serve as security with regards to all of the Enjoined Defendants, as defined in this order.

    J.  This Preliminary Injunction shall become immediately effective upon its entry.

    K.  This Preliminary Injunction shall remain in full force and effect through the date on which judgment as to each Enjoined Defendant is entered in this matter.

**IT IS SO ORDERED.**

Dated: October 28, 2019

_____
EDWARD J. DAVILA
United States District Judge