1

VINSON & ELKINS LLP
Mortimer H. Hartwell (CSB 154556)
 Email: mhartwell@velaw.com
Chao "Wendy" Wang (CSB 289325)
 Email: wwang@velaw.com
Meghan Natenson (CSB 312634)
 Email: mnatenson@velaw.com
555 Mission Street, Suite 2000
San Francisco, CA  94105
Telephone: 415.979.6900
Facsimile: 415.651.8786

Attorneys for Defendant
KUN HUANG and ZKA Inc.

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11

## SAN JOSE DIVISION

12

13

WERIDE CORP. f/k/a JingChi Corp.,
WERIDE INC. f/k/a JingChi Inc.

14

                              Plaintiffs,

15

        vs.

16

JING WANG, an individual, KUN HUANG,
an individual, ZHONG ZHI XING
TECHNOLOGY CO. LTD. d/b/a
ALLRIDE.AI, ALLRIDE.AI INC., KAIZR,
INC., ZKA INC., DOES 1-10

17

18

19

                              Defendants.

20

21

Case No.  5:18-cv-07233-EJD-NC

**DEFENDANT KUN HUANG'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
SANCTIONS**

Date:          February 27, 2020
Time:          9:00 a.m.
Courtroom: 4, 5th Floor

The Honorable Edward J. Davila

Action Filed: November 29, 2018
Trial Date:  None Set

22

23

### REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... - 1 -

II.     BACKGROUND ............................................................................................................ - 3 -

    A.      The Court-Appointed Forensic Neutral's Investigation Reveals ████
        ████████████████████████████████████████████████████████
        ████. ......................................................................................................... - 3 -

    B.      Huang Complied With the Court's March 22 Preliminary Injunction Order
        and Did Not Spoliate Source Code. ........................................................................ - 4 -

    C.      Litigation Was Not Reasonably Foreseeable Until Huang Received
        WeRide's November 15, 2018 Demand Letter. ..................................................... - 5 -

    D.      Once Huang Had Notice of Potential Litigation, He Took Reasonable
        Steps to Preserve Information In His Possession, Custody, and Control. .............. - 7 -

III.    LEGAL STANDARDS ................................................................................................... - 9 -

    A.      Federal Rule of Civil Procedure 37(b) & The Court's Inherent Authority ............. - 9 -

    B.      Federal Rule of Civil Procedure 37(e) .................................................................. - 10 -

IV.     ARGUMENT ................................................................................................................. - 11 -

    A.      No Sanctions Against Huang Are Warranted Under Rule 37(b) or the
        Court's Inherent Authority Because Huang Did Not Violate a Court Order. ........ - 11 -

        1.      Huang Did Not Spoliate the ZZX MacBook on March 24 or 25,
            2019. ......................................................................................................... - 11 -

        2.      Huang Had No Role in the Alleged Spoliation by Other
            Defendants. ............................................................................................... - 14 -

    B.      No Sanctions Against Huang Are Warranted Under Rule 37(e) Because
        Huang Took Reasonable Steps to Preserve ESI. ................................................... - 15 -

        1.      Rule 37(e) Governs the Alleged Spoliation of ESI. ................................. - 15 -

        2.      Huang's Duty to Preserve Evidence Arose After the November 15,
            2018 Demand Letter.  Any Earlier Loss of Information Is Not
            Spoliation. ................................................................................................ - 16 -

        3.      There Is No Evidence That Huang Failed to Take Reasonable
            Steps That Caused the Alleged Loss of Evidence. .................................... - 19 -

    C.      Even If Huang Had Spoliated ESI (Which He Did Not), WeRide's
        Requested Remedies Are Too Extreme Because There is No Prejudice or
        Evidence of Bad Faith or An Intent to Deprive. ................................................... - 21 -

        1.      Huang Did Not Act Willfully, in Bad Faith, or With An Intent to
            Deprive WeRide of Information. ............................................................... - 22 -

i

2.      WeRide Has Not Been Prejudiced By Huang's Alleged Spoliation......... - 23 -

D.      WeRide's Sanction Motion is Untimely to the Extent It Is Based On The Alleged Loss of Devices Used At WeRide & Huang's Personal MacBook......... - 24 -

V.      CONCLUSION ............................................................................................................. - 25 -

# TABLE OF AUTHORITIES

**Cases**

*Adrian v. OneWest Bank, FSB*,
　686 F. App'x 403 (9th Cir. 2017) ................................................. 23

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
　190 F.R.D. 644 (N.D. Cal. 2000) ................................................. 24

*Bollow v. Fed. Reserve Bank of S.F.*,
　650 F.2d 1093 (9th Cir. 1981) .................................................... 24

*Chambers v. NASCO*,
　501 U.S. 32 (1991) ..................................................................... 16

*Ferdik v. Bonzelet*,
　963 F.2d 1258 (9th Cir. 1992) .................................................... 22

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893-HRL,
　2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ............................... 19

*Fiteq Inc v. Venture Corp.*, No. 13-cv-01946-BLF,
　2016 WL 1701794 (N.D. Cal. Apr. 28, 2016) ............................. 16

*FMC Techs., Inc. v. Edwards*, No. C05-946C,
　2007 WL 1725098 (W.D. Wash. June 12, 2007) .......................... 13

*FMC Techs., Inc. v. Edwards*,
　302 F. App'x 577 (9th Cir. 2008) ............................................... 13

*Goodyear Tire & Rubber Co. v. Haeger*,
　137 S. Ct. 1178 (2017) ............................................................ 9, 10

*Guidroz-Brault v. Missouri P. R. Co.*,
　254 F.3d 825, 829 (9th Cir. 2001) .............................................. 13

*Henry v. Gill Indus., Inc.*,
　983 F.2d 943 (9th Cir. 1993) ................................................ 21, 22

*Hughler v. Southwest Fuel Management, Inc.*  No. 16-cv-4547,
　2017 WL 8941163 (C.D. Cal. May 2, 2017) ............................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-cv-01064-SI,
　2012 WL 12919129 (N.D. Cal. Nov. 30, 2012) ........................... 22

*Inland Concrete Enterprises, Inc. v. Kraft Americas LP*, No. 10-cv-1776,
　2011 WL 13209166 (C.D. Cal. Mar. 9, 2011) ............................. 19

*Lakes v. Bath & Body Works, LLC*, No. 16-cv-2989,
　2019 WL 2124523 (E.D. Cal. May 15, 2019) .............................. 20

*Litle & Co. v. Mann*,
　145 F.3d 1339 (9th Cir. 1998) .................................................... 22

*Matthew Enterprise, Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF,
　2016 WL 2957133 (N.D. Cal. May 23, 2016) ......................... 16, 23

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
  306 F.3d 806 (9th Cir. 2002)............................................................................22

*Micron Tech., Inc. v. Rambus Inc.*,
  645 F.3d 1311 (Fed. Cir. 2011)..............................................................17, 18

*Mitchell v. Acumed, LLC*, No. 11-cv-00752,
  2012 WL 761705 (N.D. Cal. Mar. 8, 2012).................................................22

*ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*,
  881 F.3d 1293 (11th Cir. 2018)......................................................................22

*Newberry v. Cty. of San Bernardino*,
  750 F. App'x 534 (9th Cir. 2018) ..................................................................16

*Nguyen v. Lotus by Johnny Dung, Inc.*, No. 17-cv-1317,
  2019 WL 1950294 (C.D. Cal. Mar. 14, 2019) ...........................................16

*Nuvasive, Inc. v. Madsen Med., Inc.*, No. 13-cv-2077,
  2016 WL 305096 (S.D. Cal. Jan. 26, 2016)................................................23

*NW Pipe Co. v. DeWolff, Boberg & Assocs., Inc.*, No. EDCV 10-0840-GHK,
  2012 WL 137585 (C.D. Cal. Jan. 17, 2012) ...............................................21

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  328 F.R.D. 543 (N.D. Cal. 2018)...........................................................passim

*Perdana Capital (Labuan) Inc. v. Chowdry*, No. 09-cv-1479 RS,
  2012 WL 13075527 (N.D. Cal. July 3, 2012) .............................................25

*Permasteelisa CS Corp. v. Airolite Co.*, LLC,
  2008 WL 2491747 (E.D. Ohio June 18, 2008) ...........................................25

*Phillips v. Netblue, Inc.*, No. C-05-4401 SC,
  2007 WL 174459 (N.D. Cal. Jan. 22, 2007) ...............................................19

*Siebert v. Gene Sec. Network, Inc.*, No. 11-cv-1987-JST,
  2014 WL 5808755 (N.D. Cal. Nov. 6, 2014)...............................................25

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
  982 F.2d 363 (9th Cir. 1992)..........................................................................15

*United States ex rel Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
  857 F.2d 600 (9th Cir. 1988).....................................................................9, 22

*United States v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002).........................................................................19

*Valley Eng'rs v. Electric Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998).................................................................9, 21

*Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI,
  2019 WL 1411127 (D. Or. Mar. 27, 2019) .................................................24

*Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-0939 WHA,
  2018 WL 646701 (N.D. Cal. Jan. 30, 2018) ..........................................passim

iv

*Wyle v. R.J. Reynolds Indus., Inc.*,
   709 F.2d 585 (9th Cir. 1983) ................................................................................. 9. 10

**Statutes**

Civil L.R. 7-8 ....................................................................................................................... 25

Civil L.R. 37-4(b)(3) ........................................................................................................... 21

Fed. R. Civ. P. 37(b)(2)(A) ................................................................................................... 9

Fed. R. Civ. P. 37(b)(2)(C) ............................................................................................ 10, 21

Fed. R. Civ. P. 37(e) ........................................................................................................... 19

Fed. R. Civ. P. 37(e)(1) ....................................................................................................... 10

Fed. R. Civ. P. 37(e)(2) ....................................................................................................... 10

Fed. R. Civ. P. 37(e)
   Advisory Committee Note to Subdivision (e) (2015 Amendment) ..................................... passim

I.      **INTRODUCTION**

Plaintiffs WeRide Corp. and WeRide Inc.'s (together, "WeRide's") motion for terminating sanctions against Kun Huang is a house of cards, built on deceptions, overreach and over-heated rhetoric.  WeRide attempts to tar Huang with the alleged sins of others, but there is no evidence that Huang participated in any spoliation of evidence, much less took part in any conduct that would justify the severe remedies WeRide proposes.  The motion should be denied in its entirety as to Huang, and the speculative guesswork "evidence" offered by their expert Michael Kunkel should be stricken.

WeRide overlooks many key facts that have been the subject of extensive discovery since August 2019, and some which it was aware of long before this lawsuit was filed.  The more glaring examples, of which there are many, include the following facts:

- The court-appointed forensic neutral forensic FTI Consulting, in three separate reports and in deposition testimony, ██████████████████████████████████ ████████████████████████████.  *See* Ex. B[1] at 161:1 – 162:5; Ex. D; Ex. E; Landes Decl. (Dkt. No. 330-7), Ex. 84.

- FTI's designee testified that ████████████████████████████████ ████████████████████████████████████████ ████████████████████.  *See* Ex. E at 10.  In fact, the emails and documents derived from Huang's devices represent the core of the evidence that WeRide has used in this case.

- In response to WeRide's demand letter and before being served with this lawsuit, Huang gave his counsel any pertinent USB device in his possession.  The two cited USB devices are not "missing" in that they were not in Huang's possession, as he has consistently testified.  *See* Dkt. Nos. 29, 70-1 ¶ 17, 100-2 ¶ 2; Landes Decl., Ex. 82 ¶ 12.

- WeRide alleged that Huang returned the so-called "spoliated" laptops in August 2018, long before this lawsuit was filed, but WeRide waited over a year to seek terminating sanctions using these supposedly incriminating acts as evidence of spoliation. Dkt. No. 1 ¶ 91.

---

[1] Unless otherwise indicated, all Exhibit references are to the Declaration of Meghan Natenson in Support of Defendant Kun Huang's Opposition to Motion for Sanctions.

- Huang was not informed of any potential lawsuit against him until November 2018, when WeRide sent him a demand letter, and at which time he hired counsel. Kun Huang Decl. ("KH Decl.") ¶ 8; Lenny Huang Decl. ("LH Decl.") ¶ 2. WeRide's suggestions that litigation was reasonably foreseeable before then are without merit.

- There is no evidence offered that the ZZX source code databases are not intact, much less that they ever contained WeRide code, or that Huang tampered with the databases in any way. This, of course, is the very heart of the case, and WeRide's motion is an acknowledgement that it cannot meet its burden to demonstrate use of WeRide code in a conventional manner. *See generally* Defendants ZZX and AllRide.ai Inc.'s Memorandum in Opposition to the WeRide Plaintiffs' Motion for Sanctions (Dkt. No. 368).

- Huang strictly complied with the Court's March 22, 2019 Preliminary Injunction Order.  He gave his devices to his counsel on March 26, who in turn emailed WeRide to make the devices available that same day.  LH Decl. ¶ 4, Exs. A&B. WeRide offers only the wildest conspiracy theories to counteract this, alleging per their expert, with an apparent straight face, that Huang "may have" deleted material prior to turning over the device, because the (incorrect) time frame between March 22 and April 2 allowed "plenty of time" for doing so.  In fact, there is *no* evidence that any material was deleted from his laptop during that time.

- Many of the claims asserted against Huang do not hinge on electronically stored evidence ("ESI").   For example, WeRide contends Huang "breached fiduciary duties" and his employment contract by allegedly soliciting employees, and asks for a sanction to "conclusively establish" such allegations. Mot. at ii. WeRide's witness on this topic declared that Huang solicited him through various conversations, but never alleges any electronic or written solicitation.  Dkt. No. 34-1 ¶¶ 34-43.  While Huang denies these assertions, even WeRide's own theories demonstrate that they are not dependent on ESI.

WeRide would not need to resort to its weak, unsubstantiated arguments to request terminating sanctions against Huang unless it (a) had no actual evidence that Huang spoliated evidence; and (b) was desperate for the Court to overlook that no WeRide source code or confidential information can be found in ZZX's code.  Instead, WeRide has embarked upon a strategy of innuendo, insinuation,

and table pounding.  WeRide does not come close to meeting the high bar required to justify denying Huang all defenses and his right to due process.  The motion should be summarily denied.

## II.     BACKGROUND[2]

### A.      The  Court-Appointed  Forensic  Neutral's  Investigation  Reveals  ████████████.

The parties and FTI conducted an investigation in response to defendants Zhong Zhi Xing Technology Co., Ltd.'s and AllRide.AI Inc.'s (together, "ZZX's") disclosure of email preservation issues.  *See* Dkt. Nos. 231, 266.  Huang cooperated fully in this investigation. He participated in an interview with FTI; responded to interrogatories and requests for production; and sat for two depositions, as a corporate representative and as an individual. *See* Ex. B at 156:19-20; Landes Decl. (Dkt. No. 330-7)[3], Exs. 6, 8.  Oddly, WeRide never asked Huang any questions about many of the "spoliation" theories it suggestions in its motion.

FTI created three reports detailing its investigation.  *See* Exs. D, E; Landes Decl. Ex. 84. In particular, ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ███████████████████ *See id.* at 10, Table 2; Ex. B at 158:13-21, 159:15-19. ████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. *See* Ex. E at 12, Table 5. ██████████ ████████████████████████████████████████████. Nor is there anything to suggest that Huang had control over ZZX's email server, knew about ZZX's 90-day email retention policy, or otherwise deleted an email account.  *See* Ex. D at 15 ("████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████."); Ex. A at 639:14-18, 640:13 – 641:5, 642:1-5, 644:13-17 (Huang repeatedly testified

---

[2] Huang disputes WeRide's factual allegations on the underlying merits of this action.  Such allegations, however, are not material to the Court's sanctions inquiry and are better suited for resolution after discovery has been completed.  Huang limits his brief to the alleged spoliation.

[3] Huang objects to paragraph 34 of the Landes Declaration, which purports to describe a table regarding email collection without any foundation as to how the table was created or by whom.  It further speculates as to what the table might show.  To the extent the table is contained in any document, that document would serve as the best evidence rather than WeRide's counsel's assertions.

that he was not aware of any automatic deletion policy); Ex. B at 161:1 – 162:5 (no evidence of deletion by Huang).  Rather, FTI documented that the custodian with the most email data was Huang, and that Huang took steps to preserve his data.  *See, e.g.*, Ex. B at 49:22 – 50:4 (noting Huang had "a lot of email" preserved on his computers); Ex. D at 117 (██████████████████████); *id.* at 118 ("██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.").

**B.    Huang Complied With the Court's March 22 Preliminary Injunction Order and Did Not Spoliate Source Code.**

On March 22, 2019, the Court granted a preliminary injunction enjoining Huang from:

> Destroying, concealing, disposing, deleting, removing or altering any and all documentation of any kind . . . (e) relating in any way to source code written, developed, edited, reviewed, or used by Defendants and all persons acting under, in concert with, or for any one of them, including (but not limited to) any source code relating to the operation of the autonomous vehicles depicted in the video attached as Exhibit H to the Declaration of Bijun Zhang.

Dkt. No. 116 at 24-25.  The Order also set forth a list of items and directed Huang and AllRide, within four days of the Order, to make the "items in their possession, custody or control . . . available to WeRide's counsel of record for full-disk forensic imaging and data preservation by WeRide."  Dkt. No. 116 at 26.  Pursuant to the Order, Huang gave the specified devices in his possession to WSGR on March 26, 2019.  *See* LH Decl. ¶ 4 & Ex. B; Landes Decl., Ex. 82.  That same day, WSGR emailed WeRide's counsel to make the devices available.  LH Decl. ¶ 4 & Ex. A.  This included a MacBook issued by ZZX ("ZZX MacBook") and an external drive often used to backup that laptop.  LH Decl., Ex. A; KH Decl. ¶ 16; Alisha Zhang Decl. ¶ 5.

Based on its expert Michael Kunkel's declaration, WeRide claims that Huang violated the Order by allegedly spoliating ZZX source code on the ZZX MacBook before turning over his devices.  Mot. at 10.  Kunkel, relying on a file list he generated purporting to show the MacBook's contents, asserts there are a high number of folders or files with creation or modified timestamps on March 24 and 25, 2019.  Kunkel Decl. ¶ 6.  But there are serious reasons to doubt that this file list is accurate.  For instance, it lists folders and files with creation timestamps occurring *after* Huang surrendered the MacBook.  *Id.* ¶ 13; Ex. G.  Even more startling, the list includes files with modified dates occurring

in the years 2020 and 2022—an impossibility given that it is 2019.  KH Decl. ¶¶ 14; Ex. H.  There is no basis to find that the timestamps in Kunkel's file list are even reliable evidence.

Despite such obvious red flags, Kunkel misleadingly claims that he identified 3,935 folders or files with "allride" in the name that have creation or modified timestamps on March 24 and 25, and 1279 files are source code, as indicated by the file extensions .cpp, .cc, and .h.  Kunkel Decl. ¶¶ 6-7.  But Kunkel's file list reveals that such files or folders have modified timestamps that *exactly match* (to the second) the creation timestamps. KH Decl. ¶ 17.  WeRide fails to explain how a file with a modified timestamp matching its creation timestamp could be considered altered or spoliated.

Also, in contrast to WeRide's allegation that Huang modified over a thousand "AllRide source code files," Mot. at 10, *none* of the folders or files with "allride" in the name that have March 24 or 25 timestamps have the identified source code extensions.  KH Decl. ¶ 15.  If one searches Kunkel's file list for any of those extensions (.cpp, .cc, .h) among the files or folders with "allride" in the name and having March 24 or 25 timestamps, there are *no* results.  *Id.*  But searching for those extensions in all files and folders (without the name "allride") with timestamps on March 24 and 25, returns 1279 results—the same number Kunkel identifies.  *Id.*; Kunkel Decl. ¶ 7.  Of these 1279 results, *none* are ZZX source code.  Rather, all contain "Arduino" in the file path, indicating that the files are Arduino code, which is open source and publicly available online.  KH Decl. ¶ 15, Ex. I.  Huang also reviewed ZZX's git logs, which revealed that he made no modifications to ZZX code during this time period. *Id.* ¶ 16.  In short, WeRide's claims that Huang spoliated any ZZX/AllRide source code files from his ZZX MacBook in violation of the preliminary injunction order are baseless.

**C.  Litigation Was Not Reasonably Foreseeable Until Huang Received WeRide's November 15, 2018 Demand Letter.**

Also, Huang was not on notice about potential litigation by WeRide until he received a demand letter dated November 15, 2018 from WeRide's counsel.  *See* Landes Decl., Ex. 73.  The letter claimed Huang breached WeRide's Proprietary Information and Inventions Agreement ("PIIA") by allegedly copying WeRide's proprietary information onto three USB devices and soliciting employees to leave WeRide.  *Id.*  WeRide also alleged that Huang had deleted files from

- 5 -

1   two WeRide laptops.  *Id.*  The letter made several demands and threatened that "WeRide will take all

2   necessary and appropriate legal actions against you . . . including filing a lawsuit[.]"  *Id.* at 3.

3        At this time, Huang was an unrepresented individual who had no experience with litigation.

4   KH Decl. ¶ 2.  After receiving the letter, he promptly sought counsel and retained the law firm Wilson

5   Sonsini Goodrich & Rosati ("WSGR") in November 2018.  LH Decl. ¶ 2; KH Decl. ¶ 8.  On

6   November 21, 2018, WSGR sent Huang its engagement letter and a document with the file name

7   "billing policy.doc" (the "Billing Policy").  LH Decl. ¶¶ 2, 3.  Harris Decl. ¶ 8.  The Billing Policy is

8   not an engagement letter and only outlines WSGR's general billing policies and procedures, and

9   schedule of rates for client matters.[4]  LH Decl. ¶ 3.  Huang's privilege log lists this document with a

10  "DocDate" of July 31, 2018.  Landes Decl., Ex. 35.  The "DocDate" reflects the document's last

11  modified date.  LH Decl. ¶ 3; Harris Decl. ¶¶ 9-10. This is application level metadata that traveled

12  with the document when it was sent to Huang; it does not reflect the date Huang received the

13  document.  Harris Decl. ¶¶ 7-10. Rather, a search across Huang's imaged data confirms that he

14  received the Billing Policy no earlier than November 21, 2018.  *Id.*  Also, the application level

15  metadata indicates that the document was created in January 2018, months *before* the alleged

16  misconduct in WeRide's complaint purportedly took place.  Harris Decl. ¶ 9.  This further supports

17  that the Billing Policy was *not* created for this litigation.

18       Huang's deposition testimony also makes clear that he did not have a lawyer, nor have any

19  reason to do so, before November 2018.  Around the end of July 2018, WeRide's Tony Han told

20  Huang he must resign or be terminated from WeRide.  Han claimed, among other things, that Huang

21  had solicited WeRide employees to leave for other employment.  Naturally, after being told he would

22  lose his job (either through termination or forced resignation) for allegedly soliciting employees,

23  Huang looked up "resignation vs termination" and search terms related to employee solicitation on

24  the internet on July 31, 2018 and August 2, 2018.  Kunkel Decl., Ex. C.  Huang does not recall whether

25  he was concerned about being sued at this point.  Landes Decl., Ex. 8 at 466:16 – 467:15.  But he did

26  not contact a lawyer at that time.  KH Decl. ¶¶ 5-8; LH Decl. ¶ 2.

27  
---

[4] This document is privileged.  However, upon the Court's request, Huang will provide this document
28  for *in camera* review.

**D.      Once Huang Had Notice of Potential Litigation, He Took Reasonable Steps to Preserve Information In His Possession, Custody, and Control.**

After retaining counsel and in response to WeRide's demand letter, Huang performed a diligent search and located four USBs in his possession, control and custody.  Landes Decl., Ex. 82 ¶ 12.  He provided all four devices to his counsel on December 3, 2018, before he was served with this lawsuit. *Id.*; Dkt. Nos. 29, 100-2 ¶ 2.  WSGR reviewed them and determined only one matched the devices listed on WeRide's demand letter.  Dkt. No. 100-2 ¶ 3. On December 20, 2018, Huang's counsel offered this device for inspection, and WeRide's e-discovery vendor took custody of the device on or around January 14, 2019.  Dkt. Nos. 80-1, ¶ 6; 110-4.  Huang did not and still does not recognize or possess the other two devices listed in the demand letter.  Landes Decl., Exs. 73, 82 ¶ 12; KH Decl. ¶ 9.

In addition to preserving the USB devices in his possession, Huang often backed up his ZZX MacBook onto an external drive.  Indeed, the external drive, which was produced to WeRide, contains incremental backups of the ZZX MacBook from November 3, 2018, November 13, 2018, December 3, 2018, December 12, 2018, December 30, 2018, February 4, 2019, February 22, 2019, March 4, 2019, and twice on March 18, 2019. Zhang Decl. ¶ 5.  Huang did not intentionally delete or modify anything from the ZZX laptop, nor does he have reason to believe this occurred.  Ex. A at 493:1-18; KH Decl. ¶ 18.

Yet, in addition to the ZZX MacBook, WeRide wrongly claims that Huang spoliated: (1) files on two WeRide laptops that Huang used during his employment there; (2) a personal MacBook; (3) two USBs; and (4) the kun.huang@allride.ai email account between July 23 and August 13, 2018. These allegations arise from events occurring before Huang had notice of potential litigation or are based on pure speculation and innuendo.

*Personal MacBook, WeRide Lenovo, and WeRide MacBook*: Before his termination from WeRide, Huang had a personal MacBook, a WeRide-issued MacBook ("WeRide MacBook"), and a shared Lenovo laptop also belonging to WeRide ("WeRide Lenovo").  Dkt. No. 70-1 at ¶¶ 14-16. Huang's personal MacBook had a known GPU problem for that model and, even though the computer worked on occasion, it repeatedly crashed as a result of the GPU failure.  *Id.* ¶ 16; Ex. A at 627:7-10,

631:3 – 632:17.  Because of this issue, Huang twice attempted to have the personal MacBook repaired, but there was no easy fix.  *Id.*  As a result, Huang traded-in this laptop at the Apple Store on or around October 1, 2018.  *Id.*, Dkt. No. 70-1 ¶ 16, Exs. A&B.

Also, Huang had used the WeRide MacBook for work and when he was out of the office.  Dkt. No. 70-1 at ¶ 15. He kept personal data, such as photographs, tax returns, banking and finance information, personal passwords stored in keychains on the WeRide MacBook.  *Id.* With his employment at WeRide ending, Huang had the WeRide MacBook's hard drive deleted to ensure that his personal data and files were removed, and returned it to WeRide in August 2018.  *Id.*  This was Huang's typical practice whenever he left a job.  Ex. F at 121:14-25.

The WeRide Lenovo was shared with 10 to 12 other members of WeRide's hardware team.  Dkt. No. 70-1 ¶ 14.  Outside vendors also routinely accessed this laptop when they met with Huang and other engineers to work on new products.  *Id.*  The login and password at that time were set intentionally weak so that engineers could easily access the laptop.  *Id.*  And WeRide did not maintain (or require) a log for whoever had possession of the laptop.  *Id.*  Before leaving WeRide in August 2018, Huang cleaned the Lenovo laptop by deleting junk files and clearing the browser history in order to leave the engineering team with a laptop free of junk files.  *Id.*

*USB Devices*:  In addition to laptops, WeRide engineers frequently used USB drives.  *Id.* ¶ 17.  According to WeRide's purported expert Matthew Gayford, three USB devices had been connected to the WeRide Lenovo in the months before Huang's last day of employment.  Dkt. No. 34-3 at ¶ 14.  Gayford speculates that unknown files were copied from the Lenovo to one of the three devices, the USB device with serial number 44817566 (the " '566 Device").  *Id.*  He is silent as to the remaining two USB devices, serial numbers 4C530001090127115393 (the " '5393 Device") and 6&2a218f49&0&_ (the "6&2 Device").  There is no evidence that Huang (or anyone else) copied files from the Lenovo to these two devices or that Huang ever possessed them.  Rather, the evidence only shows that these two USBs were connected by an unknown person to a shared laptop.  Notwithstanding these facts and Huang's repeated testimony that he does not recognize these two devices, WeRide continues to baselessly accuse Huang of taking and losing them.  *See* Mot. at 5.

*ZZX Email Account*:  On July 23, 2018, Huang received two emails to his personal Gmail from Microsoft Online Services Team stating two user accounts had been created or modified: kun.huang@allride.ai and test@allride.ai. *See* Landes Decl., Ex. 8 at 587, Ex. 41. The kun.huang@allride.ai account, however, was deleted at some point and then recreated on August 13, 2018.  Internet history from this time period shows that, as was typical and required during his employment with WeRide, Huang accessed WeRide's Phabricator on July 24, 2018.  Kunkel Decl., Ex. D;  KH Decl. ¶ 14; The internet history also shows the test@allride.ai account was accessed. Kunkel Decl., Ex. D.  But there is no indication that Huang (1) sent anything from the test@allride.ai account; (2) accessed the test@allride.ai account any other day; (3) *ever* accessed the kun.huang@allride.ai account before the alleged recreation on August 13, 2018; or (4) controlled, directed or was involved in the deletion of the kun.huang@allride.ai account.  *See* KH Decl. ¶ 4; Collins Decl. ¶¶ 7-9; Kunkel Decl. ¶ 12 (only claiming Huang accessed the test@allride.ai account).

## III.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 37(b) & The Court's Inherent Authority

When a party fails to "obey an order to provide or permit discovery," Rule 37(b) permits the Court to issue "further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  *Id.*  Also, "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).  "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'"  *Id.*  If a party violates a discovery order, courts determine whether to issue a dispositive sanction using five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).  Also, the Court must find the violations were "due to willfulness, bad faith, or fault of the party."  *United States ex rel Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988); *see also Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)

1    (dispositive sanctions allowed only in "extreme circumstances" when party has "willfully deceived

2    the court and engaged in conduct utterly inconsistent with the orderly administration of justice.").

3        Rule 37(b)(2)(C) directs courts to award "reasonable expenses" caused by the failure to obey

4    a discovery order, "unless the failure was substantially justified or other circumstances make an award

5    of expenses unjust."  Also, under its inherent powers, a court may "sanction a litigant for bad-faith

6    conduct by ordering it to pay the other side's legal fees," but "such an order is limited to the fees the

7    innocent party incurred solely because of the misconduct—or put another way, to the fees that party

8    would not have incurred but for the bad faith."  *Goodyear*, 137 S. Ct. at 1183-84.

9        **B.    Federal Rule of Civil Procedure 37(e)**

10       Rule 37(e) governs sanctions related to ESI.  As amended in 2015, it provides two categories

11   of discretionary sanctions if ESI "that should have been preserved in the anticipation of litigation or

12   conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot

13   be restored or replaced through additional discovery."  First, the Court, "upon finding prejudice to

14   another party from loss of the information, may order measures no greater than necessary to cure the

15   prejudice."  Fed. R. Civ. P. 37(e)(1).  Second, the Court, "only upon finding that the party acted with

16   the intent to deprive another party of the information's use in the litigation may: (A) presume that the

17   lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the

18   information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."  Fed.

19   R. Civ. P. 37(e)(2).

20       In other words, "Rule 37(e) essentially functions as a decision tree."  *Oracle Am., Inc. v.*

21   *Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018). "The threshold inquiry is whether

22   ESI has been 'lost,' which in turn requires a showing (a) that discoverable ESI existed when a duty

23   to preserve arose but was not preserved due to a party's negligent failure to take reasonable steps to

24   preserve it *and* (b) that it cannot be restored or replaced."  *Id.*  "Only if this threshold requirement is

25   met can the court proceed to impose non-dispositive measures to cure any resulting prejudice."  *Id.*

26   The more severe sanctions listed in Rule 37(e)(2) are only available with proof of illicit motive.  *Id.*

27   Also, Rule 37(e) "recognizes that 'reasonable steps' to preserve suffice; it does not call for

28   perfection."  Fed. R. Civ. P. 37(e), Adv. Comm. Note (2015).

IV.     ARGUMENT

WeRide's "imagination has not slept in conceiving of ways it has been wronged by [Defendants'] alleged litigation misconduct."  *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-0939 WHA, 2018 WL 646701, at *1 (N.D. Cal. Jan. 30, 2018).  But WeRide's continued attempt to impute the alleged actions by other Defendants to Huang is improper and misleading.  None of WeRide's specific complaints against Huang show his involvement in any alleged "mass, coordinated, spoliation campaign," Mot. at 2, or warrant the harsh remedies that WeRide seeks.  Under any of WeRide's cited authority—Rule 37(b), Rule 37(e), and the Court's inherent powers—the requested sanctions against Huang are inapplicable and inappropriate.

**A.     No Sanctions Against Huang Are Warranted Under Rule 37(b) or the Court's Inherent Authority Because Huang Did Not Violate a Court Order.**

Out of the spoliation allegations made against Huang, WeRide argues that only one violates the Court's March 22, 2019 preliminary injunction order:  Huang is alleged, without any supporting evidence, to have spoliated ZZX code on the ZZX MacBook on March 24 and 25, 2019.  *See* Mot. at 10, 14.  Also, in passing references, WeRide attempts to attribute alleged actions by other Defendants to Huang as violating the Order.  Rule 37(b)(2), which provides possible sanctions related to a party's alleged failure to obey a discovery order, governs these arguments.  But Huang did not violate the Order and sanctions under Rule 37(b) (or any other authority) are not warranted.

**1.     Huang Did Not Spoliate the ZZX MacBook on March 24 or 25, 2019.**

WeRide argues that Huang violated the Order by allegedly spoliating source code on March 24 or 25, 2019.  *See* Dkt. No. 116 at 24-25; Mot. at 9-10.  The Order also directed Huang and AllRide, within four days of the Order, to make certain "items in their possession, custody or control . . . available to WeRide's counsel of record for full-disk forensic imaging and data preservation by WeRide."  Dkt. No. 116 at 26.  Huang, however, complied with this Order and did not spoliate source code.

**a.     Huang Timely Produced the ZZX MacBook and Incremental Backups of That Laptop.**

Pursuant to the Order, Huang provided his ZZX MacBook (and other devices in his possession, custody and control) to WSGR on March 26, 2019.  LH Decl. ¶ 4 & Ex. B; Landes Decl.

1   Ex. 82.  Before this, Huang often had incrementally backed up this laptop onto an external drive on

2   multiple occasions between November 3, 2018 and March 18, 2019.  Zhang Decl. ¶ 5.  The drive

3   containing these backups was also turned over to WSGR on March 26, 2019.  LH Decl. ¶ 4 & Ex. B.

4   That same day, WSGR emailed WeRide's counsel to make these devices available.  *Id.*, Ex. A.  Thus,

5   Huang complied with his production responsibilities under the Order.

### b.   Huang Did Not Spoliate Any Party's Source Code.  Rather, the Only Source Code Identified is Open Source.

6

7   Despite having multiple backups of the ZZX MacBook, WeRide claims that Huang violated

8   the Order by allegedly spoliating ZZX source code on that laptop on March 24 and 25.  WeRide bases

9   this claim on its expert Kunkel's declaration.  Kunkel states that he generated a list of files from the

10  ZZX MacBook.  Kunkel Decl. ¶ 6.  Yet there are serious questions as to the reliability of the file list.

11  For example, it includes folders and files with creation timestamps occurring *after* Huang surrendered

12  the MacBook.  It also lists files with modified dates occurring in the future (years 2020 and 2022).

13  KH Decl. ¶¶ 13-14; Exs. G-H.

14  Aside from such questionable "data," Kunkel misleadingly claims there are 3,935 folders or

15  files with "allride" in the name that have creation or modified timestamps on March 24 and 25, and

16  1279 files are source code, as indicated by the file extensions .cpp, .cc, and .h.  Kunkel Decl. ¶¶ 6-7.

17  But Kunkel's file list reveals that such files or folders have modified timestamps that *exactly match*

18  (to the second) the creation timestamps. KH Decl. ¶¶ 15-18; *See e.g.* Ex. I.  WeRide fails to explain

19  how a file with a modified timestamp matching its creation timestamp could be considered spoliated.

20  Also, in contrast to WeRide's allegation that Huang modified over a thousand "AllRide source

21  code files," Mot. at 10, *none* of the folders or files with "allride" in the name that have March 24 or

22  25 timestamps have the identified source code extensions.  KH Decl. ¶ 15.  If one searches Kunkel's

23  file list for any of those extensions (.cpp, .cc, .h) among the files or folders with "allride" in the name

24  and having March 24 or 25 timestamps, there are *no* results.  *Id.*  But searching for those extensions

25  in all files and folders (without the name "allride") with timestamps on March 24 and 25, returns 1279

26  results—the same number Kunkel identifies.  *Id.*; Kunkel Decl. ¶ 7.  Of these 1279 results, *none* are

27  ZZX source code.  Rather, all contain "Arduino" in the file path, indicating that the files are Arduino

28

- 12 -

1   code, which is open source and publicly available online.  *Id.* ¶ 15; Ex. I.  Huang also reviewed ZZX's

2   git logs, which revealed that he made no modifications to ZZX code during this time period.  *Id.* ¶ 16.

3   In short, there is no basis to find Huang spoliated any ZZX/AllRide code.

### c.   There Is No Evidence That Huang Deleted Files Before Turning His Laptop Over Pursuant to the Preliminary Injunction Order.

5         Kunkel does not identify any instances of information being deleted from the ZZX MacBook.

6   Rather, he serves up mere innuendo and states that the laptop uses Apple's newest file system (as do

7   presumably millions of other laptops), which purportedly makes it so deleted files cannot be

8   recovered.  Kunkel Decl. ¶ 8.  He then guesses that Huang "had plenty of time to delete data" from

9   the laptop between the March 22 Order and the day Huang turned over his devices.[5]  *Id.* ¶ 9.  He

10  speculates further that the presence of files with creation/modified timestamps on March 24 or 25

11  "*may* be consistent" with three hypothetical scenarios between March 22 and April 2: (1) files could

12  have been modified; (2) files could have been deleted and replaced with new files; or (3) new files

13  were added.  *Id.* ¶ 10.  Ignoring the fact that Huang's profession regularly requires him to perform a

14  "git pull" that involves downloading or syncing thousands of files or folders, Kunkel "opines" that

15  the third option would be "strange."  *Id.*; KH Decl. ¶ 3.

16        The Court should reject Kunkel's wild speculation.[6]  There is no evidence that Huang deleted

17  anything, nor does Huang have any reason to believe anything was deleted.  KH Decl. ¶ 18.  Any

18  suggestion that Huang spoliated ZZX source code is just speculation and Kunkel himself practically

19  admits this. Thus, the Court should reject any requests for sanctions on this ground.  *See FMC Techs.,*

20  *Inc. v. Edwards*, No. C05-946C, 2007 WL 1725098, at *10 (W.D. Wash. June 12, 2007), *aff'd*, 302

21  F. App'x 577 (9th Cir. 2008) (rejecting request for sanctions when "allegations regarding the

---

23  [5] Kunkel incorrectly states that Huang turned his devices over to counsel on April 2, 2019.  Kunkel Decl. ¶ 9.  Huang actually did so on March 26, 2019.  LH Decl. ¶ 4 & Ex. B.

24  [6] The Federal Rules require "that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri P. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).  As detailed above, Kunkel bases paragraphs 6, 7, and 10 on unreliable timestamps in his MacBook file list.  Further, paragraph 7 misleadingly fails to disclose the fact that *none* of the 1279 source code files have "allride" in the name. Ex. I. Paragraph 9 asserts that Huang turned over his devices on April 2, 2019 to his counsel.  This is false and Kunkel lacks personal knowledge; the devices were turned over on March 26, 2019.  *See* LH Decl. ¶ 4, Exs. A&B. And paragraph 10 is pure speculation and innuendo, lacks foundation, and is unreliable. Thus, paragraphs 6, 7, 9, and 10 should be stricken and disregarded.

destruction of computer files are anything but clear," the court could not "find Plaintiffs' assertions any more or less credible than Defendants' explanations for the 'missing' data," and a jury would ultimately evaluate witnesses' credibility).

### 2.     Huang Had No Role in the Alleged Spoliation by Other Defendants.

WeRide also, without success, attempts to impute the alleged actions by other Defendants onto Huang. First, WeRide alleges that "Defendants" destroyed thousands of emails through ZZX's 90-day retention policy. Mot. at 11. Relatedly, WeRide alleges that "Huang and AllRide knew that the pre-November 2018 weekly engineering reports and Phabricator emails were relevant—and yet allowed all such documents to be destroyed." Mot. at 17-18. But Huang never had any control over ZZX's email server or even knew about the retention policy. Ex. A at 639:14-18, 640:13 – 641:5, 642:1-5, 644:13-17. There is no basis to attribute any responsibility for this issue to Huang.

Second, WeRide claims that "Huang and AllRide refused to make the code on Huang's surrendered laptop . . . available until May 29, 2019." Mot. at 14. This is false. Huang turned over his laptop to his counsel, who then made the devices available to WeRide on March 26, 2019. LH Decl., Exs. A&B. There is nothing more Huang could have done. Also, as support for its argument, WeRide cites an email exchange with ZZX's counsel discussing logistics of when experts could review source code. *See* Landes Decl., Ex. 75. Huang's then-counsel WSGR is copied but never participates in the conversation. *Id.* Nor is there any suggestion that Huang (or any Defendant) refused to make the source code available for WeRide's inspection. *Id.*

Third, WeRide argues that "Defendants" obstructed WeRide's investigation into the alleged spoliation. Mot. at 15. But there are no alleged failures specifically by Huang. Instead, Huang timely responded to WeRide's interrogatories and requests for production; sat for two depositions related to the alleged spoliation; and participated in an interview by FTI. Indeed, Huang cooperated in spite of WeRide's misuse of the investigation to take discovery beyond the scope of the alleged spoliation. *See, e.g.*, Dkt. No. 291 at 7 (highlighting depositions are limited to the subject of "electronic evidence deletion," and reminding counsel to "keep their questions within that boundary or very close to it"). WeRide also claims that "Defendants" missed court-ordered deadlines and withheld relevant documents even after being ordered to produce them. But, again, there are no allegations against

- 14 -

Huang.  *Id.*  Rather, WeRide's cited support for this position involves discovery disputes solely between WeRide and ZZX.  In short, Huang has done nothing but cooperate with the investigation and the discovery process ordered by the Court.

Fourth, WeRide falsely states that "[n]one of the Defendants made any attempt to preserve documents until after the preliminary injunction issued[.]"  Mot. at 18 (emphasis removed).  But, as WeRide already knows, Huang took several steps to preserve his information before the March 22, 2019 Order:  (1) Huang diligently searched for and provided his USB devices to counsel on December 3, 2018, and WeRide's e-discovery vendor took custody of one of the devices in January 2019, *see* Dkt. Nos. 70-1 ¶ 17, 80-1, ¶ 6; 100-2; and (2) Huang frequently backed up his ZZX MacBook on an external drive (produced to WeRide following the injunction). LH Decl., Ex. A; Zhang Decl. ¶ 5.

In sum, Huang did not spoliate ZZX source code or evidence, or violate a court order.  So sanctions under Rule 37(b) or the Court's inherent powers are not warranted.  *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence[.]").

**B.     No Sanctions Against Huang Are Warranted Under Rule 37(e) Because Huang Took Reasonable Steps to Preserve ESI.**

Because Rule 37(b) is not applicable and the alleged spoliation by Huang involves ESI, Rule 37(e) governs the allegations.  The threshold inquiry under Rule 37(e) "is whether ESI has been 'lost,' which in turn requires a showing (a) that discoverable ESI existed when a duty to preserve arose but was not preserved due to a party's negligent failure to take reasonable steps to preserve it *and* (b) that it cannot be restored or replaced." *Oracle*, 328 F.R.D. at 549.  But here that threshold inquiry has not been met:  Huang did not have a duty to preserve before November 2018, and he took reasonable steps to preserve such information.  Sanctions under Rule 37(e) are therefore not warranted.

**1.     Rule 37(e) Governs the Alleged Spoliation of ESI.**

WeRide's motion deals with ESI allegedly spoliated before and after the March 22, 2019 Order, and focuses heavily on Rule 37(b) and the Court's inherent authority.  But Rule 37(b) only applies where parties allegedly failed to obey a discovery order.  As explained above, Huang did not

- 15 -

violate the Order. Thus, Rule 37(b) is inapplicable to any alleged spoliation by Huang. WeRide has also "framed the sanctions issue as invoking the district court's inherent authority. However, at the time the sanctions motion was filed, sanctions were governed by the current version of Rule 37(e)." *Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018). As many courts and the Advisory Committee notes explain, amended Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used" in response to loss of ESI. *See, e.g.*, Fed. R. Civ. P. 37(e), Adv. Comm. Note (2015); *Newberry*, 750 F. App'x at 537; *Waymo*, 2018 WL 646701, at *1 ("Because the evidence in question consists of electronically-stored information, FRCP 37(e), not inherent authority, supplies the controlling legal standard."); *Matthew Enterprise, Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 2957133, at *1 (N.D. Cal. May 23, 2016) (applying Rule 37(e) instead of inherent powers); *Fiteq Inc v. Venture Corp.*, No. 13-cv-01946-BLF, 2016 WL 1701794, at *3 (N.D. Cal. Apr. 28, 2016) (same).

*Hughler v. Southwest Fuel Management, Inc.* does not require a different conclusion. No. 16-cv-4547, 2017 WL 8941163 (C.D. Cal. May 2, 2017); *see* Mot. at 16 n.16. Although *Hughler* disagreed that Rule 37(e) limited courts' inherent authority to sanction ESI spoliation, it emphasized that "the Supreme Court cautioned . . . that 'when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.'" *Id.* at *8 (quoting *Chambers v. NASCO*, 501 U.S. 32, 50 (1991)); *see also Nguyen v. Lotus by Johnny Dung, Inc.*, No. 17-cv-1317, 2019 WL 1950294, at *6 (C.D. Cal. Mar. 14, 2019) ("[E]ven if the Court were not foreclosed from exercising its inherent power to sanction in this context, the Court still would not do so because the remedies under Fed. R. Civ. P. 37(e) are directly applicable to the alleged conduct at issue."). WeRide offers no argument that the Court could not issue adequate sanctions, if warranted, under the Rules. Thus, Rule 37(e) governs the inquiry into the alleged instances of spoliation by Huang.

### 2. Huang's Duty to Preserve Evidence Arose After the November 15, 2018 Demand Letter. Any Earlier Loss of Information Is Not Spoliation.

"Spoliation is the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Waymo*, 2018

WL 646701, at *14.  Rule 37(e) "does not apply when information is lost before a duty to preserve arises."  Fed. R. Civ. P. 37(e), Adv. Comm. Note (2015); *see also Oracle*, 328 F.R.D. at 549.  To determine when a duty to preserve arose, courts evaluate "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation."  *Waymo*, 2018 WL 646701, at *14 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).  "Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant."  Fed. R. Civ. P. 37(e), Adv. Comm. Note (2015).  Courts should also "be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation."  *Id.*  This is a "flexible fact-specific standard."  *Waymo*, 2018 WL 646701, at *16 (quoting *Micron Tech.*, 645 F.3d at 1320).

Here, WeRide's cited evidence belies its contention that Huang's duty to preserve was triggered at the end of July 2018.  First, WeRide relies on a narrow portion of deposition testimony to argue that, after speaking with Han in July 2018, "Huang was concerned that WeRide might sue him."  Mot. at 4.  In context, however, the testimony makes clear that Huang did not remember thinking WeRide would sue:

> Q: Were you concerned that Tony Han might try to file a lawsuit against you?
>
> A: It's possible. He has threatened other people doing so before.
>
> Q: So part of the reason you looked for consequence and then, in the last search penalties is you were concerned that there may a [sic] possibility Tony Han would file a lawsuit?
>
> [Objection]
>
> A: **I don't remember what I was thinking at that point**, but it's – it's unfair to answer just by the knowledge right now and going back.  **At that point, what I was thinking or was concerned about a lawsuit, I don't have particular information**.
>
> Q: Okay. But it's possible that you thought Tony Han might try to sue you as a result of that conversation?
>
> [Objection]
>
> A: At this point, I think it's possible.  **At that point, I don't remember**.

Landes Decl., Ex. 8 at 466:16 – 467:15 (emphasis added); *see also* Fed. R. Civ. P. 37(e), Adv. Comm. Note (2015) (noting there is often uncertainty regarding prospective litigation, and "[i]t is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed.").   Also, Han did not threaten to sue Huang, and Huang is not aware of anytime that Han followed through on any threats to others.   KH Decl. ¶ 6.   Further, "the mere existence of a potential claim or the distant possibility of litigation" does not trigger the duty to preserve.   *Waymo*, 2018 WL 646701, at *16 (quoting *Micron Tech.*, 645 F.3d at 1320).

Second, WeRide argues that Huang contacted WSGR "about this litigation" on July 31, 2018. Mot. at 4.   Not so.   As averred by Huang and his prior counsel, Huang did not contact WSGR until after receiving WeRide's November 15, 2018 demand letter.   LH Decl. ¶ 2; KH Decl. ¶ 8.   Although Huang's privilege log includes WSGR's Billing Policy with a "DocDate" listed as July 31, 2018, this reflects the document's last modified date.   LH Decl. ¶ 3; Harris Decl. ¶ 9.   WSGR, however, did not send this document to Huang until November 2018, or create it for this litigation.   LH Decl. ¶ 3; Harris Decl. ¶¶ 9-10.   It is simply untrue that WSGR began representing Huang in July 2018.   *See Oracle*, 328 F.R.D. at 550-51 (finding privilege log listing work product relevant to, but not made in anticipation of the case being litigated, insufficient to establish earlier duty to preserve).

Third, WeRide argues that Huang's internet search history demonstrates that he believed a lawsuit was reasonably foreseeable.   Mot. at 4.   Naturally, over the two days after being told he would lose his job for allegedly soliciting employees, Huang looked up "resignation vs termination" and search terms related to employee solicitation, such as "what is employee solicit and consequence," on July 31 and August 2, 2018.   Kunkel Decl., Ex. C.   As demonstrated by his search history and deposition testimony, Huang was unfamiliar with the concept of employee solicitation as a basis for termination.   Ex. A at 463:1 – 466:14; Ex. F at 346:11 – 347:18.   His search history reflects an attempt to understand why he was being fired; not a belief that litigation was foreseeable.   KH Decl. ¶¶ 7-8.

Instead, the earliest Huang's duty to preserve arose was upon his receipt of the November 15, 2018 letter from WeRide's counsel.   *See* Landes Decl., Ex. 73.   This letter made several demands and threatened that "WeRide will take all necessary and appropriate legal actions against you . . . including filing a lawsuit[.]"   *Id.* at 3.   At the time of receiving this letter, Huang was an unrepresented and had

no experience with litigation, much less preservation requirements. KH Decl. ¶¶ 2, 8. Upon receipt of the letter, he promptly sought and retained counsel. LH Decl. ¶ 2. Soon after, he diligently searched for the USBs mentioned in the letter and provided the USBs that he could locate to counsel on December 3, 2018. Dkt. No. 100-2 ¶ 2. Huang did not anticipate litigation before receiving the November 15, 2018 demand letter and a "reasonable party in the same factual circumstances" as Huang would not have reasonably foreseen litigation any earlier. *Waymo*, 2018 WL 646701, at *14.

Plaintiffs' cited cases support this conclusion. *See Inland Concrete Enterprises, Inc. v. Kraft Americas LP*, No. 10-cv-1776, 2011 WL 13209166, at *7 (C.D. Cal. Mar. 9, 2011) (duty to preserve triggered when "Defendants *clearly* had notice of a potential claim as shown by their own emails threatening litigation" (emphasis added)); *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding duty to preserve arose after party was explicitly warned, "[T]his is going to be a lawsuit. So you've got to be careful.").

Without a duty to preserve, this ends the sanctions inquiry into the (1) WeRide MacBook and Lenovo; (2) kun.huang@allride.ai email address before August 13, 2018; and (3) personal MacBook. *See United States v. Kitsap Physicians Serv.*, 314 F.3d at 1001-02 (9th Cir. 2002) (holding no spoliation where party was not on notice of a "specific, future" lawsuit and had no duty to preserve evidence); *Oracle*, 328 F.R.D. at 549 (Rule 37(e) requires "that discoverable ESI *existed* when a duty to preserve arose" (emphasis added)). For completeness, however, Huang proceeds through the Rule 37(e) analysis.

**3.      There Is No Evidence That Huang Failed to Take Reasonable Steps That Caused the Alleged Loss of Evidence.**

Rule 37(e) applies only if ESI was lost because a party failed to take "reasonable steps to preserve it." Fed. R. Civ. P. 37(e). It "does not call for perfection." Fed. R. Civ. P. 37(e), Adv. Comm. Note (2015). Also, the rule is inapplicable when the loss occurs despite the party's reasonable steps, such as when ESI is not within the party's control. *Id.* Indeed, "[t]he fundamental factor is that the document, or other potential objects of evidence, must be in the party's possession, custody, or control for any duty to preserve to attach." *Phillips v. Netblue, Inc.*, No. C-05-4401 SC, 2007 WL 174459, at *3 (N.D. Cal. Jan. 22, 2007). "One cannot keep what one does not have." *Id.*

*WeRide MacBook, WeRide Lenovo, and Personal MacBook*:  At the time Huang's duty to preserve arose, he was not in possession, custody or control of the WeRide MacBook, WeRide Lenovo, or his personal MacBook.  He, therefore, could not have taken (and was under no obligation to take) reasonable steps to preserve these devices.  *See id.*

*ZZX Email Account*:  There is no evidence that Huang ever accessed the kun.huang@allride.ai account before August 13, 2018, that he controlled or had the ability to delete it, or that he had any role in its deletion.  And, at the time of the account's deletion and recreation in August 2018, Huang did not have a duty to preserve.  Huang cannot be said to have failed to take reasonable steps to preserve the account because he did not have control over it, or a duty to preserve at that time.  *Id.*

*USBs*:  WeRide alleges that Huang spoliated two USBs that were allegedly connected to the shared WeRide Lenovo.  But there is no evidence that Huang ever possessed these USBs.  Indeed, Huang performed a diligent search for any USBs and provided them to his counsel in December 2018. Dkt. Nos. 70-1, 100-2.  He did not have or recognize the two USBs that WeRide claims are lost. Huang cannot be said to have failed to preserve something he did not have.  Any suggestion otherwise is solely speculation.  *See Waymo*, 2018 WL 646701, *16 ("[T]he point remains that [defendant] never controlled, destroyed, or otherwise failed to preserve the information . . . No amount of lawyer argument could transform these facts into anything resembling 'spoliation.'"); *Lakes v. Bath & Body Works, LLC*, No. 16-cv-2989, 2019 WL 2124523, at *3 (E.D. Cal. May 15, 2019) (declining to impose sanctions where allegations of misconduct are too speculative).

*ZZX MacBook*:  Despite WeRide's arguments, Huang took reasonable steps to preserve his ZZX MacBook by repeatedly backing up the laptop onto an external drive throughout the litigation. And although he does not know why Kunkel's file list shows certain creation/modified dates on March 24 and 25, the only identified source code with such timestamps is from the open source platform Arduino and is publicly available.  It is not ZZX code.

In sum, Huang took reasonable steps to preserve potentially relevant information after his duty arose, so sanctions under Rule 37(e) are unavailable.

1

2

**C.** **Even If Huang Had Spoliated ESI (Which He Did Not), WeRide's Requested Remedies Are Too Extreme Because There is No Prejudice or Evidence of Bad Faith or An Intent to Deprive.**

3

WeRide has requested default judgment or, alternatively, a litany of evidentiary sanctions that

4

are the functional equivalent of a default judgment, and monetary sanctions.  But even if the Court

5

finds that Huang spoliated evidence (which he did not), sanctions under Rule 37 and the Court's

6

inherent authority are not mandatory. [7] *See* Fed. R. Civ. P. 37(b)(2), (e); *NW Pipe Co. v. DeWolff,*

7

*Boberg & Assocs., Inc.*, No. EDCV 10-0840-GHK, 2012 WL 137585, at *4 (C.D. Cal. Jan. 17, 2012)

8

("[T]he fact that this sanction can be imposed does not necessarily mean that it should.").

9

Rule 37(e), sets forth certain requirements—prejudice or intent to deprive a party of

10

information's use—before sanctions may be issued.  The "most severe" potential measure after a

11

showing of prejudice under Rule 37(e)(1) would be to allow WeRide "to present evidence to the jury

12

regarding the lost information and its likely relevance." *Oracle*, 328 F.R.D. at 549; *see also* Fed. R.

13

Civ. P. 37(e), Adv. Comm. Note (2015) ("serious measures" under Rule 37(e)(1) include "permitting

14

the parties to present evidence and argument to the jury regarding the loss of information, or giving

15

the jury instructions to assist in its evaluation of such evidence or argument").  And sanctions under

16

Rule 37(e)(1) must be "no greater than necessary to cure the prejudice."  Harsher sanctions are

17

allowed only with a showing of illicit intent under Rule 37(e)(2). Similarly, for dispositive sanctions

18

under Rule 37(b) and the Court's inherent authority, the Court should consider: "(1) the public's

19

interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk

20

of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their

21

merits; and (5) the availability of less drastic sanctions." *Valley Eng'rs*, 158 F.3d at 1057.  The first

22

two factors typically favor sanctions, while the fourth weighs against termination.  *Henry v. Gill*

23

*Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).  Thus, "the key factors are prejudice and the

24

25

26

27

28

[7] Rule 37(b)(2)(C) directs an award of reasonable fees where a discovery order was violated *unless* "the failure was substantially justified or other circumstances make an award of expenses unjust." WeRide's request for monetary sanctions fails to comply with Local Rule 37-4(b)(3), which requires sanctions motions requesting attorneys' fees and costs to "itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed."  No itemization or justification for hourly rates has been filed, depriving Defendants of the ability to examine and object to any claimed fees and costs.

availability of lesser sanctions." *Id.* Dispositive sanctions require "willfulness, bad faith, or fault." *Litle & Co. v. Mann*, 145 F.3d 1339 (9th Cir. 1998).

Overall, "[d]ismissal, default judgment, and sanction orders taking the plaintiff's allegations as established and awarding judgment on that basis are 'the most severe penalty,' and are authorized only in 'extreme circumstances.'" *Mitchell v. Acumed, LLC*, No. 11-cv-00752, 2012 WL 761705, at *2 (N.D. Cal. Mar. 8, 2012) (Cousins, J.) (citing *Wiltec*, 857 F.2d at 603; *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), *as amended* (May 22, 1992). The standard for awarding the requested adverse inference instructions and evidentiary sanctions is similarly "demanding." *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-cv-01064-SI, 2012 WL 12919129, at *3 (N.D. Cal. Nov. 30, 2012) (Martin Quinn, Special Master). Under these governing standards, the Court should reject WeRide's requested sanctions against Huang.

### 1. Huang Did Not Act Willfully, in Bad Faith, or With An Intent to Deprive WeRide of Information.

Although WeRide attempts to spin a tale of "mass, coordinated spoliation," there is no evidence to find or infer that Huang intended to deprive WeRide of any information or that he acted willfully, wrongfully, or in bad faith. Rather, once his duty to preserve arose, Huang took reasonable steps to preserve his data. And, as discussed below, "this is not the sort of case where the [allegedly] unpreserved evidence clearly would have resolved a crucial issue in the case." *See ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018) (failure to preserve "speculative evidence does not raise the specter of bad faith in the same way that a failure to preserve evidence of a specific, crucial event in a case might"). Any alleged loss of ESI occurred before Huang had a duty to preserve or is just speculation. *Cf. Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) ("When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected").

Also, despite WeRide's assertions, Huang has fully cooperated throughout the investigation, including depositions. *See* Mot. at 22. Although Huang, like any witness, stated that he did not remember or know in response to a few questions, he provided detailed answers to the overwhelming

majority of WeRide's questions throughout three depositions.[8] Thus, Huang has not engaged in bad faith conduct or acted with an intent to deprive WeRide of information. Dispositive sanctions (default judgment or other sanctions tantamount to default) are not permissible against Huang under Rule 37 or the Court's inherent authority. *See Nuvasive, Inc. v. Madsen Med., Inc.*, No. 13-cv-2077, 2016 WL 305096, at *2 (S.D. Cal. Jan. 26, 2016) (finding adverse inference would be improper under Rule 37(e) where company "was at fault for not enforcing compliance with the litigation hold," but did not intentionally fail to preserve ESI); *Matthew Enterprise*, 2016 WL 2957133, at *5 (holding preclusive sanctions would "effectively decide the case" and were "too stringent," despite finding spoliation and "significant prejudice" when party "took literally no action to preserve" the lost information); *Adrian v. OneWest Bank, FSB*, 686 F. App'x 403, 406–07 (9th Cir. 2017) (holding district court did not abuse its discretion by rejecting adverse inference instruction when there was no evidence of bad faith).

### 2.     WeRide Has Not Been Prejudiced By Huang's Alleged Spoliation.

Any lesser sanctions against Huang are also not appropriate because WeRide has not suffered any prejudice from Huang's alleged spoliation. "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e), Adv. Comm. Note (2015). Despite WeRide's arguments, Huang has not spoliated— intentionally or otherwise—"the most critical evidence relevant to WeRide's claims." Mot. at 19.

*Trade Secret Claims Against Huang*:  WeRide argues that it has been prejudiced because Huang's laptops and the two allegedly lost USBs would have provided the "best evidence" of what trade secrets Huang allegedly took. Mot. at 20. Yet WeRide's Paul Liu testified that ███████ ████████████████████████████████████████████████. Ex. C at 176:25 – 177:12. Further, a comparison of WeRide's code and ZZX's code (and associated logs) would further serve as the best evidence of whether trade secrets were misappropriated. Ex. A at 556:23 – 557:1; 568:10 – 569:5.

Also, there is no evidence that Huang ever possessed the two allegedly lost USBs or that such USBs ever contained WeRide trade secrets. Although WeRide's expert Matthew Gayford suggested that the '566 Device contained WeRide information, he made no similar suggestions as to the

---

[8] Should the Court wish to review the full deposition transcripts, Huang will provide them.

remaining two USB devices.  WeRide does nothing more than speculate that Huang used these devices and that they contained WeRide information.  This is insufficient for a finding of prejudice.

*Breach of Fiduciary Duty and Contract Claims*: WeRide argues it has been prejudiced because the "best evidence" that Huang allegedly breached a fiduciary duty and the PIIA would have been in the kun.huang@allride.ai account before August 13, 2018.  Mot. at 19.  Yet there is *no* evidence that Huang ever accessed that account during that timeframe.  Instead, WeRide tries to create prejudice based on Huang's alleged access to a *different* email account (test@allride.ai), from which there is no evidence that he ever sent anything. Collins Decl. ¶¶ 7-9; KH Decl. ¶ 4. Again, WeRide's claims of prejudice are solely speculative. Also, to the extent WeRide's breach of fiduciary duty and contract claims are based on Huang's alleged solicitation of WeRide employees, there is no prejudice. WeRide has only alleged that any solicitation happened through oral communications. And even if it had alleged any written communications to its employees, WeRide would be in possession of such communications.

In sum, WeRide is not prejudiced from any of the alleged spoliation by Huang, so sanctions under Rule 37(b), Rule 37(e)(1), and the Court's inherent authority are not warranted. *See Bollow v. Fed. Reserve Bank of S.F.*, 650 F.2d 1093, 1102 (9th Cir. 1981) (affirming denial of Rule 37 motion where moving party made no showing of prejudice resulting from the alleged misconduct); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000) ("Exclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side.").

## D.     WeRide's Sanction Motion is Untimely to the Extent It Is Based On The Alleged Loss of Devices Used At WeRide & Huang's Personal MacBook.

WeRide's motion for sanctions is untimely to the extent that it is based on the alleged spoliation of the WeRide Lenovo, the WeRide MacBook, and two USB devices. "An unreasonable delay in filing a motion for sanctions may render such a motion untimely." *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI, 2019 WL 1411127, at *2–3 (D. Or. Mar. 27, 2019).  Also, the Local Rules require that "[a]ny motion for sanctions, regardless of the sources of authority invoked, . . . must be

made *as soon as practicable* after the filing party learns of the circumstances that it alleges make the motion appropriate." Civil L.R. 7-8 (emphasis added).

Here, WeRide has known about the loss of data on the WeRide Levono and MacBook since at least November 15, 2018, if not earlier. *See* Landes Decl., Ex. 73; Dkt. No. 1 ¶ 91 (alleging laptops returned on August 15, 2018, and "[u]pon receiving the laptops, WeRide discovered" files were deleted). Also, WeRide was informed by at least January 24, 2019 that Huang does not recognize or possess the '5393 Device or the 6&2 Device, and no longer possessed his personal MacBook. *See* Dkt. Nos. 70-1 (Jan. 24, 2019 Huang Decl.). Yet WeRide waited nearly a year to move for sanctions on these grounds, far too late to be considered filed "as soon as practicable" or timely with respect to these allegations. *See Perdana Capital (Labuan) Inc. v. Chowdry*, No. 09-cv-1479 RS, 2012 WL 13075527, at *2 (N.D. Cal. July 3, 2012) (denying motion in part because, under L.R. 7-8, moving party's "attempt to re-raise these issues now, long after the disputes arose, is procedurally improper and wasteful of judicial resources"); *Siebert v. Gene Sec. Network, Inc.*, No. 11-cv-1987-JST, 2014 WL 5808755, at *2 (N.D. Cal. Nov. 6, 2014) (finding motion filed 8 months after the alleged conduct was not filed "as soon as practicable" under L.R. 7-8); *Permasteelisa CS Corp. v. Airolite Co.*, LLC, 2008 WL 2491747, at *2 (E.D. Ohio June 18, 2008) (finding  sanctions motion untimely where plaintiff had known for more than a year that defendant discarded his computer). Indeed, only the alleged loss of email of ZZX (not Huang) prompted this motion. WeRide cannot be "prejudiced" by manufacturing new theories of spoliation by Huang, when WeRide was aware of the alleged issues far earlier.

## V.   CONCLUSION

For the foregoing reasons, the lack of spoliation and the strong policy in favor of deciding cases on the merits, Huang respectfully requests that the Court deny WeRide's motion for sanctions against Huang in its entirety.

Dated:  November 22, 2019

VINSON & ELKINS L.L.P.

By: /s/ *Mortimer H. Hartwell*
Mortimer H. Hartwell (CSB 154556)

*Attorneys for Defendant Kun Huang*