QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  William T. Pilon (Bar No. 326487)
  williampilon@quinnemanuel.com
  Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100

  Ryan S. Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa Street
Los Angeles, California 90017
Telephone:      (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Plaintiffs WeRide Corp. and
WeRide Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE CORP. f/k/a JingChi Corp.; WERIDE INC. f/k/a JingChi Inc., <br><br> Plaintiff, <br><br> vs. <br><br> JING WANG, an individual, KUN HUANG, an individual, ZHONG ZHI XING TECHNOLOGY CO. LTD., d/b/a ALLRIDE.AI, ALLRIDE.AI INC., <br><br> Defendants. | CASE NO. 5:18-cv-07233-EJD <br><br> **WERIDE'S NOTICE OF MOTION AND MOTION FOR DISCOVERY SANCTIONS AGAINST DEFENDANT ZHONG ZHI XING TECHNOLOGY CO. LTD. FOR VIOLATION OF (I) THE PROTECTIVE ORDER AND (II) THE AUGUST 22 ORDER GRANTING WERIDE'S MOTIONS TO COMPEL** <br><br> Date:        March 26, 2020 <br> Time:        9:00 A.M. <br> Courtroom:  4, 5th Floor <br><br> The Hon. Edward J. Davila <br><br> Action Filed: November 29, 2018 <br> Trial Date:    None Set |

Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 26, 2020, at 9:00 A.M. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward J. Davila at the United States District Court for the Northern District of California, Courtroom 4 – 5th Floor, 280 South 1st Street, San Jose, California, Plaintiffs WeRide Corp. and WeRide Inc. (collectively "WeRide") shall move and hereby do move the Court to find Defendant Zhong Zhi Xing Technology Co. Ltd. (hereafter "ZZX") both violated the operative protective order (Dkt. 125) and the August 22, 2019, order compelling production of documents withheld on the basis of "Chinese law," and to further hold ZZX in contempt, and sanction ZZX pursuant to the Court's contempt powers, Federal Rule of Civil Procedure 37(b)(2), and the Court's inherent powers, by granting the following relief:

- All attempts by ZZX to take discovery against WeRide shall be stayed, pending the entry of a new protective order that provides additional protections to WeRide's "Highly Confidential – Attorneys' Eyes Only" information;

- ZZX shall be commanded to identify the specific attorney(s) responsible for the protective order violations identified in this motion, and further precluding that attorney (or those attorneys) from accessing "Highly Confidential – Attorneys' Eyes Only" information for the duration of the lawsuit;

- ZZX shall be commanded to produce all documents and communications related to the October 26, 2019, letter written by Patrick Lam to the Guangzhou municipal authorities;

- ZZX shall be conditionally fined $120,000, dischargeable if ZZX produces the documents improperly withheld on the grounds of "Chinese Law" within three days of this filing;

- ZZX shall additionally be fined $2000 per day until it produces the documents improperly withheld on the grounds of "Chinese Law"; and

- WeRide shall be awarded its costs and fees in connection with bringing this motion and any related investigation.

WeRide's motion is based on this notice of motion and motion, the following memorandum of points and authorities, the supporting declarations of Michael LaFond and Qing Lu, the exhibits to those declarations, the proposed order WeRide is submitting with this motion, all matters of which the

1  Court may take judicial notice, other pleadings on file in this action, and other written or oral

2  argument that WeRide may present to the Court.

3

4  DATED:  December 6, 2019                    Respectfully submitted,

5                                             QUINN EMANUEL URQUHART & SULLIVAN,
                                               LLP
6

7

8                                             By   /s/ Ryan S. Landes
                                                   Claude M. Stern
9                                                  Ryan S. Landes
                                                   William T. Pilon
10                                                 Michael F. LaFond
                                                   *Attorneys for Plaintiffs WeRide Corp. and WeRide*
11                                                 *Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.     FACTS RELEVANT TO ZZX'S PO VIOLATION ............................................................ 3

II.    FACTS RELEVANT TO ZZX'S ONGOING CONTEMPT OF THE AUGUST 22
       ORDER GRANTING WERIDE'S MOTION TO COMPEL. .............................................. 9

ARGUMENT ..................................................................................................................... 11

I.     ZZX HAS COMMITTED AT LEAST THREE WILLFUL VIOLATIONS OF THE
       OPERATIVE PROTECTIVE ORDER ............................................................................ 11

       A.     Lam's Use of WeRide's AEO Documents Outside of This Litigation
              Violated the Protective Order ...................................................................... 12

       B.     Disclosing AEO Documents to Patrick Lam Violated the Protective Order. ........ 13

       C.     Failing to Alert WeRide About the Disclosure to Patrick Lam and to Chinse
              Regulators Violated the Protective Order. ...................................................... 14

       D.     Any Argument that Lam Only Received and Revealed "Public Information"
              Is a Non-Starter. ......................................................................................... 15

II.    ZZX CONTINUES TO WITHHOLD DOCUMENTS IN CONTEMPT OF
       MULTIPLE ORDERS COMPELLING PRODUCTION. .................................................. 17

III.   ZZX'S VIOLATIONS OF THIS COURT'S ORDERS MERIT SANCTIONS ................... 18

       A.     ZZX's Violations of the Court's Orders Subject It to Contempt Sanctions ........... 18

       B.     ZZX's Violations of the Court's Orders Subject It to Rule 37 Sanctions. .............. 20

       C.     ZZX's PO Violations Are Punishable Under the Court's Inherent Powers. ............ 21

       D.     ZZX's False and Libelous Accusations Support WeRide's Sanctions
              Request. .................................................................................................... 21

IV.    SUBSTANTIAL SANCTIONS ARE WARRANTED ...................................................... 22

CONCLUSION .................................................................................................................. 25

-iii-                                                                        Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
*Absolute Activist Value Master Fund Ltd. v. Devine*,
  2017 WL 1830569 (M.D. Fla. May 8, 2017) ............................................. 24

4
*Autodesk, Inc. v. ZWCAD*,
  2015 WL 1928184 (N.D. Cal. Mar. 27, 2015) ........................................... 24

5

6
*Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*,
  2013 WL 3367137 (E.D. La. July 5, 2013) ................................................ 24

7
*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  2016 WL 6609208 (C.D. Cal. July 12, 2016) ............................................ 20

8
*Bradford Technologies, Inc. v. NCV Software.com*,
  2013 WL 75772 (N.D. Cal. Jan. 4, 2013) ........................... 18, 19, 21, 23

9
*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005) ................................................................... 10

10
*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 50 (1991) ............................................................................... 21

11

12
*Clarke v. First Transit, Inc.*,
  2012 WL 12877865 (C.D. Cal. Nov. 2, 2012) .................................. passim

13
*Codexis, Inc. v. EnzymeWorks, Inc.*,
  2018 WL 1536655 (N.D. Cal. Mar. 29, 2018) ......................................... 22

14
*Del Campo v. American Corrective Counseling Services, Inc.*,
  2007 WL 1848660 (N.D. Cal. June 27, 2007) .................................... 16, 17

15

16
*Dell Inc. v. Compudirect, Inc.*,
  316 F. App'x 32 (2d Cir. 2009) ................................................................. 18

17
*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) ............................................................ 10, 17

18
*DRK Photo v. McGraw-Hill Glob. Educ. Holdings LLC*,
  2019 WL 450882 (D. Ariz. Feb. 5, 2019) ................................................ 21

19
*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ..................................................................... 20

20

21
*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ..................................................................... 21

22
*Griffith v. Davis*,
  161 F.R.D. 687 (C.D. Cal. 1995) ......................................................... 24, 25

23
*Harmon v. City of Santa Clara*,
  323 F.3d 617 (N.D. Cal. 2018) .................................................................. 17

24
*Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc.*,
  144 F.R.D. 379 (C.D. Cal. 1992) .............................................................. 21

25
*Hughes v. S.A.W. Entm't, Ltd.*,
  2019 WL 2060769 (N.D. Cal. May 9, 2019) ...................................... 17, 24

26

27
*In re Republic of Ecuador*,
  2011 WL 736868 (N.D. Cal. Feb. 22, 2011) ...................................... 10, 24

28
*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
  999 F. Supp. 591 (S.D.N.Y. 1998) ............................................................ 24

-iv-                                                    Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

*Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*,
  2009 WL 10695131 (N.D. Cal. Jan. 29, 2009) ........................................................ 14

*KFD Enterprises, Inc. v. City of Eureka*,
  2010 WL 11484695 (N.D. Cal. Nov. 12, 2010) ....................................................... 10

*Life Technologies Corp. v. Biosearch Technologies, Inc.*,
  2012 WL 1600393 (N.D. Cal. May 7, 2012) ........................................................... 23

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
  2012 WL 1600393 (N.D. Cal. May 7, 2012) ..................................................... 20, 23

*LifeScan Scotland, Ltd. v. Shasta Techologies, LLC*,
  2013 WL 5949629 (N.D. Cal. Nov. 6, 2013).................................................. 20, 21, 22

*Lopez v. Pama Mgmt., Inc.*,
  2017 WL 4685009 (C.D. Cal. Oct. 17, 2017) .......................................................... 18

*Matter of Search of Content Stored at Premises Controlled by Google Inc.*,
  2017 WL 4700056 (N.D. Cal. Oct. 19, 2017) .......................................................... 25

*Oliner v. Kontrabecki*,
  305 B.R. 510 (N.D. Cal. 2004) ............................................................................... 25

*On Command Video Corp. v. LodgeNet Entm't Corp.*,
  976 F. Supp. 917 (N.D. Cal. 1997) ............................................................. 11, 12, 13

*Ramos v. Swatzell*,
  2017 WL 2857523 (C.D. Cal. June 5, 2017) ........................................................... 20

*Reed v. Advocate Health Care*,
  2007 WL 2225901 (N.D. Ill. Aug. 1, 2007)............................................................. 24

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992)........................................................................... passim

*United States v. Nat'l Med. Enterprises, Inc.*,
  792 F.2d 906 (9th Cir. 1986) .................................................................................. 20

*United States v. Plache*,
  913 F.2d 1375 (9th Cir. 1990)........................................................................... 18, 19

**Rules and Regulations**
Fed. R. Civ. P. 26(f) ..................................................................................................... 20

Fed. R. Civ. P. 37 ...................................................................................................... 1, 4

Fed. R. Civ. P. 37(b)(2) ............................................................................................... 20

Fed. R. Civ. P. 65(d)..................................................................................................... 22

Fed. R. Civ. P. 72(a)..................................................................................................... 10

Fed. R. Evid. 502 ......................................................................................................... 24

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

**PRELIMINARY STATEMENT**

Defendant Zhong Zhi Xing Technology Co. Ltd. ("ZZX") is out of control.  Following its August 15, 2019, admission of mass spoliation (*see* Dkt. 231)—which was itself a violation of the Court's preliminary injunction—ZZX has repeatedly violated multiple court orders, including the operative Protective Order (the "PO," *see* Dkt. 125) and the August 22, 2019 order granting WeRide's Motions to Compel.  *See* Dkt. 252.[1]  This cannot continue; WeRide has no ability to litigate this case if ZZX (i) wantonly shares WeRide's highly confidential information with third parties and competitive decision makers (in violation of the PO), and (ii) refuses to produce documents despite *four* orders compelling production.  Enough is enough: contempt sanctions must issue.

**ZZX's PO Violation.**  A little over two weeks ago, WeRide obtained a copy of an October 26, 2019, letter sent by ZZX executive and co-founder Patrick Lam to the municipal authorities of Guangzhou, China (hereafter "Lam's Letter"),[2] wherein Lam states that he "noticed" WeRide has produced its confidential contracts with the Guangzhou government.  This is a problem: Lam should not have "noticed" those contracts, because WeRide designated them "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ("AEO"), and the PO provides that AEO documents *may not be disclosed* to ZZX employees like Lam.  Moreover, Lam's Letter did not stop there; it also *described* two specific AEO contracts, including a list clauses found in the contracts.  That makes Lam's Letter an independent PO violation, because however Lam may have (improperly) learned the details of these AEO contracts, he certainly was not free to disclose that information to the non-party Chinese municipal authorities, or use that information for a purpose unrelated to this litigation.  To date, ZZX refuses to explain how Lam gained access to the information he must have used to write his letter.

Additionally, what should be a straightforward PO violation has been exacerbated by ZZX's counsel at Greenberg Traurig ("Greenberg"), whom WeRide believes to be complicit in this incident.  Specifically, on October 30 (four days *after* Lam's Letter), Greenberg asked WeRide, for the first

---

[1]  This motion is *not* duplicative of WeRide's spoliation motion (*see* Dkt. 330): this motion addresses *separate* violations of different court orders, which ZZX committed *after* its spoliation.

[2]   A certified translation of Lam's Letter is attached as Exhibit A to the Declaration of Michael LaFond.  Notably, while the author of the letter is listed as Lin Xiaoning, that is an alias used by Patrick Lam.  *See* LaFond Ex. B (Guo Depo. Tr.) at 41:15-17.

time, if WeRide would agree to remove all confidentiality designations from two contracts—including one of the contracts referenced in Lam's Letter.  Greenberg's request was bizarre: Greenberg made no attempt to argue that the contract terms were not confidential, and Greenberg admitted that ZZX wanted the confidentiality designations removed so it could discuss the contracts with Chinese regulators.  Of course, by October 30, Lam had already caused this to happen—but Greenberg omitted that fact from its emails, and fell silent when WeRide rejected the de-designation request.

Nor did Greenberg bring itself into compliance with the protective order once WeRide learned the truth.  Within hours of first obtaining a copy of Lam's Letter, WeRide's counsel emailed Greenberg and demanded an immediate meet and confer, so that WeRide could gain an understanding of: (i) how Lam had gained access to materials WeRide produced with an AEO designation, (ii) why Lam thought it was acceptable to use WeRide's AEO documents for purposes outside of this litigation, and (iii) what steps could be taken to remedy the situation.  Despite repeated efforts to obtain answers to very specific questions, Greenberg's only response has been to send WeRide a series of links to internet news stories, which described, in high-level, non-specific generalities, the *existence* of the AEO contracts that Lam had gained access to—but of course not any of the terms or details to which Lam was somehow privy.  Based on those internet reports, Greenberg then argued the contracts were somehow "not-confidential."  When WeRide started seeking an explanation for this disconnect, Greenberg simply stopped responding to messages about this issue.

WeRide needs of the Court's assistance.  Lam is a senior executive, co-founder, and *competitive decision maker at WeRide's competitor*, ZZX, and he appears to have gained access to at least some WeRide AEO information, threatening serious harm to WeRide's competitive standing. Neither ZZX nor its counsel will explain how this happened, or provide any assurances that it will not happen again (or is not currently happening).  Unless the Court takes immediate action, WeRide will suffer very real, very serious competitive harm.

**ZZX's Refusal to Produce Documents Despite Multiple Court Orders.**  Beginning in June 2019, WeRide repeatedly filed motions to compel the production of documents that ZZX was withholding on the grounds of unidentified "Chinese laws."  *See, e.g.* Dkts. 146, 149, 157.  These motions (and others) were granted in their entirety on August 22, 2019.  *See* Dkt. 252.  But ZZX has

-2-                                                  Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

completely ignored that order, continues to withhold the documents, and has launched numerous collateral attacks that it knows to be baseless.

Indeed, ZZX's strategy is laid bare in Lam's Letter: even though ZZX recognizes "there is little likelihood of success," it will "appeal again" *ad naseum* until it runs out of options.  Even then— in the face of numerous court orders—ZZX thinks it can just "choose not to submit those documents and subject itself to an unfavorable position."  Sanctions must issue.

As laid out below, ZZX's actions constitute contempt as a matter of law.  It is well established that collateral attacks on a court order (such as motions for reconsideration, or requests to certify interlocutory appeals) do ***not*** stay the court order.  Accordingly, ZZX has been in contempt of the order granting WeRide's motion to compel for at least two months already (beginning when it withheld the documents while filing motions for reconsideration), and ZZX stated during meet and confer that it intends to continue to withhold the documents through an interlocutory appeal.  This must stop, and the Court should make clear to ZZX that compliance with Court orders is not a matter of "choice."  The Court's orders have no meaning (and WeRide's discovery and confidentiality rights are non-existent) if ZZX may simply ignore orders to advance its own ends.

## BACKGROUND

### I.   FACTS RELEVANT TO ZZX'S PO VIOLATION

**June 2018: Lam Is One of ZZX's "Founders" and a ZZX Competitive Decision Maker.** ZZX has repeatedly claimed—including through 30(b)(6) deposition testimony—that it was founded in June 2018 by three individuals: Johnny Chen, Peijian Gu, and Patrick Lam; moreover, ZZX states that, to this day, Chen, Gu, and Lam comprise ZZX's "senior management" and chief decision makers, to whom all ZZX employees ultimately report.  *See, e.g.* LaFond Ex. C (9/13/2019 ZZX 30(b)(6) Depo. Tr.) at 18:7-23; 20:9-25; 261:24-262:3.  WeRide disputes this position because all evidence establishes that Defendant Wang is ***also*** a ZZX chief decision maker (*see, generally* Dkt. 166), but for the purposes of this motion, Lam's position as a founder, member of senior management, and competitive decision maker for ZZX—a WeRide competitor—is undisputed.

**January 2019: Judge Cousins Grants WeRide's Motion for a Protective Order.**  On December 26, 2018, WeRide moved for a preliminary injunction and expedited discovery.  *See* Dkt.

34.   On January 16, 2019, Judge Cousins ordered the entry of the Northern District of California Model Protective Order for litigations involving trade secrets.   *See* Dkts. 51 (minute order); 54 (Protective Order).   The Model PO (i) permits documents to be designated AEO (*see* Dkt. 54 ¶5); (ii) states that ***both*** documents designated AEO ***and*** "any information copied or extracted from" AEO documents are protected under the order (*see* Dkt. 54 ¶3); (iii) provides that AEO documents may ***not*** be disclosed to employees of a party (*see* Dkt. 54 ¶7.3); and (iv) states that documents produced with an AEO designation may be used "***only*** for prosecuting, defending, or attempting to settle this litigation."   *See* Dkt. 54 ¶7.1 (emphasis added).

**March to August 2019: ZZX Refuses to Meaningfully Participate in Discovery for Months, and WeRide Repeatedly Moves to Compel.**   On March 22, 2019, the Court granted, in part, WeRide's motion for a preliminary injunction and expedited discovery, and discovery in this matter opened.   *See* Dkt. 116 at 27.   After first reviewing documents that Defendant Huang was ordered to surrender on March 26 (*see id*. at 26-27), WeRide served ZZX with Rule 33 Interrogatories and Rule 34 document requests on April 22, 2019.   *See* LaFond Exs. D, E.   However, for the next four months, ZZX refused to produce documents responsive to WeRide's requests and provided woefully deficient (and often completely non-responsive) interrogatory answers, causing WeRide to file six separate motions to compel.   *See* Dkts. 139, 146, 149, 157, 170, and 192.   Despite WeRide's motion practice, by August 2, ZZX had produced just 35 documents totaling 141 pages.   *See* Dkt. 250 (August 2, 2019, Hg. Tr.) at 7:19 to 8:5; LaFond Decl. ¶4.

**May 2019: ZZX <u>Stipulates</u> and Agrees to Be Bound by the Operative Protective Order.**   On May 2, 2019, the Parties ***stipulated*** to the entry of a modified protective order, because "the Parties agree[d] that the provisions of the [previous] protective order which govern source code inspection (see Dkt. 54 at ¶9(c)) should be modified so as to permit the Parties to use software tools to assist in their inspection of code and to perform automated code comparisons[.]"   *See* Dkt. 125.   Notably, the provisions regarding protection or disclosure of non-code AEO materials were ***not*** changed.   *Compare* Dkt. 54 *with* Dkt. 125-1.   ZZX, through counsel, signed the stipulated protective order.   *See* Dkt. 125. Judge Cousins granted the stipulation and entered the modified PO the following day.   Dkt. 127.

**August 2019: ZZX Admits to Mass Document Spoliation; WeRide's Motions to Compel Are Granted.**  Seeing no progress in the efforts to make ZZX participate in discovery, Judge Cousins stated at a hearing on August 2 that if ZZX did not agree by August 16 to a search protocol, and dates certain for document productions, then he would grant all of the relief WeRide was requesting.  *See* Dkt. 250 (August 2 Hg. Tr.) at 21:24-24:10.  Then, on the evening of August 15 (the day before Judge Cousins' deadline) ZZX finally admitted why it had not been participating in discovery: ZZX had engaged in mass document destruction, mooting much of the discovery WeRide served.  *See* Dkt. 231. Judge Cousins found this belated spoliation disclosure amounted to "sandbagging" (Dkt. 251 (August 16 Hg. Tr.) at 38:15-22), and resulted in needless, wasteful discovery motion practice that could have otherwise been avoided.  *See* Dkt. 235.  The following week, on August 22, Judge Cousins granted WeRide's motions to compel.  *See* Dkt. 252 at 8.

**September 2019: Defendants Take Discovery into WeRide's Chinese Government Contracts.**  While ZZX was refusing to participate in discovery, the other Defendants sought discovery of WeRide's contracts and relationship with the municipal government of Guangzhou.  On July 22, Defendant Wang (who is ZZX's CEO and has at all times been its leader and founder) served a document request seeking, *inter alia*, "All Documents Relating To . . . [WeRide's involvement in] China's first long-term trial operation of self-driving cars in Guangzhou[.]"  *See* LaFond Ex. F at Request No. 40.  In response, WeRide produced its government contracts on September 20, 2019, with an AEO designation, including contracts produced with Bates designations WERIDE00078348 and WERIDE00078402.  *See* LaFond Decl. ¶12.  Under the operative protective order, ZZX employees are not permitted to see AEO documents (such as these contracts) under any circumstances, nor is counsel permitted to share any information extracted from those documents. *See* Dkt. 125-1 ¶7.3.  Four days later, at his deposition, WeRide's Chief Financial Officer ("CFO"), Qing Lu, was questioned about WeRide's contracts with the Guangzhou government.  *See, e.g.* LaFond Ex. H (Lu Depo. Tr.) at 87:11-88:23.  Mr. Lu's testimony about the benefits provided under the contracts was similarly designated AEO.  *Id.*

**October 26, 2019: ZZX Intentionally Violates the Protective Order.**  On October 26, 2019, Lam wrote a letter to the municipal authorities of Guangzhou, China, which states, *inter alia*:

1

2

3

4

5

6

7

8

9

10

**We noticed that the files recently submitted to the court by WeRide included agreements it signed with the Administrative Committee of the Guangzhou Economic & Technological Development Zone**, which were similar to the agreements and relevant files ZZX signed with the Administrative Committee of the Nanjing Economic & Technological Development Zone that ZZX's professional attorney labeled as "involving state secrets". **The agreements signed by WeRide included relevant details such as the land, technology, funding provisions and government-guided funds provided by the local government of Guangdong for the artificial intelligence (AI) industry during the process of business attraction**. (Note: **WeRide labels the files as "attorney's eyes only"**, so the two files cannot be attached.)
. . . .

Under the currently eased China-US trade war situation that a "substantial phase-1" trade deal has been reached, **what WeRide did has violated the *State Secrets Law* and its *Implementation Regulations*** … In case they are used by American politicians and hyped through media, results of both countries' high-level negotiation may be squandered and China's national interests, including Guangdong's local interests, will be seriously damaged . . . **We earnestly request the state secrecy organizations in the Guangzhou Development Zone to investigate and punish this.**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*See* LaFond Ex. A (emphasis added).[3]  Lam's Letter lists WeRide CEO Tony Han and WeRide CFO Qing Lu as potential investigation targets.  *See id.*

The purpose of Lam's Letter is clear: ZZX (through Lam) is attempting to incite Chinese regulatory authorities to institute a ***criminal*** investigation[4] into WeRide, for no reason except that WeRide complied with its discovery obligations—including responding to requests and deposition questions ***propounded by ZZX's CEO Jing Wang***.  *See, supra* at 5.  Jing Wang's discovery into WeRide's agreements with Guangzhou appears to have been pretextual: after Qing Lu was asked to testify about WeRide's contracts with Guangzhou, Lam's letter to the Guangzhou government listed Lu as a recommended investigation target for allegedly for "revealing state secrets," presumably because of his deposition.  *See* LaFond Ex. A.

But more fundamentally, Lam's Letter makes clear that Lam somehow gained improper access to WeRide's AEO information.  Specifically, Lam's Letter reveals the following:

- Lam knew that WeRide had produced contracts with the Guangzhou government in discovery—even though they are all marked AEO, and Lam is not allowed to see them;

26

27

28

---

[3]  Lam's letter claims the contracts were "filed with the Court" (*see* LaFond Ex. A); that is untrue, but may be explained by a lay person's confusion about how discovery works in US litigation.

[4]   As other courts in this District have recognized, the Chinese "State Secrets Law" is a criminal statute.  *See, e.g. Autodesk, Inc. v. ZWCAD*, 2015 WL 1928184, at *5 (N.D. Cal. Mar. 27, 2015).

- Lam knew that WeRide had *multiple* contracts with the Guangzhou government (as opposed to just one)—again, even though the contracts are all marked AEO;

- Lam knew that the contracts were *marked* AEO;

- Lam knew that WeRide's contracts with Guangzhou were "similar" to the contracts ZZX had with the government of Nanjing, China;

- Lam knew that WeRide's contracts with Guangzhou contained "details such as the land, technology, funding provisions and government-guided funds provided by the local government[.]"

*See* LaFond Ex. A.  While the fact that WeRide has an agreement with the government of Guangzhou has been the subject of public press coverage,[5] there has been no press coverage whatsoever of the details in Lam's Letter, such as: (i) the fact that WeRide produced the contracts in discovery, (ii) the fact that there are multiple contracts, (iii) the confidentiality designation WeRide applied to the contracts, (iv) the specific provisions of the contracts (as opposed to high level benefits), and (v) the fact that the contracts are "similar" to ZZX's contracts with the Nanjing government.  Put simply: Lam either saw the AEO contracts himself, or had them described to him in such detail as to violate the protective order.[6]

**October 26, 2019: Lam's Letter Also Makes False and Libelous Accusations Against WeRide.**  In addition to constituting a protective order violation, Lam's Letter also contains a panoply of specific, demonstrably false statements about WeRide's conduct in this litigation, including: (i) "WeRide told the Court that since they had submitted two documents related to the local government of Guandong, ZZX must also submit similar investment agreements signed with the local government of Nanjing"—which is an argument WeRide *never* made; (ii) that ZZX's "source code comparison" has been "accepted by the U.S. court in this case"—even though this Court *rejected* the comparison by finding that ZZX had produced irrelevant source code (*see* Dkt. 342 at 11-13); (iii) "WeRide …

---

[5]  *See, e.g. https://medium.com/@engineerposition/announcing-our-global-headquarters-settled-in-guangzhou-china-220a143b6adf.*

[6]  *See* Dkt. 125-1 ¶3.  As explained in that paragraph, the protective order covers not just documents designated AEO, but also "any information copied or extracted from" AEO documents and "all copies, excerpts, summaries, or compilations" of AEO documents.  Thus, even if the material was merely described or summarized for Lam, that is *still* a violation of the protective order.

coerced ZZX to take the same illegal action and submit confidential files about our government's support for the development of hi-tech industries to the U.S. court"—again something that *never* happened; and (iv) that discovery produced by ZZX will be "used by American politicians and hyped through media" even though "American politicians" and "the media" cannot possibly gain hold of sealed court documents.  *See generally* LaFond Ex. A.  WeRide repeatedly requested the basis for these claims, but ZZX ignored the requests.  *See* LaFond Ex. J.

**October 30, 2019: ZZX Retroactively Attempts to Hide Its Protective Order Violation.**
Four days *after* Lam wrote to the Guangzhou authorities, ZZX's counsel at Greenberg requested that WeRide "de-designat[e]" two contracts with Chinese governmental entities (including the Guangzhou government), which contracts "were designated Attorney's Eyes Only."  *See* LaFond Ex. I. Greenberg stated that the purpose of the request was so that ZZX could show the agreements to Chinese regulators.  *See id.*  Of course, Lam had already contacted the regulators days earlier, *see* LaFond Ex. A, but Greenberg did not mention that.  *See* LaFond Ex. I.  WeRide refused, explaining why the documents were properly designated AEO and demanding that Greenberg confirm the documents would not be shared with third parties.  *Id.*  Greenberg did not respond for two days, and then stated that Greenberg "ha[d] not shared, and will not share, the contracts produced at WERIDE00078348 and WERIDE00078402 with anyone not permitted under paragraph 7.3 of the stipulated protective order."  *See* LaFond Ex. I.  In light of Lam's Letter this must have been false.

**November 2019: ZZX Refuses to Meet and Confer or Cooperate in Remedying Its Protective Order Violation.**  During the week of November 11, 2019, the authorities in Guangzhou contacted WeRide about Lam's Letter, but WeRide was not able to secure a copy of the Letter until November 17, and could not secure a certified translation until November 19.  *See* LaFond Decl. ¶¶6, 15.  Within hours of reviewing the letter on November 17 (based on a preliminary translation), WeRide's counsel requested an immediate meet and confer with Greenberg to occur the following day.  *See* LaFond Ex. J.  Greenberg refused, and insinuated that the information in the letter was publicly available.  *Id.*  WeRide pointed out that was not possible, and that Greenberg was also ignoring other protective order violations demonstrated in the letter, but Greenberg refused to provide any other response, refused to explain how Lam had received the information, and then ceased

1  replying altogether, including when WeRide posed specific questions about how Lam obtained

2  specific information contained in his letter.  *Id.*; *see also* LaFond Decl. ¶16.

3  **II.     FACTS RELEVANT TO ZZX'S ONGOING CONTEMPT OF THE AUGUST 22**

4  **ORDER GRANTING WERIDE'S MOTION TO COMPEL.**

5       **The Court Authorizes Discovery, and WeRide Serves Discovery in April 2019.**  On March

6  22, 2019, the Court granted, in part, WeRide's motion for preliminary injunction and expedited

7  discovery, and authorized WeRide to take expedited discovery. *See* Dkt. 116 at 27-28.  The Court also

8  ordered Defendant Kun Huang to surrender his devices for inspection by WeRide's outside counsel.

9  *See, id.* at 26.  Accordingly, throughout April, WeRide worked with Huang's counsel, began its

10  investigation into ZZX using forensic images of Huang's devices, and then served discovery on ZZX

11  directly on April 22, 2019.  *See* LaFond Exs. D, E.

12       **ZZX Responds on May 29 and June 5, and Asserts Repeated "Chinese Law" Objections.**

13  ZZX requested, and WeRide granted, an extension for ZZX to respond to WeRide's initial discovery

14  requests, such that ZZX would respond to a handful on May 29, and then the remainder on June 5.

15  LaFond Decl. ¶18.  On May 29, ZZX served discovery responses that opened with the following

16  "general objection":

17           ZZX also objects to the production of any documents or information whose disclosure
         would result in violation of the laws of the Peoples Republic of China ... ZZX, through
18           a law firm retained in the Peoples Republic of China, will review all responsive, non-
         privileged documents and shall produce those documents or information whose
19           production is not barred or precluded under the laws of the Peoples Republic of China.

20  *See* LaFond Ex. L at 2.  On June 5, ZZX served the balance of its discovery responses, which

21  contained the same general objection, and also stated, in response to 17 separate document requests,

22  that ZZX would only produce documents "to the extent permitted under Chinese law."  *See* LaFond

23  Ex. M at Request Nos. 1, 3, 5, 6, 9, 13, 14, 15, 19, 20, 32, 47, 57, 63, 69, 75, 76.  These boiler plate

24  objections were meritless, so WeRide repeatedly moved to compel.  *See, e.g.* Dkts. 146, 149, 157.

25       **The Court Grants WeRide's Motions to Compel, but ZZX Continues to Withhold the**

26  **Documents.**  On August 22, 2019, the Court granted WeRide's motion to compel, explaining that

27  "[a]lthough WeRide's document requests have been outstanding for months, ZZX and AllRide have

28  not identified any specific documents that they claim are subject to Chinese law, nor have they

1   presented any 'expert testimony or other authority' to support such an objection."  *See* Dkt. 252.

2   However, rather than comply, ZZX objected to that order two weeks later (*see* Dkt. 281), the last day

3   when objections were permitted.  *See* Fed. R. Civ. Pro. 72(a).  The Court overruled the objection on

4   September 18, less than two weeks later (*see* Dkt. 289), but ZZX still did not produce the documents.[7]

5       **ZZX Places Itself in Contempt.**  On September 30, 2019, ZZX filed papers with the Court

6   admitting that it was still withholding "14 unique documents" (Dkt. 295 at 7) on the basis of the

7   already-overruled "Chinese Law" objections, in violation of both the Court's order granting WeRide's

8   motion to compel (*see* Dkt. 252) and the Court's overruling of ZZX's objections to that order (Dkt.

9   289).  As cover for its continued improper withholding of the documents, ZZX styled its filing as a

10  "motion for reconsideration."  *See* Dkt. 295.  However, any "[a]rgument that a party itself may stay an

11  order merely by filing a motion for reconsideration is plainly frivolous."[8]  Accordingly, from no later

12  than the moment that ZZX filed a "motion for reconsideration" on September 30, without either

13  producing the withheld documents or seeking a stay of the orders compelling production, ZZX was in

14  contempt.

15      **ZZX Drags Its Feet into December and Beyond.**  After briefing and a hearing on the merits,

16  ZZX's motion for reconsideration of the "Chinese Law" issue was denied 16 days after it was filed.

17  *See* Dkt. 319.  At that point, ZZX again waited until the very last day, October 30, before objecting to

18  the denial of its motion for reconsideration, and then filed objections.  *See* Dkt. 345.  The Court

19  ordered briefing, and then overruled those objections as well, issuing its order on November 22, 2019.

20  *See* Dkt. 366.  However, as of November 25, the documents were ***still unproduced***, so WeRide's

21  counsel contacted ZZX and again asked when to expect the documents.  *See* LaFond Ex. N.  ZZX's

22

---

23  [7]  As explained in the Court's order of November 22, 2019, ZZX has argued that the documents it

24  continues to withhold were "'newly discovered' . . . because [ZZX] did not run the searches that uncovered them until after the Magistrate Judge issued the Discovery Order on August 22."  *See* Dkt. 366.  While that argument has been rejected for other reasons (*see, id.*), it bears noting that, if ZZX

25  was truly asserting an objection over documents it had not yet discovered, such "boilerplate" objections are completely improper.  *See, e.g. KFD Enterprises, Inc. v. City of Eureka*, 2010 WL

26  11484695, at *8 (N.D. Cal. Nov. 12, 2010); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

27  [8]  *In re Republic of Ecuador*, 2011 WL 736868, at *4 (N.D. Cal. Feb. 22, 2011) (internal quotation omitted); *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) ("Absent a stay, all orders and

28  judgments of courts must be complied with promptly.") (internal quotation omitted).

-10-                                         Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

counsel responded the following day, not to produce the documents as ordered, but instead to say that ZZX was "preparing a motion for a certification and stay, with a writ to follow." Of course no such motion for a stay has been filed, much less granted, and ZZX still has not produced the withheld documents (*see* LaFond Decl. ¶22): ZZX is in open contempt.

**Lam's Letter Reveals ZZX's Plan:  Endless Delay and Willful Non-Compliance.**  In his October 26 letter, days before ZZX filed its objection to the denial of its motion for reconsideration, Lam made clear that ZZX's plan was to endlessly object to the Court's orders while refusing to produce documents:

> The U.S. court adopted the opinion of WeRide's American attorney and rejected ZZX's request … **ZZX will appeal this ruling before Oct. 30. The chance of the court order being denied, however, is very small** according to results of similar cases in the past. **Assuming that this appeal is rejected, ZZX could appeal again. But there is little likelihood of success.** It means that, according to the procedural requirements of the U.S. court, **ZZX must choose to submit the investment agreements signed with relevant government sectors in Nanjing, or choose not to submit those documents and subject itself to an unfavorable position** in such a lawsuit involving trade secret infringement.

*See* LaFond Ex. A (emphasis added).  In the time since Lam's Letter, ZZX has followed through on its intent to "appeal" the denial of its motion for reconsideration.  The Court rejected that attempt, and so now ZZX has indicated that it will seek a writ (*see* LaFond Ex. N), though it has not done so yet.  All the while, despite four Court orders requiring production, ZZX is "choos[ing] not to submit those documents"—an express declaration of contempt.

## ARGUMENT

## I.    ZZX HAS COMMITTED AT LEAST THREE WILLFUL VIOLATIONS OF THE OPERATIVE PROTECTIVE ORDER.

Based on the conduct outlined above, ZZX has committed at least ***three*** separate violations of the operative protective order.  In order to determine whether a violation has occurred, "[a] protective order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose." *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 921 (N.D. Cal. 1997).  Moreover, "[c]ourts are particularly unsympathetic to purported excuses for less-than-substantial compliance when the contemnor participated in drafting the order against which compliance is measured, because a party who participates in drafting the order should do so with an

understanding of what it can reasonably accomplish." *Clarke v. First Transit, Inc.*, 2012 WL 12877865, at *12 (C.D. Cal. Nov. 2, 2012). This is key, because ZZX participated in drafting the operative protective order and stipulated to it. *See* Dkt. 125.

As explained below, ZZX has violated Paragraphs 7.1, 7.3, and 12 of the PO. ZZX's apparent argument that some (but ***not*** all) of the information disclosed to and by Lam is public is not a valid defense. Indeed, viewed in the context of the full record, ZZX's explanation that ***some*** of the information in Lam's Letter is available online is a clear attempt at backfill, as ZZX and Greenberg try to find some post-hoc explanation for a knowing violation of the PO.

### A.   Lam's Use of WeRide's AEO Documents Outside of This Litigation Violated the Protective Order.

Lam's Letter violated the protective order by using documents produced by WeRide for the purpose of trying to incite the municipal government of Guangzhou, China, to open a criminal investigation into WeRide. The operative protective order explicitly states that ZZX was permitted to use documents produced by WeRide with an AEO designation "***only*** for prosecuting, defending, or attempting to settle ***this*** litigation." *See* Dkt. 125-1 at ¶7.1 (emphasis added). This sort of language has repeatedly been interpreted to preclude relying on AEO documents to initiate new legal proceedings—let alone requesting that a third party initiate new legal proceedings.

For example, in *Clarke v. First Transit, Inc*., 2012 WL 12877865, at *13 (C.D. Cal. Nov. 2, 2012), the plaintiff's counsel was found in contempt for using witness contact information that had been produced in discovery with a "Confidential" designation, pursuant to a PO which stated "Confidential Information shall only be used for preparing for, defending and prosecuting this case[.]" *Id*. at *2. The contempt finding was based on the *Clarke* plaintiff's counsel using that contact information, not to secure testimony in the pending litigation, but to encourage the witnesses to file their own lawsuits against the defendant for wage-and-hour violations. *Id*. That was a breach of the PO requirement that "Confidential" information could "only be used for preparing for, defending, and prosecuting this case." *Id*. Likewise, in *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 923 (N.D. Cal. 1997), a provision of the PO which stated "[a]ny information designated as Confidential Information shall not be used by the other party for any purpose other than in connection

1   with preparation of the parties [sic] analysis of issues presented in this litigation," was found to have

2   been violated where a party used confidential documents to initiate a new lawsuit.  *Id.*

3          The same situation from *Clarke* and *On Command Video* is present here.  Under the PO—

4   which ZZX helped to draft and stipulated to—ZZX may use AEO documents produced by WeRide

5   "***only*** for prosecuting, defending, or attempting to settle ***this*** litigation."  *See* Dkt. 125-1 at ¶7.1.  But

6   ZZX did not abide by that limitation: instead, ZZX, through its officer Lam, used WeRide AEO

7   documents to draft a letter to Chinese regulatory authorities, demanding that they open a new ***criminal***

8   investigation and "punish" WeRide.  *See* LaFond Ex. A.  That is a clear violation of the PO's

9   limitation on the use of AEO materials.  *See* Dkt. 125-1 at ¶7.1; *see also Clarke*, 2012 WL 12877865,

10  at *13; *On Command Video*, 976 F. Supp. at 923.

11         Moreover, this PO violation is uniquely pernicious, as it threatens the entire civil discovery

12  process in this litigation.  Specifically, Lam's Letter asks the Guangzhou municipal government to

13  investigate WeRide for an alleged violation of the Chinese state secrets law because of information

14  produced by WeRide in response to ***ZZX CEO Jing Wang's*** discovery requests.  *See, e.g.* LaFond Ex.

15  F at Request No. 40.  The result is untenable: if WeRide does ***not*** produce the requested information,

16  it faces motion practice in this litigation, but if WeRide does produce the information, then ZZX

17  responds by saying "Gotcha!" and promptly violates the PO by contacting Chinese authorities and

18  demanding a criminal investigation.  WeRide will now spend the remainder of this litigation

19  wondering whether each of Defendants' discovery requests is legitimate, or just another attempt to

20  accuse WeRide of violating Chinese law (or gain some other advantage unrelated to the litigation).

21  The PO is supposed to be a check on exactly this sort of malfeasance—the Court must enforce it.

22         **B.      Disclosing AEO Documents to Patrick Lam Violated the Protective Order.**

23         Lam's ability to identify and describe AEO documents in WeRide's production  means that

24  ZZX violated the PO by giving Lam access to WeRide's AEO information.   Paragraph 7.3 of the PO

25  states "Unless otherwise ordered by the court or permitted in writing . . . [a] Party may disclose any

26  information or item designated 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' . . .

27  ***only*** to" a list of certain predefined individuals.  *See* Dkt. 125-1 ¶7.3 (emphasis added).  Notably, that

28  list does ***not*** include officers, employees, or executives of a party (*id.*); thus Lam, as an officer,

1   employee, and executive of ZZX, was **not** permitted to see the AEO contracts described in his Letter.

2   The only reasonable conclusion from Lam's Letter is that he has either seen the AEO

3   documents, or else had them described to him in a way that violates the PO.  Lam's Letter states that

4   he "noticed" certain AEO contracts within WeRide's production, and then proceeds to (i) identify

5   specific clauses in those contracts, (ii) compare and contrast the substance of those contracts with

6   others Lam had seen, (iii) state that there are at least two such contracts in WeRide's production, and

7   (iv) state that WeRide designated the contracts "AEO."  *See* LaFond Ex. A.  ***None*** of this information

8   is public: there is simply no public location where someone can find a list of all of the documents

9   WeRide has produced in this litigation; nor is there a public listing of the specific clauses in

10  confidential WeRide contracts; nor has WeRide publicly revealed the confidentiality designations

11  affixed to contracts produced in this litigation.  Lam simply could not have written that letter without

12  first gaining access to documents produced by WeRide with an AEO designation, in direct violation of

13  the protective order—and any claim by ZZX or Lam to the contrary should be rejected out of hand.

14  This situation bears substantial parallels to *Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*,

15  2009 WL 10695131, at *2 (N.D. Cal. Jan. 29, 2009).  In *Intelligraphics*, the operative protective order

16  stated that AEO materials could only be disclosed to an expert if the opposing party "does not make a

17  written objection within seven days" of learning the expert's identity.  *Id*.  Despite that requirement,

18  the plaintiff produced an expert report within seven days of disclosing the identity of the reporting

19  expert to defendants; and the report stated on its face that the expert had reviewed certain of the

20  defendants' AEO materials.  *Id*.  The Court issued sanctions because this was a protective order

21  violation; the Court found that the expert report alone was sufficient to demonstrate that the expert had

22  seen AEO materials before the seven day objection period ended.  *Id*. at *4.  The same situation is

23  present here, and the Court should order the same result.

24      **C.      Failing to Alert WeRide About the Disclosure to Patrick Lam and to Chinse**

25              **Regulators Violated the Protective Order.**

26  Once ZZX learned about the disclosure of AEO materials to Lam, or his further disclosure in

27  his letter, ZZX had an obligation to inform WeRide.  ZZX failed to do so, and in fact attempted to

28  cover up the breach.  Pursuant to Paragraph 12 of the PO, "[i]f a . . . Party learns that, by inadvertence

-14-                                                    Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

1   or otherwise, it has disclosed [AEO] Material to any person or in any circumstance not authorized

2   under this Protective Order . . . [that] Party must immediately [] notify in writing the [opposing] Party

3   of the unauthorized disclosures[.]"  *See* Dkt. 125-1 ¶12.  That never happened.  *See* LaFond Decl. ¶17.

4          Instead, on October 30—four days *after* Lam sent the letter to Guangzhou authorities—ZZX's

5   counsel at Greenberg contacted WeRide and requested that WeRide "de-designate" (or remove the

6   AEO designation) from two contracts between WeRide and Chinese municipal governments,

7   including one of the contracts referenced in Lam's Letter.  *See* LaFond Ex. I.  Of course, that is

8   completely improper, and even if the confidentiality designations were removed, that would not cure

9   ZZX's breach.  *See, infra* at 15-16.  But, more importantly, ZZX's attempt to cover up the breach by

10  requesting de-designation, while failing to alert WeRide that the breach had even happened (WeRide

11  would not learn about the breach for two more weeks, *see* LaFond Decl. ¶15), constitutes a separate

12  and independent PO violation, for failure to follow the procedures set forth in Paragraph 12.  This is

13  independently sanctionable, and should be punished as such.

14         Again, there is only one reasonable conclusion to be drawn from Greenberg's out-of-the-blue

15  request on October 30 for de-designation of one of the very documents described in Lam's Letter four

16  days earlier.  Greenberg knew about Lam's Letter, knew it reflected a breach of the PO, and then tried

17  to fix the situation by obtaining retroactive de-designation of WeRide's AEO material.  Why else

18  would Greenberg ask to de-designate the same document Lam described, without proffering any

19  alternative explanation for why the documents should be de-designated?

20         **D.     Any Argument that Lam Only Received and Revealed "Public Information" Is**

21                 **a Non-Starter.**

22         Beginning on November 17, WeRide has repeatedly asked ZZX to confirm that Lam did not

23  receive (and does not retain) AEO materials, and to explain how Lam learned of the information in his

24  letter; but WeRide's meet and confer attempts have not produced results.  Initially, ZZX simply said

25  "that ZZX has not communicated the contents of confidential documents produced by WeRide to any

26  other third parties"—ignoring the central problem that *Lam himself* appears to have improperly

27  received AEO documents.  *See* LaFond Ex. J.  Instead, ZZX asked "that [WeRide] examine the public

28  record and [WeRide's] approach to this litigation generally," and then provided a handful of links to

-15-                                                    Case No. 5:18-cv-7233-EJD

WERIDE'S MOTION FOR DISCOVERY SANCTIONS AGAINST ZHONG ZHI XING TECHNOLOGY CO. LTD.

1  internet news articles announcing that WeRide had entered into an agreement with the Guangzhou

2  Government—but without revealing any of the details in Lam's Letter.  *Id.*

3        When WeRide pointed out these deficiencies, ZZX again deflected, stating that "[w]e believe

4  that there has been no violation of the [protective] order, but the [Lam] letter was not written or

5  reviewed, as far as [ZZX's US counsel] know[s], by anyone in the United States." *Id*.[9]  Of course, the

6  claim that Lam's Letter was not written or reviewed by anyone in the United States—even if true—

7  does nothing to address WeRide's ever-growing concerns that there have been multiple violations of

8  the PO, and nothing to explain how Lam obtained the detailed, AEO, non-public information in his

9  letter.  ZZX's counsel followed this with another lawyerly response: "We have confirmed that no

10 lawyer or employee in our firm ***improperly*** disclosed the contents of the AEO contracts.   We have

11 also investigated and have found no discussion or disclosure of any information subject to the

12 protective order, and we know of no similar discussion by anyone representing the other defendants."

13 *Id* (emphasis added).   Tellingly, this response only covers what ZZX views to be "improper"

14 disclosures—without answering the more fundamental question of whether there have been ***any***

15 disclosures, or how Lam knew, *e.g*., what documents WeRide had produced, and the confidential

16 information in them.  *See id*.  ZZX then provided links to more internet news stories (while ignoring

17 that ***none*** of the news stories addressed, *e.g*., what documents WeRide has produced in discovery).

18 *See id*.  When WeRide wrote back and asked a list of specific questions about how Lam knew what he

19 knew, ZZX stopped responding.  LaFond Decl. ¶16 & Ex. K.  On this record, the inference is clear:

20 Lam gained illicit access to WeRide AEO information, in violation of the protective order, and ZZX's

21 lawyers are scrambling to find public sources for that information—but there is no such public source.

22        Even if all of the information about WeRide's production of government contracts in discovery

23 was public (which, again, it is ***not***), that would still not excuse ZZX's violation of the protective order.

24 In *Del Campo v. American Corrective Counseling Services, Inc*., 2007 WL 1848660, at *4 (N.D. Cal.

25 June 27, 2007), the plaintiff moved for a court order to remove "confidentiality" designations from

---

[9]   ZZX's half-denials that (i) Greenberg ("no lawyer or employee *in our firm*") did not "improperly" disclose AEO materials, and (ii) no one "in the United States" wrote or reviewed Lam's Letter, both suggest that ZZX's outside Chinese counsel was involved. If true, that is ***another*** PO violation, because AEO documents may only be seen by counsel of record in ***this*** action.  *See* Dkt. 125-1 ¶7.3.

-16-                                                   Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

1   various documents.  *See* 2007 WL 1848660, at *2.  The plaintiff disclosed the confidential documents

2   to a third party before the hearing; and at the subsequent hearing, the *Del Campo* court agreed with the

3   plaintiffs that the documents *were not* confidential.  *Id*. at *3.  When the defendants sought sanctions

4   for violation of the protective order, the plaintiff attempted to defend itself—just as ZZX does here—

5   by arguing that the documents were never really "confidential" and so there was no violation.  *Id*. at

6   *4.  The *Del Campo* court rejected that argument, explaining "[p]laintiffs cannot now say that because

7   they were partially right about the designation, they were right to disregard the protective order." *Id*.;

8   *see also Harmon v. City of Santa Clara*, 323 F.R.D. 617, 627 (N.D. Cal. 2018) (Cousins, M.J.)

9   (awarding sanctions for PO violation in the same order that also de-designated the documents at

10   issue).  Thus, even if ZZX is correct about Lam's Letter containing only information discernable from

11   public sources (again, a proposition that must be false, because characterizations of WeRide's

12   discovery productions are not publicly available), that does not eliminate the PO violation.  *See Del

13   Campo*, 2007 WL 1848660, at *4; *Harmon*, 323 F.R.D. at 627.

14   **II.      ZZX CONTINUES TO WITHHOLD DOCUMENTS IN CONTEMPT OF**

15   **MULTIPLE ORDERS COMPELLING PRODUCTION.**

16          ZZX has been ordered to produce documents withheld on the basis of "Chinese law" at least

17   ***four*** times, *see* Dkts. 252, 289, 319, 366, and yet ZZX continues to withhold the documents.  *See*

18   LaFond Decl. ¶22.  That is contempt.  *See, e.g. Richmark Corp. v. Timber Falling Consultants*, 959

19   F.2d 1468, 1480 (9th Cir. 1992) (affirming contempt sanctions against party who withheld documents

20   on the basis of "Chinese law" despite order compelling production).  ZZX has been in contempt since

21   at least September 30, 2019: the date when ZZX filed a motion for reconsideration instead of

22   complying with the prior order to produce the documents.  *See* Dkt. 295.

23          "Absent a stay, all orders and judgments of courts must be complied with promptly." *Donovan

24   v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal quotation omitted).  Accordingly, "[an

25   a]rgument that 'a party itself may stay an order merely by filing a motion for reconsideration is plainly

26   frivolous.  A court's order remains in force until it is vacated or stayed, and a party disregards such an

27   order at its peril.'" *Hughes v. S.A.W. Entm't, Ltd.*, 2019 WL 2060769, at *14 (N.D. Cal. May 9, 2019).

28   Despite this well-established law, ZZX did not comply with the Court's order of August 22 (Dkt. 252)

-17-                                    Case No. 5:18-cv-7233-EJD

WERIDE'S MOTION FOR DISCOVERY SANCTIONS AGAINST ZHONG ZHI XING TECHNOLOGY CO. LTD.

1    while it litigated multiple rounds of "motions for reconsideration" (*see* Dkts. 319, 366); instead, ZZX

2    granted itself a stay.  It is now December, and the documents ordered produced in August still have

3    not been produced.  *See* LaFond Decl. ¶22.

4           Worse, ZZX has made clear it has no intent to comply.  On November 26, ZZX told WeRide

5    for the first time that it intended to "seek" a stay while it also sought writ review of this Court's

6    discovery orders.  *See* LaFond Ex. N.  But appellate review does not stay the underlying proceedings

7    either.  *See*, *e.g.* *Lopez v. Pama Mgmt., Inc.*, 2017 WL 4685009, at *4 (C.D. Cal. Oct. 17, 2017)

8    ("Despite Defendants' qualms with the Discovery Order . . . [t]his matter is not automatically stayed

9    pending the resolution of Defendants' Petition for Writ of Mandamus,").  Accordingly, ZZX's

10   reference to "forthcoming" writs and motions to stay do not change the "facts on the ground": ZZX

11   has been in open contempt of a court order since September 30, 2019, which order it has ***never*** sought

12   to stay, despite filing motions for reconsideration, and now an apparent writ petition.

13          Most troubling of all, ZZX knows that these endless appeals are meritless, but is pursuing them

14   anyway as a pure delay tactic because it views compliance with court orders as purely discretionary.

15   Lam's Letter says as much, admitting that there is "little likelihood of success" on these serial

16   objections and appeals, but nonetheless asserting that ZZX retains the right to "choose not to submit

17   those documents and subject itself to an unfavorable position."  *See* LaFond Ex. A.  In other words,

18   ZZX ***knows*** that its ongoing withholding of the documents is improper and sanctionable, but it has

19   continued down this path for months.  ZZX should be forced to bear the "unfavorable position" that it

20   knows must stem from the willful violation of multiple Court orders.

21   **III.     ZZX'S VIOLATIONS OF THIS COURT'S ORDERS MERIT SANCTIONS.**

22          **A.     ZZX's Violations of the Court's Orders Subject It to Contempt Sanctions.**

23          ZZX's refusal to produce documents despite multiple court orders, and separate violations of

24   the PO, are all punishable as contempt.  "To obtain a civil contempt citation, the moving party must

25   show by clear and convincing evidence that the opposing party violated a specific and definite order

26   of the Court . . .  If the moving party makes this showing, ***the burden shifts to the party allegedly in***

27   ***contempt to show that it cannot comply***."  *Bradford Techs., Inc. v. NCV Software.com*, 2013 WL

28   75772, at *6 (N.D. Cal. Jan. 4, 2013) (emphasis added).  Importantly, WeRide may meet its initial

-18-                                                    Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

burden even if "there is no direct evidence[,] . . . [provided] the surrounding circumstantial evidence" demonstrates contempt. *Dell Inc. v. Compudirect, Inc.*, 316 F. App'x 32, 34 (2d Cir. 2009); *see also United States v. Plache*, 913 F.2d 1375, 1382 (9th Cir. 1990). WeRide can easily make its showing.

For example, in *Clarke*, 2012 WL 12877865, at \*4, the attorneys for the plaintiff were found in contempt after they misused confidential contact information to initiate new litigation. *Id*. at \*13-14. Importantly, at the time the defendants filed their contempt motion, they only had three pieces of circumstantial evidence: (i) a single copy of a letter sent by the plaintiffs' attorneys, (ii) documents filed in motion practice in related class action litigation, and (iii) the newly filed complaint in a new putative class action. *See Clarke*, Case No. 07-cv-06476-GAF-JCG (C.D. Cal. 2007) at Docket Entry 106 ("Notice of Motion and Motion for Sanctions"). But the *Clarke* defendants had no direct evidence: no admission from anyone that they had used discovery materials improperly. *Id*. Yet that did not deter the court from finding contempt—particularly after the Defendants could not provide a viable alternative explanation for the circumstantial evidence. *See Clarke*, 2012 WL 12877865, at \*5 (rejecting "attempts to explain that the letter" as insufficient).

WeRide's showing is just as strong; WeRide can show: (i) a copy of Lam's Letter transmitted by ZZX to the Guangzhou authorities, which letter makes illicit use of WeRide AEO information for purposes unrelated to this litigation (*see* LaFond Ex. A), (ii) the letter is designed to incite the Guangzhou authorities to "punish" WeRide, and (iii) WeRide learned of the letter when it was contacted by the Guangzhou authorities themselves (*see* Lu Dec. ¶2), meaning that the process for the investigation ZZX requested has already started. As in *Clarke*, WeRide has met its burden, and the burden now shifts to ZZX to show that Lam's Letter was somehow not a contempt. *Bradford*, 2013 WL 75772, at \*6. ZZX cannot make that showing.

Similarly, when a party moves for contempt of an order compelling production, it is well established that where, as here, a party has both (i) won a motion to compel, and (ii) submitted a declaration stating that the discovery still has not been produced, that is "clear and convincing evidence" of contempt of the discovery order. *See, e.g. Kadant*, 2012 WL 2019648, at \*5. Additionally, showing that a party launched collateral attacks on a discovery order, all while not complying with the order, is a sufficient showing for contempt. *See Richmark*, 959 F.2d at 1480 (a

party "is entitled to resist the discovery order, but it will face contempt sanctions if it loses its appeal on the merits").  WeRide can make both of these showings:  ZZX was ***repeatedly*** ordered to produce documents withheld on the basis of "Chinese law" (*see* Dkts. 252, 289), but it has not done so (*see* LaFond Decl. ¶22); and ZZX has launched a series of unsuccessful, knowingly meritless collateral attacks on a valid discovery order—initially through motions for reconsideration (*see* Dkts. 319, 366), and now apparently through a forthcoming writ.  *See* LaFond Ex. N.  ZZX is in contempt.

### B.   ZZX's Violations of the Court's Orders Subject It to Rule 37 Sanctions.

In addition to contempt sanctions described above, "Rule 37[(b)(2)] of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26(f)."  *Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012); *see also United States v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 910 (9th Cir. 1986).  Rule 37(b)(2) sanctions are also available where a party has "failed to produce documents as ordered[.]"  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).  The applicable burden of proof for Rule 37 sanctions is "preponderance of the evidence."  *Ramos v. Swatzell*, 2017 WL 2857523, at *14 (C.D. Cal. June 5, 2017); *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *26 (C.D. Cal. July 12, 2016) (same).  Negligence or inadvertence is ***not*** a defense: "[s]anctions are permissible under Rule 37 when a party fails to comply with a court order, regardless of the reasons."  *Life Techs.*, 2012 WL 1600393 at *8.

Rule 37 clearly applies to ZZX's refusal to produce documents on the basis of "Chinese law." In *Richmark*, the Ninth Circuit affirmed an award of attorneys' fees pursuant to Rule 37(b)(2) on facts identical to those here: a party was ordered to produce documents, but refused and asserted objections based on "Chinese law," even though those objections were overruled.  *See* 959 F.2d at 1482.

Rule 37 also applies to ZZX's protective order violations, as demonstrated by the circumstantial evidence present in Lam's Letter.  For example, in *LifeScan Scotland, Ltd. v. Shasta Techologies, LLC*, 2013 WL 5949629, at *1 (N.D. Cal. Nov. 6, 2013), the court entered a preliminary injunction against the defendants.  The plaintiff then learned the identity of two of the defendants' distributors through discovery produced with AEO designations, and wrote letters to those distributors which "implied that the distributors were subject to the preliminary injunction" without

adequate justification.  *Id*.  On that record, the Court found the plaintiffs violated the PO provision

stating AEO documents could only be used "for the purposes of ***this*** litigation," and awarded Rule 37

sanctions.  *LifeScan*, 2013 WL 5949629, at *2 (emphasis in original).  The same result should obtain

here: ZZX used WeRide's AEO information to craft a letter to the Guangzhou authorities which

makes wild misrepresentations about WeRide, for the purpose of inciting a criminal investigation

against WeRide.  *Id*.  Just like the letters in *LifeScan*, ZZX's letter is also sanctionable.

### C.     ZZX's PO Violations Are Punishable Under the Court's Inherent Powers.[10]

A third source of authority for sanctioning ZZX's violation of the PO is the Court's inherent

power.  *See, e.g. Bradford*, 2013 WL 75772, at *5; *Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc.*, 144 F.R.D.

379, 383 (C.D. Cal. 1992).  Sanctions pursuant to the Court's inherent powers require a showing of

"bad faith," however, in the context of the inherent powers, "'bad faith' is a shorthand term to

encompass a broad range of conduct[.]"  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  Relevant

here, bad faith may be demonstrated by showing that the opposing party initiated legal proceedings in

an "attempt to leverage the threat" of those proceedings in different litigation.  *See, e.g. DRK Photo v.

McGraw-Hill Glob. Educ. Holdings LLC*, 2019 WL 450882, at *4 (D. Ariz. Feb. 5, 2019) (lawsuit

filed to "leverage" copyright damages was brought in bad faith).

There is no question that Lam's Letter is a bad faith attempt to gain leverage over WeRide by

encouraging a Chinese criminal investigation—it says as much on its face.  *See* LaFond Ex. A.

Whether this is merely an attempt to gain leverage in relation to ZZX's thrice-overruled "Chinese

law" objections (as suggested by the email of ZZX's counsel, *see* LaFond Ex. I), or an attempt to gain

leverage over the entire lawsuit, is unclear.  But there can be no doubt that Lam's Letter is a bad faith

PO violation, executed in an attempt to gain leverage over WeRide, and thus punishable under the

Court's inherent powers.  Lam's Letter similarly reflects an intent to "choose" not to comply with the

Court's orders requiring production of documents—another demonstration of bad faith.

### D.     ZZX's False and Libelous Accusations Support WeRide's Sanctions Request.

Although not an independent basis for sanctions, many courts have considered the use of false

---

[10]    Pursuant to *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), WeRide understands that application of the Court's inherent powers is appropriate only to address the PO violation, as ZZX's failure to produce documents "could be adequately sanctioned under the Rules [of Civil Procedure.]"

-21-                                              Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

1    or misleading statements as support for both contempt sanctions and Rule 37 sanctions.  For example,

2    and as noted above, one reason the *LifeScan* court awarded Rule 37 sanctions was that the letters the

3    *LifeScan* plaintiff sent in violation of the PO "implied that the [recipients of the letters] were

4    themselves subject to the preliminary injunction, despite the absence of any evidence that the

5    [recipients] were acting in concert with the defendants or were otherwise subject to Federal Rule of

6    Civil Procedure 65(d)."  *See LifeScan*, 2013 WL 5949629, at \*1; *see also Clarke*, 2012 WL 12877865,

7    at \*13 (contempt appropriate where letter violating the PO was misleading); *Codexis, Inc. v.*

8    *EnzymeWorks, Inc*., 2018 WL 1536655, at \*3 (N.D. Cal. Mar. 29, 2018) (contempt sanctions

9    appropriate where defendant issued a misleading press release instead of the one stipulated to).  As

10   noted *supra*, pages 7-8, Lam's Letter makes a number of wildly false statements and accusations,

11   including claims that WeRide is somehow going to provide discovery materials to "American

12   politicians" and "the media" and that WeRide allegedly "coerced" ZZX into purportedly illegal acts.

13   *See* LaFond Ex. A.  As in *LifeScan* and the other authorities presented here, ZZX's decision to include

14   libelous statements in a letter violating the PO further supports sanctions.

15   **IV.      SUBSTANTIAL SANCTIONS ARE WARRANTED.**

16              As demonstrated above, ZZX is in violation of multiple court orders.  ZZX disclosed

17   WeRide's highly confidential business information to a chief competitive decision maker, in violation

18   of the PO.  The decision maker then further violated the PO by using that information ***outside*** of this

19   litigation in an attempt to initiate criminal proceedings in China.  *See* LaFond Ex. A.  Then, rather

20   than follow the remedial requirements in the PO, ZZX and Greenberg tried to cover it up, first by

21   asking for post-hoc de-designation (*see id.* Ex. I), and then by trying to find public sources that might

22   contain some similar information to what is in the AEO documents.  *Id*. Ex. J.  Likewise, ZZX's

23   "Chinese law" objections have been ***repeatedly*** overruled (*see* Dkts. 252, 289, 319, 366), yet ZZX

24   refuses to produce the documents.  *See* LaFond Decl. ¶22.  ZZX's practice of gross discovery abuses,

25   followed by dissemblance, is becoming a pattern.  *See, e.g.* Dkt. 251 at 38:12-14 ("[T]he timing of

26   [the spoliation] disclosure to the Court very much undercuts the credibility of the Defendants and their

27   counsel's representations about all the discovery.").  Rather than focusing on the merits, WeRide and

28   the Court have both now been forced to devote ***months*** just to remedy ZZX's litigation abuses.

-22-                                    Case No. 5:18-cv-7233-EJD

WeRide's Motion for Discovery Sanctions Against Zhong Zhi Xing Technology Co. Ltd.

1    Situations like these merit severe sanctions, including the following.

2        **All Attempts by ZZX to Take Discovery from WeRide Must Be Stayed Pending the**

3    **Creation of a System that Prevents Further Violations.**  In *Bradford Technologies, Inc. v. NCV*

4    *Software.com*, 2013 WL 75772, at *8 (N.D. Cal. Jan. 4, 2013), the Court was faced with an

5    unrepentant PO violation: in advance of a mediation, one of the parties intentionally showed the

6    opposing party's AEO material to a competitive decision maker, allegedly to encourage settlement.

7    The Court recognized that such a severe lapse in judgment by the attorneys could mean that ***all*** AEO

8    information in the case was at risk—particularly because (as here) the improperly disclosed

9    documents were labeled "AEO" and the competitive decision maker knew as much (just as Lam did

10   here). *Id*. at *3.  Accordingly, the Court stayed all discovery while the PO violation was investigated,

11   and only re-opened discovery after a new protective order was put in place to ensure that the

12   violations did not recur. *Id*. *8.  WeRide submits that this is also appropriate here.[11]

13       **ZZX Must Identify the Individuals Responsible for the PO Violations, and Those**

14   **Individuals Must Lose All Access to AEO Information.**  In *Life Technologies Corp. v. Biosearch*

15   *Technologies, Inc*., 2012 WL 1600393, at *10 (N.D. Cal. May 7, 2012), a partner at the Morgan Lewis

16   law firm knowingly forwarded portions of the opposing party's lab notebooks to his client's CEO,

17   despite the fact that those notebooks were deemed "Confidential" under the local rules.  Given the

18   severity of this lapse in judgment, the Court ordered that the partner who disclosed the confidential

19   notebooks was barred from receiving AEO information for the remainder of the litigation. *Id*. at *10-

20   11. This result is also appropriate in this case, because WeRide has only ever produced documents to

21   ZZX's outside counsel.  *See* LaFond Decl. ¶5.  Accordingly, WeRide submits that Lam could have

22   only gained access to WeRide's AEO document productions through the acts of outside counsel.  As

23   in *Life Technologies*, ZZX should be required to identify the specific attorney(s) who made the

24   disclosure(s), and they should be barred from receiving AEO materials for the remainder of this case.

25   If ZZX refuses, then the entire Greenberg firm should be barred from seeing AEO materials.

26
     _____

27   [11]   At the Court's request, WeRide will submit proposed additional protections for AEO documents.
     Examples of potential additional protections include an order stating that outside counsel could no
28   longer access source code, and instead code would be produced directly to the outside experts (not the
     lawyers).  *See Bradford Technologies*, Case No. 11-cv-04621 (ND Cal) at Dkts. 161, 165.

**ZZX Should Be Ordered to Produce All Its Communications About Lam's Letter, Including Communications With Counsel.**  WeRide must be allowed to investigate whether Lam has further disclosed its AEO materials, and whether ZZX employees ***in addition to*** Lam have accessed its AEO materials.  In order to conduct that investigation, WeRide needs to see ***all*** communications relating to the Lam letter—even communications with counsel.  It is well established that privilege "waiver results from the voluntary submission of material to a government agency to incite it to attack the informant's adversary."  *Reed v. Advocate Health Care*, 2007 WL 2225901, at *2 (N.D. Ill. Aug. 1, 2007).[12]  This rule extends to submissions to foreign government agencies.  *See Absolute Activist Value Master Fund Ltd. v. Devine*, 2017 WL 1830569, at *3 (M.D. Fla. May 8, 2017) (same, documents submitted to Swiss authorities).  Thus, because Lam's Letter expressly asks the Guanghzhou municipal authorities to "punish" WeRide (*see* LaFond Ex. A), any privilege claims related to Lam's Letter, communications about the letter, and any other documents that "ought in fairness [] be considered," together with the letter, have been waived.  *See* Fed. R. Evid. 502.  This should include, at a minimum, documents sufficient to show: (i) all of the WeRide AEO information Lam gained access to, (ii) how Lam gained access to that information, and (iii) which of ZZX's outside counsel were involved.  ZZX should be ordered to produce these documents.

**ZZX Should Be Conditionally Fined $120,000, Plus $2000 per Day Until It Produces the Withheld Documents.**  Where a Party has been repeatedly ordered to produce documents, but fails to do so, coercive contempt sanctions are warranted in the form of a daily fine.  *See, e.g. Kadant*, 2012 WL 2019648, at *8; *Richmark*, 959 F.2d at 1481.  Moreover, where the contempt has already been ongoing (as is the case here, where the original order compelling production was issued in August), an initial "conditional fine," dischargeable upon rapid production of the discovery, is appropriate based on the time that has passed since the disobeyed order issued.  *See Hughes*, 2019 WL 2060769, at *14; *In re Republic of Ecuador*, 2011 WL 736868, at *4; *Kraft*, 2018 WL 3777563, at *3.  Here, WeRide requests a fine of $2000 per day from the date of this motion until ZZX complies—which is at the low end of coercive contempt sanctions awarded against corporations within the Ninth Circuit.  *See, e.g.*

---

[12]  *See also Info. Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998)); *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, 2013 WL 3367137, at *12 (E.D. La. July 5, 2013) (same); *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (similar).

*Kadant*, 2012 WL 2019648, at *8 (awarding $25,000 in an initial conditional fine, and ordering a further $2000 per day coercive contempt fine).[13]  Additionally, since the contempt has been ongoing since September 30 (when the objections to the original order compelling discovery were overruled, *see* Dkt. 289), an additional conditional fine of $120,000 (calculated by multiplying $2000 by 60 days) is appropriate, but may be discharged if ZZX produces the documents within three days of this motion being filed.  *Kadant*, 2012 WL 2019648, at *8.

**WeRide Should Be Awarded Its Costs and Fees for Bringing This Motion and Any Subsequent Investigation.**  Parties that engage in the sort of misconduct ZZX has engaged in are routinely ordered to pay costs and fees in addition to other sanctions.  *See, e.g. Clarke*, 2012 WL 12877865, at *13 (PO violation); *Richmark*, 959 F.2d at 1481 (failure to produce documents despite court order).  That is appropriate here as well.  Moreover, to the extent that the Court is inclined to order an investigation (the scope of which may depend on ZZX's forthcoming opposition briefing), WeRide should also be compensated for that investigation.

## CONCLUSION

For the foregoing reasons, the Court should find that ZZX violated the Protective Order entered at Docket Entries 125-1 and 127, as well as the order granting WeRide's motions to compel entered at Docket Entry 252, and sanction ZZX pursuant to Rule 37, the contempt power, and the Court's inherent powers in five ways: (i) staying all attempts by ZZX to take discovery from WeRide until ZZX can confirm, and persuasively demonstrate, that it will abide by the protective order; (ii) barring the attorney who wrongfully disclosed AEO from further accessing AEO information for the remainder of this litigation; (iii) ordering the production of all documents and communications about Lam's Letter, including communications with counsel; (iv) enter an initial conditional fine of $120,000, dischargeable if the withheld documents are produced within 3 days, plus a fine of $2000 per day after that, until such time as the documents are produced; and (v) awarding WeRide its costs and fees in connection with bringing this motion and any subsequent investigation.

---

[13]  *See also Richmark*, 959 F.2d at 1481 ($10,000 per day coercive contempt fine on **nearly identical** facts as this litigation); *Oliner v. Kontrabecki*, 305 B.R. 510, 519 (N.D. Cal. 2004) ($5000 per day coercive contempt fine); *Matter of Search of Content Stored at Premises Controlled by Google Inc.*, 2017 WL 4700056, at *3 (N.D. Cal. Oct. 19, 2017) ($10,000 per day coercive contempt fine).

DATED:  December 6, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Ryan S. Landes*
   Claude M. Stern
   Ryan S. Landes
   William T. Pilon
   Michael F. LaFond
   *Attorneys for Plaintiffs WeRide Corp. and WeRide Inc.*