QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  William T. Pilon (Bar No. 326487)
  williampilon@quinnemanuel.com
  Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

  Ryan S. Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa Street
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Plaintiffs WeRide Corp. and
WeRide Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE CORP. f/k/a JingChi Corp.; WERIDE INC. f/k/a JingChi Inc., <br><br> Plaintiff, <br><br> vs. <br><br> JING WANG, an individual, KUN HUANG, an individual, ZHONG ZHI XING TECHNOLOGY CO. LTD., d/b/a ALLRIDE.AI, ALLRIDE.AI INC., <br><br> Defendants. | CASE NO. 5:18-cv-07233-EJD <br><br> **WERIDE'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(B), 37(E)(1), 37(E)(2), AND THE COURT'S INHERENT POWERS** |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

I. *EVEN MORE SPOLIATION* HAS COME TO LIGHT SINCE WERIDE'S MOTION ..........................................................................................................................2

II. DEFENDANTS SEEK TO APPLY THE WRONG LEGAL STANDARDS.....................4

    A. The Correct Standard of Proof Is "Preponderance of the Evidence," *Not* "Clear and Convincing Evidence." ............................................................4

    B. The 2015 Amendments to the Federal Rules of Civil Procedure Do Not Divest This Court of its Inherent Power to Sanction. ..................................6

III. NO ERSATZ "CODE COMPARISON" CAN SAVE ALLRIDE. .....................................6

    A. AllRide Destroyed Far More than Just "Emails." .......................................7

    B. Even if the Court Were to Consider AllRide's Merits Arguments, They Fail.........10

        1. No "Code Comparison," on Its Own, Could Ever Resolve This Case.........10

        2. AllRide's Three Contradictory Stories Preclude *Any* Code Comparison. ...........................................................................................11

        3. AllRide is Trying to Mislead the Court *Again*. ...........................12

        4. AllRide's "Waypoints" Argument Is *Non-Sequitur* Distraction. ................13

    C. AllRide's Arguments for Lesser Sanctions Are Easily Dismissed. .........................14

IV. WANG IS EQUALLY TO BLAME FOR DEFENDANTS' MASS SPOLIATION...........15

    A. Wang Admitted that He Intended to Deprive WeRide of Evidence. ......................15

        1. Wang Directed the Spoliation of His Email Accounts (Plural) in Bad Faith..........................................................................................15

        2. Wang Directed the Spoliation of Chat Messages in Bad Faith ...................18

    B. Wang *Personally* Violated Multiple Court Orders....................................................18

    C. Wang Is Not to Be Trusted, and His Irrelevant Attacks Should Be Disregarded ................................................................................................20

V. HUANG SHOULD NOT BE ALLOWED TO BENEFIT FROM HIS SPOLIATION. ...............................................................................................................20

    A. Huang Had a Duty to Preserve Documents as of July 31, 2018. .............................21

    B. Huang Cannot Seriously Argue That He Obeyed the Preliminary Injunction.........22

C.    Huang Acted in Bad Faith. ...........................................................................23

D.    The Destruction of Huang's Email Accounts Is Properly Attributed to
Huang. ..........................................................................................................24

E.    WeRide Did *Not* Delay In Bringing Its Spoliation Motion. ....................25

CONCLUSION .................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
    399 F. Supp. 2d 1064 (N.D. Cal. 2005) ........................................................................ 10

*Ahcom, Ltd. v. Smeding,*
    2011 WL 3443499 (N.D. Cal. Aug. 8, 2011) .................................................................. 5

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors,*
    69 F.3d 337 (9th Cir. 1995) .......................................................................................... 12

*Apple Inc. v. Samsung Elecs. Co.,*
    888 F. Supp. 2d 976 (N.D. Cal. 2012) .................................................................... 15, 16

*ArcelorMittal Indiana Harbor LLC v. Amex Nooter, LLC,*
    2018 WL 509890 (N.D. Ind. Jan. 23, 2018) ................................................................ 21

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.,*
    2016 WL 6609208 (C.D. Cal. July 12, 2016) ................................................................ 6

*Bradford Techs., Inc. v. NCV Software.com,*
    2013 WL 4033840 (N.D. Cal. Aug. 6, 2013) .............................................................. 23

*Browder v. City of Albuquerque,*
    187 F. Supp. 3d 1288 (D.N.M. 2016) .......................................................................... 21

*CAT3, LLC v. Black Lineage, Inc.,*
    164 F. Supp. 3d 488 (S.D.N.Y. 2016) ........................................................................... 6

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ........................................................................................................ 6

*Columbia Pictures, Inc. v. Bunnell,*
    2007 WL 4877701 (C.D. Cal. Dec. 13, 2007) ............................................................ 12

*Commc'ns Ctr., Inc. v. Hewitt,*
    2005 WL 3277983 (E.D. Cal. Apr. 5, 2005) .................................................................. 6

*Cone v. Hankook Tire Co.,*
    2015 WL 1277060 (W.D. Tenn. Mar. 20, 2015) ......................................................... 19

*Consumer Fin. Prot. Bureau v. Morgan Drexen Inc.,*
    2015 WL 12732004 (C.D. Cal. July 6, 2015) .............................................................. 19

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n,*
    2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ............................................................... 23

*Crown Battery Mfg. Co. v. Club Car, Inc.,*
    185 F. Supp. 3d 987 (N.D. Ohio 2016) ....................................................................... 21

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.,*
    2009 WL 1949124 (N.D.Cal. July 2, 2009) ............................................................ 15, 16

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC,*
    2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ............................................................... 16

*Henderson v. Duncan,*
    779 F.2d 1421 (9th Cir. 1986) ....................................................................................... 5

*Herman & MacLean v. Huddleston,*
    459 U.S. 375, (1983) ...................................................................................................... 5

*Hugler v. Sw. Fuel Mgmt., Inc.*,
   2017 WL 8941163 (C.D. Cal. May 2, 2017) ............................................................. 6

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   897 F. Supp. 2d 939 (N.D. Cal. 2012) .................................................................... 5

*In re Napster, Inc. Copyright Litig.*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) .................................................................. 5

*K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*,
   545 F. Supp. 2d 995 (N.D. Cal. 2008) .................................................................... 5

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*,
   880 F.3d 620 (2d Cir. 2018) ................................................................................... 5

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ............................................................... 3, 12, 14, 16

*Nation v. Ducey*,
   2016 WL 7338341 (D. Ariz. Dec. 19, 2016) ........................................................ 21

*OmniGen Research v. Yongqiang Wang*,
   321 F.R.D. 367 (D. Or. 2017) ............................................................... 3, 7, 14, 16

*Peerless Indus., Inc. v. Crimson AV LLC*,
   2014 WL 3497697 (N.D. Ill. July 14, 2014) ........................................................... 6

*Pennar Software Corp. v. Fortune 500 Sys. Ltd.*,
   2001 WL 1319162 (N.D. Cal. Oct. 25, 2001) ......................................................... 5

*Perdana Capital (Labuan) Inc. v. Chowdry*,
   2012 WL 13075527 (N.D. Cal. July 3, 2012) ....................................................... 25

*Permasteelisa CS Corp. v. Airolite Co., LLC*,
   2008 WL 2491747 (S.D. Ohio June 18, 2008) ..................................................... 25

*PMC, Inc. v. Kadisha*,
   78 Cal. App. 4th 1368 (2000) ............................................................................... 19

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
   657 F. Supp. 2d 878 (N.D. Ohio 2009) ................................................................ 19

*Ramirez v. T&H Lemont, Inc.*,
   845 F.3d 772 (7th Cir. 2016) .................................................................................. 5

*Shepherd v. ABC, Inc.*,
   62 F.3d 1469 (D.C. Cir. 1995) ........................................................................... 4, 5

*Siddiqi v. JPMorgan Chase Bank, N.A.*,
   2019 WL 3035079 (C.D. Cal. May 3, 2019) ........................................................... 7

*Siebert v. Gene Security Network, Inc*,
   2014 WL 5808755 (N.D. Cal. Nov. 6, 2014) ........................................................ 25

*SkinMedica, Inc. v. Histogen Inc.*,
   869 F. Supp. 2d 1176 (S.D. Cal. 2012) ................................................................ 10

*Stevenson v. Union Pac. R. Co.*,
   354 F.3d 739 (8th Cir. 2004) ............................................................................... 21

*Sunrider Corp. v. Bountiful Biotech Corp.*,
   2010 WL 4589156 (C.D. Cal. Nov. 3, 2010) ................................................. 12, 20

*TainoApp, Inc. v. Amazon.com Inc.*,
   2015 WL 13404107 (N.D. Cal. Sept. 22, 2015) ...................................................... 5

*Tetsuo Akaosugi v. Benihana Nat. Corp.*,
  2012 WL 929672 (N.D. Cal. Mar. 19, 2012) ............................................................................ 5

*United States v. $209,815 in United States Currency*,
  2015 WL 5970186 (N.D. Cal. Oct. 14, 2015) ........................................................................ 5

*United States v. Maxxam, Inc.*,
  2009 WL 817264 (N.D. Cal. Mar. 27, 2009) ...................................................................... 19

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998)............................................................................................... 7

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 2123560 (N.D. Cal. May 15, 2017) ............................................................... 10, 11

### **Statutes**

Fed. R. Civ. P. 37(c)(1) ................................................................................................................ 4

Fed. R. Evid. 1002 ................................................................................................................. 15, 16

Fed. R. Evid. 1004 ................................................................................................................. 15, 16

**PRELIMINARY STATEMENT**

In its opening papers, WeRide identified a multitude of specific, highly relevant categories of documents Defendants Zhong Zhi Xing Technology Co. Ltd. ("ZZX"), AllRide.AI Inc. (collectively with ZZX "AllRide"), Jing Wang, or Kun Wang, destroyed ***after*** a duty to preserve documents arose. Defendants never deny, explain, or even address much of this, including the following:

- At his court-ordered 30(b)(6) deposition, Dr. Yahui Liu ███████████████████ ████████████████ *See* Dkt. 330 at 6-7, 14.  ***None*** of the Defendants—or their myriad experts—claim that the "October 2018" code produced by AllRide functions in the manner described by Dr. Liu, and Dr. Liu's testimony is never explained.

- ███████████████████ the two primary AllRide employees responsible for the ███████████████ (one of the Advanced Capabilities at issue), had ***all*** of their emails about p███████████ destroyed (*see* Dkt. 330 at 13); Defendants do not deny this.

- Beginning in August 2018, ████████████████████████████ ██████████████████████████████ ██████████████████████████████ ███████████████ *see* Dkt. 330 at 5)—again not disputed by any Defendant.

- ██████████████████████████████ █████████████████ (*see* Dkt. 330 at 5)—this is not disputed.

- ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ (*see* Dkt.  330 at 4-6)—while Huang states he "do[es] not understand" why files on his laptop were modified (Dkt. 370-01 ¶17), he does not, and cannot, deny the other spoliation.

- Wang ***requested*** that at least two of his email accounts be destroyed, because they might be evidence of Wang's relationship with AllRide—*i.e.*, they might support WeRide's claims.

Defendants deny ***none*** of this.  Worse, as Defendants slowly drip out information the Court ordered them to disclose months ago, WeRide has identified yet more spoliation, including (i) ***entire code repositories***, (ii) ***two additional engineers' laptops*** that AllRide wiped, and (iii) ***an entire***

1    ***additional email account***, which AllRide destroyed along with its contents.

2          Exercising the old maxim that an apology should never get in the way of a good excuse,

3    Defendants spend their oppositions quibbling with the burden of proof (as argued by Wang), the precise

4    date a duty to preserve evidence arose (as argued by Huang), the relevance of the documents

5    Defendants destroyed (as argued by all Defendants), and whether the scant surviving evidence supports

6    the merits of Defendants' defenses (as argued by AllRide).  Defendants resort to these arguments

7    because they ***cannot*** deny the core of WeRide's motion: Defendants committed mass spoliation of the

8    very evidence necessary to prove WeRide's claim (or test Defendants' defenses).  In light of that

9    inescapable truth, terminating sanctions must issue.

10   **I.**        ***EVEN MORE SPOLIATION* HAS COME TO LIGHT SINCE WERIDE'S MOTION**

11         As envisioned in the Parties' earlier stipulation, the spoliation investigation continued even after

12   Plaintiffs' motion.  *See* Dkt. 350.  However, it must be noted that, although AllRide initially demanded

13   FTI's investigation continue (more on the reasons for that below), and the Court ordered AllRide to

14   make material available for WeRide's review (Dkt. 342 at 16-17), AllRide fought tooth-and-nail to

15   prevent a meaningful review; including by fighting over the meaning of the word "repository" and the

16   phrase "full disk forensic imaging by WeRide" in the Court's recent order.  *See* Dkts. 363, 364.  The

17   result is that much of the Court-ordered imaging did not even ***begin*** until last week.  *See* LaFond ¶35 &

18   Dkt. 364.  Nonetheless there has been some, modest progress, and it has revealed more spoliation:

19   **AllRide  Destroyed <span style="color:red">Two Additional, Highly Relevant Engineer Laptops</span>.**  ████████

20   ████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████        *See* Landes Exs. 13-15; *see also* LaFond Ex. 4

24   (9/13/2019 Huang Depo. Tr.) at 95:12-96:8.[1]  However, as described *infra* at page 8, the code found in

25   AllRide's "official repositories" does ***not*** include ████████████████████████████

26

27   [1]  As Huang testified, ████████████████████████████████

28   ████████████████  *See* LaFond Ex. 4 (9/13/2019 Huang Depo. Tr.) at 87:21-88:5.

1   during this time period.  *See* Walter Reply Decl. ¶17(b).  Accordingly, WeRide asked to examine the

2   laptops that AllRide issued to ███████, to see if the code was on those laptops—only to have

3   AllRide finally admit that it wiped those laptops in February 2019 and December 2018, respectively,

4   well ***after*** AllRide's duty to preserve arose.  *See, infra* page 8.

5           **AllRide** **Deleted** <span style="color:red">**Entire Code Repositories From Its OneDrive Account**</span>.  The Court-

6   appointed forensic neutral, FTI Consulting, issued its final reports on October 21, 2018, too late for

7   WeRide to include in its moving papers.  *See* LaFond Exs. 17-18.  FTI's conclusions are dire.  Pursuant

8   to the Court's order, FTI was only able to examine those devices AllRide chose to collect.  *See* Dkt. 266

9   at ¶3(d).  However, as a check on AllRide's discretion, the Court also ordered AllRide to file a

10  declaration confirming it had collected and searched ***all*** electronic data repositories in its possession,

11  custody, and control.  *See* Dkt. 252 at 5.  AllRide did not obey the Court's order, failed to collect over a

12  dozen repositories, and ***omitted*** them from its sworn declaration.  *Compare* ███████████

13  ████████████████████████████████  This meant that FTI could not

14  examine those repositories.  *See* LaFond Ex. 11 (Lai Depo. Tr.) at 18:7-21:22.  As a result, ***FTI could***

15  ***form no opinion about the extent of AllRide's spoliation***.  *Id*.  Confusingly, Defendants now try to spin

16  FTI's non-conclusions into exonerations, *see, e.g.* Dkt. 368 at 7-8, even though FTI could reach no

17  conclusions due to AllRide's malfeasance.  *See* LaFond Ex. 11 (Lai Depo. Tr.) at 18:7-21:22.

18          Nor was that the only problem: AllRide's OneDrive and Sharepoint repositories were not set up

19  to detect deletions, nor did AllRide make any efforts to preserve those repositories, so FTI could only

20  identify deletions that occurred during a six-week period ***after*** August 29, 2019.  *See* LaFond

21  Ex. 11 (Lai Depo. Tr.) at 75:11-78:12.  But even in that limited period, F████████████████

22  ████████████████████  *See* LaFond Ex. 18 at Appendix 003 page 5; Walter Reply ¶¶35-39.[2]

23          **AllRide and/or Huang** **Destroyed** <span style="color:red">**the Entire test@allride.ai Email Account**</span>.  AllRide's

24  30(b)(6) witness on document preservation ████████████████████████████████

25  ████████████████████████████████████████████████████

26  ─────────────────────

    [2]  Dr. Walter opines that ████████████████████████████████████████████

27  ███████████; in cases of spoliation, it is appropriate to extrapolate the contents of deleted files from
    their file names.  *See, e.g.* OmniGen, 321 F.R.D. at 372 (inferring deleted document's relevance from its

28  file name); *Leon*, 464 F.3d at 960 n. 6 (same)

1  ███████████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████ *See* Kunkel

6  Decl. ¶¶6-10; Collins Decl. ¶8.  There is only one reasonable inference: ██████████ was destroyed.

7  **Along with the spoliation identified in WeRide's opening papers, the new "running**

8  **spoliation total" is as follows: 6 laptops, 2 USB devices,** ███████████████████████

9  ███████████████████████████████████████████████████████████

10  ██████████████████████████████████ **former employee email accounts, all other**

11  **company emails older than 90 days, all manually deleted files from any source, source code files**

12  **on Huang's laptop prior to surrender, source code repositories stored on OneDrive, unknown**

13  **documents from t** █████████████████████████████████████████████████████

14  ██████████████████████████████████████████.[3]  And because

15  AllRide is finally now giving WeRide access to additional ESI sources AllRide was ordered to turn over

16  a month ago, it is likely that yet more spoliation will be identified.  As explained in WeRide's moving

17  papers, and hardly addressed in Defendants' opposition papers, the evidence lost so far goes to the heart

18  of this litigation, and its destruction merits terminating sanctions.

19  **II.  DEFENDANTS SEEK TO APPLY THE WRONG LEGAL STANDARDS.**

20      **A.  The Correct Standard of Proof Is "Preponderance of the Evidence,"** *Not* **"Clear**

21         **and Convincing Evidence."**

22      Defendants seek to impose a heightened "clear and convincing" standard of proof , citing a line

23  of cases relying on *Shepherd v. ABC, Inc.*, 62 F.3d 1469, 1476 (D.C. Cir. 1995).[4]  Although WeRide

---

3    *See* Dkt. 330 at 3-16 regarding spoliation of the other documents in this list.  In opposition, AllRide complains at length about WeRide's representation that pre-March 2019 Phabricator emails were spoliated, submitting several pre-March Phabricator emails as evidence.  *See* Dkt. 368 at 24-25.  But ████████████████████████████████████████████████████████

███████████████  *Id.*  That precludes AllRide's argument. *See* Fed. R. Civ. P. 37(c)(1).

4    Wang makes this argument outright (*see* Dkt. 372 at 23).  AllRide appears to argue that WeRide is

would have no problem meeting this standard,[5] more recent Circuit Court decisions have found that *Shepherd* conflicts "with the Supreme Court's insistence on a presumption in favor of the less onerous standard of preponderance of the evidence in federal civil cases." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 780 (7th Cir. 2016) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390, (1983)); *see also Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018).  Instead, the heightened "clear and convincing" standard only applies if individual liberty interests are at stake, such as "parental rights, involuntary commitment, deportation, and denaturalization." *Ramirez,* 845 F.3d at 778.  Imposing a "clear and convincing" standard in other circumstances would "reflect an unwarranted preference for one party over the other"—in cases like this one it would always favor the spoliator.  *Id.* at 779.  And while "[t]he gravity of dismissing a suit with prejudice based on litigation misconduct certainly warrants the careful exercise of the court's discretion . . . [,] that is a matter distinct from the standard of proof by which the underlying facts must be proven." *Id.*

With the exception of the two cases cited by Defendants (both of which rely on *Shepherd*), *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 971 (N.D. Cal. 2012) and *Pennar Software Corp. v. Fortune 500 Sys. Ltd*., 2001 WL 1319162, at *5 (N.D. Cal. Oct. 25, 2001), this District has consistently applied the preponderance of the evidence standard to sanctions motions.  *See, e.g.*, *United States v. $209,815 in United States Currency*, 2015 WL 5970186, at *7 (N.D. Cal. Oct. 14, 2015) ("The party requesting sanctions bears the burden of proving, by a preponderance of the evidence, that spoliation took place.").[6]  Defendants criticize the Northern District's approach as "outdated," but in fact it is *Shepherd* that courts are abandoning.  *See, e.g. Ramirez,* 845 F.3d at 778.[7]

---

moving for contempt, and thus cites the contempt standard.  *See* Dkt. 368 at 10.  But WeRide is not moving for contempt; it is moving under Rule 37 and the Court's inherent powers.  *See* Dkt. 330.

[5]  By contrast, Defendants' appeal to a greater burden of proof suggests they know they cannot prevail under the correct "preponderance" standard.

[6]  *See also TainoApp, Inc. v. Amazon.com Inc.*, 2015 WL 13404107, at *4 (N.D. Cal. Sept. 22, 2015); *Tetsuo Akaosugi v. Benihana Nat. Corp.*, 2012 WL 929672, at *3 (N.D. Cal. Mar. 19, 2012); *K.S. ex rel. P.S. v. Fremont Unified Sch. Dist.*, 545 F. Supp. 2d 995, 1010-11 (N.D. Cal. 2008); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1072 (N.D. Cal. 2006).

[7]  The other cases from this Circuit that Defendants cite also fail to support their contentions.  *Ahcom, Ltd. v. Smeding*, 2011 WL 3443499, at *7 (N.D. Cal. Aug. 8, 2011) applies a preponderance of the evidence standard wherever it mentions the standard of proof, and *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) never discusses the standard of proof at all.

1    The correct standard is preponderance of the evidence.

2      **B.     The 2015 Amendments to the Federal Rules of Civil Procedure Do Not Divest**

3           **This Court of its Inherent Power to Sanction.**

4      In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-43 (1991), the Supreme Court held that the

5    Federal Rules do not displace the inherent power of the district courts to impose sanctions.  Wang

6    argues that the 2015 Amendments to the Federal Rules of Civil Procedure effectively overruled this

7    decision.  *See* Dkt. 373-04 at 14-15.  Wang relies on the Advisory Committee note to Rule 37, but he

8    concedes that the Advisory Committee does not have power to overrule the Supreme Court.  Wang

9    Opp. at 15; *see also Hugler v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017)

10   (recognizing that the 2015 Advisory Committee notes ***cannot*** overrule *Chambers*, 501 U.S. 32).  None

11   of the cases Wang cites considered whether the Advisory Committee had power to limit the inherent

12   power of the district courts, and ***all*** the courts that have considered the issue have determined that the

13   inherent power to sanction survived the 2015 Amendments.  *See, e.g., id.* ("limiting the courts to the

14   Rules would unnecessarily deprive them of the broader inherent powers").[8]

15   **III.    NO ERSATZ "CODE COMPARISON" CAN SAVE ALLRIDE.**

16      AllRide's primary argument is simple: now that it has deleted entire email accounts, wiped

17   multiple laptops, deleted whole code repositories, and much more, AllRide believes it should not be

18   sanctioned because the ***surviving*** code can still be compared to WeRide's code, and that comparison

19   will supposedly vindicate AllRide.  *See, e.g.* Dkt. 368 at 2.  To quote one of the ***many*** courts that have

20   rejected precisely this sort of argument, "[Defendants] contend, *inter alia*, that they could not have used

21   any of [WeRide's] alleged trade secrets . . . [but] these arguments miss the operative point, which is that

22   defendants did not properly retain and produce all relevant documents, rendering [WeRide's] task of

23   proving that [Defendants] used its trade secrets very difficult if not impossible."  *Peerless Indus., Inc. v.*

24   *Crimson AV LLC*, 2014 WL 3497697, at *5 (N.D. Ill. July 14, 2014) (ordering burden shift as sanction

25   for spoliation); *see also Commc'ns Ctr., Inc. v. Hewitt*, 2005 WL 3277983, at *3 (E.D. Cal. Apr. 5,

26   2005) (recommending terminating sanctions); *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367,

---

[8]   *See also Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *17 (C.D. Cal. July
28   12, 2016); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016).

375 (D. Or. 2017) (spoliation justified terminating sanctions even though it was "unclear [] to what extent Bioshen misappropriated any of the plaintiffs' trade secrets"). "There is no point to a lawsuit, if it merely applies law to lies" (*Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998)), but that is precisely what will happen if AllRide is allowed to destroy emails, wipe laptops, *and delete code*, and then avoid sanctions by asking the Court to only focus on the *surviving* code.

### A.   AllRide Destroyed Far More than Just "Emails."

Defendants do not seriously contest—and they cannot in light of the evidence presented in WeRide's motion—that they destroyed enormous volumes of email predating March 2019.   So Defendants pivot, and try to argue that the destruction was limited to email.  They are wrong.  *See supra* pages 2-4 (laptops, code, non-email files have been spoliated); *see also* Dkt. 330 at 9.  The *only* reason that there is more expansive evidence of email deletion than deletion from other sources is that AllRide has steadfastly resisted or outright disobeyed Court orders requiring the collection or inspection of other sources.  *See, supra* page 3 (outlining AllRide's non-compliance with the Court's August 22, 2019 Order, *see* Dkt. 252).[9]  WeRide raised this issue in its opening papers (Dkt. 330 at 15, 21-22), but AllRide *never responds*.  *See* Dkt. 368.  In light of AllRide's failure to respond to arguments in WeRide's opening brief, the following facts are *undisputed*.  *See Siddiqi v. JPMorgan Chase Bank, N.A.*, 2019 WL 3035079, at *1 (C.D. Cal. May 3, 2019) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver").

**AllRide Spoliated Code on OneDrive and Huang's Laptop.**  FTI's report demonstrated that AllRide deleted code repositories from its OneDrive server on August 30, 2019—(notwithstanding the preliminary injunction's clear order not to delete code, *see* Dkt. 116 at 24-25).  *See* Walter Reply ¶¶35-39.  Those code repositories are lost forever.  *See* LaFond Ex. 11 (Lai Depo. Tr.) at 80:9-22.  AllRide also does not address the modifications to code on Huang's computer (and Huang is AllRide's agent and vice president) made *after* the Court issued its preliminary injunction (*see* Kunkel ¶¶6-10).  Nor does AllRide deny that, following these modifications, the laptop contained non-functional code which,

---

[9]   WeRide raised AllRide's non-compliance with the Court's August 22, 2019, Order in meet and confer and requested a new, accurate declaration.  *See* LaFond Exs. 19-20.  However, AllRide refused to provide one until after WeRide's reply brief was due.  *Id.* Ex. 20.

1   in the words of AllRide's own expert, ████████████████████████████████ *See*

2   Landes Ex. 45 ¶12.  AllRide cannot seriously maintain the fiction that its employees never deleted or

3   destroyed code, particularly in light of FTI's findings and the spoliation on Huang's laptop.

4           **AllRide's "Official" Code and Logs Are Contradicted by Documents Recovered From**

5   **Huang's Laptop.** ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████ *See* Landes Exs. 13-15; LaFond Ex. 4

8   (9/13/2019 Huang Depo. Tr.) at 95:12-96:8.  However, A████████████████████████████

9   ██████████████████████████ *See* Walter Reply ¶¶17(b).[10]  Instead, t███████████████

10  ███████████████████████████████████████████████████████████████████████████ *Id.*

11  Now, █████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████[11]  *See* LaFond Ex.

14  17 at 15-16.  AllRide never addresses this discrepancy between its "official" code and other documents.

15          **AllRide's "Official" Code and Logs Are Contradicted by Yahui Liu's Testimony.**  In its

16  moving papers, WeRide devoted considerable space to Dr. Liu's description of AllRide's lane change

17  code, as it existed in October 2018:

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████

21  As WeRide explained, ████████████████████████████████████████████████████

22  ██████████████ *See* Walter ¶¶9-23; Walter Reply ¶17(c).[12]  In its opposition, AllRide **never explains** this

23  

---

[10]  That logs also do not reflect other spoliation WeRide knows occurred; the logs *only examine code*

*in a single code base*—code on Huang's laptop or on OneDrive is not covered.  Walter Reply ¶¶27-30.

[11]  FTI implicitly found ████████████████████████████████████████████████ LaFond Ex. 17 at 109.

[12]  ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ *See* Landes Ex. 44

1   discrepancy; and its **four experts**[13] never ████████████████ AllRide simply

2   ignores this entire argument because it proves that a code comparison is no longer possible: A█████

3   ████████████████████████████████████████████████████████

4       **AllRide Has Not Produced Its Pre-August 24, 2018 Code.** █████████████

5   ████████████████████████████████████████████████████████

6   ██████████████████   *See* LaFond Ex. 3 (6/25/19 Huang Depo. Tr.) at 142:14-144:7; Ex. 1 (6/6/19

7   Liu Depo. Tr.) at 100:8-14, 104:10-13.   In fact, Huang's primary defense during the preliminary

8   injunction proceedings was that AllRide's suspiciously rapid development was possible because he

9   "joined an existing team of engineers at AllRide that were already developing the technology."   *See*

10  Dkt. 70-1 ¶25. ████████████████████████████████████

11  █████   *See* Walter Decl. Reply ¶17(a). ███████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  *See* LaFond Ex. 3 (6/25/19 Huang Depo. Tr.) at 142:14-144:7; Ex. 1 (6/6/19 Liu Depo. Tr.) at 100:8-14,

16  104:10-13.   Apparently, whatever code was written before ███████████ is simply gone.

17      **AllRide's Reliance on Matthew Ohlman's Declaration Is Pure Distraction.**   Over and over,

18  AllRide argues (by citing to Ohlman's lengthy declaration) that no sanctions should issue, because

19  AllRide's "official" code repository and accompanying logs are pristine and can be used for a code

20  comparison.   *See* Dkt. 368 at 11-15 (arguing for comparison of the surviving code); 18 (arguing the

21  surviving logs can stand in for spoliated engineering reports).   That is a *distraction*: Ohlman only

22  examined a *single* code base, never verified the functionality of that code base, and never considered

23  whether AllRide might use other code bases.   *See* Walter Reply ¶¶25-34.   The fact that Ohlman believes

24  this one code base to be intact is of no moment given the evidence that AllRide maintains other code.

25  *Id*.   Moreover, there is critical AllRide code, described in witness testimony and other evidence, but

26  ¶¶11-17; Dkt. 342 at 12. █████████

27  ██████████████████████   *See* Dkt. 330 at 14.

    [13]   Jeffery Miller (Dkt. 369-11), Marco Pavone (Dkt.185-02), Matthew Ohlman (Dkt. 369-03.1), and

28  Daniel Watzenig (Dkt. 369-05).

1   which cannot be located in the one so-called "official" code base Ohlman reviewed.  *See* Walter Reply

2   ¶¶25-34.  The other code has either been destroyed or withheld, in violation of Court orders.

3       **B.      Even if the Court Were to Consider AllRide's Merits Arguments, They Fail.**

4           As noted above, AllRide may **not** attempt to defend itself from spoliation sanctions by arguing

5   that the surviving evidence disproves WeRide's claims.  *See, supra* pages 6-7.  Nonetheless, even if

6   AllRide's "merits" arguments were considered, they cannot save AllRide from terminating sanctions.

7           1.      No "Code Comparison," on Its Own, Could Ever Resolve This Case.

8           **AllRide May Be Liable Even if There Is No Code Similarity *At All*.**  AllRide cites no

9   authority for its oft-repeated claim that a "code comparison" would resolve this case.  This is because

10  AllRide is wrong on the law.  This is not a copyright case where WeRide must prove "substantial

11  similarity" between the code bases.  Rather, "in the context of trade secret misappropriation,

12  information may be improperly 'used' in that it is unlawfully acquired and then built upon or modified

13  before being disclosed or benefit derived." *SkinMedica, Inc. v. Histogen Inc*., 869 F. Supp. 2d 1176,

14  1197 (S.D. Cal. 2012); *see also 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 399 F. Supp. 2d

15  1064, 1072 (N.D. Cal. 2005) ("internal experimentation with trade secret information not resulting in a

16  market product can constitute use," sufficient to support of finding of misappropriation).

17          Accordingly, even if AllRide's "official code" (leaving aside the spoliated code) does not bear

18  ***any*** similarities to WeRide's code, there may still have been misappropriation if, *e.g.*, Huang privately

19  referred to WeRide's code while directing AllRide's development efforts.  This issue was recently

20  adjudicated in *Waymo LLC v. Uber Technologies, Inc.*, another case about a departing engineer

21  misappropriating trade secrets and joining a new autonomous driving company.  As Judge Alsup

22  explained, when granting a preliminary injunction despite the fact that ***none*** of Waymo's stolen files

23  were found on Uber's servers, even if "Waymo's files never crossed over to Uber's servers or devices .

24  . . it remains entirely possible that Uber knowingly left [the trade secret thief] free to keep that treasure

25  trove of files as handy as he wished (so long as he kept it on his own personal devices)[.]" *Waymo LLC*

26  *v. Uber Techs., Inc.*, 2017 WL 2123560, at *5 (N.D. Cal. May 15, 2017).

27          That is why the spoliation here is so fundamentally problematic: Defendants' spoliation has

28  severed WeRide's ability to trace files from its own servers to devices in Huang's possession or the

1  possession of others at AllRide.  Laptops, emails, and other documents that could demonstrate whether

2  Huang was keeping WeRide's code **have all been destroyed**.  Even if WeRide's code is **never** found on

3  AllRide's servers, that does not rule out misappropriation.  *See Waymo*, 2017 WL 2123560, at *5.

4  2.   <u>AllRide's Three Contradictory Stories Preclude **Any** Code Comparison.</u>

5  AllRide's proposed "code comparison" also will not resolve this case because AllRide has told

6  at three conflicting code development stories, raising the question: what code should be compared?

7  **AllRide's First "October 2018 Code" Story.**  Responding to WeRide's preliminary injunction

8  motion, Huang argued that AllRide's rapid development was allegedly made possible because he

9  "joined an existing team of engineers at [AllRide] that were already developing the technology."  *See*

10  Dkt. 70-1 ¶25.  This story was further confirmed by Liu (testifying as AllRide's corporate

11  representative), who testified that ████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████  *See* Landes Ex. 1 (6/6/19 Liu Depo. Tr.) at

14  74:11-75:4, 77:17-78:2, 116:11-117:20, 118:11-24, 123:3-11, 130:9-18.

15  ██████████████████████████████████████████████████████████████████████████

16  ██████████.  *Id.*  But, when AllRide produced its "October 2018 code" **that code did not contain**

17  **these abilities** (as the Court found, *see* Dkt. 342 at 11-13).  ████████████████████████████

18  ██████   In its opposition to this motion, AllRide never disputes this point: it has never been able to

19  identify where the pre-August 24, 2018 code, or the code Liu described, may be found.

20  **AllRide's Second "October 2018 Code" Story.**  After receiving Dr. Walter's declarations of

21  July 5, 2019 (Dkt. 165-07) and July 26, 2019 (Dkt. 199-5), AllRide knew its previous story was no

22  good, so it came up with a second story.  On September 13, 2019, Huang appeared at deposition as

23  AllRide's official corporate representative, and repeatedly testified that ████████████████████

24  ██████████████████████████████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████  ***AllRide's own expert***

now admits that modification is required.  *See* Watzenig ¶15 ("Autoware version 1.7.0 is and was capable of performing the pedestrian detection, lane changing to avoid an obstacle, smooth braking and smooth acceleration, and generating an HD map . . . ***with minor modifications***.") (emphasis added); *see also* ¶18 ("it is possible ***to modify*** Autoware to perform a function to change lanes").

**AllRide's Third "October 2018 Code" Story.**  Having presented an untenable story that ***its own paid expert would not support***, AllRide was forced to shift tales again.  Beginning on September 23, 2019, AllRide's new story (as articulated in the declarations of Dr. Liu, *see* Landes Exs. 47, 48) was that ████████████████████████████████████████████████████████████████

███████████████████████████████████  *Id*.  WeRide pointed out this contradiction in its moving papers (*see* Dkt. 330 at 7) and AllRide simply does not respond.  *See* Dkt. 368.

Which of the three stories is correct?  The different stories ***all*** indicate trade secret misappropriation to varying degrees, but would result in wildly different code.  It is now unlikely that the Court or WeRide will ever know the correct code for comparison, because of the expansive scope of AllRide's spoliation of a wide range of material from this period.  As explained in the authorities cited by WeRide (and not distinguished by AllRide) when documents have been destroyed and the testimony keeps changing (as AllRide's has changed repeatedly), the only solution is terminating sanctions.  *See, Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701, at *8 (C.D. Cal. Dec. 13, 2007); *Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4589156, at *4 (C.D. Cal. Nov. 3, 2010); *Leon*, 464 F.3d at 956; *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

### 3.   AllRide is Trying to Mislead the Court *Again*.

In its opposition brief, AllRide makes the following, misleading argument:

> [Dr. Walter] erroneously states that the [AllRide] Code, which was based primarily on open source Autoware code with some limited modifications, could not perform certain functions described by Dr. Liu . . .  In fact, Autoware could perform these functions with minor modifications.

*See* Dkt. 368 at 12:19-26.  AllRide's support is the declaration of Dr. Watzenig (*id*.), and AllRide is suggesting that Dr. Watzenig disagrees with Dr. Walter's conclusions about the functionality of AllRide's October 2018 code.  ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████  Thus, while

1  Dr. Watzenig opines that Autoware can perform certain functionalities with "minimal modifications,"

2  ████████████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████ This is the **second time** AllRide has tried to

6  rebut Dr. Walter with testimony from an expert who did not examine the functionality of AllRide's

7  code . *See* Dkt. 342 at 13 ("[I]t appears as though Dr. Miller did not analyze whether the October 2018

8  Source Code could perform the Advanced Capabilities that the AllRide Defendants claim that it can.").

9      4.    AllRide's "█████████ Argument Is *Non-Sequitur* Distraction.

10  AllRide seems to argue that because WeRide used █████████ in its early development, there is

11  nothing wrong with AllRide's new claim (its third different story) that i███████████████████

12  ████████████████████ *See* Dkt. 368 at 13.  This argument completely misses the mark.

13  **First**, the "WeRide used █████████oo!" argument ███████████████████████████

14  ██████████████████████████████████.  *See, supra* page 12.  It is not AllRide's

15  claimed use of █████████ that is notable, but rather ███████████████████████████

16  ██████████████ *see* Walter ¶¶9-23).  In any event, what really matters on WeRide's motion is that

17  the documents needed to evaluate which of AllRide's stories is true—the █████████ files themselves or

18  email discussion about using those █████████—have all been destroyed.  AllRide's only response is that

19  the █████████ files (but *not* the emails) were destroyed before it had a "preservation obligation" (Dkt.

20  368 at 5 n. 2); which is convenient, as AllRide's conflicting narratives cannot now be tested.

21  **Second**—even responding to AllRide's irrelevant argument on its own terms—WeRide's early

22  use of █████████ does not establish that AllRide's development timeline for the Advanced Capabilities

23  is realistic, or consistent with WeRide's.  I███████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████ There is a good reason for this: WeRide's early video does

27  *not* show similar capabilities to AllRide's.  *See* Walter Reply ¶¶40-47.  WeRide's video depicts no lane

28  change, no stopping for pedestrians in a crosswalk, the braking is *not* smooth (the vehicle stops

sharply), and a safety driver is always present.  *See* Dkt. 368-23; Walter Reply ¶¶40-47.  By contrast, AllRide's video shows all five Advanced Capabilities.  *Id*.  There simply is no comparison.[14]

### C. AllRide's Arguments for Lesser Sanctions Are Easily Dismissed.

AllRide's brief ***never*** addresses the *Leon* factors for terminating sanctions or the extensive argument, evidence, and authority WeRide cited in support of those factors.  *Compare generally* Dkt. 330 *with* Dkt. 368.  For example, WeRide explained that under appropriate Ninth Circuit standards, "[a] party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."  *See* Dkt. 330 at 17 (citing *Leon*, 464 F.3d at 961), but AllRide never addresses this point (or dozens of others) and instead simply baldly asserts that it has not acted in bad faith.  *See* Dkt. 368 at 11.  As AllRide never actually addresses WeRide's analysis of the *Leon* factors, it cannot be said to have shown that lesser sanctions are warranted.  Terminating sanctions should issue.

Rather than address the applicable standard or relevant authority, AllRide first argues that it has made an extensive document production in good faith.  *See* Dkt. 368 at 7, 23.  But the numbers are not the full story; ZZX larded its production with irrelevant files in order to downplay its spoliation.  Of the 163,035 documents produced by ZZX: 50,264 post-date the March 2019 email deletion cut-off, approximately 21,000 consist of open-source code files, and 65,273 are non-corporate documents that ***pre-date*** ZZX's founding (many of which are publicly available, such as user manuals).  *See* LaFond ¶¶25-29.  Excluding open source code, ZZX has only produced 2,782 documents from the critical period of July 1, 2018 through October 31, 2018, and only 348 of those files are intact emails.  *Id*.

AllRide then argues that all of the destroyed evidence is (very conveniently) irrelevant.  But Ninth Circuit law precludes that argument.  "[W]hen destroyed documents no longer exist, the responsible party may not assert any presumption of irrelevance as to the destroyed documents."  *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 377 (D. Or. 2017).[15]  Moreover, the "best

---

[14]  Contrary to AllRide's hyperbole, WeRide did not "hide" its use of ▮▮▮▮▮ during the preliminary injunction proceedings.  Dr. Yan Li's declaration (Dkt. 80-4) was part of that proceeding and described the June 24, 2017 video as follows: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[15]  *See also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("a party can hardly assert any presumption of irrelevance as to the destroyed documents."); *Apple Inc. v. Samsung Elecs. Co.*, 888 F.

evidence rule" precludes testimony from a party about a document that it destroyed.  *See* Fed. R. Evid. 1002; Fed. R. Evid. 1004 (alternative evidence of contents permitted only if "all the originals are lost or destroyed, ***and not by the proponent acting in bad faith***") (emphasis added).  AllRide cannot save itself with testimonial evidence about the supposed "irrelevant" contents of missing DingTalks, nor may AllRide rely on testimony that the missing weekly engineering reports contained no more information than surviving documents (Dkt. 368 at 18).  This same authority precludes AllRide's claim that because Wang and his wife were not engineers, their deleted emails must have been irrelevant (*see* Dkt. 368 at 19-22).  And the argument about Wang's emails is factually wrong: the record reflects ███████ ██████████████████████████████████████████ *ee* Landes Ex. 17), and that his wife had key evidence regarding the corporate organization of AllRide (since she is  AllRide's true owner, *see* Dkt. 341 at 4-5).  The evidence and authority set forth in WeRide's motion and above demonstrates the relevance of the spoliated material, and AllRide may not so quickly dismiss all of this evidence.

## IV.   <u>WANG IS EQUALLY TO BLAME FOR DEFENDANTS' MASS SPOLIATION.</u>

Wang's opposition shows no contrition at all for his personal violations of Court orders.  His opposition consists of denials and minimizations of his role within AllRide—the same denials this Court already rejected as "at best, inaccurate."  Dkt. 342 at 3.   On the substance, Wang asks the Court to believe that the repeated destruction of evidence tied to Wang and his wife is a string of blameless coincidences.  Given Wang's prior submission of false sworn statements, the Court should not credit Wang's evasions.  Regardless, even the facts Wang ***admits*** are sufficient to show he destroyed evidence with the intent to deprive WeRide of access to it—wrongdoing that supports terminating sanctions.

### A.   **Wang Admitted that He Intended to Deprive WeRide of Evidence.**

#### 1.   <u>Wang Directed the Spoliation of His Email Accounts (Plural) in Bad Faith</u>

WeRide's motion laid out a long list of spoliation tied specifically to Wang.  His primary AllRide email account, jing@allride.ai, and all of its contents were affirmatively deleted in December 2018, within a week after this litigation was filed and two months after Wang received a demand letter

---

Supp. 2d 976, 993 (N.D. Cal. 2012) ("[S]poliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.") (quoting *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D.Cal. July 2, 2009)).

from outside counsel and retained his own counsel.  LaFond Ex. 5 (Wang Depo. Tr.) at 90:4-9, 97:18-21.  That email account was replaced with a new email account, which made use of a fake name, that itself was subsequently destroyed along with all of its contents.  *Id.* at 126:21-128:25.  In addition to those accounts, there is at least one other account belonging to Wang that was also destroyed (Dkt. 330 at 10), Wang "gave away" another laptop and phone (LaFond Ex. 5 at 167:3-18), and disposed of engineering reports from FAW.[16]  ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Dkt. 330 at 10 n.9.  With the possible exception of Defendant Huang, there is no one at AllRide besides Wang and his wife for whom more discrete sources of evidence have disappeared since this litigation began.[17]

Wang claims that "[n]one of the evidence concerning [AllRide] email accounts suggest[s] that Jing had any intention to destroy important evidence."  Dkt. 372 at 19.  To the extent Wang means to argue that the contents of his email accounts are irrelevant, that argument is foreclosed under the law,[18] and it ignores the evidence WeRide presented t███████████████████████████████████████

███████████████████████████ Landes Ex. 17, *see also* Dkt. 342 at 6), d█████████████████████

███████████████████ (Landes Ex. 34, *see also* Dkt. 342 at 5), █████████████████████████

(Landes Ex. 36-39), and ███████████████████████████████████ (Dkt. 330 at 3).

To the extent Wang means to argue that he did not undertake any destruction himself or direct it in bad faith, that is simply impossible to believe on this record.  Wang ***admitted*** at his deposition that he

---

[16]   Wang denies destroying FAW reports, but this is contrary to his deposition testimony that he received printed copies of FAW status reports through the end of 2018, but he does not have them anymore because he did not "want to carry them."  LaFond Ex. 5 (Wang Depo. Tr.) at 35:23-37:6,

[17]   Wang claims that his spoliative conduct "occurred before any duty to preserve evidence arose," but tellingly never states when he became aware of potential litigation.  *See First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) ("The duty to preserve evidence begins when litigation is pending or reasonably foreseeable.").  Wang never disputes that litigation was reasonably foreseeable by at least early October 2018, when he received a cease and desist letter from WeRide's outside counsel and saw news articles that he believed were part of an effort by WeRide to get evidence for a potential lawsuit against him.  ████████████, LaFond Ex. 5 (Wang Depo. Tr.) at 133:3-23.  It is conceded that all of Wang's spoliative conduct happened after October 2018, with the exception of one laptop that Wang purportedly "gave away " (LaFond Ex. 5 (Wang Depo. Tr.) 152:18-153:25) in June 2018, though there is no corroborating evidence for Wang's laptop story.

[18]   *See OmniGen* , 321 F.R.D. at 377; *Leon*, 464 F.3d at 959; *Apple*, 888 F. Supp. 2d at 993; *Dong Ah Tire & Rubber*, 2009 WL 1949124, at *10; *see also* Fed. R. Evid. 1002, 1004.

believed WeRide was trying to compile evidence that he worked with AllRide when he saw the news

reports linking him to AllRide in early October[19] (LaFond Ex. 5 (Wang Depo. Tr.) at 112:5-113:13,

115:19-24, 133:11-23).  At that point, he tried to conceal his affiliation with AllRide from WeRide,

because he was concerned WeRide would sue him for violation of his non-compete (*id.* 41:4-7), he

knew that his AllRide email address could connect him to AllRide (*id.* 16:1-18:16), and he was

concerned that his AllRide email address would make people thinking that he worked at AllRide (*id.*),

which of course he did.  In other words, Wang specifically intended to deprive WeRide of evidence.

Wang completely ignores these critical admissions.

Wang next argues that he did not actually delete any email accounts, but rather he only told

AllRide's IT department, through co-founder Peijian Gu, that Wang did not want to use the accounts

anymore.  Dkt. 372 at 18.  But AllRide's Head of IT, Gordon Fang, testified that ███████████

██████████████████████████████████ LaFond Ex. 8 (Fang Depo. Tr.) at 159:8-

13.  ██████████████████████████████████████████

█████████████████████████████████ *Id.* at 158:1-13.  Moreover, the

sheer number of email addresses deleted—three for Wang and two more for his wife—the timing of the

deletions (keyed to key litigation events, like the filing of the complaint or the entry of the preliminary

injunction), and the transition to email addresses using fake names, make Wang's protests of

"miscommunication" and "coincidence" highly unlikely to say the least.  And, of course, there is no

documentation corroborating Wang's or his wife's explanations of this evidence destruction.

Finally, though Wang protests his production of AllRide emails was not "selective," he never

explains how he and his wife were able to obtain and produce innocuous emails from AllRide but none

of the incriminating engineering reports and meeting invites showing his involvement with AllRide.

*See* Gao Decl. ¶¶3-5, ████████████████████████.  Wang says it is "false" that these

documents have not been produced, but he never says where they can be found in his production.  Wang

Opp. at 9.  They cannot be found; Wang is just lying again.

---

[19]  Wang claims, baselessly, that WeRide planted the news articles linking him to AllRide.  This is not true, and regardless, ███████████████████████████ *see also* Dkt. 342 at 3-6.

2.   <u>Wang Directed the Spoliation of Chat Messages in Bad Faith</u>

Wang also testified that he introduced AllRide to the DingTalk chat service **months** into litigation (and after the entry of the PI Order) with the intention of depriving WeRide of written records of AllRide's communications.  Wang now attempts to walk back that testimony, protesting that he did not mean to say that **he** endorsed DingTalk's ephemeral messaging features, he was just reporting what the "mayor of Nanjing" and "*people in China*" liked.  Dkt. 372 at 11 (emphasis original).  Yet again, Wang's explanation is at best disingenuous.  In fact, Wang testified that **he** recommended DingTalk to AllRide because it was "more secure than WeChat." LaFond Ex. 5 (Wang Depo. Tr.) at 185:20-21, 186:3-4.  When asked why it was more secure, Wang explained that one advantage of DingTalk is that it "replac[es] a phone call" because there is "no written record," which stops people from "peeping into" the messages.  *Id.* at 183:18-187:22.  Wang testified that **he** personally "hate[s] when people peep into [his] chats with other people." *Id.* at 204:25-205:8.  After speaking with his lawyer during a break, Wang attempted to clarify that not **all** Ding Talk messages were automatically deleted, only "secret talk," but then immediately admitted that he had frequently used the "secret talk" feature to communicate with other key witnesses for this case, including the founders of AllRide, his wife, Kaizr engineers, and potentially Kun Huang.  *Id.* at 197:17-204:15.[20]

**B.    Wang *Personally* Violated Multiple Court Orders**

Wang argues that he cannot be sanctioned under Rule 37(b)(2) because he is not personally responsible for the spoliation.  Dkt. 372 at 14.  Wang is wrong.  **First**, as AllRide's leader and CEO, Wang is responsible for spoliation committed by AllRide.  While Wang incredibly continues to try to

---

[20]  Wang argues that the timing of these messages alone (i.e., beginning in mid-2019) makes them *per se* irrelevant.  Dkt. 372 at 11.  Once again, Defendants' broad claims of irrelevance—rendered irrefutable by their spoliation—should be rejected on their face.  But even setting aside the substance of the chats, Wang's introduction of DingTalk is compelling evidence of his ongoing bad faith—his laptops keep disappearing; his email accounts keep getting deleted; and then when he defeats the initial preliminary injunction motion by lying to the Court, he introduces AllRide to a new means of concealed communications that violate his and AllRide's preservation obligations.  Next, Wang blames WeRide for his own failure to collect DingTalk messages, claiming (with a sworn declaration from his counsel) that WeRide "refused to provide a waiver" for Wang to use WeRide's e-discovery vendor, Transperfect, and that Transperfect is the only vendor that might be able to collect DingTalk messages.  This is false in both respects.  Wang never asked for a waiver (though Kilpatrick Townsend did seek to engage Transperfect on behalf of **Kaizr**, Wang was never mentioned).  LaFond Decl. ¶37.  And many other vendors advertise the ability to collect chat-type documents; there is no indication Transperfect has special abilities that other established vendors lack.  LaFond Decl. ¶38.

distance himself from AllRide, this Court already found that his denials are contradicted by mountains of evidence and are "at best, inaccurate." Dkt. 342 at 3. Wang's own cases recognize that a party is liable for spoliation committed by its agents. *See United States v. Maxxam, Inc.*, 2009 WL 817264, at *9 (N.D. Cal. Mar. 27, 2009); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 878, 888 (N.D. Ohio 2009) ("a party can be sanctioned for spoliation by one of its agents"); *Cone v. Hankook Tire Co.*, 2015 WL 1277060, at *2 (W.D. Tenn. Mar. 20, 2015) (same). And general principles of agency provide that corporate officers are personally liable for acts committed by the corporation if they are aware of and benefit from those acts. *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000); *Consumer Fin. Prot. Bureau v. Morgan Drexen Inc*., 2015 WL 12732004 (C.D. Cal. July 6, 2015) (sanctioning CEO personally for spoliation committed by company where CEO was aware of and participated in discovery misconduct).

As the Court already found, WeRide has presented sufficient evidence that Wang "control[s] the AllRide Defendants." Dkt. 342 at 3. As controller of AllRide and as a co-defendant in this case, it is inconceivable that Wang was not aware of AllRide's spoliation (especially spoliation specifically aimed at Wang's and his wife's material), which benefited Wang by depriving WeRide of the evidence needed to mount its case against him—just as Wang intended. Moreover, Wang admits that he (officially) became CEO of AllRide in July 2019 (Dkt. 372-01 ¶ 24)—weeks before AllRide disclosed its mass email deletion and violated every discovery order this Court issued in relation to the spoliation investigation. *See* Dkt. 330 at 10, 14-15. Wang's protests that he does not personally manage AllRide's email servers (Dkt. 372 at 4) slices the baloney too thin. Not only does AllRide's IT department (like everyone else at the company) ultimately report to Wang (*see* LaFond Ex. 12), but a spoliation finding does not require that Wang be the one who personally pressed the "delete" key. Otherwise, no one other than IT personnel could ever be liable for spoliation.

**Second**, this Court found that Wang personally "frustrated the intention of the Preliminary Injunction Order." with his "inaccurate statements." Dkt. 342 at 3. Wang testified that he took **no steps** to comply with the PI Order. Wang Depo at 211:20-212:2. Wang further admits that he has produced **none** of his DingTalk messages (Dkt. 372-01 ¶ 24 & Ex. 4), and continues to produce large volumes of documents (LaFond Ex. 21) in disregard of the Court-ordered September 16 "substantial

completion" deadline.  Dkt. 252 at 3.  And Wang's declaration required by the Court's August 22 Order (Dkt. 267) was late and incomplete—it does not identify DingTalk as a potential source of relevant information, nor does it identify *any* sources of relevant information at AllRide, which Wang has control over in his role as CEO.  *See, e.g.*, *The Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766, at *22 (C.D. Cal. Oct. 8, 2010) (granting terminating sanctions where party lied about not having control over company documents).

## C.   Wang Is Not to Be Trusted, and His Irrelevant Attacks Should Be Disregarded

Wang footnotes (in his opposition brief, not in his declaration) a half-hearted apology for his prior misrepresentations to the Court, but then tries to justify his lack of candor with *pages* of complaints that WeRide has not treated him fairly.  *See* Dkt. 372 at 1 n.1, 5-8, Dkt. 372-01 ¶¶ 9-22. There is a total disconnect here.  Even if Wang's wild accusations were true—and they are not, but WeRide will not take Wang's bait—they obviously would not excuse Wang's false statements to the Court, his disobedience of Court orders, and his total disregard for his evidence preservation obligations.  If anything, Wang's focus on how *he* supposedly (but not in reality) has been wronged is yet more evidence that Wang believes the rules do not apply to him.[21]

## V.   HUANG SHOULD NOT BE ALLOWED TO BENEFIT FROM HIS SPOLIATION.

Huang's opposition does not deny that massive amounts of evidence associated with him has been destroyed, including: (███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Instead, Huang's response is reduced to five technical arguments: (i) he was under "no duty to preserve" evidence at the time that he erased files from two laptops and destroyed a third, (ii) the evidence that Huang violated the preliminary injunction is "unclear," (iii) document destruction by AllRide should not be attributed to Huang, (iv) Huang has not acted in "bad faith," and (v) WeRide waited too long to bring a spoliation motion regarding laptops Huang spoliated in August and October of 2018.  All of these arguments fail.

---

[21]  Wang apparently believes he should receive credit for traveling from China for deposition.  Dkt. 372 at 1, 10.  But the Court *ordered* that deposition so WeRide could investigate Wang's document preservation; and even then Wang's counsel instructed Wang not to answer questions on that topic, forcing WeRide to obtain *another* order to get those answers.  *See* Dkt. 291 at 1-2, 6.

**A.    Huang Had a Duty to Preserve Documents as of July 31, 2018.**

Huang's discussion of his duty to preserve evidence (Dkt. 370 at 16-19) fails to consider the record.  In the Ninth Circuit "the duty to preserve . . . extends to ***the period before litigation*** when a party should reasonably know that evidence may be relevant to anticipated litigation.'"  *Nation v. Ducey*, 2016 WL 7338341, at *7 (D. Ariz. Dec. 19, 2016) (emphasis added).  Specifically, federal courts have held that the "duty to preserve" attaches whenever a party acts in a manner that party knows is likely to cause a lawsuit.  For example, *Nation v. Ducey* examined a situation where an Assistant Attorney General for Arizona attending a meeting for the express purpose of blocking the construction of a casino by a Native American tribe.  *See Nation*, 2016 WL 7338341, at *7.  The court concluded that, insofar as: (i) the interfering with construction was discussed at the meeting, and (ii) the tribe was known to have previously filed suit over attempts to block its casino construction, then the "duty to preserve" attached at the meeting even though the potential plaintiff was, as of yet, completely unaware of the plan to block construction.  *Id.* at *7-8; *see also Crown Battery Mfg. Co. v. Club Car, Inc*., 185 F. Supp. 3d 987, 998 (N.D. Ohio 2016) (duty to preserve arose once defendant "took some $2.3 million worth of [] batteries without paying").[22]  So, the relevant question (never asked by Huang) is: at what point did Huang's behavior become likely to attract a lawsuit?

The answer is July 31, 2018, at the absolute latest.  The evidence establishes that: (i) ████ ████████████████████████████████████████████████████████████████████████ ████████████████████████  *see* Landes Ex. 41; LaFond Ex. 22; (ii) Huang accessed WeRide's code base and ***within mere hours*** accessed the AllRide Microsoft Office portal—as confirmed by Huang's own expert, *see* Collins ¶8; (iii) Huang tried to recruit coworkers to AllRide, as confirmed by Liren Xu's declaration and contemporaneous messages; *see* Landes Ex 52 ¶39 & Ex. 43; (iv) on July 31, 2018, WeRide CEO Tony Han fired Huang and admonished him to cease recruiting WeRide employees and not to steal any of WeRide's intellectual property; *see* Landes Ex. 55 ¶13; (v)

---

[22]  *See also Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1297 n.3 (D.N.M. 2016) ("litigation was 'reasonably foreseeable' the moment the City became aware that a police officer was involved in a fatal traffic accident"); *ArcelorMittal Indiana Harbor LLC v. Amex Nooter, LLC*, 2018 WL 509890, at *6 (N.D. Ind. Jan. 23, 2018) (duty to preserve attached "immediately following [a] fire" that caused large scale damages); *see also Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 747 (8th Cir. 2004) (railroad should have known it had a duty to preserve the moment an accident occurred).

1    a █████████████████████████████████████████████████████████████

2    ██████████████████████████ *see* Landes Ex. 8 at 466:16-19; and (vi) H█████████

3    ████████████████████████████████████████████████████████▪ *See*

4    Landes Ex. 8 at 582:23-584:1.  Much like the intentional tortfeasors in the cases cited above, Huang's

5    behavior—including total and complete disloyalty to a present employer who fired him and was known

6    (in Huang's own words) to be litigious—gave rise to a duty to preserve evidence.  *See, e.g. Nation*,

7    2016 WL 7338341, at *7.  Huang's preservation obligation arose no later than July 31, 2018.

8            **B.      Huang Cannot Seriously Argue That He Obeyed the Preliminary Injunction.**

9            The Court's preliminary injunction order was ***very*** clear: Huang was enjoined from

10   "[d]estroying, concealing, disposing, deleting, removing or ***altering any and all documentation of any***

11   ***kind . . . relating in any way to source code written, developed, edited, reviewed, or used by***

12   ***Defendants***[.]"  Dkt. 116 at 24-25 (emphasis added).  Despite the Court's clear order, Huang logged

13   onto his laptop on March 24 and 25 and spoliated code files to such a degree that even AllRide's own

14   expert described the result as █████████████████████████████████*See* Landes

15   Ex. 45 ¶12; *see also* Kunkel ¶¶6-10.  Tellingly, even though Huang hired ***three separate*** computer

16   forensic experts (David Collins, Brian Harris, and Alisha Zhang, *see* Dkts. 370-05, 370-07, 370-09), ***not***

17   ***one of them*** was willing to offer testimony contradicting WeRide's expert Mike Kunkel.  *See id.*

18           Instead, Huang ***himself*** offers declaration testimony that questions—but does not contradict, let

19   alone offer a germane explanation for—Kunkel's conclusions.  *See* Dkt. 370-01 ¶¶12-18.  That is

20   because Kunkel's conclusions cannot be meaningfully contradicted.  The "issues" raised by Huang are

21   easily dismissed: (i) it is common in forensic analysis for certain artifacts to contain "impossible"

22   timestamps, and that does ***not*** invalidate the remaining timestamps (Kunkel Reply ¶4); (ii) Huang

23   argues that the ***files*** with changed time stamps lack "allride" in their name, but ignores the fact that

24   hundreds of ***directories*** containing the word "allride" were altered between March 24 and March 25

25   (Kunkel Reply ¶5); (iii) Huang complains that he "does not know" why the "created" and "modified"

26

27   ───────────────────
     23  Of course, all of this evidence shows that Huang's sworn statement in opposition to WeRide's initial
28   preliminary injunction motion that he "was not planning to leave JingChi" when he was terminated
     from WeRide on July 31, 2018 was false.  Landes Ex. 55 ¶13.

1   time stamps on the spoliated files are the same date—but as WeRide's expert explained (and Huang

2   ignores), that is consistent with Huang wiping whatever was on his laptop and downloading brand new

3   code to cover his tracks (Kunkel ¶¶6-10); and (iv) Huang claims that hundreds of the modified files (but

4   ***not*** the modified directories, which Huang fails to address) are attributable to open source "Arduino"

5   code—but that is WeRide's point: Huang modified the code ***after*** the injunction issued so that what

6   WeRide saw would be innocuous.  *Id.*  Finally, Huang and his experts provide no explanation for why

7   AllRide's expert, Dr. Miller, as well as WeRide's expert, Dr. Walter, both agreed the code on Huang's

8   laptop was ███████████████████████████████████Landes Ex. 44 ¶¶7-10, Ex. 45 ¶12.

9   **C.    Huang Acted in Bad Faith.**

10       Huang attempts to defeat a bad faith finding necessary under *Leon* with two arguments:

11   (i) Huang took "reasonable steps" to preserve his documents, and (ii) Huang was allegedly forthcoming

12   at deposition.  *See* Dky. 370 at 15, 22.  Neither argument stands up to scrutiny.

13       As to the first argument, Huang testified ***repeatedly*** that he had no reason to doubt that his

14   electronic devices were collected on April 2, 2019; AllRide's own records and 30(b)(6) testimony

15   agreed.  *See* LaFond Ex. 6 (9/18/19 Huang Depo. Tr.) at 504:5-14, 505:22-24, 508:9-13, 510:11-17,

16   511:4-6; Ex. 7 (9/20/19 Barce Depo. Tr.) at 199:6-24.  Neither Huang nor AllRide ever corrected that

17   testimony.  But now, faced with a terminating sanctions motion, Huang suddenly "remembers" that his

18   devices were imaged earlier.[24]  *See* Dkt. 370-01 ¶10.  Declarations that contradict earlier testimony for

19   the purpose of defeating a terminating sanctions motion are routinely rejected.  *See, e.g. CrossFit, Inc.*

20   *v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951, at *6 (S.D. Cal. Dec. 4, 2019) (on a motion

21   for terminating sanctions, refusing to consider "contradictory declarations" filled with "self-serving

22   evidence"); *see also Bradford Techs., Inc. v. NCV Software.com*, 2013 WL 4033840, at *5 (N.D. Cal.

23   Aug. 6, 2013) (declining to consider "vague and self-serving testimony" submitted by declaration).

24       Moreover, Huang claims that he took reasonable steps to preserve evidence because his AllRide-

25   issued Macbook is set to periodically back-up.  *See* Dkt. 370 at 15.  But Huang testified at deposition

26   that he did not set up that system.  In fact, Huang testified t███████████████████

---

[24]   Even taking Huang's newfound memory at face value, he still turned over the devices ***after***
modifying all the code files on March 24 and 25.

1   ██████████████████████   *See* LaFond Ex. 6 (9/18/19 Huang Depo. Tr.) at 517:22-518:3.  Unknowingly

2   lucking into some preservation is not "good faith."  Moreover, what Huang and his expert omit is that

3   Huang's laptop is only configured to backup ***part*** of the its hard drive at any one time, and the backups

4   occur weeks apart; so it takes months for the entire drive to backup.  *See* Kunkel Reply ¶6.

5        As for Huang's second contention, Huang was only "forthcoming" at deposition with answers

6   that he believed could help him or his codefendants—the moment that a question threatened to

7   inculpate him, he suddenly lost his memory.  For example, across two depositions and many questions,

8   ████████████████████████████████████████████████████████████

9   *See* LaFond Ex. 6 (9/18/19 Huang Depo. Tr.) at 405:18-407:8; Ex. 3 (6/25/19 Huang Depo. Tr.) at

10   136:6-23, 137:14-22, 318:5-7. ████████████████████████████

11   ██████████████████████████████████████████████ *See*

12   LaFond Ex. 6 (9/18/19 Huang Depo. Tr.) at 582:23-584:1. ████████████

13   ████████████████████████████████████████████████████████████

14   ██████████████████████████ *See id.* at 586:3-13. ████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ██████████████████████████ *See* LaFond Ex. 3 (6/25/19 Huang Depo. Tr.) at 313:11-19,

18   319:3-6; Ex. 4 (9/13/19 Huang Depo Tr.) at 270:3-274:22.  "Good faith" is not a fair weather friend;

19   Huang cannot claim "good faith" when he only testifies with candor about subjects that could help him,

20   while clamming up with bad faith "I don't knows" about every topic that could subject him to liability.

    **D.**    **The Destruction of Huang's Email Accounts Is Properly Attributed to Huang.**

22        Huang complains that AllRide's deletion of his email accounts should not be attributed to him.

23   *See* Dkt. 370 at 14.  Huang is wrong.  As an initial matter, there is simply no reason to believe Huang

24   was just an "innocent bystander" to AllRide's rampant document destruction: Huang is an executive at

25   AllRide who has openly refused to offer testimony explaining documents that contradict his preferred

26   narrative.  Both WeRide's and Huang's experts agree that Huang  used AllRide's email systems in July

27   while he still worked for WeRide (despite Huang's claims to have never even met anyone from AllRide

28   until August).  *Compare* Kunkel ¶¶6-10; Collins ¶8 *with* ████████████████

1  ██████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████,

4  Huang and AllRide's actions must be considered together as two halves of the whole.

5      **E.**    **WeRide Did *Not* Delay In Bringing Its Spoliation Motion.**

6        Huang's argument that WeRide waited too long to raise his spoliation from August and October

7  2018 is off the mark for two reasons.  **First**, Huang did not produce *any* documents from his personal

8  Gmail account until September 16, 2019.  *See* LaFond ¶24.  It was only in that September 2019

9  production that WeRide learned, for the first time, ██████████████████████████████

10  ████████████████████  *See* Landes Ex. 41; LaFond Ex. 22.  This is critical, because Huang's

11  spoliation of three laptops in August and October could have destroyed evidence of the use of those

12  accounts.  *See* Kunkel Reply ¶7.  Once WeRide learned, it moved for sanctions within a month.  *See*

13  LaFond ¶24; Dkt. 330 (sanctions motion filed in October 2019).

14        **Second**, the cases cited by Huang about delay in spoliation motions are all inapposite.  *Perdana*

15  *Capital (Labuan) Inc. v. Chowdry*, 2012 WL 13075527 (N.D. Cal. July 3, 2012) involved a delay of

16  "nearly two years," *twice* as long as the delay Huang complains of here.  *Siebert v. Gene Security*

17  *Network, Inc*, 2014 WL 5808755 (N.D. Cal. Nov. 6, 2014) examined a deficient record, and found that

18  the delay "compounded" the deficiencies—but the record before this Court on WeRide's motion is *not*

19  deficient, and thus there is nothing to "compound."  Finally, in *Permasteelisa CS Corp. v. Airolite Co.,*

20  *LLC*, 2008 WL 2491747, at *2 (S.D. Ohio June 18, 2008), the moving party waited until after the close

21  of fact discovery and the final pretrial conference to seek spoliation sanctions.  But the parties in this

22  case are in the middle of fact discovery, and it does not close for some months yet.

23        WeRide moved as quickly as practicable, and consistent with the Court's orders, as soon as

24  Huang *finally* produced documents from his personal email account in September 2019, which

25  documents shed new light on the importance of the laptops Huang spoliated.

26  **CONCLUSION**

27        For the foregoing reasons, the Court should sanction the Defendants in a manner consistent with

28  the proposed order filed by WeRide on October 22, 2019.  *See* Dkt. 330.

1  DATED:  December 13, 2019                    Respectfully submitted,

2                                               QUINN EMANUEL URQUHART &
                                                SULLIVAN, LLP
3

4

5                                               By   /s/ Ryan S. Landes
                                                   Claude M. Stern
6                                                  Ryan S. Landes
                                                   William T. Pilon
7                                                  Michael F. LaFond
                                                   *Attorneys for Plaintiffs WeRide Corp. and WeRide*
8                                                  *Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28