Kurt A. Kappes (SBN 146384)
kappesk@gtlaw.com
Todd A. Pickles (SBN 215629)
picklest@gtlaw.com
Alicia Intriago (SBN 320102)
intriagoa@gtlaw.com
GREENBERG TAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709

Howard Holderness (SBN 169814)
holdernessh@gtlaw.com
Michael D. Lane (SBN 239517)
lanemd@gtlaw.com
GREENBERG TAURIG, LLP
Four Embarcadero Center, Suite 3000
San Francisco, California 94111
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

Attorneys for Defendants
ALLRIDE.AI INC. and ZHONG ZHI
XING TECHNOLOGY CO. LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE CORP. f/k/a JingChi Corp.;<br>WERIDE INC. f/k/a JingChi Inc.,<br><br>    Plaintiff,<br><br>  v.<br><br>JING WANG, an individual, KUN HUANG, and individual, ZHONG ZHI XING TECHNOLOGY CO. LTD. d/b/a ALLRIDE, AI, ALLRIDE.AI INC.,<br><br>    Defendants. | Case No. 5:18-cv-07233-EJD (NC)<br><br>**DEFENDANTS ZHONG ZHI XING TECHNOLOGY CO. LTD. AND ALLRIDE.AI INC.'S REPLY REGARDING CODE ISSUES IN RESPONSE TO WERIDES' MOTION FOR SANCTIONS** |

## I. INTRODUCTION

Plaintiffs WeRide Corp.'s and WeRide Inc.'s (collective "WeRide") Reply in Support of Sanctions starkly reveals how desperate WeRide is to obtain terminating sanctions because the merits of its case have all but collapsed, particularly in relation to issues concerning Zhong Zhi Xing Technology Co.'s ("ZZX") source code. To show the extreme sanctions that WeRide seeks for ZZX's and AllRide.ai. Inc.'s ("Allride") self-disclosed error regarding preservation of data are unwarranted, ZZX has presented the Court with evidence conclusively demonstrating the integrity of ZZX's source code, which is the focus of WeRide's claims against ZZX and Allride. Remarkably, despite months of comparing the parties' respective code bases, WeRide still has no evidence of overlap between the codes. Faced with this existential threat to its lawsuit against ZZX and AllRide, WeRide doubles down on its effort to obtain victory based, not on the merits, but by using ZZX and AllRide's admitted preservation error to weave a false narrative of spoliation of source code.

WeRide tries to obscure the importance of ZZX's evidence regarding the integrity of its source code by distraction and distortion. It makes false claims about spoliation of "code repositories" or exaggerates the cumulative data from two interns' computers relating to ZZX's code. It ignores facts that are inconvenient to its story. It repeats its canard of a mythical other ZZX code, constructing new arguments through each instalment of their expert's serial declarations. Yet stripping away the hyperbole and speculation that permeates WeRide's papers, the Court is left with the fact that WeRide cannot dispute the conclusive evidence showing there is only one ZZX code, it was produced long ago, and it does not contain WeRide's code. ZZX remains confident that FTI will reach the same conclusion once it completes its analysis. The existence of ZZX's code, and its central role in this lawsuit, shows why WeRide's extreme sanctions are unwarranted.

## II. WERIDE'S ALLEGATIONS OF NEW SPOLIATION REGARDING CODE ISSUES LACK MERIT

### A. Improper New Claims Do Not Demonstrate Source Code Spoliation.

Predictably, WeRide's "reply" starts with an effort to introduce new arguments about spoliation after ZZX and the other defendants filed their oppositions. WeRide has employed this same tactic in its prior motions for a preliminary injunction or to modify the injunction, including arguing to the Court that

WeRide's new evidence offered in reply is "unrebutted" when it has manipulated the rules to make it so. *See*, *e.g.*, ECF No. 80-5; 199-6. Here, WeRide has applied the tactic to an email account once tested by co-defendant Kun Huang ("KH") who has objected to WeRide's gamesmanship in relation to claims of spoliation of a "test@allride.ai.com" email account, *see* ECF No. 391, in which ZZX and AllRide fully join. In addition to WeRide's improper new arguments and failure of proof as demonstrated by KH, the email account existed in July or August 2018, long before ZZX had any duty to preserve any evidence in this case. WeRide has failed to show that this email account was deleted (assuming it was) at a point that could give rise to a claim of spoliation, much less identify any prejudice. WeRide's 'shoot first, ask questions later' approach is unfortunately the method by which it has litigated this case to date. Regardless, WeRide's new claims of spoliation in relation to this, at best, potential Code Issue lack merit.

### B. There Has Been No Destruction of "Entire Code Repositories"

WeRide claims that there has been spoliation of "entire code repositories." Reply, at 1 (removing WeRide's reflexive use of bold and italics), and 3. The evidence? A forensic report by FTI that identified the potential deletion between August and October 2018 of a single zip file with the file path name ███████████████████████████ that was on ZZX's OneDrive server. FTI's report identified only one such file (not the multiple "repositories" that WeRide claims). Moreover, WeRide's gotcha moment falls flat.

WeRide's argument falls flat in part because of the context in which it is made. ZZX has given direct access to WeRide's electronic vendor, TransPerfect, the sources where ZZX stored its source code. ZZX has also given access to TransPerfect to make a forensic image of OneDrive, another Microsoft service called SharePoint, ZZX's research and development computers, and a network-attached storage (NAS) server based on WeRide's claim that these are also code repositories. *See* ECF No. 365 at 2-6. FTI in turn is to be given access to these sources as part of ZZX's suggestion that FTI investigate the integrity of ZZX's source code. *See id.* at 6.

ZZX's code repositories and the other locations that may contain code (at least on WeRide's theory) that ZZX has given WeRide and FTI access contain over 5.5 terabytes of data. (Declaration of Xiang Xiao re: Code Issues, ¶¶ 3-4.) This volume of data is truly staggering. For the Court's reference, the amount of data in only one terabyte runs the range from 75 million to several hundred million pages

of documents. *See, e.g.*, *McNulty v. Reddy Ice Holdings, Inc.*, 271 F.R.D. 569, 570 n.1 (E.D. Mich. 2011) ("One terabyte is 1 trillion bytes of information, which would be the equivalent of approximately 220 million pages of printed text"); *see also* https://cloudnine.com/ediscoverydaily/electronic-discovery/ediscovery-best-practices-perspective-on-the-amount-of-data-contained-in-1-gigabyte/ (visited on 1/4/2020) (terabyte is 75 million pages). Using another metric, a terabyte equals approximately 350,000 digital photographs or could contain 500 high-definition full length films. *See*, *e.g.*, *Romack v. Bitcasa, Inc.*, No. C 14-05005 WHA, 2014 U.S. Dist. LEXIS 165787, at *2 n.* (N.D. Cal. Nov. 19, 2014) (discussing volume of 10 terabytes as "equivalent of 3.5 million photos or over 5,000 high-definition movies"). To date, however, none of WeRide, TransPerfect, or FTI has made any finding of the loss of any source code from this enormous volume of data (much less, as discussed below, that ZZX source code contains WeRide code).

As to WeRide's claim of a single OneDrive file that was allegedly deleted, as FTI explained, OneDrive is a service Microsoft offers for storing and sharing information; it is not a collaborative workspace. (Reply Declaration of Todd Pickles ("Pickles Reply Decl.") Ex. A (Han Lai Depo., at 147:2-24.) Thus, OneDrive is not a location where engineers developed ZZX's code. Rather, as the Court is aware, ZZX developed its code first on Amazon Web Services ("AWS") through git, then Phabricator, then Alibaba through Gitlab. (Declaration of Ryan Landes ("Landes Decl."), Ex. 47 ("Landes Ex. 47"), ¶¶3-5; Declaration of Matthew Ohlman ("Ohlman Decl."), ¶ 9; ¶ 17; ¶¶ 22-44.)

Moreover, the zip file at the heart of WeRide's new allegation of spoliation is a file that WeRide has long had access. More specifically, the zip file ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is the file that ZZX provided to Greenberg Traurig on or about July 11, 2019 (which was July 12, 2019 in China) to facilitate WeRide's examination of the ZZX's source code. (Declaration of Yahui Liu re: July 2019 Zip File ("1.4.2020 Liu Decl."), ¶¶ 3-6.) ZZX's expert, Dr. Jeffrey Miller, used this code file to identify those portions of ZZX's code that, to the extent they did, performed the same tasks as what WeRide alleged were its trade secrets. (Landes Ex. 47, ¶ 11, Landes Decl., Ex. 48 ("Landes Ex. 48"), ¶¶ 15-16; Landes Decl., Ex. 49, ¶¶ 16-17.) Those portions of the July 2019 code identified by Dr. Miller were then made available to WeRide's expert.

Moreover, the allegedly-deleted file ▮▮▮▮▮▮▮▮▮▮▮▮ was, in fact, never successfully uploaded to OneDrive, explaining why it was not found there. (1.4.2020 Liu Decl., ¶ 5.) Further, as WeRide is undoubtedly also aware, the OneDrive files that Transperfect accessed weeks ago included a file ▮▮▮▮▮▮▮▮▮▮ (*See id.* ¶ 4.) This file contains the same code as ▮▮▮▮▮▮▮▮▮▮ but without the git logs. (*See id.*, ¶ 5.) That the file ▮▮▮▮▮▮▮▮▮▮ remains on OneDrive shows the absence of any purposeful deletion.

Thus, WeRide has long had access to the very file it erroneously claims was lost. Had WeRide bothered to inquire, it would have learned of these facts, rather than making spurious allegations of spoliation. WeRide's complaints about "entire repositories" being deleted is thus unfounded and a false narrative.

**C. The (Assumed) Loss of Data on Two Interns' Computers Is Not Prejudicial**

WeRide also shouts about what it asserts is the newly discovered fact that two interns' computers were wiped upon their departure from WeRide, trying to suggest that this information was critical to the case relating to ZZX's code development and came to light over ZZX's and AllRide's objections about FTI's ongoing investigation. This is false. In truth, prior to WeRide filing its motion, ZZX was forthcoming in discovery responses to WeRide that ZZX had not disabled its policy of wiping departing employees' computers until September 2019. (Landes Decl., Ex. 16, at 22.) Further, it was not until November 6, 2019, two weeks after they filed the present motion, that WeRide for the first time inquired about the computers for Wu Wei and Dongxiang Xu. Far from hiding this issue, ZZX was forthcoming to the Special Master and WeRide that these two interns, who left in December 2018 (Dongxiang Xu) and February 2019 (Wu Wei), respectively, were subject to ZZX's then-enforced policy of wiping computers of departing employees. (Pickles Reply Decl., Ex. B (11.15.2019 HH email).) There has been no subterfuge nor hesitancy on the part of ZZX from disclosing this fact. Further, despite WeRide's breathless complaint about the loss of vital information regarding ZZX's code, WeRide offers nothing but speculation.

WeRide asserts that, based on two documents found on KH's laptop and KH's deposition testimony, interns Wu Wei and Dongxiang Xu were ▮▮▮▮▮▮▮▮▮▮ In fact, KH testified to the opposite. WeRide does

not inform the Court that KH, when asked specifically about the documents on which WeRide relies for this argument, explained the documents are "not a status update or owner update for the whole project" and that the absence of other names, or the use of "etc." in the documents in reference to certain portions of the project did not mean that others were not involved. (Pickles Reply Decl., Ex. C (9.13.2019 KH Depo.), at 93:18-94:19.)  Indeed, KH expressly explained that Yahui Liu, an engineer who is still very much at the company, was also involved in ███████████████████████████ (*See id.* at 94:20-96:8). ███████████████████████████████████████████████████████████████████ ████████████████████ (*Id.* at 96:3-5.)  Thus, these interns do not have the importance to which WeRide ascribes to them.

Furthermore, there is also no basis to assume there has been a loss of any critical information relating to ZZX's code that may have existed on the laptops of the two interns.  The git logs demonstrate the contributions of the various engineers to ZZX's code. (Ohlman Decl., ¶ 11.)  As WeRide's expert admits, albeit buried in a footnote, the git logs demonstrate that one of the interns, Wu Wei, made ████████████████████████████████████████████████████████████████████████████████ █████████ (12/13/2019 Declaration of Matthew Walter ("12.13.19 Walter Decl."), pg. 9, n. 18.)  Rather than engaging in the speculation that WeRide suggests, the git logs establish the interns' work on ZZX's code, and the logs have long been available for WeRide to inspect.  The fact, as discussed below, that this work does not meet what WeRide's expert Dr. Matthew Walter expected to see does not somehow mean that those computers contained vital data not already captured in the git logs.  Thus, despite the potential loss of data on two interns' computers (assuming there was any data lost at all), the huge volume of code-related evidence that does exist—*e.g.*, the code base and git logs, KH's computer, Yahui Liu's computer, the research and development computers, OneDrive, Sharepoint, etc.—all remain available, thus defeating the claim of prejudice in relation to the loss of potential data on the computers and rendering WeRide's extreme sanctions inapt.  Overall, WeRide's allegations of new spoliation do not lend any further support to its efforts to avoid the merits and obtain terminating sanctions.

///

///

///

### III. WERIDE'S EFFORTS TO DISTRACT FROM THE ABSENCE OF EVIDENCE OF SPOLIATION OF CODE DEMONSTRATE WERIDE'S FAILURE OF PROOF

When this case began, WeRide's sole theory of liability against ZZX and AllRide was that KH took WeRide's code with him to ZZX after downloading it from WeRide, and that ZZX put it to use through October 2018 based on WeRide's speculation drawn from its expert's review of ZZX's marketing video made in October 2018 that WeRide surreptitiously recorded. For the past several months, ZZX and AllRide have engaged in substantial litigation debunking all aspects of this theory. Now, faced with the undisputed fact that WeRide's code base is nowhere to be found in ZZX's code (along with other evidence showing that KH's downloading was not as out-of-the-ordinary as WeRide claimed to the Court to obtain the injunction, and that WeRide's speculation about the basis of ZZX's capabilities were incorrect), WeRide abandons its entire theory of liability to argue instead that it need not prove overlap between the codes at all. *See* WeRide Reply, at 10.[1] This bait and switch is even more unsettling, as WeRide argues that this Court should grant terminating sanctions against ZZX and AllRide based on alleged spoliation of a non-existent second source code.

WeRide's shifting theories of liability and its refrain about a code that does not exist might even be humorous, but for the fact that it seeks a sanctions order from the Court to effectively put ZZX and AllRide out of business. Indeed, WeRide asks the Court to impose terminating sanctions relating to code spoliation unless ZZX can prove the *lack* of existence of another code. Fortunately, the Court need not contemplate such an unprecedented request because ZZX has proven that there is no other code base beyond the one that was produced, which demonstrates the absence of misappropriation.

---

[1] WeRide's citation to *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176 (S.D. Cal. 2012), *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005), and *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, do not support WeRide's argument that it no longer need prove ZZX used WeRide's source code to prevail on its trade secret claims. In *SkinMedica*, the court merely held that the fact that defendant's final process differed from plaintiff's did not entitle defendant to summary judgment where there was a dispute of fact whether the defendant had "substantially derived from the claimed trade secrets." *SkinMedica*, 869 F. Supp. 2d at 1197. Similarly, in *02 Micro*, the jury found that the defendant had used plaintiff's process for experimentation, which was sufficient for trade secret misappropriation. *See 02 Micro*, 399 F. Supp. 2d at 1072. And in *Waymo*, which involved only a preliminary injunction, the court noted the evidence of overlap between for Waymo's LIDAR system and that of Uber's and other evidence of potential use of Waymo's trade secrets and the absence of a credible alternative as sufficient for entry of a preliminary injunction. *See Waymo*, 2017 U.S. Dist. LEXIS 73843, at *10 (N.D. Cal. May 11, 2017). Judge Aslup did not rule that a party in a trade secret claim based on source code need not show use of that code by the defendant.

### A. Matt Ohlman's Analysis Proves That There Is Only One Code

In the reply, WeRide all but ignores the expert analysis of Matt Ohlman. It attempts to limit the impact of that analysis by contending that Mr. Ohlman only reviewed the source code from one source (not true) and that he was not given the alleged other source code that WeRide's expert has speculated must exist. What WeRide either does not understand, or hopes to hide from the Court, is that Mr. Ohlman's analysis proves that the source code that has been produced is the ZZX code.

Far from looking at only one source, as WeRide falsely claims, Mr. Ohlman traced the code through its history from the git repository on AWS through Phabricator to Gitlab on Alibaba. (Ohlman Decl., ¶ 9; ¶ 17; ¶¶ 22-44.) Mr. Ohlman found nothing to indicate that the code was incomplete or had been altered during that history. (Ohlman Decl., ¶¶ 45-65.) WeRide does not dispute Mr. Ohlman's conclusions about the integrity of the source code or his methodology. Yet, contrary to WeRide's argument, Mr. Ohlman's conclusions do not simply demonstrate that the source code has not been altered. They also establish that the source code that was reviewed and produced is the same source code that existed throughout.

As part of this analysis, Mr. Ohlman explained that he compared the hash values in the ZZX code with the hash values in contemporaneous emails, including in the critical period of October 2018. (Ohlman Decl., ¶¶ 54-62.) If those emails did not match, then that would be an indication that the source code was incomplete—*i.e.*, there was another code. Instead, Mr. Ohlman found a match between the code and the emails. This matching between emails and the code can only exist if the code that was produced was also the source code that existed in October 2018. Otherwise, if there had been some other code that ZZX was allegedly using, including in October 2018, then the contemporaneous emails would not align with the code that was produced.

Nor is this a new concept to WeRide. In early November, ZZX explained this process to the Special Master and WeRide to aid FTI in its analysis of the code issues. (Pickles Reply Decl., Ex. D (11.5.2019 HH email).) Despite access to emails and ZZX's code, and the methodology by which to test the completeness of the code, WeRide has not identified any emails that show the existence of another code. Try as WeRide might to ignore or downplay the importance of Mr. Ohlman's analysis and conclusions, it conclusively establishes that there is only one source code.

This unchallengeable fact should end any debate about the existence of another ZZX code, or that ZZX's code has been altered. It also defeats any argument for the extreme sanctions due to the loss of data given that WeRide has access to the complete code which is at the heart of its claims against ZZX and AllRide. Furthermore, WeRide's remaining arguments relating to Code Issues also lack merit.

### B. WeRide Continues to Ignore Facts That Do Not Fit Its Speculation About Another Code

WeRide appears to operate under the belief that if it repeatedly asserts (incorrectly) that Dr. Yahui Liu testified about another ZZX code enough times, then the Court will credit that assertion, despite evidence to the contrary. ZZX has already addressed in the opposition that (1) Dr. Liu has explained every capability to which he testified in his deposition in reference to ZZX's code, and specifically in response to Dr. Walter's prior criticisms; (2) Dr. Walter was simply wrong about some of the code he claimed was missing (Dr. Liu identified those files) and about to what extent Autoware could perform some of the functions with only limited modifications, of which Dr. Liu explained; and that (3) WeRide's conspiracy theory of another hidden code flies in the face of reason and common sense. *See* ZZX Opp. [ECF No. 368], at 12-14. That ZZX must restate this at all is because WeRide refuses to acknowledge these facts. The truth has been and remains that Dr. Liu testified about capabilities and has explained consistently what he meant by his testimony, providing specific references to lines of code and other data sources in response to Dr. Walter's various critiques. (Landes Ex. 47, Landes Ex. 48.) Merely because Dr. Walter surmises there should be more code does not make it so. This Court should reject WeRide's continuing attempts to twist Dr. Liu's words or impugn his credibility to conjure a source code that does not exist.

### C. WeRide's Other New Arguments Do Not Create a Code That Does Not Exist

As it has throughout, WeRide comes up with yet new arguments in a reply to claim that the code that ZZX produced is not the real code. The first time WeRide did this, it was in the reply for its motion to modify the preliminary injunction, where Dr. Walter newly argued that there must be another code based exclusively on his reading of Dr. Liu's deposition testimony. It was to that installation of Dr. Walter's declaration (his third) that Dr. Liu prepared his September 23, 2018 declaration. (Landes Ex. 47.) WeRide then came up with additional arguments in response to Dr. Liu's explanation in the form of Dr. Walter's fourth declaration, to which Dr. Liu responded in his October 4, 2018 declaration. (Landes Ex. 48.) Then, predictably, in moving for sanctions, WeRide identified yet more arguments about a

1    supposed undisclosed code, including Dr. Walter's fifth declaration, to which ZZX addressed in the
2    opposition. As sure as the tide shifts the sand, WeRide has offered yet a new round of arguments why the
3    code ZZX produced is not the real code, including in yet another version of Dr. Walter's declaration.

4    It should not go unnoticed that WeRide bases nearly all its arguments relating to Code Issues on
5    Dr. Walter, who has yet to be deposed and have his myriad of opinions tested through cross-examination.
6    This is most troubling as WeRide asks the Court to make findings and enter judgment against ZZX and
7    AllRide based on unexamined say-so of its expert without any adjudication on the merits. Regardless,
8    these new arguments about another ZZX code fail for the same reasons as all the others that preceded it,
9    including because Mr. Ohlman's analysis irrefutably demonstrates that the ZZX code is complete.

10   Repackaging the argument about spoliation of the two interns' computers, WeRide argues that
11   there must be another code because there are no changes to the code by Wu Wei and Dongxiang Xu,
12   whom WeRide inaccurately claims were ███████████████████████████ (WeRide does not
13   explain why Dr. Walter did not opine about this when WeRide filed its motion and argued about an
14   inaccurate code then, given that the facts on which it makes this argument were known since September
15   13, 2018 at the latest.) As shown above, WeRide mischaracterizes the two documents on which it relies
16   and distorts KH's testimony to state the opposite of what he actually testified. In truth, these two interns
17   were not ███████████████████████████ Rather, as KH testified, Dr. Liu was also involved in
18   working ███████████████████████████ (Pickles Decl., Ex. C.), and Dr. Liu has provided a
19   declaration describing the changes that were made to the code ███████████████ along with
20   the fact that ZZX was ███████████████ (as did WeRide) for demonstration purposes in October
21   2018. (Landes Ex. 47, Landes Ex. 48.)

22   Equally salient, WeRide's own expert undermines WeRide's argument by conceding that there
23   were "substantive changes" to ZZX's code ███████████████ (12.13.19
24   Walter Decl., pg. 9, n. 18.) Although Dr. Walter tries to minimize the damage of his admission by
25   speculating that there should be yet more changes by the interns, the git log demonstrates precisely what
26   was done and by whom. There is no factual or logical basis to adopt Dr. Walter's speculation about
27   another source code due to his mistaken understanding of the role of two interns, much less make the
28   analytic leap that there ZZX has spoliated that other code.

As for the fact that the ZZX code was first checked into the git repository on August 24, 2018, this too is a red herring. KH began working at ZZX sometime after August 13, 2018—nine days or less before the code was checked in. Critically, as Mr. Ohlman has explained through his rigorous and unrefuted analysis, the code that existed in the git repository from August 24 through October 22, 2018 is complete. This is important because WeRide's entire theory rests on the idea that the marketing video shown in late October 2018 demonstrated the use of WeRide's code in October 2018 that was allegedly downloaded by KH. The fact that ZZX's code contemporaneous with the October marketing video is complete, and that it shows no overlap with WeRide's code, demonstrates the absence of misappropriation. WeRide's focus on a time period before the arrival of KH, and its speculation that there must be some other code base, is a distraction from its failure of proof.

Put simply, there is no evidentiary basis to find any spoliation of ZZX's code.

## IV.    CONCLUSION

ZZX and AllRide have repeatedly and candidly acknowledged responsibility for the failure to preserve some data after service of the lawsuit. Yet WeRide's extreme sanctions are wholly disproportionate to the loss of data. This is particularly so given the unrefuted evidence that ZZX has preserved and made available a complete set of its code, and also made available other code-related data sources that equal over 5.5 terabytes of data. WeRide has made no showing from this data that there is any missing code nor disputes that ZZX's code shows there is no overlap with WeRide's code. Whatever the appropriate relief for ZZX's and AllRide's mistake, the Court should reject the terminating or other drastic sanctions that WeRide seeks and allow this case to proceed to the merits where it belongs.

Respectfully submitted,

DATED: January 6, 2020    GREENBERG TRAURIG, LLP

By: /s/ Kurt A. Kappes
Kurt A. Kappes
Howard Holderness
Michael D. Lane
Todd A. Pickles
Alicia R. Intriago

Attorneys for Defendants
ALLRIDE.AI INC. and ZHONG ZHI XING TECHNOLOGY CO. LTD.