**quinn emanuel**   **trial lawyers | silicon valley**

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 | FAX (650) 801-5100

January 28, 2020

The Honorable Nathanael M. Cousins
Magistrate Judge of the Northern District of California
San Jose Courthouse, Courtroom 5 - 4th Floor
280 South 1st Street, San Jose, CA 95113

Re:   _WeRide Corp., et al v. Huang, et al_, Case No. 18-cv-7233-EJD (NC)

Dear Judge Cousins,

Nonparty Quinn Emanuel Urquhart & Sullivan LLP ("QE") and Defendant Jing Wang ("JW" or "Wang") respectfully submit this joint letter brief regarding QE's motion to quash the subpoena served by Wang.

## QE's Statement

**Introduction.** Without any colorable basis, Wang has improperly subpoenaed QE, trial counsel for Plaintiff WeRide, for documents and a deposition—a tactic that courts in this District describe as "extraordinary" and "disfavored," and permissible only when the information sought is "crucial to the preparation of the case."   _See, e.g._, _FTC v. DirecTV, Inc._, 2016 WL 4154851, at \*3 (N.D. Cal. Aug. 5, 2016).   The Court should quash the subpoena and award sanctions to QE.

**Background.** Wang's subpoena seeks discovery about facts which Wang misguidedly and erroneously argues represent a supposed conflict of interest, and which Wang has known about for over a year.   As Wang knows, the alleged conflict is completely non-existent.   In 2017, a company called UCAR sued four WeRide employees.   WeRide (then called JingChi) was not a party, and neither was Wang.   In January 2018, UCAR issued subpoenas to WeRide, Wang (in his capacity as WeRide's then-CEO), and one other WeRide employee.   WeRide (not Wang) retained QE to respond to the subpoenas.   QE had no direct communications with Wang (who had zero relevance to the UCAR Litigation), and collected no documents from him.   QE objected to the subpoenas, and in April 2018 ultimately agreed to produce only a limited set of WeRide's corporate documents—and nothing in response to the Wang subpoena—without UCAR's objection.   QE did no other work for Wang; the subpoenas were never raised again; and the UCAR case settled in August, at which time QE confirmed to Wang in writing, in an email directly to him, that its representation was complete and that no work had been done for him since April. This lawsuit, commenced in November 2018, is wholly unrelated to the issues in the UCAR suit. QE asked Wang repeatedly for any evidence or authority that a conflict exists, but Wang has none.

**The subpoena seeks material that is not relevant (let alone "crucial") to this case.**   Wang's sole justification for the discovery requested in the subpoena is to investigate an imagined _**concurrent**_ conflict of interest—i.e., that QE represented Wang at the same time it was adverse to him.[1]   Courts regularly refuse to permit discovery into conflicts of interest, especially when (as

---

[1]   This is in fact Wang's _**third**_ attempted justification for the subpoena.   Wang's first two pretexts for the subpoena (an imagined _**subsequent**_ conflict, and discovery into QE's preservation advice in the UCAR case) were equally unsupported and have now been abandoned.

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

here) there is no evidence that a conflict actually exists.[2]  *See, e.g., Sinohui v. CEC Entm't, Inc.*, 2016 WL 2743458, at *5 (C.D. Cal. May 11, 2016) ("a disqualification motion is generally not relevant to a party's claims or defenses"); *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, 2014 WL 819161, at *1 (N.D. Cal. Feb. 28, 2014) (quashing subpoena to trial counsel because "any communications . . . that are not covered by attorney client privilege would [not] be relevant to plaintiff's case").   As a gating issue, Wang cannot show that QE represented Wang at the same time it was adverse to him.   In fact, WeRide first contacted QE concerning the issues in this case **after** the UCAR Litigation settled, which was **months after** QE conducted its last work for Wang—as confirmed by contemporaneous emails.[3]  *Blankenchip v. CitiMortgage, Inc.*, 2016 WL 6821867, at *2 (E.D. Cal. Nov. 18, 2016) (no concurrent conflict where attorney began representing plaintiffs **the day after** resigning from Greenberg Traurig, which represented defendants).   Wang has no evidence of a conflict (concurrent or otherwise); he only has baseless speculation that WeRide and QE discussed the dispute with Wang while QE still represented Wang (it did not). *See Gilbert v. MoneyMutual, LLC,* 2016 WL 7785454, at *5 (N.D. Cal. Dec. 15, 2016) (no conflict where "Defendants' evidence consists largely of innuendo and speculation"). Moreover, Wang never explains how a conflict in early **2018** is relevant to **this** lawsuit, nearly two years after QE's representation of Wang ended.   Wang argues that his wrongful conduct at issue in this case occurred while QE represented him, but he cites **no** authority that this would control the conflict analysis.   It does not, and this approach is contrary to all controlling authority.

Further, Wang knowingly refrained from asserting any objection for over a year, waiving whatever objection he might have had to QE's representation of WeRide.   *Tr. Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983); *Skyy Spirits,* 2009 WL 3762418, at *1 (denying disqualification motion based on delay of eight months).   Unlike the cases Wang cites excusing delay where there was no indicia of tactical motivation, Wang's subpoena here—on the eve of WeRide's terminating sanctions motion and after WeRide has won **two** preliminary injunction motions and engaged in significant discovery—is a transparent "tactical gimmick."   *See Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1225978, at *6 (N.D. Cal. Mar. 31, 2011). Wang's claim that he must not have cared about the email from QE when he received it is no excuse; it only underscores his waiver of whatever conflict argument he might have had.   And Wang's accusation that QE somehow "diverted" questioning at Qing Lu's declaration is similarly desperate; QE's comment was a simple record clarification that Wang's counsel deemed "fair enough," not even an objection or instruction not to answer.   Lu Dep. 83:22-84:6.

**The subpoena seeks privileged and work product material.** The subpoena seeks QE's internal notes, draft documents, communications with WeRide "relating to" Wang, and documents "referring to or discussing reasons to terminate representation of Jing Wang."   These documents are protected on their face.   As a **former** WeRide employee, Wang no longer has any right to privileged communications between WeRide and its counsel in the UCAR Litigation.   *See, e.g. Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1187 (D. Nev. 2008) (former executive was not entitled to access privileged corporate documents after leaving the corporation); *see also CFTC v. Weintraub*, 471 U.S. 343, 349 n.5 (1985) (same).   Further, any internal QE communications, notes, or drafts that are sought in Wang's subpoena concern the UCAR litigation, and thus constitute "absolute" work product under California law.[4]  *See* Cal. CCP § 2018.030.

---

[2]    All of the cases Wang cites granted discovery based on some evidence giving rise to a conflict of interest; to the contrary the evidence here **negates** the possibility of a conflict.

[3]    QE will submit these privileged emails for *in camera* review upon request.   QE offered to show redacted versions to Wang's counsel, who said that no matter what, they would not result in a withdrawal of the subpoena—thus confirming that the subpoena's sole purpose is to harass.

[4]    California law applies because state law governs the underlying issue (an alleged conflict of interest).   *Ward v. Equilon Enterprises, LLC*, 2011 WL 2746645, at *3 (N.D. Cal. July 13, 2011).

2

QE is the "sole holder of the privilege" in work product, and "may effectively assert it even as against a client." *Lasky, Haas, Cohler & Munter v. Superior Court*, 172 Cal. App. 3d 264, 278 (1985). Even if any work product exists that relates solely to QE's representation of Jing Wang, it is absolutely protected.

**The subpoena seeks material readily available to Wang.** The subpoena should be quashed because the nonprivileged discovery it seeks can be obtained more easily from a party to the litigation, namely, Wang himself. *See Directv*, 2016 WL 4154851 at *4; *Chao v. Aurora Loan Servs., LLC*, 2012 WL 5988617, at *3 (N.D. Cal. Nov. 26, 2012) ("attorney depositions even for fact discovery generally are allowed only when the discovery cannot be obtained from another place"). Specifically, Wang already knows when his representation began and ended, the terms of QE's engagement, and the services and advice QE provided (all matters the subpoena seeks).

**QE fulfilled its duties to Wang.** Wang's accusations that WeRide did not seek approval of the representation and that QE's communication was insufficient are wholly irrelevant to any issue in this case—not "crucial" to its resolution. They are also inaccurate and unbelievable. Wang was the CEO of WeRide and directly supervised the employees who worked with QE on the litigation. QE wholly objected to the subpoena to Wang and there were no developments that would trigger a duty to communicate. Wang misrepresents the motion to compel UCAR filed, which sought documents only from the Defendants, *not* Wang. UCAR, Dkt. 89. When the case settled, QE informed Wang *the next day*, even though its representation had completed months prior.

**Wang violated Local Rule 30-1.** Wang never met and conferred over scheduling or even mentioned the possibility of a deposition of QE prior to serving the subpoena. This is an independent reason to quash it. S*ee Finley v. Count of Martin*, 2009 WL 3320263, at *1 (N.D. Cal. Oct. 13, 2009) (quashing deposition subpoena for violation of Civil L.R. 30-1).

**The Court should award QE's fees.** Where a party or attorney fails to take reasonable steps to avoid imposing undue burden or expense on a third party, the court "***must*** . . . impose an appropriate sanction—which may include . . . reasonable attorney's fees." Fed. R. Civ. P. 45(c). Wang served QE despite clear precedent that subpoenas to trial counsel are "disfavored," seeking discovery into a meritless and irrelevant conflict claim. This is the definition of an overly burdensome and defective subpoena. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (imposing sanctions); *Black v. Wrigley*, 2019 WL 2717212, at *7 (S.D. Cal. June 28, 2019) (sanctions for subpoena that the serving parties "knew and admit was defective"). The Court should award QE's costs and attorneys' fees. *See Black*, 2019 WL 2717212, at *8 ("Courts . . . have often granted sanctions equaling most if not all of the attorneys' fees sought.").

## Wang's Statement

As detailed in the complaint, most of the affirmative accusations against JW occurred (and all assertedly began) during the time JW was represented by QE, January-August 2018. *See, e.g.,* Dkt. 210 at ¶¶ 48-90; Dkt. 34 at 7-10. JW and Kilpatrick Townsend ("KTS"), his current counsel, learned shortly before Thanksgiving 2019 that UCAR had claimed QE had represented JW during this entire interval. KTS's inquiry was met with stonewalling and insults, and only now has QE made perfunctory offers to provide highly selected information. JW's request for discovery is reasonable, and the motion to quash should be denied.

**Facts missing from QE's "background":** WeRide hired QE to represent JW on January 24, 2018, *while WeRide was ousting JW from the company, not when he was "supervising" the managers who ousted him.* WeRide never notified JW of the representation or sought his approval, in express breach of WeRide's indemnity agreement. QE never informed JW it was acting on his behalf or notified JW he should preserve documents and it is bewildering for QE to assert there "were no developments that would trigger a duty to communicate." *See* Cal. Rules

Prof. Conduct Rules 3-500, 3-510 (now 1.4, 1.4.1).   Most telling, QE's disengagement email took pains to backdate QE's representation to April 2018.   UCAR never agreed JW had "zero" relevance and was arguing in pending briefs that it was entitled to "full and complete discovery" from "Jing Wang" (UCAR Dkt. 89 at 5; see also *id.* at 3) and negotiating a settlement with QE covering JW.   Again, the timing must matter because QE still tries to characterize the subpoena as "never raised again" after April even though the motion demanding "full and complete discovery" was pending when the UCAR case was dismissed in August.   *See Gurkewitz v. Haberman*, 137 Cal. App. 3d 328, 333 (1982) ("so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative").; *see also Guardant Health, Inc. v. Foundation Medicine,* Case No. 17-CV-03590-JSC, 2017 WL 5127733, at *5 (N.D. Cal. Nov. 6, 2017).

QE also distorts the parties' meet and confer in an attempt to exalt process over addressing these issues.   Contrary to QE's charge, KTS laid out the common sense inferences that JW must draw from QE's abrupt disengagement, backdating of the representation, and overlap of JW's alleged wrongdoing with QE's representation of him.   KTS pointed out that it is highly plausible that (1) WeRide consulted QE about the difficulties it claims to have had with JW at the time, and (2) QE encountered evidence relating to JW in WeRide's files while searching for and admittedly reviewing JW's documents controlled by WeRide.   KTS also offered to send authority for why it did not matter that the UCAR and pending matters are not substantially related.   This offer was rejected.   The subpoena was sent informally by email to QE (only after weeks of meeting and conferring) specifically anticipating objections and offering to accommodate the year-end holidays.   Although Local Rule 30-1 permits the subpoena to be *served* prior to meeting and conferring, KTS provided QE and WeRide ample opportunity to confer before serving the subpoena and, when QE asked for more time to object to the subpoena, it was given.

QE also misstates what it offered during the meet and confer.   The first offer was to provide an oral representation of the first date that WeRide asked QE to explore litigation against JW.   When JW refused this "offer," QE filed its lengthy, now rejected, motion to quash.   Yesterday, WeRide tweaked this offer by saying that it would produce a *redacted* email (**singular**, not email*s* as reported above). In both cases, QE conditioned the disclosure on its demand that JW agree *in advance* that, once KTS received the offered disclosure, JW would withdraw the subpoena without further comment.   In declining the latest offer, JW noted WeRide's and QE's lack of consistency, having refused to agree to non-waiver and *in camera* review of the upcoming declaration of ZZX's lawyer, requested by the Court.   Dkt. No. 414.   JW would like the opportunity to address why the offered emails may or may not address his questions about QE's awareness – during its representation of JW – of the adversity between WeRide and JW, and to explain its hasty disengagement.   JW did not say "no matter what, it was proceeding."   It offered that QE can provide the emails *in camera* (despite QE's resistance to like treatment), provided that QE agree the Court will determine whether there is a privilege and whether there is an alternative, non-privileged mechanism for communicating the information to JW so he can assess or respond to QE's claims. QE may be amenable, it says, provided it avoids waiver with its selective disclosures.

**The potential conflict:**   Given QE's assertions that it never communicated with JW about its representation, KTS agreed that Topic Nos. 1, 3, 4, 6, 11, 12, and 13, and Document Request Nos. 1 and 2 were mooted.   This does not resolve the requests directed to QE's duty of loyalty to JW. A breach of loyalty does not depend on disclosure of relevant confidences.   "Even though… simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*.   Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one."   *Flatt v. Superior Court*, 9 Cal. 4th 275, 284 (1994) (emphasis original); *see also Visa U.S.A., Inc. v. First Data Corp.,* 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003); Cal. Rule Prof. Conduct 1.7(b) (formerly Rule 3-310(C)). The conflict cannot be avoided by dropping the client after the concurrent adversity already has

existed. *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1037 (2002). ("[A] lawyer may not avoid breaching the duty of loyalty …by unilaterally converting a present client into a former client."). JW's discovery is directed to whether WeRide consulted or informed QE about WeRide's current claims or JW's alleged conduct while QE was simultaneously representing JW, and to why QE disengaged in the way it did.   These are entirely legitimate subjects of inquiry which – given the way this representation was treated by QE and WeRide – cannot be within JW's knowledge.

**The requested discovery is not prohibited:**   QE's statement that "Courts regularly refuse to permit discovery into conflicts of interest" is simply wrong, as there is ample precedent permitting discovery to inform potential disqualification motions.   *See, e.g., J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, No. C-1-01-704, 2004 WL 7081790, *5-6 (S.D. Ohio June 7, 2004); *Bluestone Innovations LLC v. LG Electronics Inc.*, Case No. C-13-1770 SI (EDL), 2013 WL 6354419 (N.D. Cal. Dec. 5, 2013); *Gregori v. Bank of America*, 207 Cal. App. 3d 291 (1989); *Williams v. KOPCO, Inc.*, 162 F.R.D. 670 (D. Kan. 1995); *Renner v. Chase Manhattan Bank*, Case No. 98 Civ. 926(CSH), 2002 WL 87665 (S.D.N.Y. Jan. 22, 2002).   QE also overstates the law concerning depositions of opposing counsel; in fact, the scrutiny of trial counsel depositions is relaxed when the deposition involves a closed case that raised issues overlapping with the current case.   *See ATS Products, Inc. v. Champion Fiberglass, Inc.*, Case No. 13-cv-2403-SI (DMR), 2015 WL 3561611 (N.D. Cal. June 8, 2015) (citing *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002)).

**The discovery does not seek work product:**   QE argues without basis that it has a blanket work product objection to the subpoena.   QE cites the wrong law for non-privileged communications, as work product is governed by Fed. R. Civ. P. 26(b)(3), not California law.   *E.g. First Pacific Networks, Inc. v. Atlantic Mutual Insurance Co.*, 163 F.R.D. 574, 582 (N.D. Cal. 1995).   In any event, the remaining topics concerning the current litigation (Topics 8, 15, and 17) request only factual information, specifically when and how QE first became aware of certain facts or concerns. The document requests concerning the current litigation (Requests 9-11) are expressly drafted to cover documents "redacted for privilege with WeRide."   The facts are not privileged (they are all *alleged*), nor is it privileged when these facts were raised with counsel.   Rule 26(b)(3) provides that an attorney's "mental impressions" are protected so long as they "concern[] the litigation," but the requested information can be disclosed or logged without compromising QE's legal thinking (though it would be revealing to learn that QE prepared documents in "anticipation of litigation" even prior to QE's disengagement).   There are numerous potential sources of relevant documents that would be responsive.   QE may have notes or recollections showing the timing of discussions in which WeRide's concerns regarding JW were discussed.   Discussions or notes QE made or circulated internally about potential conflicts or adversity against JW would be highly relevant, as would internal QE notes explaining QE's reasons for its rushed disengagement.

**JW did not delay in raising this issue, and sanctions would be improper:**   JW and KTS have never said JW did not "care" about QE's out of the blue email.   He does not recall it and, if he saw it, did not understand its significance.   Even during this lawsuit, QE diverted inquires: when a WeRide witness answered that QE had represented WeRide in UCAR, QE interjected to "correct" the testimony, saying that QE represented the "four employees."   Lu Dep. 83:22-84:6. Under lesser circumstances, this Court has held there is no waiver.   *See TransPerfect Global, Inc. v. MotionPoint Corp.*, Case No. C-10-2590 CW (JCS), 2012 WL 2343908, *11, *13 (N.D. Cal. June 20, 2012) (delay was excused because client did not immediately understand the significance of the conflict); *see also Blue Water Sunset, LLC v. Markowitz*, 192 Cal. App. 4th 477, 490 (2011) (delay irrelevant where attorney knowingly agreed to concurrent representation).   It takes a particular brand of temerity to suggest that narrowly framed discovery, of an admittedly hidden representation, should be sanctioned.   *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) (reversing sanctions).

DATED: January 28, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Ryan S. Landes*
Claude M. Stern
Ryan S. Landes
Michael F. LaFond
William T. Pilon
*Attorneys for Plaintiffs WeRide Corp. and WeRide Inc.*

DATED: January 28, 2020

KILPATRICK TOWNSEND & STOCKTON LLP

By */s/ Gregory Gilchrist*
Gregory Gilchrist
Mehrnaz Boroumand Smith
*Attorneys for Defendants Jing Wang and Kaizr, Inc.*

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

*/s/ Ryan S. Landes*

Ryan S. Landes