UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| WERIDE CORP., et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>KUN HUANG, et al.,<br><br>                Defendants. | Case No.  5:18-cv-07233-EJD<br><br>**ORDER GRANTING MOTION FOR SANCTIONS; OVERRULING EVIDENTIARY OBJECTIONS; GRANTING ADMINISTRATIVE MOTION TO FILE SUPPLEMENTAL EXPERT DECLARATION**<br><br>Re: Dkt. Nos. 330, 391, 431 |

Plaintiffs WeRide Corp. and WeRide Inc. (collectively "WeRide") have moved the Court to issue sanctions, through Federal Rule of Civil Procedure 37(b), Federal Rule of Civil Procedure 37(e), and the Court's inherent power against Defendants Jing Wang, Kun Huang, Zhong Zhi Xing Technology Co. Ltd. ("ZZX"), and AllRide.AI, Inc. (collectively with ZZX, "AllRide"). WeRide brings the motion in response to Defendants' alleged spoliation of evidence.  Having considered the Parties' papers and listened to their oral arguments, the Court grants the motion.[1]

**I.    Background**

    a.   Factual Allegations

WeRide brings this suit against its former CEO, Wang; its former Head of Hardware Technology, Huang; Huang's LLC, ZKA; Wang and Huang's current company, AllRide; and AllRide's corporate alter-ego, Kaizr, Inc ("Kaizr").  Second Amended Complaint ("SAC") ¶ 1.

---

[1] The Court has filed this Order under seal because it contains material subject to sealing orders. Within seven days of the filing date of this Order, the Parties shall provide the Court a stipulated redacted version of the Order, redacting only those portions of the order containing or referring to material subject to a sealing order and for which the Parties still request the material be sealed. The Court will then issue a redacted version of the order.

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING MOTION FOR SANCTIONS

United States District Court
Northern District of California

Against all Defendants, WeRide brings claims for trade secret misappropriation under the Federal Defend Trade Secrets Act (18 U.S.C. § 1836) and California's Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426 *et seq.*) arising out of the alleged misappropriation of WeRide's trade secret source code. SAC ¶¶ 137-48, 149-60. Based on Wang's alleged false and damaging statements to WeRide's investors and potential investors, WeRide brings claims against him for Defamation and Intentional Interference with Prospective Economic Advantage. *Id.* ¶¶ 161-73, 174-90. Based on those alleged defamatory statements, his alleged solicitation of WeRide employees to join AllRide, and his alleged use of WeRide's confidential information, WeRide also brings claims against Wang for Breach of Contract and Intentional Interference with Contract. *Id.* ¶¶ 201-09, 219-29. Against Huang, WeRide bring claims for Breach of Fiduciary Duty and Duty of Loyalty, and Breach of Contract arising from his alleged theft of source code and other confidential material belonging to WeRide, and from his alleged solicitation of WeRide employees to join AllRide. *Id.* ¶¶ 191-200, 210-18. WeRide brings claims against AllRide and Kaizr for Actual Fraudulent Transfer (Cal. Civ. Code § 3439.04(a)(1)), Constructive Fraudulent Transfer (Cal. Civ. Code §§ 3439.04(a)(2) and 3439.05), and Common Law Fraudulent Conveyance stemming from AllRide's alleged fraudulent transfer of its business to Kaizr. SAC ¶¶ 230-41, 242-51, 252-60.

In January 2018, WeRide alleges, it removed Wang as CEO and that he then executed a separation agreement that included a non-disparagement provision. *Id.* ¶¶ 51-53. Huang was employed at WeRide at that time. *See id.* ¶ 75. Both Wang and Huang executed a confidentiality agreement that was required of all WeRide employees. *See id.* ¶¶ 43, 52, 84. WeRide alleges that Wang then founded AllRide to compete with WeRide, but he attempted to hide this conduct. *Id.* ¶¶ 56-59. Through the summer and early fall of 2018, Wang allegedly began disparaging WeRide to actual and potential investors. *Id.* ¶¶ 60-73. WeRide alleges that his statements caused investors to withhold or delay tens of millions of dollars of funding. *Id.* ¶¶ 68-73.

In June and July 2018, Wang allegedly recruited Huang to AllRide. *See id.* ¶ 86. WeRide contends that by July 2018, Huang was secretly working for AllRide while still technically employed by WeRide. *See id.* ¶¶ 88, Landes Ex. 41. During this time, Huang allegedly

United States District Court
Northern District of California

1    downloaded an unusually large amount of data from WeRide's servers.  SAC ¶¶ 101-02.  WeRide

2    had issued Huang two company-owned laptops: a personal MacBook and a shared Lenovo.  *Id.* ¶

3    105.  WeRide alleges that in June and July, Huang inserted three USB devices into the Lenovo.

4    *Id.* ¶ 107.  On August 7, 2018, Huang allegedly created a series of folders on at least one of the

5    USB devices.  *Id.* ¶ 108.  The folders appear to match folders on the Lenovo laptop, indicating that

6    he copied folders from the Lenovo to the USB device.  *Id.* ¶ 108.  Huang also allegedly attempted

7    to solicit other WeRide employees to AllRide.  *Id.* ¶¶ 86-88.  On July 31, 2018, Huang met with a

8    WeRide executive and they agreed that, based on his solicitation of WeRide employees, he would

9    end his employment with WeRide on August 13, 2018.  *Id.* ¶ 89.  Over the next two days, Huang

10   ran internet searches for "what is employee solicit and consequence" and "what is employee solicit

11   consequence penalty."  Kunkel Decl. ¶ 11 & Ex. C.  Huang testified that he was worried that

12   WeRide might sue him for soliciting WeRide's other employees.  Landes Ex. 8 at 466:16-19.  A

13   few days later, on August 7, he re-formatted the MacBook completely erasing its memory, and he

14   deleted multiple files from the Lenovo.  *Id.* ¶ 106; Dkt. No. 34-3 ¶¶ 11-20.  WeRide alleges that he

15   returned the laptops on August 15—two days after his employment had ended.  SAC ¶ 106.

16        On October 22, 2018, WeRide allegedly sent an investigator to an AllRide public

17   recruiting event where Huang displayed a promotional video (the "Video").  *Id.* ¶ 112.  The Video

18   allegedly depicted an autonomous car capable of (1) fusing inputs from multiple sensors to create

19   an HD map; (2) operating without a safety driver; (3) steering, accelerating, and braking smoothly;

20   (4) detecting and stopping for pedestrians in crosswalks, and (5) changing lanes to pass a slower

21   moving vehicle (the "Advanced Capabilities").  *See id.*; Dkt. 34-43 ¶ 17.  WeRide further alleges

22   that the hardware configuration of AllRide's car matches the hardware configuration of WeRide's

23   cars; for example AllRide's car placed the radar sensors on the front-center of the roof, like

24   WeRide, and both companies' cars use the same configuration of wires at the back of the car.

25   SAC ¶ 117.

26        b.   Pre-Suit and Procedural History

27        On October 1, 2018, WeRide sent Wang a cease-and-desist letter concerning his alleged

28   Case No.: 5:18-cv-07233-EJD
     ORDER GRANTING MOTION FOR SANCTIONS

defamatory statements.  Dkt. No. 72.  The letter raised the possibility of litigation.  *Id.*  After WeRide learned of the Video, it sent Huang a cease-and-desist letter on November 15, 2018; his counsel acknowledged receipt of the letter.  Landes Exs. 73, 74.  Huang's counsel conferred with AllRide co-founder Patrick Lam on November 21, 2018 and Huang's counsel sent Lam a document hold notice on December 4, 2019.  Landes Exs. 35, 40.  Lam met with two other AllRide executives to discuss the hold notice, but AllRide took no further action to preserve documents until May and June 2019.  LaFond Ex. 17 at 13.  It was not until August 2019 that the hold notice was distributed more broadly in the company.  *Id.*

WeRide filed its original complaint on November 29, 2018, and then moved for a preliminary injunction on December 23, 2018.  Dkt. Nos. 1, 34.  On March 22, 2019, the Court granted the motion for preliminary injunction as to Huang and AllRide, and denied it as to Wang.  Dkt. No. 116.  The Court enjoined AllRide and Huang from using or disclosing WeRide's alleged trade secrets or confidential information.  *Id.* at 24.  The preliminary injunction specifically prohibited the enjoined parties from "[d]estroying, concealing, disposing, deleting, removing or altering any and all documentation of any kind, whether paper or electronic, . . . data, drafts or other things or materials" that are related to WeRide's confidential material or information, or AllRide's source code.  *Id.*  The Court also ordered Huang to make several devices, including his AllRide-issued laptop, available for inspection by WeRide.  *Id.* at 25.  The Court allowed WeRide to take discovery from AllRide and Huang, and for the parties to take discovery of each other's source code.  *Id.* at 26-27.  The parties filed their Joint Case Management Statement on July 1, 2019—after AllRide says it discovered the mass destruction of email, but before it notified the Court or WeRide.  Dkt. No. 163.  AllRide represented to the Court that "counsel for AllRide and ZZX has discussed with its clients document retention obligations and hired both an outside consultant to assist in the acquisition of electronically stored information."  *Id.* at 11.

Discovery gave rise to several disputes.  *See, e.g.*, Dkt. Nos. 139, 146, 149, 157, 170, 192.  The Magistrate Judge considered these disputes and set a final hearing for August 16, 2019.  *See* Dkt. No. 234.  The night before the hearing, AllRide filed a letter with the Court disclosing that in

mid-June 2019 it became aware that it had not turned off an auto-delete setting on the company's email server leading to the company-wide destruction of emails predating the middle of March 2019, and separately that several individual email accounts associated with Wang and his wife had been destroyed.  Dkt. No. 231.  The auto-delete function destroyed emails more than three months old.  *Id.*  The Magistrate Judge ordered the appointment of a neutral forensic inspector—FTI Consulting ("FTI")—to investigate that destruction and a special master to resolve any disputes related to FTI's investigation.  Dkt. Nos. 266, 273.

Based on discovered evidence, WeRide moved, in the summer of 2019 to modify the preliminary injunction to enjoin Wang and the newly added defendants Kaizr and ZKA, and to compel Defendants to make additional sources of information available for discovery.  Dkt. No. 166.  The Court granted the motion so far as to bind Wang, Kaizr, and ZKA by the injunction and to order AllRide to make available any computers, servers, or cloud computing accounts where it had stored source code.  Dkt. No. 342 at 14-17.  Wang officially became AllRide's CEO in July 2019.  Wang Decl. ¶ 24.

WeRide filed the present motion on October 23, 2019.  Dkt. No. 330.  Pursuant to the parties' stipulation, WeRide filed the motion, Wang, Huang, and AllRide each filed an opposition, WeRide filed a reply, AllRide filed a response to the reply, and WeRide filed a sur-reply.  Dkt. No. 353.  Huang filed evidentiary objections to WeRide's reply.  Dkt. No. 391.  AllRide filed an eleventh hour administrative motion for leave to file a supplement declaration from an expert.  Dkt. No. 431.  The Court held a hearing on February 27, 2020.  Dkt. Nos. 446, 462.

c.  <u>The Alleged Spoliation</u>

Defendants' alleged spoliation can be broadly categorized as (1) the destruction of emails, through both the deletion of specific email accounts and through AllRide's company-wide automatic deletion of nearly all emails on its servers from its founding in June or July 2018 through March 2019, (2) five different categories of source code that AllRide or Huang allegedly spoliated, and (3) other spoliation by other means.

1

i.  <u>Destroyed Email</u>

2

AllRide has repeatedly and in violation of its duty to preserve and this Court's preliminary

3

injunction destroyed emails and other files.  AllRide concedes this.  AllRide has destroyed email

4

in two ways: (1) by setting its email servers to automatically delete all emails older than 90 days

5

and maintaining that setting despite knowledge that litigation was imminent, despite receiving the

6

complaint, and despite this Court's March 22, 2019 preliminary injunction, and (2) by repeatedly

7

destroying email accounts belonging to certain individuals after the original complaint was filed

8

and after the preliminary injunction issued.

9

A.  <u>The Automatic Deletion of All Emails After 90 Days</u>

10

AllRide created its email server with Microsoft Office 365 in July 2018.  Landes Ex. 83.

11

At the direction of co-founder Peijian Gu, the company changed the default settings of the server

12

so that all emails would be deleted after 90 days, instead of the default setting to preserve emails

13

for two years before archiving them.  Landes Ex. 11 at 249:1- 20; Landes Ex. 12 at 37:21-38:20.

14

AllRide represents that it took this action to save a few hundred dollars a month.  *See* Landes Ex.

15

12 at 55:2-59:7; Landes Ex. 4 at 268:15-269:4.  FTI was not able to determine whether this action

16

was intentional because AllRide employees provided  "inconsistent" information during its

17

investigation.  Landes Ex. 84 at 19.

18

The auto-deletion setting remained in place until on or around June 17, 2019, meaning that

19

nearly all emails sent over AllRide's servers from June or July 2018 through March 2019 were

20

destroyed.  Dkt. No. 231; Pickles, Ex. B at 250:7-13, 253:20-254:11, 257:5-15; Pickles Ex. C at

21

43:7-44:12; Ex. D, at 134:15-25, 145:13-17.  After working with Microsoft, AllRide has been able

22

to recover or find some emails from this period—primarily emails that were sent to or received

23

from separate email systems.  Pickles Exs. E, F.  This time period covers Huang's arrival at

24

AllRide and any communications he may have had with AllRide before he left WeRide, and the

25

critical period—August, September and October 2018—where AllRide developed the technology

26

to pilot the car in the Video.  The deleted emails include weekly reports detailing progress and

27

projects sent from AllRide's engineers to Huang and Wang.  Landes Ex. 3 at 359:19-360:1;

28

Case No.: 5:18-cv-07233-EJD
ORDER GRANTING MOTION FOR SANCTIONS

United States District Court
Northern District of California

Landes Ex. 8 at 547:8-549:21.  No later than August 15, 2018, Huang instructed AllRide's engineering team to send these weekly reports.  Landes Ex. 3 at 359:19-360:1; Landes Ex. 8 at 547:8-549:21.  Huang specifically requested that the engineers identify the particular files names of the code that they worked on.  *See* Landes Ex. 8 at 566:19-567:14; Landes Ex. 25.  These reports were not preserved outside of email.  Ex. 8 at 567:15-23.  AllRide has not produced any of these reports pre-dating November 2018.  Mot. at 5.  Additionally, any internal email banter among the engineers, executives, or other employees about the development of AllRide's technology has been lost.

On August 15, 2019—the eve of a hearing concerning six motions to compel—AllRide's counsel represented to the Magistrate Judge that they first learned of the mass destruction of email in June 2019.  Dkt. No. 231.  For each month between July 2018 and February 2019, AllRide has been able to recover or otherwise collect between 85 and 582 emails for its 15 custodians.  Landes Ex. 30.  Between March and August 2019, the number of collected emails jumps to between 4,116 and 8,328.  Landes Ex. 31.  The number of emails collected per month from Kun Huang's Microsoft email account between July 2018 and February 2019 range from 0 to 48, while the numbers collected between March and August 2019 range from 845 to 1682.   Mot at 12.  For Dr. Yahui Liu, an AllRide software engineer and AllRide's Rule 30(b)(6) witness for its technical development, AllRide collected between 0 and 11 emails per month from July 2018 and February 2019, and between 184 and 552 emails per month from March and August 2019.  *Id.*  AllRide's Rule 30(b)(6) witness on the email destruction testified that its scale "cannot be quantified."  Landes Ex. 11 at 174:16-20.

## B.  Destroyed Email Accounts

AllRide also destroyed specific email accounts assigned to or used by Huang, Wang, and Wang's wife—who owns AllRide's parent company.  Even though Huang has stated under oath that he did not have any interactions with AllRide until August 2, 2018 (Landes Ex. 8 at 582:1-588:18), his personal emails indicate that AllRide created the kun.huang@allride.ai email account around July 22 or 23, 2018.  Landes Ex. 41.  The forensic analysis of his laptop also indicated that

1  Huang logged into the test@allride.ai email on or around July 24; he also accessed WeRide's

2  source code earlier that day.  Kunkel Decl. ¶¶ 6-10; Kunkel Ex. D; Collins Decl. ¶ 8.[2]  Huang

3  testified that he "d[id not] know" why AllRide had created an email account for him in July 2018.

4  Landes Ex. 8 at 582:1-588:18.  Forensic analysis of his laptop indicates the he accessed AllRide's

5  Microsoft Office account on July 24, 2018, a few hours after he accessed WeRide's source code

6  repository.  Kunkel Decl. ¶ 12.  In August, AllRide destroyed the original kun.huang@allride.ai

7  email account and then recreated it on the 13th.  *See* Landes Ex. 11 at 119:5-123:22.  The

8  test@allride.ai account was omitted from a list of AllRide's email accounts current to the

9  litigation, leading WeRide to conclude that it too has been destroyed.  LaFond Decl. ¶ 9.

10       Sometime in the summer of 2018, AllRide created the email account jing@allride.ai for

11  Wang because the company did not want him to communicate sensitive information to his

12  personal Yahoo account.  Boroumand Smith Ex. 1 at 20:5-21:1.  Wang used the jing@allride.ai

13  account for business connected to AllRide.  Wang Decl. ¶ 5.  Wang represents that he was

14  uncomfortable using this email account because he feared it would lead people to believe that he

15  had a more formal role with AllRide than he contends that he did.  Wang Decl. ¶¶ 6-7, 16.  In

16  December 2018—after the original complaint had been filed—Wang represents that he told Gu he

17  intended to cease using jing@allride.ai.  Wang Decl. ¶ 7; Wang Dep. at 24:2-20, 97:18-98:8.

18  AllRide then destroyed the email account.  Landes Ex. 10 at 24:2-20, 97:18-98:8.  From other

19  _____

20  [2] Huang objects to WeRide arguing that the test@allride.ai email account was spoliated in its
    Reply (*see* Dkt. No. 387 at 2-4), when it did not argue that email account had been spoliated in its

21  original motion.  Dkt. No. 391.  However, WeRide raised that argument in response to Huang's
    argument that, while still employed by WeRide, he only accessed the test@allride.ai email

22  account, not the kun.huang@allride.ai email account.  *See* Dkt. No. 370 at 9, 24.  Accordingly, the
    Court overrules the objection.  To the extent that Huang objects to the Reply Declaration of

23  WeRide's computer forensics expert Michael Kunkel for offer new evidence and arguments in
    reply, that objection is overruled for the same reason—the Court finds that WeRide properly offers

24  Kunkel's reply declaration in response to arguments that Huang raised in his opposition.

25  Huang also objects to both of Kunkel's declarations on the grounds that his declarations lack
    foundation, are speculative, are based on hearsay, and are inadmissible under Federal Rule of

26  Evidence 702.  Dkt. No. 370 at 13 n.6; Dkt. No 391.  The Court disagrees. Kunkel's testimony is
    based on his analysis of Huang's surrendered devices, and Kunkel is qualified, for the purposes of

27  this motion, to offer opinions based on his analysis of the devices.  *See* Kunkel Decl. ¶¶ 2-3 & Ex.
    A.  That objection is overruled as well.

28  Case No.: 5:18-cv-07233-EJD
    ORDER GRANTING MOTION FOR SANCTIONS

United States District Court
Northern District of California

sources, AllRide has recovered at least 2,428 emails "associated" with jing@allride.ai.  Barce Decl. ¶ 13(b) & Ex. B at 1.  After destroying that email account, AllRide created another email account for Wang, jack@allride.ai. Ex. 7 at 126:21-128:25.  Wang represents that this email address was created so that AllRide employees could send emails to him while another AllRide executive, Gu, would monitor the account.  Boroumand Smith Ex. 1 at 123:6-16, 124:8-17; Wang Decl. ¶ 17.  AllRide destroyed this email account in February 2019.  Landes Ex. 4 at 312:17-313:2; Landes Ex. 16 at 5.  From other sources, AllRide has been able to recover 613 emails "associated" with jack@allride.ai.  Barce Del. ¶ 13(a) & Ex. B at 1.  A third email account for Wang, jw@kaizhe.ai was also created and destroyed at some point.  Landes Ex. 10 at 156:22-157:9; Landes Ex. 42 at -082.

Rongrong Guo, Wang's spouse and the owner of AllRide's parent company, has had two @allride.ai email accounts.  After the Court issued the preliminary injunction, Guo instructed AllRide to destroy her first account, rongrong@allride.ai because, she represents, it had been subjected to a phishing attack.  Landes Ex. 5 at 222:5-223:2, 230:1-232:15; Pickles Ex. H at 191:13-193:2.  AllRide was able to recover at least 3,620 emails from her deleted account.  Barce Decl. ¶ 13(c) & Ex. B at 1.  After her initial email account was deleted, AllRide created a new email account for her, alice@allride.ai; however, she has for decades used "Lauren" not "Alice" as an Anglicized.  Landes Ex. 5 at 19:24-20:4; 244:19-245:13.

Summing up, AllRide has destroyed the following six email accounts: kun.huang@allride.ai in August 2018, test@allride.ai at an unknown time, jing@allride.ai after the complaint was filed, jack@allride.ai after the complaint was filed, jw@kaizhe.ai at an unknown time, and rongrong@allride.ai after the preliminary injunction issued.

### C.  FTI's Investigation

As directed by the Court, FTI undertook the following tasks as part of its investigation: (1) quantifying and qualifying the scope of AllRide's document/email destruction, (2) recovering, to the extent possible using commercially reasonable efforts, any documents destroyed, and (3) describing, to the extent possible, the nature and contents of any destroyed documents that cannot

be recovered.  Dkt. No. 266; Landes Ex. 84 at 2; LaFond Ex. 17 at 2; LaFond Ex. 18 at 2.  FTI could not reach a conclusion as to the extent or scope of the email destruction, or to the significance of the destroyed emails.  LaFond Ex. 11 at 18:7-21:22; Pickles Ex. at 93:10-20, 115:20-24, 121:8-14, 124:20-125:16, 133:16-135:4, 150:3-9.  FTI did not investigate and did not reach a conclusion as to whether the AllRide deliberately destroyed email because of this litigation.

ii.   <u>Source Code</u>

WeRide argues that AllRide and/or Huang have spoliated, or otherwise failed to produce, five categories of source code: (1) source code that AllRide developed before August 24, 2018 (the "August 2018 Source Code"), (2) the source code actually used by the autonomous car in the Video (the "October 2018 Source Code"), (3) source code developed by former AllRide employees Wu Wei and Dongxiang Xu, (4) source code saved on Huang's AllRide-issued laptop, and (5) source code AllRide stored in a OneDrive repository.

AllRide has kept and accessed its source code in different ways.  Originally, it stored its code in a repository housed on Amazon Web Services.  Landes Ex. 47 ¶¶ 2-3.  In August 2018, AllRide used a program call Git to access it.  *Id.* ¶ 3; Ohlman Decl. ¶ 23.  In October 2018, AllRide began using Phabricator to make modifications to the source code. Landes Ex. 47 ¶ 3; Ohlman Decl. ¶ 23.  Phabricator automatically generates and sends an email detailing revisions whenever someone changes the stored code.  *See* Landes Ex. 6 at 204:14-205:8; Landes Ex. 27.  In June 2019, AllRide transitioned from Phabricator to another program called GitLab.  Landes. Ex. 47 ¶ 4.  The actual transition of the code was done, at least in part, manually.  Landes Ex. 6 at 201:6-204:10.  AllRide has use GitLab since then.  Landes Ex. 47 ¶ 4.  Both Phabricator and GitLab interact with Git, so that Git automatically tracks and logs all changes (called "commits") to the source code.  *Id.* ¶¶ 5-6.  These "git logs" show what modifications are made to which specific file, when the modifications were made, and by whom.  *Id.* ¶ 5; Ohlman Decl. ¶ 11.

A.   <u>The August 2018 Source Code</u>

WeRide contends that AllRide has not produced any source code developed before August

United States District Court
Northern District of California

24, 2018.  While arguing against WeRide's first preliminary injunction motion, Huang represented to the Court that when he officially started at AllRide on August 13, 2018, he "joined an existing team of engineers . . . that were already developing the technology." Dkt. No. 70-1 ¶ 25.  Liu confirmed that AllRide began modifying open source code before Huang joined.  *See* LaFond Ex. 1 at 100:8-14, 104:10-13; LaFond Ex. 3 at 142:14-144:7.  However, the code and accompanying logs produced by AllRide (the "Produced Code") postdate August 24, 2018.  Dec. 13, 2019 Walter Decl. ¶ 17(a).  AllRide calls this argument a red herring because Huang had only started working at AllRide a little over a week before, and because the Produced Code is complete from August 24, 2018 through October 22, 2018.

### B.   The October 2018 Source Code

WeRide and AllRide fiercely contest whether the Produced Code is the actual 2018 Source Code or whether the 2018 Source Code has been withheld, hidden, or otherwise spoliated.  When WeRide's retained expert, Dr. Matthew Walter, analyzed the Video, he concluded that the car demonstrated Advanced Capabilities that AllRide could not have conceivably developed through independent means in the relatively short time that the company had existed.  Dkt. No. 34-14; Landes Ex. 59 ¶ 17.  WeRide contends that AllRide must have used WeRide's misappropriated code to develop the Advanced Capabilities.  Huang and AllRide represented to the Court that they had developed the technology "quickly" with a  "pre-existing" team of engineers.  Landes Exs. 53 at 7-8, 55 ¶ 25; *see also supra* § I.c.ii.A.  AllRide has also indicated that they developed the October 2018 Source Code by building on a base of open source Autoware code.  Landes Ex. 47 ¶ 14.

On or around May 21, 2019, AllRide software engineer Liu exported from Phabricator the AllRide source code that, he and AllRide represent, existed in October 2018.  Landes Ex. 47 ¶ 8. Liu then—as AllRide's corporate designee—testified on June 6 and 7, 2019 about the autonomous driving capabilities demonstrated in the Video.  For example, he testified as follows about changing lanes to pass a slower vehicle—one of the Advanced Capabilities:

> There are two vehicles in the same lane. [One] is our car; [one] is the
> obstacle car.  When we are moving and detect that at some certain

United States District Court
Northern District of California

United States District Court
Northern District of California

> distance ahead of us there is an obstacle, we would analyze it and try to decide the distance between us and its speed.  Based on the speed, we would follow for a while. If it moves really slow, below a certain threshold, our car would change lane[s] and continue to move on.  That's what I saw demonstrated in the video.

Landes Ex. 1 at 127:16-128:8.  AllRide made the exported code—the "Produced Code"—and the corresponding git logs available to WeRide for inspection on or around July 5, 2019.  Landes Ex. 47 ¶¶ 7-9.

Based on Walter's analyses, WeRide contends that the Produced Code cannot perform the capabilities described by Liu, meaning the Produced Code is not the actual October 2018 Source Code.  In other words, WeRide argues that the Produced Code is faked, was not used in the Video, and is irrelevant to the merits of this case.  For example, Walter opined that ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████  *See* Landes Ex. 46 ¶ 9.

Additionally, when Walter first analyzed the Video, he opined that it showed the use of an HD Map, one of the Advanced Capabilities.  Dkt. No. 34-43 ¶¶ 23-24.  ███████████████████

███████████████████████████████████████████████  Landes Ex. 36 ¶ 14 (citing Jun. 6, 2019 Liu Dep. Tr. at 74:11-18).  ██████████████████████████████████████████████

████████████████████████████████  *Id.* ¶¶14-15.

AllRide insists that the Produced Code is the October 2018 Source Code.  In response to Walter's analysis, Liu executed two declarations on September 23, 2019 and October 3, 2019.  Landes Exs. 47, 48.  Liu stated that AllRide made use of waypoints to carry out the functionalities depicted in the Video.  *See, e.g.*, Landes Ex. 47 ¶ 25; Landes Ex. 48 ¶¶ 13, 15, 21.  Waypoints are not source code, but rather are similar to geographic coordinates that provide instruction to source code.  Landes Ex. 49 ¶ 15.  ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████  Landes Ex. 47 ¶¶ 14-15.  █████████████████████████████████

1    ██████████████████████████████   Landes Ex. 47 ¶ 25.  He disclosed that

2    AllRide did not keep the waypoint files that AllRide used for the Video, so they cannot be

3    produced to WeRide.  *Id.* ¶ 26.

4         AllRide retained Matthew Ohlman as an expert to "to test WeRide's speculation that

5    [AllRide's] code was somehow different than what was previously made available."  AllRide

6    Opp'n at 8.  Mr. Ohlman compared the Produced Code to the source code presently stored in

7    AllRide's repositories, and he concluded that they are the same.  Ohlman Decl. ¶¶ 45-52. He also

8    examined whether the Produced Code had been tampered, and concluded that it had not.  *Id.* ¶¶

9    53-64.  He opined that there was no evidence that the git logs for the Produced Code had been

10   altered.  *Id.* ¶ 65.  AllRide submits declarations from two other experts, Dr. Jeffrey Miller and Dr.

11   Daniel Watzenig.  Miller opined that lane change maneuver depicted in the Video would be

12   possible by use of the Produced Code, waypoints files, and a remote control.  Landes Ex. 49 ¶¶ 9-

13   12.  Watzenig opined that Autoware version 1.7.0, with minor modifications, was capable of

14   performing the maneuvers shown in the Video.  Watzenig Decl. ¶¶ 4, 15-23.  He did not opine as

15   to whether the car in the Video actually used Autoware version 1.7.0 to achieve those maneuvers

16   and he did not examine the Produced Code.  *Id.* ¶¶ 4, 13, 23.  Two WeRide employees, after

17   viewing the Video, surmised that AllRide had used Autoware for the "route planning map"

18   capability performed by the car.  Watzenig Suppl. Decl. Ex. A.[3]  That is not one of the Advanced

19   Capabilities.

20                    C.   Source Code Developed by Wu Wei and Dongxiang Xu

21        WeRide contends that AllRide has failed to produce code relating to pedestrian detection—

22   one of the Advanced Capabilities—that was developed by two individuals, Wu Wei and

23   Dongxiang Xu who are no longer with AllRide.  Documents recovered from Huang's devices

24   indicate that they were the "owners" of "[c]rosswalk obstacle detecgtion [*sic*]," which was at least

25   80 percent complete before November 4, 2018.  Landes Exs. 13-15; LaFond Ex. 4 at 95:12-96:8.

26   ───────────────────

27   [3] For good cause, the Court grants AllRide's Administrative Motion to File Supplemental Expert
     Declaration.  Dkt. No. 431.

28

1  However, Walter's analysis of the Produced Code and the corresponding git logs does not indicate

2  any commits to that portion of code by either Wu Wei or Dongxiang Xu.  Dec. 13, 2019 Walter

3  Decl. ¶ 17(b).  The logs indicate that Wu Wei made nine commits to the Produced Code, but none

4  of them concerned substantive work on pedestrian detection.  *Id.* & n.18.  WeRide contends

5  AllRide must have spoliated the source code that they worked on.  AllRide counters that the

6  recovered documents were not status or owner updates and that Liu was the lead for all

7  perception-related projects.  Pickles Reply Decl., Ex. C at 93:18-96:8.  AllRide maintains that Wu

8  Wei and Dongxiang Xu were only interns that made only minor changes to AllRide's code.

9  D.  <u>The Source Code on Huang's Surrendered Laptop</u>

10  As part of the preliminary injunction issued on March 22, 2019, the Court ordered Huang

11  to surrender his devices to WeRide by March 26, 2019.  Dkt. No. 116 at 26.  After retaining a

12  computer forensics expert, Michael Kunkel, to inspect the devices, WeRide contends that Huang

13  deleted or otherwise altered files or directories saved to his AllRide-issued computer.  Kunkel

14  Decl. ¶¶ 6-10.  Specifically, Kunkel found 3,935 files or folders with "allride" in the name that

15  have timestamps indicating that they were created or modified on March 24 or 25, and he

16  identified 1,279 source code files within those folders with creation or modification time stamps

17  on those days.  *Id.* ¶¶ 6-7.  However, the 1,279 source code files are publicly available Arduino

18  open source code.  Huang Decl. ¶ 15 & Ex. I.  Both WeRide's code expert, Walter, and AllRide's

19  expert, Miller, concluded that the source code on Huang's computer was not functional, with

20  Miller characterizing it as "not an arrangement of code that a programmer would utilize."  Landes

21  Ex. 44 ¶¶ 7-10; Landes Ex. 45 ¶ 12.  Huang points out that Kunkel's analysis also indicated that

22  some files have timestamps with impossible dates—*i.e.*, dates in the future.  Kunkel Decl. ¶ 13 &

23  Ex. G; Huang Decl. ¶ 14 & Ex. H.

24  E.  <u>Source Code Saved to OneDrive</u>

25  During FTI's investigation, it found that a file titled

26  "zzx_repo_with_git_log_20190712.zip" was deleted from AllRide's OneDrive account in late

27  August 2019.  LaFond Ex. 18 at Appendix 003 page 5.  WeRide contends that the filename

28  Case No.: 5:18-cv-07233-EJD
ORDER GRANTING MOTION FOR SANCTIONS

United States District Court
Northern District of California

indicates this was a source code repository that AllRide spoliated well after the preliminary injunction issued.  *See* Dec. 13, 2019 Walter Decl. ¶¶ 35-39. AllRide states Liu had provided the file in question to Allride's counsel on July 11 or 12, 2019 so that AllRide's expert, Miller, could review the code for WeRide's alleged trade secrets.  Jan. 4, 2020 Liu Decl. ¶¶ 3-6.  Liu further states that he "does not believe" that he was successful in uploading the file to OneDrive, which is why it is not present there.  *Id.* ¶ 5.

### iii.   Other Alleged Spoliation

Not including the emails and source code discussed above, WeRide alleges that Defendants have each destroyed other potentially discoverable material.  Beginning with Huang, he admits to destroying Electronically Stored Information ("ESI") on three computers, including the two WeRide-issued laptops: the MacBook that he wiped clean, and the Lenovo from which he deleted certain files.  Huang contends that he used the MacBook for personal matters, so it contained things like personal photographs and his tax returns.  Dkt. No. 70-1 ¶ 15.  He represents that he re-formatted it to ensure that these personal files were deleted.  *Id.*  As for the Lenovo, he represents—and WeRide does not dispute—that it was shared among his team and at times with third-party contractors.  *Id.* ¶ 14.  Huang represents that he deleted files from the Lenovo's desktop and cleared its browser history to leave it free of "junk files."  *Id.*  WeRide's analysis of the Lenovo revealed that three USB devices were plugged into it in June and July 2018.  *See* Dkt. No. 34-2 ¶¶ 11-20.  Huang returned one of the devices, but maintains that he has no knowledge of the other two.  Dkt. Nos. 29, 70-1 ¶ 17.  As for the third computer, on October 1, 2018, the day that WeRide sent a cease-and-desist letter to Wang, Huang returned his personal MacBook to an Apple store in exchange for a gift card.  Landes Ex. 55 ¶ 16 & Ex. B.

When Wu Wei and Dongxiang Xu left AllRide, AllRide wiped their laptops and deleted their email accounts on or after February 23, 2019, and December 31, 2018.  Dkt. No. 383 at ¶¶ 2-5; Pickles Reply Decl., Ex. B.  AllRide has produced fewer than 100 emails from each of them.  Landes Ex. 16 at 22.  Their information and hardware were wiped pursuant to an exit policy that AllRide continued to employ until August or September 2019.  Landes Ex. 16 at 22; LaFond Ex.

17 at 15-16.

As to Wang, in April of 2019 before he officially became AllRide's CEO, he told AllRide that the company "better try" using the application DingTalk to correspond internally.  Landes Ex. 7 at 183:20-185:21.  AllRide then began using it; Wang started using it when he officially became CEO of AllRide.  *Id*; LaFond Ex. 17 at 13.  Wang testified that he liked using DingTalk because it is "more secure" than other messaging platforms.  Landes Ex. 7 at 185:22-186:17.  DingTalk allows for "ephemeral messages" that automatically delete after they have been sent and read.  *Id.*  AllRide's 30(b)(6) witness confirmed that AllRide has not been able to recover any DingTalk ephemeral messages.  Landes Ex. 12 at 26:14-28:20.  However, Wang does have some non-ephemeral DingTalk messages saved on his phone, but he has not produced them because, he says, he cannot find a vendor to extract them.  Wang Decl. ¶ 24 & Ex. 4; Boroumand Smith Decl. ¶ 21.

## II.    Legal Standard

"When a district court decides to impose sanctions or discipline, it must clearly delineate under which authority it acts to insure that the attendant requirements are met."  *Williams v. Williams*, 2013 WL 3157910, at *4 (N.D. Cal. June 20, 2013) (citing *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999)).  WeRide seeks terminating sanctions under three sources of authority: Federal Rule of Civil Procedure 37(b) ("Rule 37(b)"), Federal Rule of Civil Procedure 37(e) ("Rule 37(e)"), and the Court's inherent authority to sanction.

Wang argues that the Court may not exercise its inherent authority to sanction Defendants because they allegedly spoliated ESI, and Rule 37(e) governs the spoliation of ESI.  WeRide counters that Wang is misreading the law and that Supreme Court precedent holds that the Federal Rules may not displace a court's inherent power to sanction.  However, because the Court will issue terminating sanctions under Rule 37(b) and Rule 37(e), it need not consider whether it may also sanction Defendants under its inherent power.  The Court will not issue sanctions under its inherent power.

Rule 37(b) provides that a court may sanction a party for failure to comply with a court order.  "If a party or a party's officer, director, or managing agent . . . fails to obey an order to

Case No.: 5:18-cv-07233-EJD
**ORDER GRANTING MOTION FOR SANCTIONS**

16

United States District Court
Northern District of California

provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders" including "striking pleadings in whole or in part" and/or "rendering default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A). District courts should consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quotation and citation omitted). "[W]here a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). "While the district court need not make explicit findings regarding each of these factors, a finding of willfulness, fault, or bad faith is required for dismissal to be proper." *Leon*, 464 F.3d at 958. (citations and quotations omitted).

Rule 37(e) allows for sanctions where a party fails to preserve ESI. To determine whether spoliation of ESI has occurred, courts should consider "(1) the ESI 'should have been preserved in the anticipation or conduct of litigation'; (2) the ESI 'is lost because a party failed to take reasonable steps to preserve it'; and (3) '[the ESI] cannot be restored or replaced through additional discovery.'" *Porter v. City & Cty. of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (quoting Fed. R. Civ. P. 37(e)). Before terminating the action, the Court must find that "the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "[T]here is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2)." *Porter*, 2018 WL 4215602, at *3.

The parties dispute whether WeRide must meet the preponderance of evidence standard or the clear and convincing evidence standard for terminating sanctions. District courts in this Circuit have split on the question, and the Ninth Circuit has not ruled on it. *Compare, e.g.*, *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017) (applying preponderance of evidence standard) *with, e.g.*, *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F.

1    Supp. 2d 939, 978 (N.D. Cal. 2012) (applying clear and convincing standard).  Other Circuits are

2    split on this question as well.  *Compare, e.g.*, *Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 777

3    (7th Cir. 2016) (holding that the preponderance of evidence standard should apply to terminating

4    sanctions) *with, e.g.*, *Micron Tech., Inc. v. Rambus Inc*., 645 F.3d 1311, 1328 (Fed. Cir. 2011)

5    (holding that terminating sanctions must be proved by clear and convincing evidence).  While this

6    is a close question, the Court finds the reasoning of the cases that apply the preponderance of

7    evidence standard to be persuasive.  In *Ramirez,* for example, the Seventh Circuit considered

8    multiple Supreme Court holdings that rejected applying higher evidentiary standards in civil cases.

9    845 F.3d at 777-78 (discussing *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923, 1934

10   (2016); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014); *Grogan v.*

11   *Garner*, 498 U.S. 279, 285 (1991); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989);

12   *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983)).  Those cases, the Seventh Circuit

13   reasoned, show that unless a statute, a rule or the Constitution requires a higher standard of proof,

14   then the preponderance of evidence standard should apply.  *Ramirez*, 845 F.3d at 778.  In civil

15   litigation, exceptions to the preponderance standard are uncommon, examples of which include the

16   termination of parental rights, involuntary commitment, deportation, and denaturalization.  *Id.*

17   (discussing *Price Waterhouse*, 490 U.S. at 253 and *Huddleston*, 459 U.S. at 389).  Accordingly the

18   Seventh Circuit held that "[t]he interests implicated by the dismissal of a suit as a sanction for

19   misconduct occurring in civil litigation (including discovery) are not so important as to demand

20   that the facts underlying the dismissal be established by clear and convincing evidence.  *Id.*  The

21   Court agrees with this analysis and adopts it.

22           On considering a motion for sanctions, a district court may make factual findings and

23   assess the credibility of witnesses.  *See Leon*, 464 F.3d at 958; *see also Valley Engineers*, 158 F.3d

24   at 1054.

25   **III.    Discussion**

26           With these principals in mind, the Court now considers WeRide's motion as to each

27   Defendant.

28   Case No.: 5:18-cv-07233-EJD
     ORDER GRANTING MOTION FOR SANCTIONS

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    a.  <u>AllRide</u>

      The amount of spoliation that AllRide concedes is staggering.   AllRide admits that it kept its company-wide policy of deleting from its server all emails older than 90 days until months after the preliminary injunction issued, that it deleted the jing@allride.ai email account after the original complaint was filed, that it deleted the jack@allride.ai email account after the complaint was filed, that it deleted the rongrong@allride.ai email account after the preliminary injunction issued, that it deleted Wu Wei and Dongxiang Xu's email accounts and wiped their laptops after the complaint was filed, that it did not end its policies of deleting the email accounts and wiping the computers of former employees when they leave AllRide until months after the preliminary injunction issued, and that its employees began communicating with DingTalk's ephemeral messaging feature after the preliminary injunction issued.  Based on these undisputed facts, the Court finds it appropriate to issue terminating sanctions.

        i.  <u>Rule 37(b)</u>

      The Court first considers the *Leon* framework for applying terminating sanctions under Rule 37(b).  *Leon*, 464 F.3d at 958 & n.4.  The preliminary injunction forbade the enjoined parties from "[d]estroying, concealing, disposing, deleting, removing or altering any and all documentation of any kind," including ESI, related to WeRide or WeRide's confidential information, or AllRide's source code.  Dkt. No. 116 at 24-25.  The preliminary injunction therefore is an "order to provide or permit discovery" under Rule 37(b).  *See Williams*, 2013 WL 3157910, at *4.  Willfulness is shown where "the party ha[d] some notice that the documents were potentially relevant to the litigation before they were destroyed."  *Leon*, 464 F.3d at 959.  And the "party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."  *Id.* at 961.  AllRide's conduct demonstrates both willfulness and bad faith.  When the preliminary injunction issued, AllRide had received the original complaint, the Second Amended Complaint, and WeRide's briefing in support of its preliminary injunction.  These documents laid out WeRide's initial theory of the case and indicated the relevance of AllRide's internal emails and of the computers of AllRide's employees.  Despite this, AllRide left in place

1   the autodelete setting on its email server, began using DingTalk's ephemeral messaging feature,

2   and maintained a policy of deleting the email accounts and wiping the computers of former

3   employees.  This practice of destroying potentially discoverable material shows both willfulness

4   and bad faith.

5                          A.   The First and Second *Leon* Factors

6           Turning to the first two *Leon* factors, "(1) the public's interest in expeditious resolution of

7   litigation; [and] (2) the court's need to manage its dockets," the Court finds that they are easily

8   met.  *Leon*, 464 F.3d at 958.  AllRide's admitted violations of the preliminary injunction support

9   these factors.  *Valley Engineers*, 158 F.3d at 1057.  Further, even though AllRide represents that it

10  discovered that the auto-deletion function was active in the middle of June 2019, it did not inform

11  the Court or WeRide until the eve of a discovery hearing about two months later.  Dkt. No.  231.

12  During those two months, WeRide briefed and the Magistrate Judge considered multiple motions

13  to compel the production of documents that no longer existed.  *See* Dkt. Nos. 157, 170, 235.  The

14  first two factors are met.

15                              B.   The Third *Leon* Factor

16          The third *Leon* factor, the risk of prejudice to the party seeking sanctions, is the "most

17  critical [factor] for case-dispositive sanctions," because it goes to "whether the discovery

18  violations threaten to interfere with the rightful decision of the case."  *Valley Engineers*, 158 F.3d

19  at 1057 (quotation and citation omitted).  AllRide's mass destruction of email has irredeemably

20  prejudiced WeRide's case against AllRide.  WeRide's theory of liability is that AllRide

21  misappropriated WeRide's trade secret source code in order to achieve the five Advanced

22  Capabilities performed by AllRide's autonomous car in the Video.  Thus, the October 2018

23  Source Code is critical to this claim.

24          AllRide argues that the Produced Code is the October 2018 Source Code, so the alleged

25  spoliation has not prejudiced WeRide's case.  Rather, the argument goes, the two autonomous car

26  companies can simply compare WeRide's alleged trade secrets to the Produced Code to determine

27  liability.  But the Court is not swayed by this argument because there are doubts that the Produced

28  Case No.: 5:18-cv-07233-EJD
    ORDER GRANTING MOTION FOR SANCTIONS
                            20

United States District Court
Northern District of California

1    Code is in fact the October 2018 Source Code.  In his deposition as AllRide's corporate designee,

2    Liu described the October 2018 Source Code as operating dynamically: "When we are moving and

3    detect that at some certain distance ahead of us there is an obstacle, we would analyze it and try to

4    decide the distance between us and its speed. . . .  If it moves really slow, below a certain

5    threshold, our car would change lane[s] and continue to move on."  Landes Ex. 1 at 127:16-128:8.

6    Whether AllRide's car would pass the other car depended on analyzing the other car, determining

7    its speed, and assessing whether that speed dropped below a set threshold.  However, when

8    WeRide's expert Walter examined the Produced Code, he concluded that it was not capable of

9    those sorts of dynamic processes.  Landes Ex. 44 ¶¶ 11-17; *see also* Walter Decl. ¶ 9(a)-(d), 20(b).

10   There is a gap between Liu's testimony and the Produced Code.

11          AllRide's explanation that it relied on Autoware open source code and waypoint files to

12   carry out the maneuvers depicted in the Video does not bridge that gap.  Walter opines that

13   Waypoints cannot make dynamic decisions; rather they are "file[s] that directs a car to travel at a

14   pre-determined speed to certain pre-determined locations."  Walter Decl. ¶ 13; *see also id.* ¶ 20(b).

15   AllRide appears to agree with this description.  *See* Sep. 23, 2019 Liu Decl. ¶ 15; AllRide First

16   Opp'n at 5 n.2 ("Waypoint files are essentially coordinates.").  That AllRide's experts Miller and

17   Watzenig opined that Autoware code and waypoint files could enable a driverless vehicle to

18   perform as the car in the Video fails to persuade for the same reason.  Landes Ex. 49 ¶¶ 9-12;

19   Watzenig Decl. ¶¶ 4, 15-23.  Their analyses do not link Liu's testimony with the Produced Code.

20          Further, the Court notes that the documents recovered from Huang's laptop that describe

21   Wu Wei and Dongxiang Xu as the "owners" of the crosswalk/pedestrian detection capability are

22   not square with the git logs indicating that neither person made commits to the Produced Code that

23   involved substantive changes to the pedestrian detection portions of the code.

24          Because AllRide spoliated its internal emails until March 2019, WeRide is not able to test

25   AllRide's explanation with internal communications from months before AllRide would make the

26   Produced Code available to WeRide.  The loss of the weekly engineering reports that AllRide's

27   engineers sent to Huang and Wang is particularly troubling.  Those reports would have offered

28   Case No.: 5:18-cv-07233-EJD
     ORDER GRANTING MOTION FOR SANCTIONS

United States District Court
Northern District of California

critical insight to the actual work and the specific code that AllRide used to achieve the Advanced Capabilities shown in the Video. They would likely either erase the apparent discrepancies (a) between Liu's testimony and the Produced Code, and (b) between the documents on Huang's computer concerning Wu Wei and Dongxiang Xu and the git logs, or confirm WeRide's theory that the Produced Code is fake. They would have been highly probative. AllRide's insistence that the git logs can replace the weekly reports is not persuasive because those logs are derived from the Produced Code; they cannot present a picture of the work AllRide performed in autumn 2018 beyond the Produced Code. For the same reason, Ohlman's analysis of the Produced Code does not move the Court.

The Court does not find that AllRide spoliated the October 2018 Source Code nor that Produced Code is a sham. Rather, the Court finds that the discrepancies between Liu's testimony and the Produced Code, and between the documents on Huang's computer and the git logs raise material questions as to the authenticity of the Produced Code. Without AllRide's internal emails from the fall of 2018, a fact finder will not be able to resolve these questions because WeRide has no ability to test AllRide's proposed theory. The Court finds that AllRide's mass spoliation of its internal emails was highly prejudicial to WeRide.

### C.  The Fourth *Leon* Factor

The public policy favoring disposition of cases on their merits, the fourth *Leon* factor, usually weighs against terminating sanctions. *Valley* Engineers, 158 F.3d at 1057. Here, the Court finds that the prejudice to WeRide is so great that it outweighs this factor. AllRide's destruction of evidence was so sweeping that this case cannot be resolved on its merits.

### D.  The Fifth *Leon* Factor

The last *Leon* factor, the availability of other lesser sanctions, also weighs in favor of terminating sanctions. For this factor, a district court should consider (a) "the feasibility of less drastic sanctions and explain[] [whether] such alternate sanctions would be inappropriate," (b) whether it "implemented alternative sanctions before ordering dismissal," and (c) whether it "warned the party of the possibility of dismissal before ordering dismissal." *Leon*, 464 F.3d 960.

United States District Court
Northern District of California

1    Here, AllRide asks the Court to sanction it by instructing the jury that AllRide "had a duty

2 to preserve emails and other information they knew to be relevant to anticipated and pending

3 litigation.  If the jury finds that then defendants deleted emails to prevent their use in litigation

4 with [WeRide], the jury will be instructed that it may, but is not required to, infer that the content

5 of the deleted lost emails would have been unfavorable to the defendants." *Rimkus Consulting*

6 *Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 646 (S.D. Tex. 2010).  This sanction and AllRide's

7 proposed instruction would be inappropriate here because it is far too mild and vague to

8 sufficiently cure the prejudice to WeRide.  Indeed, the Court finds that any jury instruction or

9 exclusion of evidence would be inappropriate here because the spoliation occurred on such a

10 massive scale.  Excluding evidence offered by AllRide would not substitute for the spoliated

11 evidence that could have built WeRide's affirmative case.  *See Leon*, 464 F.3d at 960.  And

12 because WeRide has been deprived of the evidence necessary to prove its case, "fashioning a jury

13 instruction that creates a presumption in favor of [WeRide] would leave [WeRide] equally

14 helpless to rebut any material that [AllRide] might use to overcome that presumption." *Id.*  Lesser

15 sanctions would be futile.  As to the second factor, the Court has already issued a preliminary

16 injunction order that explicitly prohibited AllRide from destroying certain potentially discoverable

17 evidence.  Dkt. No. 116.  AllRide did not comply with it.  Finally, the third factor is inapplicable

18 because AllRide has been destroying emails since before the litigation began, so "the destruction

19 of the evidence occurred before the court had any opportunity to warn" AllRide.  *Leon*, 464 F.3d

20 at 960.

21    The Court will issue terminating sanctions against AllRide under Rule 37(b).

22        ii.   Rule 37(e)

23    The case against AllRide is even more damning under Rule 37(e).  The first requirement

24 for sanctions under Rule 37(e) is that the ESI should have been preserved in anticipation of

25 litigation.  *Porter*, 2018 WL 4215602, at *3.  "The duty to preserve evidence begins when

26 litigation is pending or reasonably foreseeable." *First Fin. Sec., Inc. v. Freedom Equity Grp.,*

27 *LLC*, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016).  After this litigation began, AllRide

United States District Court
Northern District of California

United States District Court
Northern District of California

1    massively spoliated ESI through the destruction of specific email accounts for Wang and his wife,

2    the mass deletion of emails from its servers, and the deletion of the email accounts and the

3    computers of employees who have left AllRide's employ.  The second requirement is that the

4    party failed to take reasonable steps to preserve the ESI.  *Porter*, 2018 WL 4215602, at *3.  Here,

5    AllRide concedes it destroyed ESI because it failed to change company-wide policies (the auto-

6    deletion of emails and the wiping of laptops of former employees) and because it chose to delete

7    certain email accounts despite the commencement of litigation and the preliminary injunction.

8    Had AllRide deactivated the auto-deletion function when this litigation began in December 2018,

9    its emails from October 2018 would have been preserved.  AllRide did not take reasonable steps to

10   preserve the ESI.  The third requirement is that the ESI cannot be restored or replaced.  *Porter*,

11   2018 WL 4215602, at *3.  While the Court appreciates that AllRide has recovered some emails, it

12   is not enough.  Excluding open source code, AllRide has only produced 2,782 documents from the

13   critical period of July 1, 2018 through October 31, 2018, and only 348 of those files are intact

14   emails.  LaFond Decl. ¶¶ 25-29.  The weekly engineering reports that were sent to Wang and

15   Huang are all gone.  Fewer than 100 emails for each of Dongxiang Xu and Wu Wei have been

16   recovered and their hard drives have been erased.  The third factor is satisfied.

17          To issue harsh sanctions, such as dismissal, under Rule 37(e), a court must find that "the

18   party acted with the intent to deprive another party of the information's use in the litigation."  Fed.

19   R. Civ. P. 37(e)(2).  "[C]ourts have found that a party's conduct satisfies Rule 37(e)(2)'s intent

20   requirement when the evidence shows or it is reasonable to infer, that [the] party purposefully

21   destroyed evidence to avoid its litigation obligations."  *Porter*, 2018 WL 4215602 at *3 (collecting

22   cases).  AllRide's conduct shows a disturbing pattern of destroying discoverable material that

23   began with the company's founding and continued not only through the commencement of this

24   litigation but past the preliminary injunction as well.  The Court finds that the totality of the

25   circumstances indicate that AllRide's spoliation was intentional.

26          And as with the sanctioning power under Rule 37(b), the Court finds that terminating

27   sanctions are required.  No lesser sanction could remedy WeRide's prejudice and AllRide has

28   Case No.: 5:18-cv-07233-EJD
     ORDER GRANTING MOTION FOR SANCTIONS

1   already demonstrated its disregard for the Court's orders.  The Court will issue terminating

2   sanctions against AllRide pursuant to Rule 37(e)(2)(C).

3        b.  <u>Wang</u>

4        WeRide argues that the Court should issue terminating sanctions against Wang because he

5   controlled AllRide and thus ratified its massive spoliation.  Where one party controls a second

6   party, the first party may face sanctions for the spoliation of evidence committed by the second

7   party.  *Consumer Fin. Prot. Bureau v. Morgan Drexen Inc*., 2015 WL 12732004, at *2 (C.D. Cal.

8   July 6, 2015) (sanctioning CEO personally for spoliation committed by company).  So "[a]n

9   employer may be responsible for the spoliation of its employee."  *Gemsa Enterprises, LLC v.*

10  *Specialty Foods of Alabama, Inc*., 2015 WL 12746220, at *9 (C.D. Cal. Feb. 10, 2015).  Courts

11  should apply the general principles of agency law to determine whether to impose sanctions

12  against a party for spoliation by its employees.  *Id.* (citing *Am. Builders & Contractors Supply Co.*

13  *v. Roofers Mart, Inc.*, 2012 WL 2992627, at *6 (E.D. Mo. July 20, 2012)).  California courts apply

14  a three-factor test to determine whether an officer is legally responsible for the actions of their

15  employees or companies.  *See PMC, Inc. v. Kadisha*, 93 Cal. Rptr. 2d 663 (2000), as *modified on*

16  *denial of reh'g* (Apr. 7, 2000).  Those factors examine whether the officer had invested in the

17  company, whether the officer had control of the company, and whether the officer had knowledge,

18  or reason to know of the conduct at issue.  *See id.*

19       In its order modifying the preliminary injunction, this Court found that WeRide had shown

20  it was likely to prevail at proving that Wang controlled AllRide such that he could be held liable

21  for AllRide's alleged trade secret misappropriation.  Dkt. No. 342 at 4-6.  The Court based its

22  order on Wang's financial interest in AllRide; his wife's ownership of AllRide's parent company;

23  internal AllRide documents describing him as "le[ading]" AllRide, and indicating that AllRide's

24  "Management" team reported to him; his close involvement in AllRide's recruiting and hiring; his

25  receipt of AllRide's weekly engineering reports; his scheduled, weekly meetings with Huang; and

26  his prior inaccurate representations to the Court about his role with AllRide.  *Id.* (citing record and

27  applying evidence to *PMC*, 93 Cal. Rptr. 2d 663).  The Court now finds that this same evidence is

28  Case No.: 5:18-cv-07233-EJD
    ORDER GRANTING MOTION FOR SANCTIONS
                        25

United States District Court
Northern District of California

sufficient to meet the first two *PMC* factors.

The third factor, whether Wang knew of, or had reason to know of, AllRide's spoliation is also satisfied.  Wang's protestations that he had no knowledge of AllRide's email practices do not move the Court.  The Court notes that it has already found that Wang has made representations to the Court that were "at best inaccurate."  Dkt. No. 342 at 3.  Here, the facts do not support Wang's statements.  He has both controlled AllRide and been its codefendant in this litigation.  Shortly after the original complaint was filed, AllRide deleted Wang's first @allride.ai email account.  AllRide and Kaizr subsequently created and then destroyed at least two additional email accounts for Wang.  One of those email accounts used a fake name.  Just days after the preliminary injunction issued, AllRide deleted his wife's email account and then created a new one for her that also used an alias.  Also after the preliminary injunction, Wang—who at the time was not yet officially the CEO—introduced DingTalk to AllRide and instructed AllRide that they "better" use it.  Wang tries to nitpick each of these facts, but taken together, they show that Wang was in a position of authority and or control and therefore must have had knowledge of AllRide's spoliation.  The Court finds that AllRide was Wang's agent when it engaged in mass spoliation.  The Court will issue terminating sanctions against Wang.

Having found that terminating sanctions should issue based on AllRide's spoliation, the Court does not consider WeRide's other arguments for sanctioning Wang.

### c.  Huang

WeRide alleges that before it filed the complaint but after Huang's duty to preserve arose, he spoliated the WeRide-issued Lenovo laptop, the WeRide-issued MacBook and his personal laptop that he turned into an Apple store, and that after the preliminary injunction issued, he spoliated source code files and folders saved to the computer that he was ordered to turn over to WeRide.

### i.  Rule 37(b)

Starting with the source code Huang modified after the preliminary injunction issued, the Court finds that terminating sanctions are appropriate under Rule 37(b).  The preliminary

injunction, which was issued on March 22, 2019, specifically stated that Huang and the other bound parties were prohibited from "[d]estroying, . . . disposing, deleting, removing or altering any . . .  computer files, . . . hard drives, disk drives, . . . [or] data . . . relating in any way to WeRide or WeRide Confidential Information . . . [or] relating in any way to source code written, developed, edited, reviewed, or used by Defendants."  Dkt. 116 at 24-25.  The Court also ordered to make his current devices available to WeRide for inspection by March 26, 2019.  WeRide's computer forensics expert, Kunkel, examined Huang's AllRide-issued laptop and concluded that Huang had modified over one thousand source code files on March 24 and 25.  Kunkel Decl. ¶¶ 6-10.  AllRide's expert opined that the code remaining on the surrendered laptop was "not an arrangement of code that a programmer would use."  Landes Ex. 45 ¶12.

Huang argues that the Court should disregard Kunkel's analysis because his process also indicated that some files on the laptop had impossible (*i.e.*, future) timestamps.  The Court rejects this argument for two reasons.  First, Kunkel adequately explains that such glitches are "not uncommon" and "are not an indication of faulty forensics analysis or tools."  Dec. 12, 2019 Kunkel Decl. ¶ 4.  While Huang retained three computer forensics experts, none questioned Kunkel's forensic analysis on this ground.  Second, none of the files with impossible timestamps are relevant to the litigation.  *Id.*  Huang also argues that because the source code found on his laptop was open source code, he did not violate the preliminary injunction by modifying it.  The Court rejects this argument.  It may be open source code, but Huang modified it on his AllRide-issued laptop.  It is therefore "source code . . . reviewed, or used by Defendants."  Dkt. No. 116 at 24-25.

Kunkel's conclusion that Huang modified source code on March 24 and 25 coupled with the undisputed conclusion of two experts that the remaining source code was useless is sufficient evidence for the Court to conclude that Huang spoliated the source code that had been on his computer before March 24.

Because Huang violated the preliminary injunction, the Court finds that the threshold requirement for sanctions under Rule 37(b) is met.  Fed. R. Civ. P. 37(b); *Williams*, 2013 WL

1   3157910, at *4.  Further, the preliminary injunction directly informed Huang that he should not

2   delete or alter files related to WeRide's confidential information or AllRide's source code, and

3   then he did exactly that.  His conduct satisfies the willfulness requirement.  *Leon*, 464 F.3d at 958

4   The Court finds that the first two *Leon* factors favor terminating sanctions because Huang violated

5   the Court's preliminary injunction.  *Valley Engineers*, 158 F.3d at 1057.

6        As to the prejudice factor, the Court has already discussed—in § III.a.i.B—how evidence

7   concerning the source code actually used by AllRide is critical to WeRide's trade secrets claims.

8   The Court further finds that the spoliation of these source code files has severely prejudiced

9   WeRide's case against Huang.  This spoliation robbed WeRide of the opportunity to discover the

10  source code that Huang and AllRide were using in the spring of 2019—three months before

11  AllRide would make the Produced Code available to WeRide.  Combined with AllRide's

12  spoliation of email, the spoliation of this source code has robbed WeRide of any chance to test

13  AllRide's offered theory of independent development and to affirmatively prove its case.  The

14  third factor weighs heavily in favor of terminating sanctions.

15       As with AllRide's spoliation, the Court finds that while the fourth *Leon* factor generally

16  disfavors terminating sanctions, the prejudice to WeRide is so great that a thorough and fair

17  decision on the merits cannot be reached after Huang's spoliation of this source code.  The Court

18  finds that the third factor outweighs the public policy in favor of resolving cases on their merits.

19       Finally, the Court finds that no lesser sanction would suffice.  To begin, Huang has already

20  violated the preliminary injunction, indicating that he would likely disregard a warning from the

21  Court.  Additionally, as with AllRide's spoliation, Huang's spoliation has greatly prejudiced

22  WeRide's ability to affirmatively prove its case.  Thus, excluding evidence from Huang cannot

23  cure the prejudice.  *See Leon*, 464 F.3d at 960.  And jury instructions will not suffice because

24  WeRide would be unable counter Huang if he rebutted those instructions.  *See id.*

25       The Court will issue terminating sanctions against Huang for his spoliation of the source

26  code on his surrendered laptop in violation of the preliminary injunction.

27

28  Case No.: 5:18-cv-07233-EJD
    ORDER GRANTING MOTION FOR SANCTIONS
                                      28

United States District Court
Northern District of California

ii.  Rule 37(e)

Terminating sanctions against Huang are also appropriate under Rule 37(e) for his destruction of ESI on his two WeRide-issued laptops, the personal laptop he returned to an Apple store, and the AllRide-issued laptop discussed above.

As to the first prong of Rule 37(e), Huang argues that he was under no duty preserve until he received WeRide's demand letter in the middle of November 2018, therefore he was under no duty to preserve the WeRide-issued laptops or his personal laptop. *See Porter*, 2018 WL 4215602, at *3. The Court disagrees. "The duty to preserve evidence begins when litigation is pending or reasonably foreseeable." *Freedom Equity*, 2016 WL 5870218, at *3. Indeed, the duty may arise "before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Nation v. Ducey*, 2016 WL 7338341, at *7 (D. Ariz. Dec. 19, 2016). Here, AllRide created the kun.huang@allride.ai email account and the test@allride.ai email account, which Huang accessed, in July 2018 while he was still employed by WeRide. He attempted to recruit WeRide employees to join AllRide while still employed by WeRide. WeRide terminated his employment for soliciting WeRide employees on July 31, 2018. Over the next two days, he conducted internet searches for the consequences of soliciting employees. In such circumstances, a reasonable person would understand that litigation was foreseeable as of July 31, 2018. Accordingly, the Court finds that Huang was under a duty to preserve the two WeRide-issued laptops, his personal laptop, and the source code on the AllRide-issued laptop. *See Porter*, 2018 WL 4215602, at *3; *see also Ducey*, 2016 WL 7338341, at *7; *Crown Battery Mfg. Co. v. Club Car, Inc*., 185 F. Supp. 3d 987, 998 (N.D. Ohio 2016).

The Court finds that the second factor also weighs in favor of terminating sanctions because Huang failed to take reasonable steps to preserve the ESI on those computers. He admits to wiping the WeRide-issued MacBook, to deleting files on the WeRide-issued Lenovo, and to returning his personal MacBook to an Apple store. As to the source code on his AllRide-issued laptop, he claims that his periodic backups show that he tried to preserve that ESI as well. However, each backup only saved a portion of his hard drive. Dec. 12, 2019 Kunkel Decl. ¶ 6.

United States District Court
Northern District of California

1    Further, the most recent backup to when he surrendered the laptop occurred on March 18.  *Id.*  So,

2    any changes to the laptop's ESI between March 18 and March 26 were not saved.  The Court finds

3    that the second factor supports issuing sanctions.

4         Huang does not argue that the ESI from these devices has been recovered or can be found

5    from other sources.  The third factor has been met.

6         Finally, from a review of the evidence on the whole, WeRide has carried its burden to

7    show that Huang acted with the intent to deprive WeRide of access to the ESI for this litigation.

8    He spoliated the WeRide-issued laptops after he was terminated but before returning them.  He

9    reformatted the WeRide-issued MacBook making it impossible for WeRide to recover any data

10   from that device.  The evidence also strongly suggests that Huang turned in his personal laptop

11   because Wang received WeRide's cease-and-desist letter.  Wang and Huang were in frequent

12   contact through their work for AllRide.  Wang played a key role in recruiting Huang to AllRide.

13   *See* Dkt. No. 116 at 6; 342 at 5-6.  After Huang joined AllRide, he instructed AllRide's engineers

14   to send weekly reports to him and Wang.  He and Wang had weekly meetings scheduled.  Dkt.

15   No. 342 at 6.  Apple's receipt for Huang returning the MacBook describes the laptop as

16   "working."  *See* Landes Ex. 55 ¶ 16 & Ex. B.  The fact that he returned a working laptop on the

17   same day that Wang received WeRide's letter strongly implies that he did so in order cover his

18   tracks.  Finally, by the time the preliminary injunction issued, Huang would have understood the

19   importance to this litigation of the source code used by AllRide.  The preliminary injunction

20   explicitly forbade him from "altering" source code that had been "reviewed" by him or AllRide.

21   Despite that, he altered the source code saved to his AllRide-issued laptop so that it was not

22   arranged in a coherent manner.  Each instance of spoliation by Huang is directly tied to an event

23   leading to, or occurring in this litigation.  The Court finds that all of this supports the finding that

24   Huang acted with intent.

25        For the same reasons that a sanction less severe than terminating sanctions was not

26   appropriate under Rule 37(b), a lesser sanction is not appropriate here.  Huang spoliated critical

27   evidence; that loss has prejudiced WeRide's ability to raise its affirmative case against Huang and

28   Case No.: 5:18-cv-07233-EJD

United States District Court
Northern District of California

1   AllRide.  Thus, specific jury instructions or an exclusion of evidence offered by Huang cannot

2   cure the prejudice.  *See Leon*, 464 F.3d at 960.  Second, Huang destroyed ESI on three of the

3   devices before the litigation began, so the Court could not have warned him against that spoliation.

4   He spoliated ESI on the fourth device in violation of the preliminary injunction, which

5   demonstrates that further warnings would be futile.  Terminating sanctions must issue against

6   Huang.

7   **IV.     Conclusion and Order**

8         For the reasons discussed above, the Court orders as follows:

9        1.  Wang, Huang, and AllRide shall pay WeRide's reasonable fees and costs incurred

10           in connection with (i) this motion; (ii) all discovery related to their spoliation of

11           evidence; and (iii) the discovery motion practice before Judge Cousins related to

12           Docket Nos. 139, 146, 149, 157, 170, 192.  *See, e.g.*, *Leon*, 464 F.3d at 961

13           (awarding fees in addition to terminating sanctions); *Dong Ah Tire & Rubber Co. v.*

14           *Glasforms, Inc*., 2009 WL 1949124, at *11 (N.D. Cal. July 2, 2009) (awarding fees

15           in addition to issue sanctions).  WeRide shall submit a declaration supporting its

16           claimed costs and fees within 14 days of this Order, and the Court will award

17           WeRide's costs and fees thereafter. Wang, Huang, and AllRide shall be jointly and

18           severally liable for the payment of the Court's award of WeRide's costs and fees,

19           and payment shall be due in full within 15 days of the Court's entry of an award.

20       2.  The Court strikes the answers of Wang (Dkt. No. 261), Huang (Dkt. No. 311); and

21           AllRide (Dkt. No. 254).  The Clerk is directed to enter the default of Wang, Huang,

22           and AllRide.

23       **IT IS SO ORDERED.**

24  Dated: April 16, 2020

25

26                          EDWARD J. DAVILA
                        United States District Judge

27

28  Case No.: 5:18-cv-07233-EJD
ORDER GRANTING MOTION FOR SANCTIONS