QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  William T. Pilon (Bar No. 326487)
  williampilon@quinnemanuel.com
  Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100
§
  Ryan S. Landes (Bar No. 252642)
  ryanlandes@quinnemanuel.com
865 S Figueroa Street
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

*Attorneys for Plaintiffs WeRide Corp. and
WeRide Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| WERIDE CORP. f/k/a JingChi Corp.; WERIDE INC. f/k/a JingChi Inc., <br><br> Plaintiff, <br><br> vs. <br><br> JING WANG, an individual, KUN HUANG, an individual, ZHONG ZHI XING TECHNOLOGY CO. LTD., d/b/a ALLRIDE.AI, ALLRIDE.AI INC., KAIZR, INC., ZKA INC., DOES 1-10 <br><br> Defendants. | CASE NO. 5:18-cv-07233-EJD <br><br> **WERIDE'S APPLICATION FOR ATTORNEYS' FEES AWARDED PURSUANT TO THE COURT'S APRIL 16, 2020 ORDER GRANTING TERMINATING SANCTIONS** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    BACKGROUND ...................................................................................................1

III.   FEES SOUGHT ....................................................................................................6

IV.    ARGUMENT ........................................................................................................7

       A.     Quinn Emanuel's Rates Are Reasonable ...................................................7

       B.     The Number of Hours Quinn Emanuel Expended Was Reasonable ........10

       C.     Quinn Emanuel's Expenses Were Reasonable.........................................15

       D.     WeRide Requests a Short Reply to Defendants' Opposition, if Necessary ............19

V.     CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Academy of Television Arts & Sciences v. National Academy of Television Arts & Sciences,
Am. Arbitration Assoc.,*
    Case No. 72 140 00247 07 JENF (May 19, 2008) ................................................................. 8

*Agent Anonymous v. Gonzalez,*
    2018 WL 6582833 (S.D. Cal. October 30, 2018) ........................................................ 24

*Aguirre v. Los Angeles Unified Sch. Dist.,*
    461 F.3d 1114 (9th Cir. 2006)................................................................................. 13

*Ahanchian v. Xenon Pictures, Inc.,*
    2008 WL 11411621 (C.D. Cal. Dec. 29, 2008) ........................................................ 18

*Antoine v. Atlas Turner, Inc.,*
    66 F.3d 105 (6th Cir. 1995)..................................................................................... 24

*Auriga Capital Corp. v. Gatz Properties,*
    40 A.3d 839 (Del. Ch. 2012).................................................................................. 24

*Badea v. Schwartzer (In re Badea),*
    2019 WL 1070838 (B.A.P. 9th Cir. Mar. 5, 2019) ................................................... 20

*Banas v. Volcano Corp.,*
    47 F. Supp. 3d 957 (N.D. Cal. 2014) .................................................................. 7, 8

*Bd. of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc.,*
    389 F. Supp. 2d 1222 (N.D. Cal. 2005) .................................................................. 22

*Bear Ranch, LLC v. Heartbrand Beef, Inc.,*
    2016 WL 3549483 (S.D. Tex. June 30, 2016) ......................................................... 14

*Bistro Executive, Inc. v. Rewards Network, Inc.,*
    Case No. 04-cv-4640-CBM (C.D. Cal. Nov. 19, 2007)............................................. 8

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.,*
    2020 WL 1677328 (N.D. Cal. Apr. 6, 2020) ............................................... 7, 10, 14

*Bostrom v. PNC Bank, N.A.,*
    2016 WL 5890064 (D. Idaho Oct. 7, 2016) ........................................................... 21

*Camacho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008).................................................................................... 6

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.,*
    2018 WL 2724019 (N.D. Cal. June 6, 2018) ......................................................... 19

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*,
No. CV-08-4563 FB, 2010 WL 5859417, (E.D.N.Y. Dec. 13, 2010) ............................... 22

*Central Soya Company v. Geo. A. Hormel & Co.*,
723 F.2d 1573 (Fed. Cir. 1983) ...................................................................... 15

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ........................................................................................ 10

*Clifton v. Tomb*,
21 F.2d 893 (4th Cir. 1927)............................................................................. 21

*Cohen v. Murphy*,
2004 WL 2779942 (N.D. Cal. Apr. 20, 2004) ............................................... 21

*Conetta v. Nat'l Hair Care Centers, Inc.*,
236 F.3d 67 (1st Cir. 2001) ............................................................................ 24

*Coty Inc. v. Excell Brands, LLC*,
2017 WL 4159929 (S.D.N.Y. Sept. 18, 2017) ............................................... 14

*Crandall v. Starbucks Corp.*,
2016 WL 2996935 (N.D. Cal. May 25, 2016) ................................................ 14

*Cruz v Seward Park Housing Corp.*,
2018 WL 3377538 (Sup. Ct. July 11, 2018) ................................................ 9, 14

*Davis v. City of Idaho Falls*,
2019 WL 2218985 (D. Idaho May 22, 2019)................................................... 23

*Davis v. Fendler*,
650 F.2d 1154 (9th Cir.1981)........................................................................... 22

*DIRECTV, Inc. v. NWS Corp., Am. Arbitration Assoc.*,
Case No. 72 494 Y 00219 09 NOLG (June 15, 2010) ...................................... 8

*DirecTV, LLC v. Mackey*,
2013 WL 5587576 (N.D. Cal. Oct. 10, 2013) ................................................. 24

*Dixon v. City of Oakland*,
2014 WL 6951260 (N.D. Cal. Dec. 8, 2014) .................................................. 14

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
2009 WL 1949124 (N.D. Cal. July 2, 2009).................................................... 24

*Dreith v. Nu Image, Inc.*,
648 F.3d 779 (9th Cir. 2011)............................................................................ 24

*Dufour v. Allen*,
2017 WL 1433303 (C.D. Cal. Apr. 20, 2017)................................................. 21

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
702 F.2d 770 (9th Cir. 1983)............................................................................ 20

*Fischer v. SJB-P.D. Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ................................................................ 14

*Garcia v. Resurgent Capital Servs., L.P.*,
    2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) ...................................... 14

*Grove v. Wells Fargo Fin. California, Inc.*,
    606 F.3d 577 (9th Cir. 2010) .................................................................. 15

*Henry v. Sneiders*,
    490 F.2d 315 (9th Cir. 1974) .................................................................. 22

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................................................. 13

*ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*,
    2017 WL 345988 (N.D. Cal. Jan. 24, 2017) ........................................ 15

*In re Am. Home Mortgage Holdings, Inc.*,
    Case No. 07-11047, Dkt. 3695 (Bankr. D. Del. Apr. 14, 2008) ......... 8

*In re Continental Illinois Securities Litigation*,
    62 F.2d 566 (7th Cir.1992) ..................................................................... 18

*In re Daily*,
    47 F.3d 365 (9th Cir. 1995) .................................................................... 20

*In re Lidoderm Antitrust Litig*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ..................................... 19

*In re Nucorp Energy, Inc.*,
    764 F.2d 655 (9th Cir. 1985) .................................................................... 6

*In re S. California Sunbelt Developers, Inc.*,
    608 F.3d 456 (9th Cir. 2010) .................................................................... 6

*In re Villegas*,
    132 B.R. 742 (B.A.P. 9th Cir. 1991) .................................................... 22

*Ingram v. Oroudjian*,
    647 F.3d 925 (9th Cir. 2011) .................................................................... 7

*Inmates of the Allegheny Cty. Jail v. Wecht*,
    901 F.2d 1191 (3d Cir. 1990) ................................................................. 20

*Jellybean Entm't, Inc. v. Usnile LLC*,
    2013 WL 3283845 (S.D. Cal. June 26, 2013) ..................................... 21

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
    617 F.3d 1146 (9th Cir. 2010) ............................................................... 22

*Keithley v. Homestore.com, Inc.*,
    2009 WL 816429 (N.D. Cal. Mar. 27, 2009) ...................................... 15

*KT AMC Co. v. LWC Capital, LLC*,
    2017 WL 7171719 (C.D. Cal. Nov. 6, 2017) .................................................................... 21

*LaFace Records v. Khan*,
    2008 WL 11395481 (N.D. Cal. Nov. 19, 2008) ............................................................... 21

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ........................................................................................... 22

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
    2019 WL 6840353 (D. Del. Dec. 16, 2019) ....................................................................... 8

*Lithuanian Commerce Corp. v. Sara Lee Hosiery*,
    177 F.R.D. 205 (D.N.J. 1997) ......................................................................................... 20

*Liu v. Liu* (*In re Liu*),
    282 B.R. 904 (Bankr. C.D. Cal. 2002) ............................................................................ 22

*Lockton v. O'Rourke*,
    Case No. BC361629 (Cal. Super. Ct. Feb. 23, 2011) ........................................................ 8

*McFarland v. Gregory*,
    425 F.2d 443 (2d Cir. 1970) ........................................................................................... 20

*Monrovia Nursery Co. v. Rosedale*,
    Case No. BC351140 (Cal. Super. Ct.  Jan. 12, 2009) ........................................................ 8

*Montrose Chem. Corp. v. Am. Motorists Ins.*,
    926 F. Supp. 944 (C.D. Cal. 1995) .................................................................................. 21

*Moralez v. Whole Foods Mkt., Inc.*
    2013 WL 3967639 (N.D. Cal. July 31, 2013) .................................................................. 18

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
    2016 WL 1255454 (N.D. Cal. Mar. 31, 2016) ................................................................. 14

*Oberfelder v. City of Petaluma*,
    2002 WL 472308 (N.D. Cal. Jan. 29, 2002) .................................................................... 14

*Ocelot Oil Corp. v. Sparrow Industries*
    847 F.2d at 1465-66 ........................................................................................................ 22

*Opticurrent, LLC v. Power Integrations, Inc.*,
    2019 WL 2869954 (N.D. Cal. July 3, 2019) .................................................................... 17

*Ornstein v. Canites*,
    2018 WL 4538784 (N.D. Cal. September 21, 2018).................................................... 23, 24

*Packaging Advantage Prop. Assocs., LLC v. Packaging Advantage Corp.*,
    Case No. VC045957 (Cal. Super. Ct. Nov. 6, 2007) ......................................................... 8

*Paladin Assocs., Inc. v. Montana Power Co.*,
    328 F.3d 1145 (9th Cir. 2003)......................................................................................... 20

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ................................................................................................ 10

*Perfect 10, Inc. v. Giganews, Inc.*,
    2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ........................................................ 7

*Pesaplastic, C.A. v. Cincinnati Milacron Co.*,
    799 F.2d 1510 (11th Cir. 1986) ............................................................................ 20

*PQ Labs, Inc. v. Qi*,
    2015 WL 224970 (N.D. Cal. Jan. 16, 2015) ........................................................ 14

*Riverside Cnty. Dept. of Mental Health v. A.S.*,
    Case No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010) ........................................ 8

*Rode v. Credio*,
    016 WL 5339682 (D. Ariz. August 3, 2016) ........................................................ 24

*Rodriguez v. Cty. of Los Angeles*,
    96 F. Supp. 3d 1012 (C.D. Cal. 2014) .................................................................. 17

*Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*,
    226 F. Supp. 3d 1141 (D. Or. 2016) ...................................................................... 23

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
    2017 WL 6059271 (N.D. Cal. Dec. 7, 2017) ......................................................... 7

*Stonebrae, L.P. v. Toll Bros.*,
    2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ........................................................ 14

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ................................................................................ 20

*Todd Shipyards Corp. v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor*,
    545 F.2d 1176 (9th Cir. 1976) .............................................................................. 20

*Transweb, LLC v. 3M Innovative Props. Co.*,
    No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) ..................................................... 8

*United States v. Asay*,
    614 F.2d 655 (9th Cir. 1980) ................................................................................ 20

*Verliant Energy, Inc. v. Barry*,
    2015 WL 12990196 (N.D. Cal. Mar. 31, 2015) ................................................... 21

*Virtual Vision, Inc. v. Praegitzer Indus., Inc.*,
    124 F.3d 1140 (9th Cir. 1997) .............................................................................. 20

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.*,
    2014 WL 5465373 (S.D. Cal. Oct. 28, 2014) ...................................................... 21

*Wehrs v. Wells*,
    688 F.3d 886 (7th Cir. 2012) ................................................................................ 24

*White v. Gen. Motors Corp.*,
    908 F.2d 675 (10th Cir. 1990) ................................................................ 20

**<u>Other Authorities</u>**

National Law Journal, ALM Legal Intelligence,
    NLJ Billing Report (2017) ........................................................................ 9

**<u>Federal Cases</u>**

Fed. R. Civ. P. 37 ........................................................................................ 17

Fed. R. Civ. P. 54 ........................................................................................ 17

L.R. 54-3(c)(1) ............................................................................................ 16

## I.   INTRODUCTION

This Court determined in its April 16, 2020 Order granting terminating sanctions against Defendants Kun Huang, Jing Wang, AllRide.AI Inc., and Zhong Zhi Xing Technology Co. Ltd. d/b/a AllRide.AI ("ZZX" and together with AllRide.AI Inc., "AllRide") that Plaintiffs WeRide Corp. and WeRide Inc. ("WeRide") are entitled to recover their reasonable fees and costs incurred in connection with (i) WeRide's motion for terminating sanctions, filed October 21, 2019; (ii) all discovery related to Defendants' spoliation of evidence, which was disclosed on August 15, 2019; and (iii) the discovery motion practice before Judge Cousins related to Docket Nos. 139, 146, 149, 157, 170, 192, which encompassed disputes raised as early as May 10, 2019.  Dkt. 469 at 31. Accordingly, WeRide respectfully moves the Court for an Order for recovery of $1,968,915.37 in fees and costs.

## II.   BACKGROUND

On April 16, 2020, this Court issued an order granting WeRide's motion for terminating sanctions and ordering Defendants to  pay "WeRide's reasonable fees and costs incurred in connection with (i) this motion; (ii) all discovery related to their spoliation of evidence; and (iii) the discovery motion practice before Judge Cousins related to Docket Nos. 139, 146, 149, 157, 170, 192." Dkt. 469 at 31 (the "Terminating Sanctions Order").  The Court directed WeRide to submit a declaration supporting its claimed costs and fees within 14 days.  *Id.*

Pursuant to the Court's direction, WeRide's counsel at Quinn Emanuel reviewed all of its time and expense records, and identified $1,968,915.37 in fees and costs incurred in connection with the tasks for which the Court ordered reimbursement. Stern Decl. ¶ 31.  The tasks Quinn Emanuel identified as reimbursable are summarized below.

In connection with the discovery motion practice before Judge Cousins related to Dockets Nos. 139, 146, 157, 170, and 192, Quinn Emanuel identified time entries dating from May 10, 2019, including without limitation:

- Preparing the six joint discovery letter briefs.

- Preparing for and presenting oral argument at four discovery hearings dated June 5, 2019 (Dkt. 248), June 19, 2019 (Dkt. 249), August 2, 2019 (Dkt. 250), and August 16, 2019 (Dkt. 234).

- Extensive review and analysis of the few documents produced by Defendants, as well as data recovered from the devices surrendered to WeRide by Kun Huang pursuant to Court order, to identify Defendants' misrepresentations and concealment.

- Review of Defendants' discovery responses, which either agreed to produce documents that had been destroyed, or else claimed that spoliated documents never existed in the first place.

- Continuous meet and confer to try to resolve discovery disputes, which were at all times a wasted effort because of Defendants' spoliation of evidence and concealment.

- Preparing for and taking two depositions of AllRide's corporate representative in Hong Kong on June 6-7, 2019, which depositions were ordered in the Court's March 22, 2019 Preliminary Injunction Order. Dkt. 116 at 27. This deposition became one of the subjects of the discovery disputes before Judge Cousins. As Judge Cousins later found, AllRide's representative was unprepared on key subjects.

Stern Decl. ¶ 22 & Ex. H.

In connection with discovery related to Defendants' spoliation of evidence, Quinn Emanuel identified time entries dating from August 15, 2019, including without limitation:

- Pursuant to the Court's August 16, 2019 Order on Spoliation (Dkt. 235), drafting a proposed order governing the appointment of a special master and neutral forensic inspector, negotiating terms with Defendants, and presenting competing proposed orders to the Court. Dkt. 260.

- Pursuant to the Court's August 27, 2019 Order on Discovery Special Master and Neutral Forensic Inspection (Dkt. 266), researching candidates for special master and neutral forensic investigator, negotiating proposed candidates with Defendants, and presenting competing proposals to the Court – required because Defendants failed to

meet and confer about candidates and did not share any proposals until hours before the deadline.  Dkts. 271-273.

- Preparing and serving 25 separate spoliation interrogatories on Defendants on August 23, 2010, as authorized by the Court's August 16, 2019 Order on Spoliation.  Dkt. 235.

- Reviewing seven sets of responses to WeRide's spoliation interrogatories served by Defendants: initial responses by Huang, Wang, and AllRide on August 30, 2019; amended responses served by AllRide on September 12, 2019; a supplemental response served by AllRide on September 23, 2019; a supplemental response served by Huang on September 24, 2019; and a second supplemental response served by AllRide on October 8, 2019.

- Preparing and serving 22 requests for production on Defendants on August 23, 2019, and reviewing the 173,368 documents, comprising 1,454,111 pages, produced by Defendants in response, most of which were wholly irrelevant to the proceedings.  *See* Dkt. 469 at 24.

- Preparing for and taking nine depositions: Gary Tao as corporate representative for AllRide (September 11, 2019), Rongrong Guo (September 12, 2019), Kun Huang as corporate representative for AllRide (September 13, 2019), Jing Wang (September 16, 2019), Kun Huang in his individual capacity (September 18, 2019), Thomas Barce as corporate representative for AllRide (September 20 and 26, 2019), Gordon Fang (September 26, 2019), and Han Lai (October 23, 2019).  Jing Wang, Rongrong Guo, and Thomas Barce were improperly instructed not to answer plainly relevant questions about Defendants' preservation efforts, forcing WeRide to seek the Special Master's assistance.  Dkt. 291.  In addition, Thomas Barce produced hundreds of pages of documents the morning of his hearing, requiring the hearing to be continued to a second day.  This was not an isolated incident – Gary Tao also produced documents at his deposition, which he immediately admitted were manufactured for litigation and misleadingly incomplete.

- Attending 27 interviews conducted by FTI, the neutral forensic investigator: Xiang Xiao (September 6, 2019; October 10, 2019), Fei Liu (September 9, 2019; September 10, 2019), Gordon Fang (September 12, 2019; September 25, 2019; October 12, 2019), Yahui Liu (September 11, 2019), Johnny Chen (September 11, 2019; September 18, 2019), Peijian Gu (September 12, 2019; October 10, 2019), Dongke Wang (September 12, 2019), Youdian Pei (September 17, 2019), Patrick Lam (September 17, 2019), Yuan Wu (September 18, 2019), Haibao Bao (September 18, 2019), Yinzi Chen (September 19, 2019), Zhenlin Zhang (September 19, 2019), Yisong Qiao (September 20, 2019), Weijian Xu (September 20, 2019), Jie Huang (September 20, 2019), Rongrong Guo (September 23, 2019), Jing Wang (September 23, 2019), Kun Huang (September 25, 2019), Thomas Barce (October 11, 2019), and Xiaodong Guo (October 18, 2019). As FTI found, additional interviews were necessary because interviewees provided "inconsistent responses" and Defendants did not initially provide an appropriate IT witness.

- Briefing and arguing numerous disputes about discovery withheld by Defendants in defiance of their discovery obligations and multiple court orders.

- Coordinating the search for defendants' source code with FTI, defendants, and forensic experts.

- Conducting expedited expert analysis of the source code produced by defendants, including supervising the drafting of three expert declarations submitted on September 30, 2019 (Dkt. 330-57), October 21, 2019 (Dkt. 330-1), and December 13, 2019 (Dkt. 387-1), and posing numerous ad hoc questions to WeRide's source code expert, Dr. Matthew Walter, required by Defendants' ever-changing story about the capabilities of their source code.

- Briefing and arguing numerous disputes before Martin Quinn, the court-appointed special master, including multiple written submissions and hearings, which resulted in five formal written orders, including: an order compelling defendants to produce their litigation hold notices and answer questions at spoliation-related depositions about

their litigation hold notices (Dkt. 291); an order regarding redactions applied to the notes of ZZX's 30(b)(6) witness on spoliation (Dkt. 297); an order compelling ZZX to provide fulsome responses to WeRide's spoliation-related interrogatories (Dkt. 298); and two orders compelling ZZX to make its source code available for imaging and inspection by WeRide as part of the spoliation investigation. *See* Dkts. 363 & 364. Stern Decl. ¶ 21 & Ex. H.

In connection with the terminating sanction motion, Quinn Emanuel identified time entries dating from September 3, 2019, including without limitation:

- Preparing and filing four briefs in support of the motion, dated October 21, 2019, December 13, 2019, January 13, 2020, and February 24, 2020.  Dkt. 330, 387, 407, 434.  The extra rounds of briefing were demanded by Defendants over WeRide's vehement objections.

- Preparing and filing 10 declarations in support of the motion.  *Id.*

- Preparing and filing 270 exhibits in support of the motion.  *Id.*

- Reviewing and evaluating the five briefs, 19 declarations, and 78 exhibits defendants filed in opposition to this motion—again, due to Defendants' request for extra rounds of briefing.  Dkts. 368, 370, 372, 400, 431.

- Preparing for and arguing the hearing on this motion.

- Preparing this fee application.

Stern Decl. ¶ 22 & Ex. H.

Quinn Emanuel calculated the fees attributable to these tasks using the following methodology: If all tasks in an entry were reimbursable, Quinn Emanuel claimed the time spent in the entire entry.  If a time entry contained both reimbursable and non-reimbursable tasks, an initial apportionment was calculated by dividing the number of reimbursable tasks in each block-billed entry by the number of all tasks in the entry and multiplying the result by the total hours spent.  Stern Decl. ¶ 27.  As a hypothetical example, the rough apportionment would claim 3/5 of an 1-hour entry with five tasks, three of which were reimbursable, or 0.6 hours.  *Id.*  In many instances, this would be the time claimed.  *Id.*  Second, Quinn Emanuel judgmentally adjusted the initial number if appropriate

based on the content of the entries; for example, taking a deposition generally takes more time than a phone call discussing the deposition. *Id.* As a final check, each attorney reviewed his or her own entries to ensure that the apportionment was accurate. *Id.* The final reduced amount of "claimed" time in each entry was then multiplied by the applicable hourly rate of the timekeeper, and all the claimed entries were added together to calculate the total amount of "claimed" fees. *Id.*

A similar approach was taken to calculate expenses incurred. Quinn Emanuel reviewed its contemporaneous expense records to identify expenses incurred in connection with reimbursable tasks identified above, and apportioned the costs accordingly. *Id.* ¶ 31. Quinn Emanuel's expenses include expert fees for source code analysis and computer forensic investigation, court reporting fees and copying costs for depositions taken in connection with the spoliation investigation and the June 6 and 7, 2019 depositions of AllRide's corporate representative in Hong Kong (which was one of the subjects of the discovery disputes before Judge Cousins), travel costs for the above depositions and hearings, online research in connection with the terminating sanctions motion, and document hosting costs incurred in connection with the spoliation investigation. *Id.*

## III.   FEES SOUGHT

As set forth above and in the accompanying declaration, WeRide seeks recovery of **$1,968,915.37**, including $1,720,089.00 in attorneys' fees and $248,826.37 in expenses incurred in connection with the terminating sanctions motion, the spoliation investigation, and the discovery disputes before Judge Cousins.[1]

---

[1] WeRide also seeks recovery of the fees incurred in preparing this application, or any fees it incurs in the future to secure the fee award. It is well established that time spent on a fee application should be included in the fee award because "it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (overturning district court's refusal to consider fees incurred in a fee application); *see also In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-60 (9th Cir. 1985) ("federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."); *In re S. California Sunbelt Developers, Inc.*, 608 F.3d 456, 463 (9th Cir. 2010) (same).

## IV.  ARGUMENT

### A.  Quinn Emanuel's Rates Are Reasonable

The rates charged by Quinn Emanuel are reasonable in light of prevailing market rates charged by similar firms, particularly given Quinn Emanuel's widely-recognized quality and expertise.  *See BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 2020 WL 1677328, at *1 (N.D. Cal. Apr. 6, 2020) ("The reasonableness of an hourly rate should be determined based on the rates prevailing in the community for 'lawyers of reasonably comparable skill, experience and reputation.'") (internal quotations omitted).  The reasonableness of Quinn Emanuel's rates is bolstered by "evidence that a billing rate was the usual rate the attorney charges for his or her services."  *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *5 (C.D. Cal. Mar. 24, 2015).  Quinn Emanuel's rates for this representation were actually 10% ***below*** its standard billing rates. Stern Decl. ¶ 11.  And WeRide has actually paid all of Quinn Emanuel's invoices to date, which "adds weight to the presumption of reasonableness." *Id.* ¶ 26; *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 2017 WL 6059271, at *11 (N.D. Cal. Dec. 7, 2017).  Further, "it is appropriate for the district court to rely on its own familiarity with the legal market when assessing the reasonableness of hourly rates claimed in fees motions." *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 966 (N.D. Cal. 2014) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Quinn Emanuel is recognized as one of the leading law firms in the Bay Area, the United States, and around the world, including in the area of Intellectual Property.[2]  Courts in California and across the country have regularly found Quinn Emanuel's rates to be reasonable.  Most recently, Quinn Emanuel's client was awarded over $11 million in fees in a similar trade secret misappropriation case, where the "fees charged for the core attorneys range from their highest hourly rates of $705.00 to $1,040." *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 6840353, at *12 (D. Del.

---

[2] *See, e.g.*, Fearsome Foursome 2020, BTI Consulting, https://www.bticonsulting.com/btifearsomefoursome2020; IP Group Of The Year 2018: Quinn Emanuel, ttps://www.law360.com/articles/1004210/ip-group-of-the-year-quinn-emanuel.

Dec. 16, 2019).   Numerous courts, arbitrators, and other decision makers have reached the same conclusion, often emphasizing the degree of success Quinn Emanuel achieved in the matter.[3]

In this matter, upon being retained, Quinn Emanuel applied an across-the-board 10% discount on its typical rates.  Stern Decl. ¶ 11 & Ex. H.  Quinn Emanuel's effective hourly rates post-discount for this matter ranged from $517.50 per hour for a junior associate to $1,156.50 per hour for the lead partner.  Stern Decl. ¶ 11 & Ex. H.  The total amount of fees claimed divided by total hours worked reflects an effective blended rate of **$760.66**.  Courts in this District have found similar rates to be reasonable.  For example, ***over five years ago*** (when law firm rates were much lower than they are today), this District found Cooley's "hourly rates ranging from $355 to $1,095 per hour for partners and associates . . . are within the range, though on the high end, of prevailing market rates for comparable firms in the Northern District."  *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014).

The two partners who worked on this matter charged an average rate of $1,056 per hour.  Stern Decl. ¶ 7.  This rate is significantly lower than the average hourly rates charged by other large, well-regarded Bay Area law firms.  For example, according to a survey conducted by the National Law

---

[3]   *See also* Report and Recommendation of Special Master, *Transweb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) (ECF No. 567) (Special Master's ruling finding that Quinn Emanuel was a "premier litigation firm" and that total fees of $26,146,493.45 were reasonable); Final Award, *DIRECTV, Inc. v. NWS Corp., Am. Arbitration Assoc.*, Case No. 72 494 Y 00219 09 NOLG (June 15, 2010) (find Quinn Emanuel's rates and hours reasonable); Notice of Ruling on Quinn Defendants' Motion for Award of Attorneys' Fees, *Lockton v. O'Rourke*, Case No. BC361629 (Cal. Super. Ct. Feb. 23, 2011) (attaching Feb. 14 court order finding Quinn Emanuel's rates and total hours reasonable); Order Granting Plaintiff's and Plaintiffs in Intervention's Motions for Attorneys' Fees, *Monrovia Nursery Co. v. Rosedale*, Case No. BC351140 (Cal. Super. Ct.  Jan. 12, 2009) (finding Quinn Emanuel's rates and total fees reasonable); Civil Minutes re: Order Granting Motion for Attorneys' Fees, *Riverside Cnty. Dept. of Mental Health v. A.S.*, Case No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010) (ECF No. 123) (awarding full amount of attorneys' fees sought for work performed by Quinn Emanuel); Final Award, *Academy of Television Arts & Sciences v. National Academy of Television Arts & Sciences, Am. Arbitration Assoc.*, Case No. 72 140 00247 07 JENF at ¶ 2.2 (May 19, 2008) (finding Quinn Emanuel's billable rates and hourly totals reasonable); Order Approving Interim Fee Requests Regarding Professionals, *In re Am. Home Mortgage Holdings, Inc.*, Case No. 07-11047, Dkt. 3695 (Bankr. D. Del. Apr. 14, 2008) (finding attorneys' fees requested by Quinn Emanuel were reasonable); Order Granting In Part Defendant Packaging Advantage Corp.'s Motion For An Award Of Attorneys' Fees And Costs, *Packaging Advantage Prop. Assocs., LLC v. Packaging Advantage Corp.*, Case No. VC045957 (Cal. Super. Ct. Nov. 6, 2007) (granting full amount of Quinn Emanuel's fee request); *Bistro Executive, Inc. v. Rewards Network, Inc.*, Case No. 04-cv-4640-CBM (C.D. Cal. Nov. 19, 2007) (ECF No. 357) (finding Quinn Emanuel's attorney rates and hours were reasonable).

Journal, the average hourly rate for a partner *in 2017* (three years ago) was $1,150 per hour at Gibson Dunn, $1,115 per hour at Kirkland & Ellis, and $1,350 per hour at Simpson Thacher & Bartlett. Ex. A (National Law Journal, ALM Legal Intelligence, NLJ Billing Report (2017) ("2017 NLJ Billing Report")) at 6, 9, 18. According to the Vault 2020 List of Best Law Firms in Northern California, all three of these firms are ranked *below* Quinn Emanuel.[4]

Similarly, the average $691.88 per hour rate charged by the associates on the Quinn Emanuel team is similar to or lower than average associate rates at other firms: $685 at Gibson Dunn, $735 per hour at Kirkland & Ellis and $900 per hour at Simpson Thacher & Bartlett (again, *in 2017*). *Compare* Stern Decl. ¶ 13 *with* Ex. A (2017 NLJ Billing Report) at 6, 9, 18.

Finally, Quinn Emanuel's rates are comparable to the rates charged by Defendants' own law firms. Vinson & Elkins, counsel for Kun Huang, submitted an application testifying that its Bay Area rates of $750 to $1,150 per hour for partners and $550 to $845 per hour for associates were reasonable *in 2017*.[5] Kilpatrick Townsend, counsel for Jing Wang and Kaizr, charged up to $975 per hour in 2017,[6] and Wilson Sonsini, prior counsel for Kun Huang, charged up to $930 per hour for partners in 2017.[7] Greenberg Traurig, counsel for AllRide, has repeatedly submitted fee applications charging over $1,000 per hour for shareholders and up to $720 per hour for associates, supported by sworn affidavits that its fees are reasonable.[8] After submitting sworn testimony in support of their own rates, Defendants' counsel cannot now be heard to complain that Quinn Emanuel's similar rates are unreasonable.

---

[4] Vault, 2020 Best Law Firms in Northern California, https://www.vault.com/best-companies-to-work-for/law/best-law-firms-in-each-us-region/northern-california.

[5] Ex. B (Declaration of William E. Lawler submitted in support of fee application in *In re Roundup Products Liability Litig.*) at 3.

[6] Ex. C (Kilpatrick Townsend fee application in *In re Nuverra Environmental Solutions, Inc.*) at 62.

[7] Ex. D (Wilson Sonsini fee application in *In re ATopTech, Inc*) at 7 (charging hourly rates of $930 for a partner and $615 to $630 for associates).

[8] Ex. E (Greenberg Traurig fee application in *In re Center City Healthcare, LLC*) at 2 (hourly rates of up to $1,025 for shareholders and $720 for associates); Ex. F (Greenberg Traurig fee application in *In re Hospital Acquisition LLC*) at 4, 9 (charging hourly rates of up to $1,025 for shareholders, and averaging $550 for associates); *Cruz v Seward Park Housing Corp.*, 2018 WL 3377538, at *3 (Sup. Ct. July 11, 2018) (ruling on fee application where Greenberg Traurig's hourly rates "topped $1,000 per hour").

### B.     The Number of Hours Quinn Emanuel Expended Was Reasonable

The volume of hours expended in this matter was reasonable given the size and complexity of the litigation, the amount at stake in the dispute, and Defendants' unreasonable litigation approach that constantly multiplied proceedings.  *See BladeRoom*, 2020 WL 1677328, at *1 ("There is a strong presumption that the lodestar figure represents a reasonable fee."); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (same); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (explaining that "the novelty and complexity of a case" should be "reflected in the number of billable hours recorded by counsel").

The effort spent on this litigation is only partially reflected in the public docket, which now has 489 entries—more than many cases have through trial.  This case involved a complex, fast-paced, highly technical investigation into the misappropriation and spoliation of cutting-edge autonomous vehicle source code across two continents.  The bulk of Quinn Emanuel's work at issue in this application occurred over the course of two months, during which time Quinn Emanuel engaged in significant written discovery, took nine depositions (eight of which were scheduled within one 15-day period), telephonically attended 27 interviews, prepared and argued a multitude of discovery disputes before Judge Davila, Magistrate Judge Cousins, and an appointed special master, and directed a complex source code review and comparison, all while coordinating with FTI's independent investigation.  *See* Stern Decl. ¶¶ 20-22.  All of this work culminated in an expedited motion for terminating sanctions comprising four rounds of briefing.  Not to mention ***another*** sanctions motion when Defendants refused to comply with five Court orders (beginning with Judge Cousins' order at Dkt. 252 resolving the letter briefs this Court ruled could be the subject of fee recovery) and attempted to use confidential information produced in this action to incite a (baseless) criminal investigation against WeRide in China.[9]  Dkts. 330, 387, 407, 434 (terminating sanctions briefing); Dkt. 376 (second sanctions motion).  At stake: an autonomous vehicle platform in which WeRide has already

---

[9]  To the extent the Court does not believe fees incurred in connection with WeRide's second sanctions motion are subject to recovery on this application, WeRide seeks them in the sanctions motion itself, which is still pending before Judge Cousins.  *See* Dkt. 479.

invested over "tens of millions of dollars" (Dkt. 34-2 ¶ 8), and which has the potential to make WeRide a major player in a multi-trillion dollar market.  Dkt. 34 at 2-3.

The amount of work performed by Quinn Emanuel, and the fees incurred by WeRide, were driven in significant part by Defendants' unreasonable, sanctionable litigation approach.  Defendants stonewalled discovery for over two months while knowing that they had committed massive spoliation and concealing that fact from WeRide and the Court.  Dkt. 469 at 4-5.  Defendants presented unprepared witnesses for court-ordered depositions, and regularly produced key documents the morning of relevant depositions—some of which turned out to be manufactured and misleading—which necessitated disputes before the special master and additional deposition sessions (and thus additional preparation and travel).  Dkt. 252 at 11-12; Dkt. 330 at 15.

Even after promising "transparency" when their spoliation could be hidden no longer,  Dkt. 231 at 3, Defendants continued to obstruct and conceal.  Defendants did not initially disclose the email addresses that had been deleted or how they had been deleted; it took extensive document review, analysis, demands, and multiple depositions for WeRide to uncover that  at least *six* email addresses for key parties and witnesses were deleted: at least one of Wang's email addresses was deleted because Wang wanted to conceal his connection to AllRide; two email addresses for Wang and his wife used fake names; and at least one email account for Huang had been deleted and then recreated, obscuring its true creation date.  Dkt. 469 at 8-9, 26.  Piecing together these events from the scant surviving evidence was a significant undertaking for Quinn Emanuel.  Defendants submitted false declarations and interrogatory responses, which obviously hindered WeRide's ability to litigate this case.  Dkt. 330 at 15.  Defendants instructed witnesses at spoliation depositions not to answer questions about their document preservation instructions, requiring WeRide to obtain an order from the special master that these questions had to be answered, and then to engage in a follow-up process to get answers to the obviously-relevant questions.  Dkt. 291.

Defendants were also ordered to make their source code available for full-disk forensic imaging (after failing to produce the correct code in response to two prior Court orders, Dkt. 116 at 27, Dkt. 252 at 6-7), but resisted until—after extensive correspondence to the Special Master and multiple telephonic hearings—WeRide obtained two more orders from the Special Master.  Even then,

Defendants still never produced the source code its witnesses and other evidence described.  Dkt. 342 at 16-17, Dkts. 363-364.  Defendants repeatedly objected to the Court's ruling (initially reflected in Dkt. 252) compelling production of investment documents they claim are Chinese state secrets, resulting in ***four more*** orders to produce these documents, which they still refuse to obey, even though their pretextual grounds to challenge the order are now exhausted.  Dkt. 464 at 1-3.  Defendants now claim, gallingly, that because they have already been defaulted via sanction, there is no point to complying with Court orders anymore, and no further "stick" the Court has to compel them to comply (this, of course, is wrong).  *See* Dkt. 485 at 2-3.  And while withholding relevant information, Defendants inflated their productions with over a million pages of largely irrelevant material, including publicly available open-source code and multiple copies of other material apparently downloaded from the Internet.  Dkt. 469 at 24.

And perhaps the best example of all:  When the Court ordered that FTI assess Defendant's spoliation from ***any*** source (Dkt. 252 at 5; Dkt. 266 ¶ 3(d)), Defendants only facilitated a review of email spoliation, and denied FTI access to do anything else.  Dkt. 407 at 13.  Then, after WeRide filed its opening sanctions brief, Defendants feigned disappointment that FTI had only reviewed email in its initial investigation (even though this was of course a direct result of Defendants' own obstruction).  *Id.* at 14.  Defendants then demanded an extended FTI investigation and multiple additional rounds of briefing, greatly multiplying the work Quinn Emanuel had to do, but not changing the result.  *Id.* Even now—as hard as it is to believe—Defendants want this process to drag on even longer with even more FTI review and, presumably, even more briefing and hearings.  Dkt. 489 at 1-2.  Defendants have had close to a year to find the "staggering" amount of evidence they destroyed.  The notion that FTI, WeRide, and the Court should be put to the burden of Defendants' unending wild goose chase reflects an utter lack of remorse and an outright contempt for the litigation process.  WeRide opposes this in the strongest terms.

All of Defendants' maneuvering created additional work for the Quinn Emanuel team, which was outnumbered more than five to one by Defendants' counsel.  Twenty-seven attorneys formally appeared in this case for Defendants (and two more attorneys appeared to represent Greenberg

Traurig, AllRide's attorneys), while only five Quinn Emanuel attorneys appeared for WeRide.[10]

Quinn Emanuel never sent more attorneys to a hearing than Defendants.  Discovery hearings were

often argued by one Quinn Emanuel associate, and at dispositive hearings, Quinn Emanuel attorneys

were always outnumbered two to one.  *See* Dkts. 115 (Mar. 21, 2019 Preliminary Injunction hearing: 3

Quinn Emanuel attorneys arguing against 6 attorneys for Defendants); 130 (May 23, 2019 Motion to

Dismiss hearing: 2 vs. 4); Dkt. 306 (Oct. 10, 2019 Preliminary Injunction Hearing: 3 vs. 6); 446 (Feb.

27, 2020 Terminating Sanctions Hearing: 3 vs. 6).  Important depositions were taken and defended by

only one Quinn Emanuel associate, and no more than two attorneys ever attended a deposition; while

Defendants had at least three and up to five attorneys, including multiple partners, attending any given

deposition.  Stern Decl. ¶ 5.[11]  As with hourly rates, Defendants cannot be heard to argue that Quinn

Emanuel overstaffed this case when its team was so much leaner than Defendants' team.

The complete success Quinn Emanuel obtained for WeRide in this litigation further supports

the reasonableness of the fees claimed.  *See Aguirre v. Los Angeles Unified Sch. Dist*., 461 F.3d 1114,

1118 (9th Cir. 2006) ("the level of a plaintiff's success is relevant to the amount of fees to be

awarded.") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983)).  WeRide obtained terminating

sanctions against Defendants, striking their answers and placing them in default.  Moreover, Quinn

Emanuel achieved this dispositive result after incurring a total of $4,147,183.96 in fees on the case as

a whole (less than half of which is sought in the instant motion), far short of the average (mean) $6.5

million cost of taking a trade secret case to conclusion through trial and appeal, according to a 2019

---

[10]   The entire Quinn Emanuel team only included ten attorneys over the life the case, including three junior associates (one of whom made only a cameo appearance to cover one source code review) and two document review staff attorneys who did not file appearances and worked in very narrow roles.  Stern Decl. ¶ 7.  WeRide expects many more attorneys worked on this case for Defendants without making an appearance, including the two Chinese law firms hired to review Defendants' documents (after their Chinese law objection had already been overruled).  Stern Decl. ¶ 9.

[11]   Quinn Emanuel's efficiency should not be taken to mean that this litigation has not burdened WeRide.  As set out in detail in this application, WeRide incurred $1,968,915.37 in connection with the terminating sanctions motion and related efforts, and even more trying to pursue the merits of this litigation.  Most or all of this cost could have been avoided if Defendants had been forthcoming about the facts of the case (or, of course, refrained from the underlying wrongdoing in the first place).

survey by the American Intellectual Property Law Association.[12]   And although WeRide does not seek the associated fees here, WeRide of course achieved substantial additional success along the way, including defeating multiple motions to dismiss, and obtaining two preliminary injunctions.

WeRide anticipates that Defendants will complain—hypocritically—that Quinn Emanuel's time is block billed, consistent with Quinn Emanuel's standard practice and as agreed with WeRide. Stern Decl. ¶ 27.[13]   However, block-billing "is not per se objectionable if the descriptions provided are adequate."   *BladeRoom*, 2020 WL 1677328, at *7 (citations omitted).[14]   Quinn Emanuel has extensively reviewed its invoices and segregated time spent on tasks for which the Court has not yet ordered recovery of fees.[15]   Through this process, Quinn Emanuel has identified $1,720,089.00 in fees that it believes are squarely attributable to the tasks listed in the Court's terminating sanctions order. Those fees are supported by detailed line-by-line entries in the invoices submitted with this

---

[12]   Ex. G (AIPLA 2019 Report of the Economic Survey) at I-220.   AIPLA also reports that the median cost of a trade secret misappropriation case was $7.5 million, such cases can run over $8 million, and the average cost for a "corporate" misappropriation case was $9.1 million.   *Id.*

[13]   Defendants' law firms also have a practice of block billing, and have argued that the practice is reasonable when it suits their interests.   *See Cruz v Seward Park Housing Corp.*, 2018 WL 3377538, at *1 (N.Y. Sup. Ct. July 11, 2018) (accepting Greenberg Traurig's argument that block billing was reasonable); *Coty Inc. v. Excell Brands, LLC*, 2017 WL 4159929, at *2 (S.D.N.Y. Sept. 18, 2017) (accepting Kilpatrick Townsend's argument that block billed time was reasonable); *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, 2016 WL 3549483, at *4 (S.D. Tex. June 30, 2016), *aff'd* 885 F.3d 794 (5th Cir. 2018) (accepting Vinson & Elkins' argument that block billing was reasonable).

[14]   *See also Oberfelder v. City of Petaluma*, 2002 WL 472308, at *3 (N.D. Cal. Jan. 29, 2002) ("The charge of blocked billing does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures."); *Stonebrae, L.P. v. Toll Bros.*, 2011 WL 1334444, at *9 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013) ("Block-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award."); *PQ Labs, Inc. v. Qi*, 2015 WL 224970, at *3 (N.D. Cal. Jan. 16, 2015) ("block billing has been accepted in this district"); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2016 WL 1255454, at *5 (N.D. Cal. Mar. 31, 2016), *aff'd*, 739 F. App'x 890 (9th Cir. 2018) ("block billing has been accepted in this district." (internal quotation omitted)); *Crandall v. Starbucks Corp.*, 2016 WL 2996935, at *3 (N.D. Cal. May 25, 2016) (declining to reduce fees award for block billing); *Dixon v. City of Oakland*, 2014 WL 6951260, at *11 (N.D. Cal. Dec. 8, 2014) (same); *Garcia v. Resurgent Capital Servs., L.P.*, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012) (same); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("plaintiff's counsel can meet his burden . . . by simply listing his hours and identify[ing] the general subject matter of his time expenditures.").

[15]   While Defendants will most likely concoct some way to nitpick time spent on individual tasks with the benefit of hindsight, Quinn Emanuel litigated this case behind the scenes the same way it did at hearings and depositions: as leanly and efficiently as reasonably possible, while still ensuring that WeRide's rights were protected.   As all of these fees were submitted for payment to the client (and actually paid), Quinn Emanuel needed to be cost efficient, and its timekeeping is defensible.

application.  *See* Stern Ex. H.[16]  And of course, if the Court wishes, Quinn Emanuel is prepared to submit its full unredacted invoices for *in camera* review.

Thus, especially given the complexity of this litigation, and the result obtained, Defendants' total fees are reasonable.

### C.    Quinn Emanuel's Expenses Were Reasonable

In addition to attorneys' fees, the Court ordered Defendants to pay WeRide's reasonable costs incurred in connection with the sanctions motion, the spoliation investigation, and the discovery disputed before Judge Cousins.  Dkt. 469 at 31.  The Court's order is consistent with Ninth Circuit authority holding that attorneys' fee awards include all "sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit."  *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 581 (9th Cir. 2010) (quoting *Central Soya Company v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983)).  WeRide requests recovery of **$248,826.37** in expenses, broken down as follows:

**Expert Services of Dr. Matthew Walter**.  WeRide seeks $21,653.55 in expert witness fees paid to Dr. Walter at a rate of $300 per hour.  Stern Decl. ¶ 32 & Appendix B.  Courts in this District have approved recovery of far greater expert fees simply for updating expert analysis to reflect late-produced documents.  *See Keithley v. Homestore.com, Inc.*, 2009 WL 816429, at *2 (N.D. Cal. Mar. 27, 2009) (awarding $115,071.12 in expert costs for reviewing late-produced documents.); *ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*, 2017 WL 345988, at *7 (N.D. Cal. Jan. 24, 2017) (ordering payment of "additional expert witness fees incurred by plaintiffs that are directly attributable to the delay in obtaining relevant electronically stored information").

Dr. Walter holds a Ph.D in mechanical and ocean engineering from MIT and a B.S. in general engineering, robotics, and control specializations from the University of Illinois at Urbana-Champaign.  Dkt. 34-43 ¶ 5.  Currently, he is an Assistant Professor of Computer Science at the Toyota Technological Institute at Chicago and has an appointment in the Department of Computer

---

[16]   This does not include an additional **$1,336,285.80** in fees from May 2019 to the present that Quinn Emanuel believes arguably fall within these categories, and that the Court could award in its discretion.  Stern Decl. ¶ 23.

1    Science at University of Chicago.  *Id.* ¶ 6.  Dr. Walter teaches numerous classes on autonomous

2    vehicle development, including "Self-Driving Vehicles: Models and Algorithms for Autonomy,"

3    "Robot Learning and Estimation," "Rapid Robotics: Autonomous Systems with Open Source

4    Software," and "Probabilistic Graphical Models."  *Id.*  Moreover, Dr. Walter produced an impressive

5    amount of work product in a short period of time, providing key source code analysis that helped to

6    direct the spoliation investigation, and submitting three new declarations to the Court and the Special

7    Master.  Stern Decl. ¶ 32 & Appendix B.  Dr. Walter's fees are particularly reasonable given that

8    Defendants engaged ***four*** source code experts and their own engineer, Yahui Liu, to attempt to rebut

9    Dr. Walter's analysis, but they ultimately failed.  *See* Dkts. 368-01 (Miller); 368-02 (Ohlman); 368-21

10   (Watzenig); 185-02 (Pavone).

11        **Expert Services of Michael Kunkel.**  WeRide seeks $1,100 in expert witness fees paid to

12   Setec Investigations for the expert services of Michael Kunkel at a rate of $275 per hour.  Appendix

13   C.  Mr. Kunkel is highly qualified for the rate he charges, with experience investigating computer

14   crime for the U.S. Air Force and Department of Defense, as well as over 1,000 computer forensic

15   investigations and electronic discovery engagements in private practice.  *See* Dkt. 330-2 ¶¶2-3.  Mr.

16   Kunkel spent eight hours conducting forensic analysis and preparing a declaration which explained

17   evidence that Defendant Kun Huang modified source code files on his laptop ***after*** the Court ordered

18   him to preserve those files and turn the laptop over to WeRide.  Appendix C; Dkt. 387-02.  Mr.

19   Kunkel's fees for this critical service in the case are eminently reasonable, especially given that

20   Defendants engaged three computer forensic experts themselves, although none of them even

21   attempted to rebut Mr. Kunkel's opinions.  *See* Dkt. 370-5 (Collins), 370-7 (Harris), 370-9 (Zhang).

22        **Court Reporting Services.**  WeRide seeks $89,385.80 in court reporting (including transcripts

23   and video recordings) and translation fees for the 11 depositions it took in connection with the

24   spoliation investigation and the discovery disputes before Judge Cousins.   Stern Decl. ¶ 32.

25   Recording depositions by video and stenographic transcript is common litigation practice—especially

26   where, as here, witnesses are traveling from abroad for a deposition and may not appear at a trial—and

27   this Court's Local Rules expressly provide that the costs of videotaped depositions are allowable as

28   taxable costs. L.R. 54-3(c)(1); *Opticurrent, LLC v. Power Integrations, Inc.*, 2019 WL 2869954, at *2

1   (N.D. Cal. July 3, 2019) ("fees for both the videotaped and stenographic versions of the same

2   transcript are taxable.").[17]   Indeed, Defendants similarly videotaped their depositions of WeRide's

3   witnesses,  Stern Decl. ¶ 32.   WeRide provided translators for the depositions of Yahui Liu, Jing

4   Wang, Rongrong Guo, and Gordon Fang at Defendants' request, even though Wang and Guo later

5   submitted English-language declarations in this case (*e.g.,* Dkts. 372-1, 372-6), and Wang, Guo, and

6   Fang all testified that they spoke English in the course of their business—and even testified at their

7   depositions almost entirely English while the translator sat by, at WeRide's expense.  Stern Decl.

8   ¶ 32.  WeRide's court reporting and translation fees were incurred at market rates, and are consistent

9   with the rates typically charged for these services in the Bay Area.  Stern Decl. ¶ 32.  Thus, the court

10  reporting fees claimed by WeRide are reasonable.

11         **Travel for Depositions and Hearings.**   WeRide seeks $14,384.83 in travel expenses for

12  Quinn Emanuel attorneys associated with work subject to the Court's fee award.  "Reasonable travel

13  time by the attorney is compensable, at full rates, if that is the practice in the community."  *Rodriguez*

14  *v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir.

15  2018).  Quinn Emanuel's travel expenses here—which were compensated at full cost by WeRide, per

16  Quinn Emanuel and most other law firms' standard practice—are particularly reasonable given the

17  amount of work performed in connection with the discovery disputes before Judge Cousins and the

18  spoliation investigation (including eleven depositions, seven hearings before this Court, and several

19  more hearings before the Special Master).  Stern Decl. ¶¶ 32.  As part of its effort to minimize travel

20  costs, Quinn Emanuel scheduled all of the spoliation depositions in the Bay Area, including for three

21  witnesses from China (Jing Wang, Rongrong Guo, and Gary Tao).  Stern Decl. ¶ 32.  Quinn

22  Emanuel's travel was ultimately limited to a single trip to Hong Kong to depose AllRide's corporate

23  representative (at the insistence of Defendants) and occasional travel between Los Angeles and the

24  Bay Area for a single Quinn Emanuel attorney (required by the lean makeup of the team and the fast

25  pace of the litigation).  Stern Decl. ¶ 32.  WeRide expects that Quinn Emanuel's travel expenses are

26

27     [17]   There is a split in authority in this District whether costs for both transcripts and videos of
       depositions are recoverable as costs under Fed. R. Civ. P. 54, but that is irrelevant here where the
28     Court has ordered recovery of all reasonable costs as a discovery sanction under Fed R. Civ. P. 37.

comparable to or less than the Defendants' firms, given that they flew attorneys across the country to handle hearings and depositions.  Stern Decl. ¶ 32; Dkt. 446 (terminating sanctions motion argued by Joshua Brown, a Shareholder in Greenberg Traurig's Orlando, Florida office).

**Document Reproduction.**  WeRide seeks $11,316.44 in document reproduction costs incurred preparing exhibits for the 11 depositions taken in connection with the spoliation investigation. Copying costs are "exactly the type of costs and expenses" properly included in an attorneys' fee award.  *Ahanchian v. Xenon Pictures, Inc.*, 2008 WL 11411621, at *3 (C.D. Cal. Dec. 29, 2008).  One contributor to WeRide's expense in this category was the number of participants at each deposition (increasing the number of copies necessary) and the number of deposition exhibits marked in this case—243 unique exhibits in total, with some exhibits being used in multiple depositions, and as many as 45 exhibits marked in a single deposition.  Stern Decl. ¶ 32.

**Online Research.**  WeRide seeks $4,805.60 in online research costs incurred in connection with the discovery disputes before Judge Cousins and during the spoliation investigation, and the terminating sanctions motion.  Recognizing the value of online research in reducing attorney time billed, courts now regularly include online research expenses in cost and attorneys' fee awards where, as here, the research was billed to (and paid by) the client.  *See, e.g.*, *Moralez v. Whole Foods Mkt., Inc.,* 2013 WL 3967639, at *8 (N.D. Cal. July 31, 2013) (awarding $6,220 in online research costs); *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 570 (7th Cir.1992) (overturning district court decision to exclude online research costs from fee award because "the market - the paying, arms' length market - reimburses lawyers' LEXIS and WESTLAW expenses").  These expenses are reasonable given the extent of the briefing in this case.  *See, e.g.*, Dkt. 469 at 6, 20.

**Ediscovery.**  WeRide seeks $106,180.15 in costs incurred by its ediscovery vendor, Transperfect, including document processing and hosting charges for the documents produced in connection with the spoliation investigation, forensic imaging of AllRide's source code pursuant to the Court's October 28, 2019 Order (Dkt. 342), and preparation of a declaration reporting on the status of that imaging that was submitted in support of the terminating sanctions motion (Dkt. 407-1). Courts in this District routinely find that ediscovery costs are recoverable as part of attorneys' fee or cost awards.  *See, e.g.*, *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2018 WL

2724019, at *4 (N.D. Cal. June 6, 2018), *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019) (awarding apportioned ediscovery costs "because as a matter of common sense those expenses were greater than they would otherwise have been."); *In re Lidoderm Antitrust Litig,* 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (finding document hosting fees are "routinely charged to clients, and should be reimbursed.").  The spoliation investigation, in particular Defendants' inflation of their document production and recalcitrance in producing source code, greatly increased WeRide's ediscovery costs. The million-plus pages of irrelevant material Defendants produced to inflate their productions unnecessarily increased Transperfect's processing and hosting fees.  Stern Decl. ¶ 32.  WeRide also incurred fees translating Chinese documents produced by defendants for use in the spoliation depositions of Jing Wang and Kun Huang.  *Id.* ¶ 32.  Further, Transperfect was called in to image Defendants' source code after Defendants themselves proved untrustworthy (Dkt. 342 at 16-17), an expense which was greatly increased by Defendants' continued obstruction.  *See generally* Dkt. 407-1 (Declaration of Daniel Agnotti).  Transperfect also incurred fees preparing a declaration to correct the record when Defendants tried to misrepresent their efforts (or lack thereof) to facilitate the source code review.  *Id.*; *Stern Decl.* ¶ 32.  Nevertheless, WeRide dutifully paid for these costs and all of Transperfect's invoices.  Stern Decl. ¶ 32.  Thus, WeRide's claimed ediscovery costs are reasonable.

### D.     WeRide Requests a Short Reply to Defendants' Opposition, if Necessary

WeRide respectfully requests the opportunity to file a short (3-page) reply to the opposition that the Court has permitted AllRide to file (Dkt. 488).[18]  Although WeRide has no objection to the Court exercising its discretion to allow AllRide to file an opposition, WeRide is compelled to point out AllRide overstated the law to the Court in its April 24, 2020 submission.  In fact, courts in the Ninth Circuit have held that a party (much less a defaulted defendant) who has the opportunity to

---

[18]   WeRide apologizes that it did not respond to AllRide's submission sooner.  WeRide did not understand Defendants' submission as an administrative motion—and thus did not understand WeRide's response to be due by April 28—because AllRide's submission was not titled as an administrative motion, was not filed with that designation on ECF, and did not include a proposed order or declaration explaining why a stipulation could not be obtained (indeed, AllRide never sought to meet and confer), as required by Local Rule 7-11(a).  WeRide had largely completed the preparation of this Section IV.D. of its application before receiving the Court's order, and sought to inform the Court that it intended to include this response to AllRide's submission in this application. *See* Dkt. 481 at 3 & n.7.  Certainly WeRide could have been more direct and regrets any confusion.

contest a fee award, and who is found to have willfully spoliated evidence, ***does not*** have a due process right to be heard separately on the amount of fees. *See, e.g.*, *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1165 (9th Cir. 2003) ("Paladin received notice of the possibility of sanctions when MPC filed its motions for costs.  It was afforded the opportunity to respond, and did indeed do so by filing a responsive brief.").  WeRide is not asking the Court to reconsider its decision to allow AllRide to file an opposition, but merely requests the opportunity to correct any further overstatements, or unfair characterizations of WeRide's fee request, if necessary.  WeRide respects that the Court has already received voluminous submissions on this matter, and so WeRide will limit its reply (if one is permitted and necessary at all) to avoid repeating arguments in this submission.

It is well-established that "[d]ue process is not violated by a court's entry of a default judgment or other sanction against a party for refusal to cooperate with discovery."  *In re Daily*, 47 F.3d 365, 369 (9th Cir. 1995); *Virtual Vision, Inc. v. Praegitzer Indus., Inc.*, 124 F.3d 1140, 1145 (9th Cir. 1997) (holding default judgment for violation of discovery orders did not violate due process because the disobedient conduct was "not shown to be outside the control of the litigant").  This Court has already given the defaulted Defendants a full opportunity to be heard in the briefing of the terminating sanctions motion, including through multiple rounds of oppositions, sur-replies, and a lengthy hearing. *See* Dkts. 368, 400, 431, 446; *Paladin*, 328 F.3d at 1165 ; *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (holding defendant defaulted for discovery violations received "all the process that was his due" when the trial court required the plaintiffs to "present in open court their prima facie case showing entitlement to judgment").

The core of AllRide's argument cites to 17 cases—three of which are cited in the Court's order at Dkt. 488—involving fee awards against defendants who were ***not*** in default.[19]  This reflects

---

[19] *Roadway Express v. Piper*, 447 U.S. 752, 767, (1980); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522 (11th Cir. 1986); *Inmates of the Allegheny Cty. Jail v. Wecht*, 901 F.2d 1191, 1193 (3d Cir. 1990); *White v. Gen. Motors Corp.*, 908 F.2d 675, 686 (10th Cir. 1990); *McFarland v. Gregory*, 425 F.2d 443, 450 (2d Cir. 1970); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 215 (D.N.J. 1997); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 & n. 11 (9th Cir. 1983); *Todd Shipyards Corp. v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor*, 545 F.2d 1176, 1180 (9th Cir. 1976); *Badea v. Schwartzer (In re Badea)*, 2019 WL 1070838, at *6 (B.A.P. 9th Cir. Mar. 5, 2019); *United States v. Asay*, 614 F.2d 655, 658 (9th Cir. 1980); *Montrose Chem. Corp. v. Am. Motorists Ins.*, 926 F. Supp. 944, 947 (C.D. Cal.

AllRide's refusal to accept its position as a ***defaulted*** entity.  (Indeed, AllRide now takes the astonishing position that it is still entitled to propound party discovery and WeRide must respond to it, but WeRide has no power to take party discovery or receive any further documents from AllRide.  *See* Dkt. 485 at 2-3.)  In fact, the consequence of the Court entering the Defendants' default is that they have no due process right "to appear in this action or address the Court."  *Verliant Energy, Inc. v. Barry*, 2015 WL 12990196, at *3 (N.D. Cal. Mar. 31, 2015); *see also Cohen v. Murphy*, 2004 WL 2779942, at *1 (N.D. Cal. Apr. 20, 2004) ("Entry of the defendants' default cuts off their right to appear in the action or to present evidence."); *Clifton v. Tomb*, 21 F.2d 893, 897 (4th Cir. 1927) (the landmark case on this issue, holding: "When a party is in default . . . the party himself has lost his standing in court, cannot appear in any way, cannot adduce any evidence, and cannot be heard at the final hearing.").  They have no "right" to oppose WeRide's fee application, or any other motion. *Wahoo Int'l, Inc. v. Phix Doctor, Inc*., 2014 WL 5465373, at *2 (S.D. Cal. Oct. 28, 2014) ("As such, Defendant, who is in default, may not file an opposition to Plaintiff's motion to amend."); *see also KT AMC Co. v. LWC Capital, LLC*, 2017 WL 7171719, at *2 (C.D. Cal. Nov. 6, 2017) ("LWC has not moved for relief from default, and thus may not move to dismiss. [cite] Therefore, the Court STRIKES LWC'S Motion."); *Jellybean Entm't, Inc. v. Usnile LLC*, 2013 WL 3283845, at *3 (S.D. Cal. June 26, 2013) ("Defendants' motion for an extension of time was filed after default.  It is thus precluded.").  The defaulted Defendants do not even have the "right" to "oppose or present any evidence in opposition to Plaintiff's motion" for default judgment.[20] *LaFace Records v. Khan*, 2008 WL 11395481, at *9 (N.D. Cal. Nov. 19, 2008).  For due process purposes, the defaulted Defendants

---

1995); *Dufour v. Allen*, 2017 WL 1433303 (C.D. Cal. Apr. 20, 2017); *Bostrom v. PNC Bank, N.A*., 2016 WL 5890064 (D. Idaho Oct. 7, 2016); *United States v. Pivaroff*, 2015 WL 6149217 (D. Nev. Oct. 19, 2015); *Fitness Anywhere LLC v. Woss Enters. LLC*, 2015 WL 12977018 (N.D. Cal. July 2, 2015); *Evans v. Allied Barton Sec. Servs., LLP*, 2010 WL 1644250 (N.D. Cal. Apr. 21, 2010); *Applied Materials, Inc. v. MultiMetrixs, LLC*, 2009 WL 10690770 (N.D. Cal. Nov. 23, 2009).

[20] AllRide's arguments that the defaulted Defendants are entitled to take discovery and appear and introduce evidence at the forthcoming prove-up hearing on damages are premature, in addition to being substantively incorrect.  These issues will be addressed more fully in WeRide's forthcoming motion for default judgment, though WeRide is happy to brief the issues sooner upon the Court's request.

1   are now non-parties.  *See also Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159

2   (9th Cir. 2010) ("a defaulted defendant should be treated as a non-party").

3          Consistent with this authority, the decision to award an amount of fees, or any other sanction

4   (including default judgment) is now within the Court's sole discretion, and the Court may decide, as it

5   did, how and from whom it wishes to receive evidence and/or argument.  *Liu v. Liu (In re Liu)*, 282

6   B.R. 904, 907 (Bankr. C.D. Cal. 2002) ("The court has broad discretion under Rule 55(b)(2) to

7   conduct [default] hearings ... as it deems necessary and proper") (quoting *In re Villegas*, 132 B.R. 742,

8   746 (B.A.P. 9th Cir. 1991)); *Bd. of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F.

9   Supp. 2d 1222, 1225 (N.D. Cal. 2005) ("A formal hearing is not required for a court to render a

10  default judgment.") (citing *Davis v. Fendler*, 650 F.2d 1154 (9th Cir.1981)).

11         But this important distinction illustrates another fundamental problem in AllRide's position

12  (which WeRide predicts AllRide will continue to press as though its default was never entered), which

13  is that AllRide mischaracterizes the Court's ***discretion*** to allow ongoing appearances with AllRide

14  having a "right" or "entitlement" to continue appearing.  The cases AllRide cites do not support its

15  claimed "due process right" to be heard on fees or any other issue.  AllRide does not cite a single case

16  holding that due process was violated by the refusal to accept evidence or argument from a defaulted

17  defendant.  To the contrary, AllRide cites five appellate decisions that ***upheld*** sanctions, including the

18  amount of attorneys' fees and entry of default judgment, where the District Court ***did not*** take

19  additional argument or evidence from the defendants.[21]  AllRide badly mischaracterizes the Tenth

20  Circuit's decision in *Ocelot Oil Corp. v. Sparrow Industries*, which held that defendants were ***not***

21  entitled to a separate hearing on the amount of fees when Defendants had already been heard before

22

23         [21] *Davis v. Fendler*, 650 F.2d 1154, 1162 (9th Cir. 1981) (upholding default judgment entered

24  without a hearing); *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) (upholding default judgment
    where trial court precluded defendant from offering evidence on liability); *Ocelot Oil Corp. v.*

25  *Sparrow Indus.*, 847 F.2d 1458, 1465-66 (10th Cir. 1988) (upholding fee award where defendants
    submitted no additional evidence after entry of fees); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th

26  Cir. 2006) (upholding fee award where defendant submitted declaration supporting claimed fees on
    the day of the hearing, and plaintiff never responded); *Cement & Concrete Workers Dist. Council*

27  *Welfare Fund v. Metro Found. Contractors Inc.*, No. CV-08-4563 FB, 2010 WL 5859417, at *1
    (E.D.N.Y. Dec. 13, 2010), *report and recommendation adopted as modified*, 2011 WL 703888

28  (E.D.N.Y. Feb. 17, 2011), *aff'd* 699 F.3d 230 (2d Cir. 2012) ("defendant has not submitted any
    opposition pertaining to damages.  Accordingly, a hearing on the issue of damages is not warranted").

fees were imposed—just as the Court here entertained several rounds of briefing and held a three-plus-hour hearing before imposing sanctions.  *Ocelot,* 847 F.2d at 1465-66.  AllRide misleadingly quotes only a sentence fragment from the court's holding, when the full sentence stands for exactly the opposite proposition from AllRide's citation.  The full sentence from *Ocelot*, with the language omitted from AllRide's quote emphasized, is as follows: "**<u>Although</u>** due process requires fair notice and an opportunity to be heard before attorney's fees are imposed, **<u>it may not necessarily require both an oral hearing on whether attorney's fees should be imposed and a separate oral hearing on the amount of such fees.</u>"  *Compare id. with* Dkt. 478 at 3.  Thus *Ocelot* actually stands for the proposition that AllRide ***does not*** have a due process right to continue to appear, consistent with other Ninth Circuit authority.

AllRide heavily relies on *Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d 1141, 1147 (D. Or. 2016), a case from the District of Oregon which has been criticized for relying on a decades-old ALR article to justify permitting defendants to participate at the default hearing.  *See Davis v. City of Idaho Falls*, 2019 WL 2218985, at *3 (D. Idaho May 22, 2019) ("While the *Rubicon* court allowed the defaulted party to take a more involved role at a similar hearing, that decision is not binding upon this Court.  Nor is the American Law Review article or other caselaw the *Rubicon* Court relied upon in reaching its conclusion overly persuasive regarding a defaulted party's right to a more involved role at such hearings.").  While *Rubicon* discusses whether a defaulting party has a "right" to participate at the default hearing, based primarily on the law review article, it does not go so far in its holding, deciding only that the court "found it proper to allow Defendants to participate in the evidentiary hearing on damages."[22]  *Id.* at 1148.  *Rubicon* says nothing about whether defaulted Defendants have a "right" to a further appearances after having already been heard extensively on the motion for sanctions.

Similarly, *Ornstein v. Canites*, 2018 WL 4538784 (N.D. Cal. September 21, 2018), another case AllRide has cited prominently to the Court (s*ee* Dkt. 478 at 4; Dkt. 482 at 1-2), permitted

---

[22] The *Rubicon* court went on to note that the defaulted defendants' participation at the hearing did not change the outcome because defendant's questions "were precisely the questions [the court] would have raised at the hearing even if Defendants were not present."  *Id.*

defaulted defendants to take "limited discovery necessary to dispute plaintiffs' damages calculation" as an exercise of the Court's discretion, not as an acknowledgment of any due process right. *Id.* at *2. AllRide omits Judge Hamilton's statements at the hearing in *Ornstein* explaining that a defaulted defendant must apply for the right to take discovery before taking any. *See Ornstein et al v. Canites et al*, Case No. 18-cv-01616 (N.D. Cal.) at Dkt. 63 (Sept. 19, 2018 Hg. Tr. At 9:2-4 ("[T]hey [may] apply for an opportunity to take discovery in defense of a motion for default judgment.").  Thus, *Ornstein* implicitly holds that defaulted defendants do ***not*** have a "right" or entitlement to discovery. The seven other cases AllRide cites on this issue also involved an exercise of the court's discretion; ***none*** of them denied or reversed sanctions imposed against the defaulting defendants.[23]

Finally, AllRide's last case is an out-of-circuit decision holding that service of a default judgment on the defendant's former counsel was insufficient to provide actual notice. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995).  The court remanded to the trial court and suggested in dicta that a defaulting defendant "ordinarily" has the opportunity to respond to the issue of damages. *Id.*  The court went on to specifically hold that the trial court's decision to grant default judgment based on affidavits submitted by the plaintiff (without a response from the defendant) did not violate due process. *Id.* at 111.  Again, *Antoine* does not support AllRide's argument that it has a "right" to ongoing appearances.

AllRide's submission claiming a non-existent due process right to continued appearances (and indeed its conduct throughout this litigation) proves the truth of Chief Justice Strine's aphorism that "it is more time-consuming to clean up the pizza thrown at a wall than it is to throw it." *Auriga Capital Corp. v. Gatz Properties*, 40 A.3d 839, 882 (Del. Ch. 2012).  Given Defendants' history of obstruction and obfuscation, and the fact that AllRide has already prejudged WeRide's fee request as unreasonable sight unseen (Dkt. 478 at 4), WeRide is concerned about further overstatements in

---

[23] *See Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, 2009 WL 1949124, at *11 (N.D. Cal. July 2, 2009) (awarding attorneys' fees); *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 790 (9th Cir. 2011) (upholding default judgment); *Conetta v. Nat'l Hair Care Centers, Inc.*, 236 F.3d 67, 78 (1st Cir. 2001) (same); *Wehrs v. Wells*, 688 F.3d 886, 893 (7th Cir. 2012) (upholding summary judgment on damages after default*); Rode v. Credio*, 2016 WL 5339682, at *8 (D. Ariz. August 3, 2016) (same); *Agent Anonymous v. Gonzalez*, 2018 WL 6582833, at *6 (S.D. Cal. October 30, 2018) (same); *DirecTV, LLC v. Mackey*, 2013 WL 5587576, at *2 (N.D. Cal. Oct. 10, 2013) (same).

AllRide's forthcoming opposition.  Thus, although WeRide has made every effort to be thorough, accurate, and forthcoming in this application, WeRide requests that it be permitted a short reply to clean up any further pizza AllRide throws.

**V.      CONCLUSION**

Pursuant to the Court's April 16, 2020 Order, WeRide respectfully requests that the Court award $1,968,915.37 in fees and expenses incurred in connection with the discovery disputes before Judge Cousins, the spoliation investigation, and the terminating sanctions motion.

DATED:  April 30, 2020                              Respectfully submitted,

                                                            QUINN EMANUEL URQUHART &
                                                            SULLIVAN, LLP


                                                            By  _/s/ Claude M. Stern_
                                                                   Claude M. Stern
                                                                   Ryan S. Landes
                                                                   Michael F. LaFond
                                                                   William T. Pilon
                                                                   *Attorneys for Plaintiffs WeRide Corp. and WeRide Inc.*